UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOISES MENDEZ,                                          :
                                                        :
                              Plaintiff,                :
                                                        :
              v.                                        :   CASE NO.
                                                        :
STARWOOD HOTELS & RESORTS                               :
WORLDWIDE, INC.                                         :
                                                        :
                              Defendant.   :
------------------------------------------------------------X



## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Moises Mendez ("Plaintiff" or "Mr. Mendez"), by and through his

undersigned counsel, Thompson Wigdor & Gilly LLP, as and for his Complaint in this action

against Defendant Starwood Hotels and Resorts Worldwide, Inc. ("Defendant" or "the

Hotel"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices and retaliation

against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation

against Plaintiff because of his race/color, national origin and/or disabilities, and because of

his repeated complaints about such unlawful discrimination, harassment and retaliation, in

violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981");

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title

VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA");

the New York State Human Rights Law, New York Executive Law § 290 et seq.

("NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §
8-101 et seq. ("NYCHRL").

2.      Over the course of Plaintiff's nearly five-year employment history at the Hotel,
Defendant repeatedly subjected Plaintiff to unlawful discrimination and harassment because
of his race/color, national origin and disabilities, as well as to unlawful retaliation.  The
blatantly hostile work environment at the Hotel includes the frequent use by Plaintiff's co-
workers and direct supervisors of derogatory comments and/or notes, such as referring to
Plaintiff as "a Mexican piece of shit" and "the best cocksucker," and acts of intimidation and
threats of violence.  Plaintiff has repeatedly complained about this and other discriminatory
and harassing misconduct at the Hotel and in return has been subjected to unlawful retaliation
designed to punish him for bringing these claims and pressure him to withdraw them.

3.      Defendant's conduct was knowing, malicious, willful and wanton and/or
showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to
suffer substantial economic and non-economic damages, permanent harm to his professional
and personal reputation, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and
1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil
rights under Title VII, Section 1981 and the ADA.  The Court has supplemental jurisdiction
over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. §
1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

6.      Plaintiff Moises Mendez is an Ecuadorian immigrant to the United States who suffers from diabetes and diverticulitis.  From in or around June 2003 to the present, Mr. Mendez has been an employee at Defendant's Westin Times Square Hotel in New York City (the "Westin Hotel").  At all relevant times, Mr. Mendez met the definition of an "employee" under all applicable statutes.

7.      Defendant is a corporation authorized to conduct business in the State of New York with its principle executive office located at 1111 Westchester Avenue, White Plains, New York, 10604.  At all relevant times, Defendant owned, operated and maintained the Westin Hotel.  At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

## PROCEDURAL REQUIREMENTS

8.      Plaintiff has complied with all statutory prerequisites to filing this action.

9.      On or about May 21, 2007, Mr. Mendez filed a Verified Complaint (the "May 21, 2007 Complaint") with the New York State Division of Human Rights (the "NYSDHR") charging Defendant with unlawful discriminatory employment practices because of disability, national origin, and race/color.  On October 26, 2007, the NYSDHR rendered a determination finding probable cause to support the allegations of the May 21, 2007 Complaint.

10.     On August 15, 2007, Mr. Mendez filed a Verified Complaint (the "August 15, 2007 Complaint") with the NYSDHR charging Defendant with unlawful discriminatory employment practices based on its unlawful retaliation against him for having filed the May 21, 2007 Complaint.  On October 26, 2007, the NYSDHR rendered a determination finding probable cause to support the allegations of the August 15, 2007 Complaint.

11.     On February 28, 2008, the NYSDHR issued a Notice and Final Order of Dismissal for Administrative Convenience of the May 21, 2007 Complaint, authorizing Mr. Mendez to pursue his claims of unlawful employment discrimination on the basis of race/color, national origin and disability in another judicial forum.  On March 27, 2008, the Equal Employment Opportunity Commission ("EEOC") adopted the NYSDHR's findings and issued Mr. Mendez a notice of right to bring suit in federal district court based on the allegations of unlawful discrimination on the basis of race/color, national origin and disability set forth in the May 21, 2007 Complaint.

