**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MOISES MENDEZ,                                   :
                                                 :
                          Plaintiff,             :
                                                 :
             v.                                  :        08-CV-4967 (CM)(KNF)
                                                 :
STARWOOD HOTELS & RESORTS                         :
WORLDWIDE, INC.                                   :
                                                 :
                          Defendant.             :
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**


Kenneth P. Thompson (KT-6026)
Ariel Y. Graff (AG-8039)
THOMPSON WIGDOR & GILLY LLP
Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118
Tel: (212) 239-9292
Fax: (212) 239-9001
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

STATEMENT OF FACTS ......................................................................................4

ARGUMENT ..........................................................................................................4

    I.       The Purported Arbitration Agreement is Void and Unenforceable as a
Matter of Law Because the Governing CBA Preempts Any Independently
Negotiated Contracts Between Starwood and Mr. Mendez..........................4

    II.     Mr. Mendez Did Not Knowingly Enter Into An Arbitration Agreement or
Waive His Right to Litigate Discrimination Claims in Federal Court..........6

    III.    Starwood's Failure to Act on Its Purported Right to Compel Arbitration At
Any Time Period Prior to Plaintiff's Filing of His Complaint in Federal
Court Constituted a Waiver of Any Alleged Right to Arbitrate ...................7

    IV.    Starwood Should be Equitably Estopped From Invoking the Purported
Arbitration Provision for the First Time in Its Motion to Dismiss ...............8

    V.     Starwood Should be Judicially Estopped From Invoking the Purported
Arbitration Agreement Based on Its Prior Contradictory Assertions Before
Another Tribunal...........................................................................................9

CONCLUSION.....................................................................................................10

i

# TABLE OF AUTHORITIES

**CASES**

*Apollo Theater Found., Inc. v. W. Int'l Syndication,* 02 Civ. 10037 (DLC),
    2004 U.S. Dist. LEXIS 11110 (S.D.N.Y. June 21, 2004)................................10

*Berger v. Cantor Fitzgerald Securities*, 942 F. Supp. 963 (S.D.N.Y. 1996)...........7

*Caldwell v. America Basketball Association*, 66 F.3d 523 (2d Cir. 1995) .............5

*Cap Gemini Ernst & Young U.S. LLC v. Arentowicz,* 04 Civ. 0299 (DAB),
    2004 U.S. Dist. LEXIS 11337 (S.D.N.Y. June 22, 2004)................................7

*Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291 (2d Cir. 1965).............8

*Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ...............7

*Clarett v. NFL*, 369 F.3d 124 (2d Cir. 2004) .......................................................5, 6

*Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993) ................................................................8

*Cronas v. Willis Group Holdings Ltd.,* 06 Civ. 15295 (GEL), 2007 U.S.
    Dist. LEXIS 68797 (S.D.N.Y. Sept. 17, 2007)....................................................6

*Doctor's Associates v. Distajo*, 107 F.3d 126 (2d Cir. 1997) ................................8

*Hoffman v. Aaron Kamhi, Inc.*, 927 F. Supp. 640 (S.D.N.Y. 1996) ......................6

*Indep. Union of Flight Attendants v. Pan America World Airways, Inc.*,
    620 F. Supp. 447 (S.D.N.Y. 1985) ....................................................................6

*J. I. Case Co. v. NLRB*, 321 U.S. 332, 64 S. Ct. 576 (U.S. 1944) ..........................5

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995)....................................................................................7

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) .........................................................2

*Meyer v. Starwood Hotels & Resorts Worldwide, Inc.,* 00 Civ. 8339 (JSR),
    2001 U.S. Dist. LEXIS 6663 (S.D.N.Y. Apr. 16, 2001)....................................6

*Moodie v. Federal Reserve Bank*, 58 F.3d 879 (2d Cir. 1995) ..............................2

*NLRB v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175,
    87 S. Ct. 2001 (U.S. 1967)..................................................................................5

*OSRecovery, Inc. v. One Groupe International, Inc.*,
    462 F.3d 87 (2d Cir. 2006)..................................................................9

*Perry v. N.Y. Law Sch. & Collegis, Inc.,* 03 Civ. 9221 (GBD), 2004 U.S.
    Dist. LEXIS 14516 (S.D.N.Y. July 27, 2004) ...................................7