12.     On April 8, 2008, the NYSDHR issued a Notice and Final Order of Dismissal for Administrative Convenience of the August 15, 2007 Complaint, authorizing Mr. Mendez to pursue his claims of unlawful retaliation in another judicial forum.  On May 14, 2008, the EEOC adopted the NYSDHR's findings and issued Mr. Mendez a notice of right to bring suit in federal district court based on the allegations of unlawful retaliation set forth in the August 15, 2007 Complaint.

13.     This action has been filed within 90 days of Plaintiff's receipt of his right-to-sue letters from the EEOC.

14.     Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

15.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### I.  Background

16.     Moises Mendez is a hard-working 43-year-old Ecuadorian immigrant who has worked as a Chef, Baker, Busser, and Certified Banquet Waiter at various New York City restaurants for nearly two decades, regularly working six or seven days a week to support his family.  He is a conscientious and reliable employee who at all times performs his duties in an exemplary manner and gets along well with his colleagues and employers.  Until he started working at the Hotel, Mr. Mendez was in good health mentally, physically and emotionally.

17.     Mr. Mendez began working at the Hotel on June 16, 2003, when he accepted a position as a Food Runner carrying food and dishes to and from the kitchen, conference rooms and banquet halls of the Westin Hotel.  Mr. Mendez currently works as a Baker at the Hotel.

18.     As set forth in greater detail below, throughout his employment at the Hotel, Mr. Mendez has been subjected to a shocking barrage of discrimination and harassment on the basis of his race/color, national origin and disabilities.  Despite Mr. Mendez's many written complaints and pleas for the Hotel to bring an end to the discriminatory and harassing conduct

committed against him by his supervisors and co-workers, the Hotel has turned a blind eye to his increasingly desperate plight.

## II. Discrimination and Harassment on the Basis of Race/Color and National Origin

### A. Discrimination, Harassment and Threats of Violence

19.     Throughout his employment at the Hotel, Mr. Mendez has been singled out by other employees and managers at the Hotel – including his direct supervisors – who have subjected him to a constant barrage of discrimination, harassment, threats and intimidation because he is Hispanic/Ecuadorian and because he suffers from diverticulitis and/or diabetes.

20.     For example, employees have left discriminatory, disparaging and harassing notes in Mr. Mendez's locker at the Hotel, including, *inter alia*, notes that described him as a "Mexican piece of shit," "the best cocksucker," "the best Mexican that crossed the border," and the "Mangina Man."[1]

21.     When the Hotel failed to investigate and did not attempt to prevent other employees from engaging in similar unlawful discriminatory and harassing conduct, other employees at the Hotel began subjecting Mr. Mendez to discriminatory and harassing verbal abuse with impunity, mocking him on the basis of his race/color, national origin and medical conditions.  Mr. Mendez's co-workers have also spread false rumors that he is a homosexual, and have left homosexual pornography in his locker and near his workstation.

---

[1]     "Mangina," a pejorative concatenate of the words "man" and "vagina," is an apparent reference to the scars and wound on Mr. Mendez's stomach that resulted from one of his intestinal surgeries.

22.     In addition to enduring discriminatory and harassing comments from his co-workers, Mr. Mendez's locker has been vandalized, and the oven that he used in the Hotel kitchen has been defaced with discriminatory graffiti.

23.     Mr. Mendez has also been subjected to physical threats and intimidation from co-workers who stand directly in front of him and chant songs mocking his race/color, national origin, and medical conditions.  As part of this campaign of intimidation, members of the kitchen staff regularly drop heavy equipment in Mr. Mendez's immediate vicinity while making threatening gestures that are intended to terrorize him in the workplace.  They also regularly attempt to sabotage Mr. Mendez's work as a Baker by surreptitiously turning up the ovens to burn his food, and by throwing Mr. Mendez's freshly prepared baked goods into the garbage.