*Pyett v. Pa. Building Co.*, 498 F.3d 88 (2d Cir. 2007)............................5

*Sasso v. P.R.V. Concrete Corp.,* 85 Civ. 4779 (CSH), 1987 U.S. Dist.
    LEXIS 6855 (S.D.N.Y. July 30, 1987) ..............................................6

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005) .............9

*Wood v. National Basketball Association*, 809 F.2d 954 (2d Cir. 1987)...............5

## FEDERAL STATUTES

National Labor Relations Act, 29 U.S.C §8(a)(5) ...................................6

Plaintiff Moises Mendez ("Plaintiff" or "Mr. Mendez") respectfully submits this memorandum of law in opposition to the motion by Defendant Starwood Hotels and Resorts Worldwide, Inc. ("Defendant" or "Starwood") to dismiss his Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and to compel arbitration of his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 et seq.

Starwood's motion is based solely upon a purported arbitration provision contained in a one-page letter that Mr. Mendez signed on April 13, 2004 when he agreed to transfer from his "Food Runner" position to a "Baker" position at Starwood's Westin Hotel in Times Square.  As set forth in greater detail below, Starwood's motion should be denied in its entirety because the arbitration provision at issue is void and unenforceable as a matter of law for at least the following reasons: (i) it is preempted by a preexisting Collective Bargaining Agreement ("CBA"); (ii) the provision does not constitute a knowing waiver of Mr. Mendez's right to litigate his statutory discrimination claims in federal court; (iii) Starwood has waived any possible right to compel arbitration pursuant to the provision, assuming, *arguendo*, that the purported agreement to arbitrate was even valid at its inception; and Starwood is both (iv) equitably and (v) judicially estopped from invoking the purported arbitration agreement in support of its motion to dismiss Mr. Mendez's claims.

## <u>STATEMENT OF FACTS</u>

Mr. Mendez first sought to bring the employment discrimination claims alleged in his underlying Complaint in this action when he filed a Verified *pro se* Complaint against Starwood with the New York State Division of Human Rights (the "Division") on May 21, 2007.  *See Ex.*

3; *Compl.* ¶9.[1]   Starwood actively litigated Mr. Mendez's claims before the Division until one week prior to the public hearing and final adjudication on the merits of Mr. Mendez's claims that was scheduled to occur on January 30 and January 31, 2008.  *See Ex.* 8, 9, 10, 11.  However, after retaining the undersigned counsel on January 23, 2008, Mr. Mendez requested that the Division issue a final order dismissing his action on grounds of "administrative convenience," pursuant to §465.5(e) of the New York Human Rights Law, so that Mr. Mendez could commence the present action and litigate his discrimination claims in federal court.  *See Ex.* 11, 12, 13; *Compl.* ¶¶10-12.[2]

Although Starwood's motion to dismiss is based solely upon the purported arbitration provision contained in a letter that Mr. Mendez signed in connection with his transfer from the "Food Runner" position to a "Baker" position on April 13, 2004 (the "Transfer Letter"), Starwood never sought to compel arbitration pursuant to the Transfer Letter – and did not even suggest to Mr. Mendez that the letter constituted a purportedly binding agreement to arbitrate – until the day before it filed its present motion to dismiss.  *See Mendez. Aff.*  Mr. Mendez signed the Transfer Letter on April 13, 2004 when his direct supervisor, the Westin's Executive Chef, approached him at his workstation in the Westin hotel kitchen and requested that he sign the letter to confirm his agreement to transfer to the "Baker" position.  *See id.*  The Executive Chef

---

[1]    The Exhibits cited herein are annexed to the accompanying Thompson Affirmation and are properly before the Court on Starwood's motion to dismiss pursuant to Rule 12(b)(1) because they are "integral" to Mr. Mendez's complaint.  *See, e.g.*, Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002) ("In resolving a Rule 12(b)(1) motion, the Court may consider matters outside the pleadings.").