24.     Mr. Mendez's direct supervisor, Executive Chef Antonio Rotolo, a white male, has also subjected him to unlawful discrimination and harassment.  By way of example only, Chef Rotolo regularly and openly subjects Mr. Mendez to ridicule and humiliation by referring to Mr. Mendez as the "Mangina man," "Mammy," and "Moisesa."  Chef Rotolo has also made disparaging comments about Mr. Mendez's national origin by calling Mr. Mendez a "fucking Ecuadorian punk" and openly expressing his belief that Ecuadorians are "dumb."

25.     Mr. Mendez's life has also been threatened, as explained in greater detail below.  Although Mr. Mendez filed a police report with the New York City Police Department ("NYPD") and written complaints with Hotel security, Defendant has failed to seriously investigate or discipline any employee in connection with these acts of discrimination, harassment and intimidation.  Indeed, the Hotel's failure and refusal to

respond to the many complaints that Mr. Mendez has submitted over the years provides compelling confirmation of the Hotel's indifference to the unlawful conduct of its employees.

26.     By way of example only, in one of his many written complaints to the Hotel, Mr. Mendez wrote as follows: "As you know, for quite some time I have been a victim of all kinds of harassment amongst them verbal, written and with actions, today 6/28/07, chef Antonio Rotolo continues with said practice by gesturing with his fingers as if he were shooting me with a gun and with intimidating facial expressions. … I am very ill and all I would like to do is work in peace, so I may provide for my family. I beg you to review my situation and end the suffering that these hostilities bring me."

27.     In a collective attempt to persuade the Hotel to take action against employees who engaged in overtly racist conduct against their co-workers, nine Hotel employees, including Mr. Mendez, submitted a written petition complaining about an employee who openly referred to African-Americans as "monkeys" and "animals," used racial slurs, and spit at his co-workers. Despite receiving these complaints, the Hotel refused to impose meaningful discipline against the offending employee.

28.     Moreover, when Mr. Mendez and other employees complained about another employee who engaged in similar racist behavior, including waving bananas at African-Americans to imply that they were apes and holding his nose to indicate that they stink – and also targeted Mr. Mendez with discriminatory and harassing comments based on his race/color, national origin and medical conditions – the Hotel failed to discipline him or terminate his employment.

29.     When Mr. Mendez was unable to obtain relief despite his repeated complaints to the Hotel's Human Resources department, he twice contacted the Hotel's National Ethics Hotline to complain about his discriminatory mistreatment and the Hotel's failure to respond or take any action on his behalf.  Upon information and belief, the Hotel never investigated Mr. Mendez's complaints of discrimination and harassment and no employee has been subject to meaningful discipline in connection with his mistreatment.

30.     After realizing that the Hotel would not intervene on his behalf, Mr. Mendez attempted to discuss privately the humiliation and ridicule he was suffering on the basis of his race/color, national origin and disabilities with one of the employees who was engaging in such conduct.  When the co-worker replied that he would murder Mr. Mendez if given a private opportunity to do so, Mr. Mendez believed that his life was in danger.  He therefore met with the Hotel's Director of Human Resources within hours of the incident and told him that the employee had threatened to kill him and that he was afraid for his life.

31.     The Human Resources Director claimed that the Hotel would conduct a thorough investigation and take appropriate action against the employee who had threatened to kill him.  Nevertheless, the Hotel conducted no investigation whatsoever in the weeks following Mr. Mendez's complaint.

32.     Recognizing that the Hotel would take no action on his behalf and becoming increasingly afraid for his safety, Mr. Mendez went to a local police precinct and filed a police report with NYPD regarding the threat to his life.  However, when Mr. Mendez gave the Human Resources Director a copy of the police report, that individual responded by laughing in Mr. Mendez's face and telling him that the Hotel would take no action in response to his complaint or the police report.

33.     On another occasion, after another Hotel employee told Mr. Mendez that he wanted to take Mr. Mendez's body "back to Ecuador in a coffin," the Hotel also failed to investigate the threat to his life and safety or take any action in response, despite receiving Mr. Mendez's complaint about the matter.