[2]    As the Second Circuit has recognized, "subject to the 'administrative convenience' exception, a person who has filed an administrative complaint [with the Division] regarding discrimination is thereby deprived of his judicial 'cause of action'" and "is thereafter barred from 'commencing an action' in court regarding that discrimination."  Moodie v. Federal Reserve Bank, 58 F.3d 879, 882 (2d Cir. 1995).

did not explain the letter to Mr. Mendez, and did not provide Mr. Mendez with any notice of the fact that the letter included an arbitration provision that purportedly waived his right to prosecute discrimination claims in federal court.  *See id.*

After transferring to the Baker position – which required that he work the night shift at the Hotel – Mr. Mendez's health began to suffer.  *Compl.* ¶36.  When his symptoms continued to worsen, Mr. Mendez was diagnosed as suffering from diabetes and diverticulitis, an agonizing intestinal disorder, which his doctors attributed to the night-shift hours associated with his work as a Baker.  *Id.* at ¶37.  In response to that diagnosis, Mr. Mendez requested that Starwood transfer him to a day shift as an accommodation for his medical needs.  *Id.* at ¶38.  Mr. Mendez provided Starwood with numerous notes from his doctors in support of his request for this modification to his work schedule.  *Id.* at ¶¶38-39.  Nevertheless, Starwood repeatedly denied Mr. Mendez's requests for this accommodation.  *Id.* at ¶¶39-42.  Finally, on May 7, 2007, Starwood agreed to grant Mr. Mendez a temporary schedule change to accommodate his health needs, although it expressly reserved an asserted right to rescind the accommodation on five-days notice "as Stated in the Collective Bargaining Agreement."  *Ex.* 2; *Compl.* ¶43.[3]  When Starwood failed to actually change Mr. Mendez's schedule as promised, Mr. Mendez contacted the Division and filed his Verified *pro se* Complaint on May 21, 2007.  *See Ex.* 3.[4]

---

[3]     At all relevant times, Mr. Mendez has been a dues-paying member in good standing of the New York Hotel & Motels Trades Counsel AFL-CIO (the "Union"), and the terms and conditions of his employment have been governed by the Industry-Wide Collective Bargaining Agreement between the Union and Starwood.  The CBA duly memorializes the parties' recognition of the Union as "the sole collective bargaining agency for the employees covered by th[e] agreement."  *See Ex.* 1, at ¶1.

[4]     Mr. Mendez filed a second Verified Complaint with the division on August 15, 2007, charging Starwood with unlawful retaliatory conduct in response to his first Verified Complaint. *See Ex.* 6.

In its Verified Answer to Mr. Mendez's Verified Complaint to the Division, Starwood asserted five different affirmative defenses arising out of Mr. Mendez's alleged failure to comply with the grievance procedures required under the "governing labor agreement." *See Ex*. 4. Starwood also attended a fact-finding conference at the Division, which had previously been adjourned and rescheduled at Starwood's request. *See Ex*. 7. Moreover, Starwood appealed the Division's probable cause determinations in Mr. Mendez's favor, and its appeal was denied on December 27, 2007. Furthermore, in the weeks prior to the scheduled public hearing and final adjudication of Mr. Mendez's claims, Starwood served at least one third-party subpoena *duces tecum* upon Mr. Mendez's part-time employer. *See Ex*. 8. Starwood also sought to engage in "settlement" discussion with the Division, although Starwood emphasized that it purportedly could not deal directly with Mr. Mendez or unilaterally agree to accommodate his medical condition without waiver or consent of the Union.

## ARGUMENT

**I.  The Purported Arbitration Provision is Void and Unenforceable as a Matter of Law Because the Governing CBA Preempts Any Independently Negotiated Contracts Between Starwood and Mr. Mendez**

The sole basis for Starwood's motion to dismiss Mr. Mendez's action and compel arbitration of his claims is its assertion that Mr. Mendez is contractually bound by the purported arbitration provision included in the Transfer Letter that he signed on April 13, 2004.[5] However, Starwood's motion completely ignores the fundamental fact that the terms and conditions of Mr. Mendez's employment have at all times been governed *exclusively* by the CBA and Starwood's

---

[5]    The provision of the Transfer Letter at issue provides in part that: "any disputes with respect to your employment by Starwood…will be resolved through binding arbitration…in accordance with the rules and procedures of the American Arbitration Association." The wages identified in the Transfer Letter are identical to the wages that Starwood is required to pay under the CBA. *See Ex*. 1, at "*Sched. A*."