34.     The Hotel's failure to investigate and take prompt remedial action in response to these and other complaints by Mr. Mendez was in violation of its own written employment policies.

### B.  Mr. Mendez is Prohibited from Speaking Spanish at the Hotel

35.     Pursuant to an unlawful policy of systematic discrimination against Spanish-speaking Hispanic employees, the Hotel also enforced an "English-only" policy against Mr. Mendez and other Hispanic employees that prohibited them from speaking Spanish on the Hotel premises – even when other, non-Hispanic employees were allowed to openly speak other foreign languages in the workplace.

### III.  Disability Discrimination, Harassment and Failure to Accommodate

### A.  Failure to Accommodate

36.     In June 2003, shortly after he began working at the Hotel, Mr. Mendez was given a copy of his permanent schedule, which assigned him to a shift from 5:00 am to 12:30 pm, and required him to leave his home every morning at 4:00 am to get to work on time. After working these hours for approximately two weeks, Mr. Mendez began to suffer severe stomach pains, sleep disturbances and insomnia.

37.     When Mr. Mendez's symptoms continued to worsen, he sought medical treatment from his doctors, who determined that he had developed diabetes and diverticulitis,

an agonizing intestinal disorder.  Mr. Mendez's doctors emphasized that the symptoms of both disorders were exacerbated by the disruptions to his daily meal and sleep cycles that resulted from his working the night shift.

38.     When Mr. Mendez told the Hotel that his doctors had advised him that his health had been compromised and would continue to deteriorate if he remained on the night shift, the Hotel refused to modify his schedule and told Mr. Mendez that he was "too reliable" and could not be replaced as the night shift Baker.

39.     Fearing that the Hotel may have misunderstood the severity of his medical conditions and the urgency of his need for a different schedule, Mr. Mendez provided numerous notes from his doctors verifying his diagnoses and explaining that his medical conditions made it impossible for him to continue working the night shift.  Although Mr. Mendez submitted numerous notes from his doctors in support of his request to be transferred from the nightshift, the Hotel refused to accommodate his medical needs and refused to modify his schedule for nearly three years.

40.     During that three-year period, Mr. Mendez's medical conditions continued to worsen, as his intestines were wracked by such severe and unremitting pain that he often believed that he was going to die.  On a number of occasions, Mr. Mendez was rushed to the hospital and carried to the emergency room, writhing in pain that left him unable to stand or speak.  Mr. Mendez was forced to undergo multiple painful intestinal surgeries, and was often hospitalized for days and even weeks at a time.  Although the Hotel was fully aware that Mr. Mendez's deteriorating health was attributable to its refusal to modify his schedule, it insisted that he continue to work on the night shift.

41.     Despite the notes from Mr. Mendez's doctors, the Hotel was unyielding in its refusal to transfer him from the night shift.  The Hotel also failed to propose any alternative accommodation for Mr. Mendez's documented medical needs, and would not engage in any sort of dialogue with Mr. Mendez regarding possible accommodations that could enable him to continue working despite his medical conditions.

42.     Mr. Mendez was shocked by the Hotel's callous denial of his medical need for a scheduling modification and feared that he might cause permanent harm to his health if he ignored his doctors' instructions.  Nevertheless, Mr. Mendez felt that he had no choice but to comply with the directive to continue working the night shift, as he would be unable to afford treatment for the medical disorders that had been diagnosed since he started working at the Hotel if he quit and became ineligible for employee health benefits.

43.     Finally, on April 12, 2007, the Hotel temporarily relented and for the first time granted Mr. Mendez's request to be transferred to the day shift as an accommodation for his medical needs.  Although Mr. Mendez immediately drafted a memorandum to the Hotel confirming that he wanted the schedule modification to remain permanent, the Hotel explicitly reserved its "right" to withdraw the accommodation at its discretion on five-days notice.

### B. Other Discriminatory, Harassing and Degrading Treatment Based on Disability, Race/Color and/or National Origin

44.     On one occasion, guests who attended a private function at the Hotel complained that they all contracted food poisoning on the same night.  The following morning, the Hotel's Food and Beverage Director (the "F&B Director"), a white male, confronted Mr. Mendez in the kitchen and, in front of his co-workers, demanded that he

defecate in an unlabeled vial to "prove" that his intestinal disorder diverticulitis was not the source of contamination responsible for the food poisoning incident.