collective bargaining relationship with the Union.  *See Ex.* 1.  Starwood's assertion that the

Transfer Letter constitutes Mr. Mendez's acceptance of enforceable contractual obligations –

established outside the framework of the governing CBA – is antithetical to national labor policy

as well as longstanding judicial precedent.  As the Supreme Court has explained:

> National labor policy has been built on the premise that by pooling their economic
> strength and acting through a labor organization freely chosen by the majority, the
> employees of an appropriate unit have the most effective means of bargaining for
> improvements in wages, hours, and working conditions.  ***The policy therefore
> extinguishes the individual employee's power to order his own relations with his
> employer*** and creates a power vested in the chosen representative to act in the interests of
> all employees. ... Thus ***only the union may contract the employee's terms and
> conditions of employment, and provisions for processing his grievances****….*

NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 180, 87 S. Ct. 2001, 2006 (U.S. 1967)

(internal citations omitted) (emphasis added); J. I. Case Co. v. NLRB, 321 U.S. 332, 338, 64 S.

Ct. 576, 580 (U.S. 1944) ("The very purpose of providing by statute for the collective agreement

is to supersede the terms of separate agreements of employees….").

Starwood's motion to dismiss and to compel arbitration should therefore be denied,

because the existence of the governing CBA in this case deprived Mr. Mendez and Starwood

alike of the capacity to enter into privately negotiated binding agreements by vesting the Union

with the exclusive authority and responsibility for negotiating and contracting with Starwood

with respect to the governing terms and conditions of employment for Mr. Mendez and all

covered employees.[6]  *See* Clarett v. NFL, 369 F.3d 124, 139 (2d Cir. 2004) (citation omitted);

Caldwell v. Am. Basketball Ass'n, 66 F.3d 523, 528-29 (2d Cir. 1995); Wood v. Nat'l Basketball

---

[6]     Although the CBA itself establishes procedures for mandatory grievance arbitration (*see
Ex.* 1, at ¶26), the Second Circuit has been unequivocal in holding that "arbitration provisions
contained in a CBA, which purport to waive employees' rights to a federal forum with respect to
statutory claims, are unenforceable."  Pyett v. Pa. Bldg. Co., 498 F.3d 88, 93-94 (2d Cir. 2007).

Ass'n, 809 F.2d 954, 959 (2d Cir. 1987); Indep. Union of Flight Attendants v. Pan Am. World

Airways, Inc., 620 F. Supp. 447, 457 (S.D.N.Y. 1985).[7]

## II.    Mr. Mendez Did Not Knowingly Enter Into An Arbitration Agreement or Waive His Right to Litigate Discrimination Claims in Federal Court

Even if this Court were to determine that the arbitration provision asserted by Starwood is

*not* rendered unenforceable as a matter of law as an impermissible private contract between

Starwood and a Union-represented employee, the provision should not be construed as a waiver

of Mr. Mendez's right to litigate his statutory discrimination claims in federal court.  The

arbitration provision itself makes no reference to employment discrimination claims, and nothing

in the Transfer Letter could have reasonably notified Mr. Mendez that his signature would

constitute a waiver of his right to prosecute discrimination claims in federal court.  *See* Cronas v.

Willis Group Holdings Ltd., 06 Civ. 15295 (GEL), 2007 U.S. Dist. LEXIS 68797, at *38

(S.D.N.Y. Sept. 17, 2007) (reasoning that an arbitration provision did not extend to plaintiff's

statutory discrimination claims where "the clause contains no language that would have

reasonably notified plaintiff that [he] was waiving [his] right to litigate federal employment

discrimination claims in federal court"); *accord* Hoffman v. Aaron Kamhi, Inc., 927 F. Supp.