45.     Mr. Mendez refused to comply with this outrageous demand, and asked the F&B Director to explain why he was being singled out in such a humiliating and degrading manner.  However, the F&B Director insisted that Mr. Mendez defecate in the vial and attempted to rob him of all dignity without further explanation.

46.     Although fearful for his job, Mr. Mendez did not give in to the F&B Director's demand and contacted a Union representative for assistance.  The Union then complained about this matter on Mr. Mendez's behalf, and the F&B Director was prevented from forcing Mr. Mendez to defecate into the vial.  Nevertheless, Mr. Mendez was forced to suffer such degrading treatment because of his disabilities, race/color and national origin.

47.     Mr. Mendez's health, which continued to deteriorate during the approximately three-year period when he was denied a transfer or schedule change from the night shift, has also been exacerbated by the ongoing stress and anxiety associated with the Hotel's failure to stop the discrimination, harassment and threats to which Mr. Mendez has been subjected on an almost daily basis during his employment at the Hotel.

48.     Although he had never received psychiatric treatment or counseling before in his life, Mr. Mendez began seeing a psychiatrist on a regular basis in July 2005 when he found himself struggling to cope with his increasingly desperate situation at the Hotel. Needless to say, Mr. Mendez's physical and emotional conditions have also had a devastating impact on his family members, who have been helpless witnesses to the turmoil that has eroded his intestines and destroyed his spirit.

## IV. Unlawful Retaliation Committed Against Mr. Mendez

49.    After his repeated complaints to his supervisors, Human Resources, the Union, and the National Ethics Hotline failed to stop the discriminatory and harassing conduct, or to secure a permanent schedule change to accommodate his medical needs, Mr. Mendez enlisted the assistance of the NYSDHR, and filed a Verified Complaint asserting claims of discrimination on the basis of race/color, national origin and disability against the Hotel on May 21, 2007.  Despite Mr. Mendez's initiation of formal legal proceedings, the Hotel has not conducted a serious investigation of his claims or taken appropriate disciplinary action against Hotel employees and supervisors who have continued to harass and discriminate against Mr. Mendez.

50.    Moreover, the Hotel unlawfully retaliated against Mr. Mendez for filing his complaint with the NYSDHR.  By way of example only, Mr. Mendez's supervisors began following him to the staff restroom whenever he needed to use the facilities at the Hotel, where they would bang on his restroom stall and wait for him to exit before following him back to his workstation.  When Mr. Mendez asked his supervisors to stop engaging in this form of harassing, retaliatory and humiliating conduct, his supervisors uniformly claimed that their visits to the restroom throughout the workday merely coincided at all times with his own.

51.    Upon information and belief, one of Mr. Mendez's supervisors also pressured other employees under his supervision to sign false statements denying that they were aware of any discrimination or harassment against Mr. Mendez during his employment at the Hotel. In fact, one of Mr. Mendez's co-workers told Mr. Mendez that a supervisor had attempted to

bribe him to take sides against Mr. Mendez by claiming that Mr. Mendez's truthful allegations of discrimination and harassment were false.

52.     Upon information and belief, Mr. Mendez's locker at the Hotel, which he uses to store his prescription medications and personal affects, has been vandalized.  The locker was also accessed without Mr. Mendez's permission, and its contents were rearranged in a further attempt to intimidate Mr. Mendez after he filed his complaints of discrimination and harassment with the NYSDHR.  Fearing that his vital prescription medications had been deliberately tampered with in retaliation for his complaints, Mr. Mendez was forced to dispose of the medications that had been stored in his locker and purchase costly new prescriptions in their place.

53.     Additional acts of discrimination and harassment were committed against Mr. Mendez as part of the Hotel's campaign of unlawful retaliation.

## FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Section 1981)

54.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.     Defendant has discriminated against Plaintiff on the basis of his race/color (Hispanic) in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are not Hispanic, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

56.     Defendant has discriminated against Plaintiff on the basis of his race/color in violation of Section 1981 by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color.

57.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

58.     Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)

59.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     Defendant has retaliated against Plaintiff in violation of Section 1981 for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees at Defendant by, inter alia, subjecting Plaintiff to acts of discrimination, harassment and humiliation, withdrawing an agreed upon accommodation for Plaintiff's disabilities, transferring Plaintiff to an overnight shift, and encouraging and/or coercing

Plaintiff's co-workers to falsely contradict Plaintiff's truthful allegations of discrimination, harassment and/or retaliation.

61.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

62.    Defendant's unlawful and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Title VII)

63.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 62, inclusive, as if fully set forth herein.

64.    Defendant has discriminated against Plaintiff on the basis of his race/color (Hispanic) and/or national origin (Ecuadorian) in violation of Title VII by denying him the same terms and conditions of employment available to employees who are not Hispanic and/or Ecuadorian, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

65.    Defendant has discriminated against Plaintiff on the basis of his race/color and/or national origin in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color and/or national origin.

66.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

67.    Defendant's unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

68.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 67, inclusive, as if fully set forth herein.

69.    Defendant has retaliated against Plaintiff in violation of Title VII for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees at Defendant by, inter alia, subjecting Plaintiff to acts of discrimination, harassment and humiliation, withdrawing an agreed upon accommodation for Plaintiff's

disabilities, transferring Plaintiff to an overnight shift, and encouraging and/or coercing Plaintiff's co-workers to falsely contradict Plaintiff's truthful allegations of discrimination, harassment and/or retaliation.

70.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

71.     Defendant's unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Violation of Duty of Reasonable Accommodation Under ADA)

72.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 71, inclusive, as if fully set forth herein.

73.     Defendant violated its duty under the ADA to provide Plaintiff with a reasonable accommodation for his disabilities (diabetes and/or diverticulitis) when it denied Plaintiff's request for the reasonable accommodation identified by Plaintiff's treating physicians (modified work schedule), failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, and/or failed and refused to engage in discussion

with Plaintiff regarding the potential provision of alternative accommodations after repeatedly denying Plaintiff's request for the accommodation identified by Plaintiff's treating physicians.

74.    As a direct and proximate result of Defendant's violation of its duty of reasonable accommodation under the ADA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

75.    Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of the NYSHRL)

76.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 75, inclusive, as if fully set forth herein.

77.    Defendant has discriminated against Plaintiff on the basis of his race/color (Hispanic), national origin (Ecuadorian) and/or disabilities (diabetes and/or diverticulitis) in violation of the NYSHRL by denying him the same terms and conditions of employment available to employees who are not Hispanic, Ecuadorian and/or disabled, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

78.    Defendant has discriminated against Plaintiff on the basis of his race/color and/or national origin in violation of the NYSHRL by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included,

among other things, severe and pervasive harassment of Plaintiff because of his race/color, national origin and/or disabilities.

79.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

80.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81.     Defendant has retaliated against Plaintiff in violation of the NYSHRL for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees at Defendant by, inter alia, subjecting Plaintiff to acts of discrimination, harassment and humiliation, withdrawing an agreed upon accommodation for Plaintiff's disabilities, transferring Plaintiff to an overnight shift, and encouraging and/or coercing Plaintiff's co-workers to falsely contradict Plaintiff's truthful allegations of discrimination, harassment and/or retaliation.

82.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

## EIGHTH CAUSE OF ACTION
### (Violation of Duty of Reasonable Accommodation Under the NYSHRL)

83.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 82, inclusive, as if fully set forth herein.

84.     Defendant violated its duty under the NYSHRL to provide Plaintiff with a reasonable accommodation for hisdisabilities (diabetes and/or diverticulitis) when it denied Plaintiff's request for the reasonable accommodation identified by Plaintiff's treating physicians (modified work schedule), failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, and/or failed and refused to engage in discussion with Plaintiff regarding the potential provision of alternative accommodations after repeatedly denying Plaintiff's request for the accommodation identified by Plaintiff's treating physicians.