---

[7]     *See also* Sasso v. P.R.V. Concrete Corp., 85 Civ. 4779 (CSH), 1987 U.S. Dist. LEXIS 6855, at *7 (S.D.N.Y. July 30, 1987) ("This federal policy invalidating individual contracts purporting to alter the obligations of employers vis-à-vis individual workers represented by a duly elected collective bargaining unit mandates the conclusion that the purported waiver asserted as a defense to plaintiff's claims is invalid.").  Moreover, the attempt to negotiate and enter into an individual contract with Mr. Mendez in derogation of the governing CBA is not only incapable of yielding an enforceable agreement, but also constitutes an actionable unfair labor practice under Section 8(a)(5) of the National Labor Relations Act.  *See* Clarett, 369 F.3d at 139.  *Cf.* Meyer v. Starwood Hotels & Resorts Worldwide, Inc., 00 Civ. 8339 (JSR), 2001 U.S. Dist. LEXIS 6663, at *1 (S.D.N.Y. Apr. 16, 2001) (upholding the enforceability of an identical arbitration provision against an apparently non-unionized employee of Starwood whose terms and conditions of employment were not governed by the CBA).

640, 644-45 (S.D.N.Y. 1996); <u>Berger v. Cantor Fitzgerald Secs.</u>, 942 F. Supp. 963, 967 (S.D.N.Y. 1996).[8]

In fact, Mr. Mendez had every reason to believe that the Transfer Letter containing the purported arbitration provision was merely an affirmation of his consent to transfer positions – consistent with the Executive Chef's explanation of the letter when he presented it to Mr. Mendez that day in the hotel kitchen.  *See Mendez Aff.*  Moreover, as a dues paying member of the Union, Mr. Mendez understood that his contract with Starwood was established pursuant to the terms of the governing CBA, and Mr. Mendez had no reason prior to Starwood's filing of its motion to dismiss to consider the possibility that Starwood would nevertheless attempt to somehow bind him to the terms of a separate contract.

### III.   Starwood's Failure to Act on Its Purported Right to Compel Arbitration At Any Time Prior to Mr. Mendez's Filing of His Complaint in Federal Court Constituted a Waiver of Any Alleged Right to Arbitrate

In addition, a party to an otherwise valid and enforceable arbitration agreement can waive its right to compel arbitration if its unreasonable delay in seeking to do so would unfairly prejudice the opposing party.  *See* <u>Leadertex v. Morganton Dyeing & Finishing Corp.</u>, 67 F.3d 20, 25 (2d Cir. 1995).  Although "[t]he waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules…[s]ufficient prejudice to infer waiver has been found when a party seeking to compel arbitration [1] engages in discovery procedures not available in arbitration, [2] makes motions going to the merits of an adversary's

---

[8]     Where courts in this district have enforced arbitration agreements that precluded litigation of statutory discrimination claims, such agreements have generally explicitly defined their scope to include statutory discrimination claims.  *See, e.g.*, <u>Cap Gemini Ernst & Young U.S. LLC v. Arentowicz</u>, 04 Civ. 0299 (DAB), 2004 U.S. Dist. LEXIS 11337, at *17 (S.D.N.Y. June 22, 2004); <u>Perry v. N.Y. Law Sch. & Collegis, Inc.</u>, 03 Civ. 9221 (GBD), 2004 U.S. Dist. LEXIS 14516, at *7 (S.D.N.Y. July 27, 2004) (cited in Def.'s Mem. at 2); <u>Ciago v. Ameriquest Mortg. Co.</u>, 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003) (cited in Def.'s Mem. at 2).

claims, or [3] delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *See* Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993) (citations omitted); Doctor's Assocs. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997).[9]

In this case, as a result of its yearlong delay in seeking to compel arbitration, Starwood has plainly waived its newly asserted right to do so because Mr. Mendez has suffered unfair prejudice under each of these standards. First, Starwood has already availed itself of the discovery procedures that were available to it when Mr. Mendez's claims were pending before the Division, including by attending a fact-finding conference and serving a subpoena *duces tecum* upon a third party. *See Ex.* 7, 8; *see also*, *e.g.*, Cotton, 4 F.3d at 179. Starwood also engaged in substantive motion practice with respect to Mr. Mendez's claims when it filed its unsuccessful appeal of the Division's probable cause determination in Mr. Mendez's favor. Finally, Starwood's delay in invoking its purported right to compel arbitration has also imposed unnecessary delay and expense upon Mr. Mendez, including by requiring Mr. Mendez to oppose its present motion to dismiss his complaint and compel arbitration.