85.     As a direct and proximate result of Defendant's violation of its duty of reasonable accommodation under the NYSHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

## NINTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of the NYCHRL)

86.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 85, inclusive, as if fully set forth herein.

87.     Defendant has discriminated against Plaintiff on the basis of his race/color (Hispanic), national origin (Ecuadorian) and/or disabilities (diabetes and/or diverticulitis) in violation of the NYCHRL by denying him the same terms and conditions of employment available to employees who are not Hispanic, Ecuadorian and/or disabled, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

88.     Defendant has discriminated against Plaintiff on the basis of his race/color and/or national origin in violation of the NYCHRL by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color, national origin and/or disabilities.

89.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

90.     Defendant's unlawful and discriminatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

91.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 90, inclusive, as if fully set forth herein.

92.     Defendant has retaliated against Plaintiff in violation of the NYCHRL for opposing and/or complaining of Defendant's discriminatory practices against himself and other employees at Defendant by, inter alia, subjecting Plaintiff to acts of discrimination, harassment and humiliation, withdrawing an agreed upon accommodation for Plaintiff's disabilities, transferring Plaintiff to an overnight shift, and encouraging and/or coercing Plaintiff's co-workers to falsely contradict Plaintiff's truthful allegations of discrimination, harassment and/or retaliation.

93.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

94.     Defendant's unlawful and retaliatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION

### (Violation of Duty of Reasonable Accommodation Under the NYCHRL)

95.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 94, inclusive, as if fully set forth herein.

96.     Defendant violated its duty under the NYCHRL to provide Plaintiff with a reasonable accommodation for his disabilities (diabetes and/or diverticulitis) when it denied Plaintiff's request for the reasonable accommodation identified by Plaintiff's treating physicians (modified work schedule), failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, and/or failed and refused to engage in discussion with Plaintiff regarding the potential provision of alternative accommodations after repeatedly denying Plaintiff's request for the accommodation identified by Plaintiff's treating physicians.

97.     As a direct and proximate result of Defendant's violation of its duty of reasonable accommodation under the NYCHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

98.     Defendant's unlawful and discriminatory conduct in violation of the duty of reasonable accommodation under the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWELFTH CAUSE OF ACTION

### (Negligent Hiring, Retention and Supervision)

99.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.   Defendant has violated its duty as Plaintiff's employer to provide a safe workplace, to take reasonable steps to determine the fitness of Plaintiff's co-workers and supervisors and to reasonably supervise Plaintiff's co-workers and supervisors by, <u>inter alia</u>, failing and refusing to investigate and/or take appropriate disciplinary or other action in response to Plaintiff's repeated verbal and written complaints of discriminatory and harassing conduct by his co-workers and/or supervisors on the basis of his race/color, national origin and/or disabilities, including but not limited to, threats of violence and grievous physical injury against Plaintiff by other Hotel employees.  Defendant had actual knowledge of the undue risk of harm to which it was thereby exposing Plaintiff based on Plaintiff's repeated written and verbal complaints to his supervisors and Human Resources officials at the Hotel, as well as Plaintiff's filing of a police report, which Plaintiff provided to the Hotel, in connection with a death threat made against Plaintiff by another employee of the Hotel.

101.   As a direct and proximate result of Defendant's breach of duty to supervise, Plaintiff has been injured and has incurred damages thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State and City of New York;

B.   An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.      An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

F.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

G.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.      An award of punitive damages;

I.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
      May 29, 2008

                      Respectfully submitted,

                      THOMPSON WIGDOR & GILLY LLP

By: _____
                      Kenneth P. Thompson (KT-6026)
                      Ariel Y. Graff (AG-8039)

                      350 Fifth Avenue, Suite 5720
                      New York, NY 10118
                      Telephone: (212) 239-9292
                      Facsimile: (212) 239-9001

                      COUNSEL FOR PLAINTIFF