## IV.    Starwood Is Equitably Estopped From Invoking the Purported Arbitration Provision for the First Time in Its Motion to Dismiss

Prior to the Division's dismissal of Mr. Mendez's action on grounds of "administrative convenience," Mr. Mendez's counsel contacted Starwood's counsel to confirm that Starwood would not oppose his attempt to terminate the actions pending before the Division so that Mr. Mendez could commence an action in federal court based on the same underlying discrimination claims. *See Compl.* ¶¶11, 12; *Ex.* 11, 12, 13. Rather than giving any hint as to the existence of

---

[9]     *See also* Chatham Shipping Co. v. Fertex S.S. Corp., 352 F.2d 291, 293 (2d Cir. 1965) (The earliest point at which the delay in invoking arbitration may be found to constitute a waiver of the contractual right to do so occurs when that party "files an answer on the merits" in litigation over an otherwise arbitrable dispute.).

the purported arbitration agreement that Starwood now seeks to invoke for the first time in support of its motion to dismiss, Starwood's counsel agreed that it would accept service of the complaint that Mr. Mendez intended to file in federal court. *See Ex*. 14.  Starwood should therefore be equitably estopped from altering its position and now asserting for the first time that Mr. Mendez agreed to arbitrate his statutory discrimination claims when he signed the Transfer Letter on April 13, 2004.

Under federal law, a party may be estopped from asserting a "claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely on it; 2) and the other party reasonably relies upon it; 3) to [his] detriment." *See* OSRecovery, Inc. v. One Groupe Int'l, Inc., 462 F.3d 87 (2d Cir. 2006) ("Equitable estoppel is proper where the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought.") (citations omitted).  In this case, Mr. Mendez justifiably relied on Starwood's prior and repeated assertions that the terms and conditions of his employment are governed by the CBA, as well as Starwood's agreement that it would accept service of his complaint in federal court if Mr. Mendez obtained an administrative convenience dismissal terminating the proceedings at the Division.

**V.      Starwood is Judicially Estopped From Invoking the Purported Arbitration Provision Based on Its Prior Contradictory Assertions Before Another Tribunal**

"The equitable doctrine of judicial estoppel provides that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  Uzdavines v.

9

Weeks Marine, Inc., 418 F.3d 138, 147 (2d Cir. 2005) (citations omitted).[10]  In this case,

Starwood filed a Verified Answer with the Division, which invoked the governing CBA as the

basis for five different affirmative defenses.  *See Ex*. 4.  Starwood developed and expanded upon

these purported defenses under the CBA in its position statement to the Division as well as in its

appeal of the Division's issuance of probable cause determinations in Mr. Mendez's favor.  *See*

*Ex.* 5.  Starwood should therefore be judicially estopped from contradicting its prior

representations to another tribunal by claiming now for the first time in its motion to dismiss that

the dispositive contractual agreement with Mr. Mendez is set forth in the Transfer Letter that he

signed when he agreed to transfer from his "Food Runner" position to the "Baker" position on

April 13, 2004, rather than in the governing CBA.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint in this

action and to compel arbitration of the claims asserted therein should be denied in its entirety.


Dated:  New York, New York           THOMPSON WIGDOR & GILLY LLP
        July 11, 2008

                                     By: _____
                                         Kenneth P. Thompson (KT-6026)
                                         Ariel Y. Graff (AG-8039)

                                     350 Fifth Avenue, Suite 5720
                                     New York, NY 10118
                                     Telephone:  (212) 239-9292
                                     Facsimile:  (212) 239-9001

                                     *COUNSEL FOR PLAINTIFF MOISES MENDEZ*

---

[10]     *See also* Apollo Theater Found., Inc. v. W. Int'l Syndication, 02 Civ. 10037 (DLC), 2004
U.S. Dist. LEXIS 11110, at *8-9 (S.D.N.Y. June 21, 2004) ("Generally, a party may not freely
take inconsistent positions in a law suit and simply ignore the effects of a prior filed document.
This policy against permitting a party to 'play fast and loose with the courts' by asserting
inconsistent positions concerning its intent to pursue arbitration is necessary to prevent delay and
ensure the integrity of the judicial process.").