**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
MOISES MENDEZ,                                        :
                                                      :
                              Plaintiff,              :
                                                      :
                    v.                                :        08 Civ. 4967 (CM)(KNF)
                                                      :
STARWOOD HOTELS & RESORTS                             :
WORLDWIDE, INC.                                       :
                                                      :
                              Defendant.              :
------------------------------------------------------------X


<u>DECLARATION OF KENNETH P. THOMPSON</u>
<u>IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

        KENNETH P. THOMPSON declares as follows:

        1.      I am a member of the law firm of Thompson Wigdor & Gilly LLP, counsel of record for Plaintiff Moises Mendez in the above-referenced action. I submit this declaration in support of Plaintiff's opposition to Defendant's Motion to Dismiss.

        2.      Attached hereto as Exhibit 1 are true and correct copies of pages from Industry-Wide Collective Bargaining Agreement between the New York Hotel & Motel Trades Council, AFL-CIO and Hotel Association of New York City, Inc (Effective July 1, 2001).

        3.      Attached hereto as Exhibit 2 is a true and correct copy of a memorandum from Maria Lavides to Moises Mendez (Dated May 1, 2007 and signed on May 7, 2007).

        4.      Attached hereto as Exhibit 3 is a true and correct copy of Plaintiff's Verified Complaint against Defendant with the New York State Division of Human Rights, case No. 10117953 (Dated May 21, 2007).

5.    Attached hereto as Exhibit 4 is a true and correct copy of Defendant's Verified Answer to Plaintiff's Verified Complaint with the New York State Division of Human Rights, case No. 10117953 (Dated July 3, 2007).

6.    Attached hereto as Exhibit 5 is a true and correct copy of Defendant's Position Statement to the New York State Division of Human Rights (Dated July 19, 2007).

7.    Attached hereto as Exhibit 6 is a true and correct copy of Plaintiff's Verified Complaint against Defendant with the New York State Division of Human Rights, case No. 10119634 (Dated August 15, 2007).

8.    Attached hereto as Exhibit 7 is a true and correct copy of the Adjournment of Conference notification from the New York State Division of Human Rights for case No. 10117953 (Dated September 27, 2007).

9.    Attached hereto as Exhibit 8 is a true and correct copy of the Subpoena *duces tecum* served by Defendant on the Yale Club of New York City (Dated January 15, 2008).

10.    Attached hereto as Exhibit 9 is a true and correct copy of the Notice of Hearing from the New York State Division of Human Rights for case No. 10117953 (Dated January 10, 2008).

11.    Attached hereto as Exhibit 10 is a true and correct copy of a letter from Defendant's Counsel to the New York State Division of Human Rights (Dated December 10, 2007).

12.    Attached hereto as Exhibit 11 is a true and correct copy of the Notice and Final Order of Dismissal for Administrative Convenience from the New York State Division of Human Rights for case No. 10117953 (Dated December 10, 2007).

13.     Attached hereto as Exhibit 12 is a true and correct copy of a letter from Plaintiff's counsel to the New York State Division of Human Rights dated March 31, 2008 (Dated March 31, 2008).

14.     Attached hereto as Exhibit 13 is a true and correct copy of the Notice and Final Order of Dismissal for Administrative Convenience from the New York State Division of Human Rights for case No. 10119634 (Dated April 8, 2008).

15.     Attached hereto as Exhibit 14 is a true and correct copy of a letter from Plaintiff's counsel to Defendant's counsel (Dated May 30, 2008).


Dated: New York, New York
       July 11, 2008

                                        _____
                                        Kenneth P. Thompson, Esq.

                                        THOMPSON WIGDOR & GILLY LLP
                                        350 Fifth Avenue, Suite 5720
                                        New York, NY 10118
                                        Telephone:  (212) 239-9292
                                        Facsimile:  (212) 239-9001

                                        COUNSEL FOR PLAINTIFF

Exhibit 1

AGREEMENT entered into so as to be effective July 1, 2001 between the HOTEL ASSOCIATION OF NEW YORK CITY, INC., in its own behalf and in behalf of the HANYC BARGAINING GROUP HOTELS[1] (hereinafter collectively referred to as the EMPLOYER or the ASSOCIATION), and the operators of hotels and motels who are active members of the ASSOCIATION and with respect to whom the UNION (as herein below described) presently has contractual relations, and the operators of hotels, motels, and concessionaires with respect to whom the UNION may be hereafter designated as sole collective bargaining agent for the employees of such hotels, motels, and concessionaires, and who shall become parties hereto by agreeing to this Agreement, each and every such hotel, motel, and concessionaire being hereinafter referred to as the EMPLOYER, and the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO, hereinafter called the UNION, in its own behalf and in behalf of its members, now employed or hereafter to be employed by the EMPLOYER.

## WITNESSETH:

WHEREAS, the ASSOCIATION is an organization whose active members are engaged in the hotel business in the City of New York and one of whose objects is to promote fair and harmonious labor relations between hotel keepers and their employees, and

WHEREAS, the parties hereto are signatories to a Collective Bargaining Agreement signed June 26, 1985, as amended by a Memorandum of Understanding signed January 30, 1990 (hereinafter collectively referred to as the "1990 Agreement"), which 1990 Agreement by its terms, expired on June 30, 1995, and was extended by the parties to midnight July 4, 1995, and further amended by a Memorandum of Understanding signed July 5, 1995 (hereinafter collectively referred to as the "1995 Agreement"), which Agreement by its terms, expired on June 30, 2001;

WHEREAS, the parties hereto, desiring to cooperate to stabilize such labor relations by establishing general standards of wages, hours of service and other conditions of employment, and providing arbitral machinery whereby disputes and grievances between employers and employees may be adjusted without resort to strikes, lockouts or other interferences with the continued and smooth operation of the hotel business, have agreed,

[1] A list of HANYC Bargaining Group Hotels has been provided by the Association.

# INDUSTRY-WIDE
# COLLECTIVE BARGAINING
# AGREEMENT

between

## NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO



and

## HOTEL ASSOCIATION OF NEW YORK CITY, INC.

Effective July 1, 2001

-1

members of the ASSOCIATION, whether or not they are under contract with the UNION.

It is recognized that an EMPLOYER may fill a vacancy from among its employees, including employees in other hotels of the EMPLOYER's chain.

Any question or dispute concerning the operation of the joint employment office shall be subject to the grievance and arbitration procedure set forth in Section 26 hereof.

The UNION and the ASSOCIATION acknowledge that they have not established the Central Registration Office nor the branch offices for the dispatching of job applicants, as provided in this section, but have been using the services of the New York State Employment Service.

If at any time during the life of this Agreement either the ASSOCIATION or the UNION requests full compliance with the provisions of this Section 21, such full compliance shall be effectuated by all parties.

Upon the request of either party hereto, the Joint Advisory Committee, consisting of three (3) members appointed by the ASSOCIATION and three (3) members appointed by the UNION, shall convene to promulgate rules for the management of the joint employment office.

(B) Upon a finding by the Impartial Chairman that an Employer has a pattern of intentional and/or bad faith violation of the provisions of the Industry Wide Agreement with respect to the hiring of new employees, by and amongst other things discriminating against members of the Union, whether they are actively employed or on lay off status, who are otherwise satisfactory to the Employer, the Impartial Chairman may, in addition to ordering the termination of the employee unlawfully hired by the Employer and the hiring of the employee discriminated against by the Employer, grant such other remedy or relief as the Impartial Chairman deems appropriate, including but not limited to the assessment of one (1) week's pay for every day the Employer is found to be in violation of the Agreement, up to a maximum of five (5) weeks' pay.

In the event it is found that the Union knew of the Employer's violation of the Industry Wide Agreement and intentionally failed or delayed in acting on same, the Impartial Chairman shall also assess against the Union, a like penalty.

All monies assessed for a violation of this Agreement shall be

26

paid to the Employee Benefits Funds for distribution in proportionate amounts to the various funds.

The parties agree, notwithstanding the provisions of this Subsection (B) seemingly to the contrary, that the Union may, in its sole discretion, upon good cause shown by the Hotel Association, agree in writing, to waive, in full or in part, the provisions of this Subsection (B) and the provisions of Sections 6(C) and (D) of the Industry Wide Agreement with respect to the wages and benefits of new employees including contributions made to the industry wide funds on behalf of such new employees having prior work experience in the hotel industry.

## MANAGEMENT RIGHTS

22. (A) The EMPLOYER shall have the right to direct and control its employees. The EMPLOYER shall have the right to layoff, promote, or transfer any employee. Promotions shall not be subject to contest or review. The UNION shall, by representatives designated by it, have the right to confer with the EMPLOYER in behalf of any laid-off or transferred employee. If the UNION claims that a layoff or transfer results in any abuse of the rights of employees the grievance shall be subject to the grievance and arbitration provisions of Section 26 of this Agreement.

(B) The EMPLOYER shall have the right to establish combination jobs within the classifications set forth in Schedule A of this Agreement. Upon the implementation of such job changes, the employee(s) affected shall be paid the rate of the higher rated job as set forth in Schedule A, except that in addition to the rate of the higher rated job, front office, food preparation and engineering and maintenance department employees shall receive ten ($10.00) dollars per week. No employee currently employed shall be laid off as a result of the job change.

## SENIORITY

23. (A) Layoff – General

In the event of a layoff in any department, departmental seniority will be observed insofar as compatible with efficiency. In general, the last person hired in a job classification within a department will be the first laid off in such classification and the employee with the greatest seniority in the job classification in the department will be the last laid off in such job clas-

27

Chairman and request a hearing. Pending the hearing before the Impartial Chairman, the delegate or assistant delegate shall remain on the job. In accordance with existing practices, accredited UNION delegates shall have top seniority in their job classifications.

(D) Notification of Delegates

The UNION will furnish a written list of delegates to each hotel upon written request by the hotel, and the Union will notify the hotel in writing of any change in the list of delegates within ten (10) days of the making of such change.

## UNION ACTIVITY

24. No employee shall be discharged or laid off because of UNION activities. In the event of a claim being made that an employee has been discharged or laid off because of UNION activities, such claim must be filed with the Labor Manager within one (1) week and disposed of by him within three (3) days thereafter. If the controversy cannot be satisfactorily adjusted between the UNION and the Labor Manager, the same shall be promptly referred to the Impartial Chairman, who shall render his decision within a reasonable time after receiving the claim.

In cases involving non-ASSOCIATION EMPLOYERS, all such claims which cannot be satisfactorily adjusted between the EMPLOYER and an officer or business agent of the UNION, shall be promptly referred to the Impartial Chairman for adjustment.

## NO DISCRIMINATION

25. The opportunity to give and obtain employment and maintain employment without discrimination because of race, color, creed, sex, age, national origin, religion, disability, sexual orientation, union activity or any factor illegal under federal, state or city law is hereby recognized by the parties to this Agreement.

## COMPLAINTS, GRIEVANCES AND ARBITRATION

26. All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause

of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairman, and his/her decision shall be final and binding upon the parties hereto. Any such complaint, dispute or grievance involving an EMPLOYER member of the ASSOCIATION shall in the first instance, be submitted to the Labor Manager who will be appointed and employed by the ASSOCIATION, to consider and adjust with a duly accredited representative of the UNION, for their joint consideration and adjustment; if they agree, such decision shall be binding on the parties hereto. Should the matter not be resolved by the Labor Manager and the representative of the UNION, it shall then be referred to the Impartial Chairman as aforesaid.

In the event of a willful default by either party in appearing before the Impartial Chairman, after due written notice shall have been given to the said party, the Impartial Chairman is hereby authorized to render a decision upon the testimony of the party appearing.

Non-ASSOCIATION member hotel and concessionaire EMPLOYER complaints, disputes, or grievances are to be taken directly to the Impartial Chairman.

If any EMPLOYER experiences an unanticipated emergency which justifies relief from the provisions of Section 45(B) the matter—if unresolved between the EMPLOYER and the UNION—may be submitted to the Impartial Chairman who may grant such relief as he/she deems proper. If relief is granted, the Impartial Chairman may make such provisions for the employees involved as he/she deems appropriate. The Impartial Chairman may not grant relief predicated solely upon economic factors.

The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or confirm an award, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairman, by telegram, facsimile or telephone.

The parties consent that all arbitration hearings shall be heard at the office of the Impartial Chairman located at 321 West 44th Street in the City of New York, or at such other place as the Impartial Chairman may

designate.

The Impartial Chairman may call such arbitration hearing on giving five (5) days' notice to all of the interested parties. The Impartial Chairman, however, may call a hearing on shorter notice if he/she deems it appropriate.

The parties hereby expressly waive the requirements regarding the Arbitrator's oath and the manner and time for the service of notice of hearing contained in the Civil Practice Law and Rules of the State of New York and agree and consent that the Impartial Chairman may proceed with the hearing.

The compensation of the Impartial Chairman and his/her proper and necessary expenses shall be shared and paid equally by the ASSOCIATION and the UNION.

Should the Impartial Chairman resign, refuse to act, or be incapable of acting, or should the office become vacant for any reason, the ASSOCIATION and the UNION shall immediately and within five (5) days after the occurrence of such vacancy, designate another person to act as such Impartial Chairman. If they fail to agree, the United States District Court, Southern District of New York shall, upon application of either party, on due notice to the other, summarily make such appointment.

The decision rendered by the Impartial Chairman shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York, entitling the entry of a judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by such decision.

## DISCHARGES

27. (A) General

The EMPLOYER shall have the right to discharge any employee. The UNION may question whether an employee's discharge was for just cause. In the case of ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the matter to the Labor Manager within ten (10) days after the discharge and should the matter not be adjusted by the Labor Manager under the procedure set forth in Section 26 hereof, the UNION may submit the matter to the Impartial Chairman within

ten (10) days after the conference before the Labor Manager for decision as any other dispute under this Agreement. In the case of non-ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the matter directly to the Impartial Chairman. The Impartial Chairman may uphold the discharge or reinstate the employee with or without back pay.

(B) Discharges/Suspensions-Delegates and Assistant Delegates

(1) In the case of ASSOCIATION Labor Relations Group member EMPLOYERS: if a hotel intends to suspend or discharge a delegate or assistant delegate the hotel shall, prior to effectuating such suspension or discharge, consult with an officer or business agent of the UNION. If, after twenty-four (24) hours, the parties are unable to resolve the problem, the hotel shall consult the office of the ASSOCIATION and an immediate conference with the UNION will be arranged at the office of the ASSOCIATION to discuss the matter. The conference held at the Association will constitute the conference provided for in this section. Pending the result of the conference at the office of the ASSOCIATION and until a hearing is held at the Office of the Impartial Chairman, if such hearing is necessary, the delegate or assistant delegate shall remain on the job in all cases except theft, physical fighting or on the job drug/alcohol abuse, or such related charges. The parties agree to request that said hearing be held within 48 hours of the conference at the Hotel Association.

(2) In the case of all other EMPLOYERS: if an EMPLOYER intends to suspend or discharge a delegate or assistant delegate the EMPLOYER shall, prior to effectuating such suspension or discharge, consult with an officer or business agent of the UNION. If, after twenty-four (24) hours, the parties are unable to resolve the problem, the EMPLOYER shall immediately notify the office of the Impartial Chairman and request a hearing. The delegate or assistant delegate shall remain on the job pending the hearing at the Office of the Impartial Chairman.

(B) Irrespective of any increase in wages made prior to the execution of this Agreement by an EMPLOYER who has not been previously in contractual relationship with the UNION with respect to any appropriate collective bargaining unit, such EMPLOYER shall nevertheless be required to increase the wages of all employees by the amount of increases set forth in Schedule 1 for the respective job classifications (but such increase shall not be retroactive), in order to obtain the benefits and privileges of this Agreement, for such collective bargaining unit.

## MODIFICATION OF THIS AGREEMENT

41. No EMPLOYER and no worker or group of workers shall have the right to modify or waive any provision of this Agreement.

## VISITATION CLAUSE

42. Authorized representatives of the UNION shall have admission to the establishments of the EMPLOYERS but such representatives shall make arrangements with the management as to time of making such visits.

It is further agreed that conferences held between UNION representatives and the employees shall not be held during the employees' working time; and if held on the premises, said conference must be within a place arranged for with the management.

## NOTICES

43. The EMPLOYER shall permit the UNION to post announcements of meetings and functions on bulletin boards to be provided by the EMPLOYER and placed in convenient positions in the hotel to be designated and provided by the EMPLOYER.

## COST OF LIVING

44. Notwithstanding any other provision of this Agreement seemingly to the contrary, the parties agree that in the event the aggregate increases paid by the EMPLOYER for the period ending June 30, 2005 is exceeded by the cost of living (based on New York City Consumer Price Index) for the period ending June 30, 2005, the UNION shall have the right to request

between the Employer and the Union shall continue until a resolution is reached, i.e., none of the foregoing Study Committee's issues set forth in Sections 56(C)(1) – (6) above, shall be referred to arbitration before the Impartial Chairman unless both the Employer and the Union mutually consent thereto, notwithstanding any of the provisions of the 1990 Agreement seeming to the contrary.

## EXPIRATION AND RENEWAL

57. (A) This Agreement shall be effective as of July 1, 2001, except as otherwise specified, and shall continue for a period ending midnight on the 30th day of June, 2006. This Agreement shall be renewed from year to year thereafter unless written notice of termination by certified mail, return receipt requested is given by either party to the other not less than sixty (60) days prior to its expiration.

This Agreement may be executed by hotel and concessionaire EMPLOYERS on separate copies hereof, and all copies hereof, although separately signed, shall be deemed and taken together as constituting one agreement.

(B) Temporary Closing of a Hotel/Concession for Renovations

In the event at any time during the term of this Agreement an EMPLOYER signatory hereto temporarily ceases its business operations in order to undertake a major renovation project which is not completed during the term of this Agreement, the EMPLOYER and UNION agree that in such case, the term of this Agreement shall be automatically extended up to and through the actual completion date of the major renovation project and for an additional one hundred and eighty (180) days thereafter. For example, if this Agreement by its terms expires on June 30, 2006 and the EMPLOYER'S major renovation project will not be completed until September 30, 2006, the term of this Agreement will be automatically extended up to and through March 31, 2007, i.e. one hundred and eighty (180) days past the September 30, 2006 completion date of the major renovation project.

The UNION and EMPLOYER agree that for purposes of work practices, upon actual completion of the EMPLOYER'S major renovation project, the EMPLOYER shall be treated as a new hotel, motel or concession and none of the EMPLOYER's prior work practices or industry-wide

work practices will be deemed to be applicable to the EMPLOYER's operations.

(C) It is agreed that the execution of the within Agreement by the ASSOCIATION and the UNION, and by the UNION and ASSOCIATION members who have not authorized the ASSOCIATION to execute the within Agreement on their behalf, shall be deemed to immediately supersede, cancel and annul the June 26, 1985, 1990 and 1995 Agreements. It is further agreed that each Agreement made between the UNION and the members of the ASSOCIATION who become parties to the June 26, 1985, 1990 or 1995 Agreements shall likewise be immediately superseded, canceled and annulled as to those members who become parties to this Agreement by agreeing to the same.

(D) In the case of all other EMPLOYERS, it is agreed that the execution of the within Agreement by the EMPLOYER and the UNION shall be deemed to immediately supersede, cancel and annul the June 26, 1985, 1990 and 1995 Agreements.

## AUTHORITY TO ENFORCE CONTRACT

58. All rights, benefits, privileges and/or immunities granted or secured by this Agreement to the UNION or any of its affiliates or members can be enforced only by or through the New York Hotel and Motel Trades Council, AFL-CIO, the UNION herein.

## SUCCESSORS AND ASSIGNS

59. This Agreement shall be binding upon the successors and assigns of the parties hereto, and no provisions, terms, or obligations herein contained shall be affected, modified, altered, or changed in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, ownership, or management of either party hereto. Any successor EMPLOYER shall assume all of the obligations under this Agreement of the prior operator of the hotel or concession to the employees, the UNION or any of the funds to which EMPLOYERS are required to contribute hereunder.

EMPLOYER shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership,

69

## SCHEDULE 1

The following wage increases shall be granted as provided in Section 14 for employees:

Effective:

July 1, 2001 . . . . . . . . . .4.0%
July 1, 2002 . . . . . . . . . .4.0%
July 1, 2003 . . . . . . . . . .4.0%
July 1, 2004 . . . . . . . . . .4.0%
July 1, 2005 . . . . . . . . . .4.0%

All increases based on the employees' actual rates of pay in effect on that date.

Banquet rates are shown separately in Schedule A-1.

TIP CLASSIFICATIONS INCLUDE THE FOLLOWING:

Servers (including extra meal servers)*
Banquet Servers
Dining Room Attendants
Turkish Baths - Masseurs/masseuses
Attendants
Steam Room Attendants
Floor Attendants
Bellpersons and Baggage Porters-T, ST and R
Working Bell Captains
Driver/Bellpersons
Driver/Doorpersons
Doorpersons
Package Room Messengers
Pages
Valet Runners & Deliverers (this does not include pressers who also deliver)

*The parties will study the matter of service charges in lieu of tips for waiters and waitresses.

77

## SCHEDULE A

### DINING ROOM

| | 7/1/00 | 7/1/01 | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|---|---|
| Captains | 608.70 | 633.05 | 658.37 | 684.70 | 712.09 | 740.57 |
| Scrub Captains | 360.59 | 375.01 | 390.01 | 405.61 | 421.83 | 438.70 |
| Greeters | 600.84 | 624.87 | 649.86 | 675.85 | 702.88 | 731.00 |
| Food Servers | 347.21 | 361.10 | 375.54 | 390.56 | 406.18 | 422.43 |
| Bus Atlds. | 372.70 | 387.61 | 403.11 | 419.23 | 436.00 | 453.44 |
| Extra Meal Food Servers - 1 Meal | 35.56 | 36.98 | 38.46 | 40.00 | 41.60 | 43.26 |
| Extra Meal Food Servers - 1 Day | 71.12 | 73.96 | 76.92 | 80.00 | 83.20 | 86.53 |
| Banquet Captains | 608.70 | 633.05 | 658.37 | 684.70 | 712.09 | 740.57 |

### KITCHEN & STEWARD

| | 7/1/00 | 7/1/01 | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|---|---|
| Sous Chef | 655.98 | 682.22 | 709.51 | 737.89 | 767.41 | 798.11 |
| Night Chef | 645.98 | 671.82 | 698.69 | 726.64 | 755.71 | 785.94 |
| Saucier | 641.69 | 667.36 | 694.05 | 721.81 | 750.68 | 780.71 |
| Garde Manger | 640.26 | 665.87 | 692.50 | 720.20 | 749.01 | 778.97 |
| Tournant | 640.26 | 665.87 | 692.50 | 720.20 | 749.01 | 778.97 |
| Chef de partie & Chef Butcher | 638.85 | 664.40 | 690.98 | 718.62 | 747.36 | 777.25 |
| Banquet Chef | 645.98 | 671.82 | 698.69 | 726.64 | 755.71 | 785.94 |
| First Comis-Garde Manger | 624.55 | 649.53 | 675.51 | 702.53 | 730.63 | 759.86 |
| First Commis-Saucier | 624.55 | 649.53 | 675.51 | 702.53 | 730.63 | 759.86 |
| First Commis-Others | 621.69 | 646.56 | 672.42 | 699.32 | 727.29 | 756.38 |

Hotels that employ special workers for fish, soup and hors-d'oeuvres. These workers are to be classified and receive the minimum wage, the same as the first Comis, in other words, they are not to be classified as Chefs de partie

## KITCHEN & STEWARD (continued)

| | 7/1/00 | 7/1/01 | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|---|---|
| Working Chef | 638.85 | 664.40 | 690.98 | 718.62 | 747.36 | 777.25 |
| First Asst. | 624.55 | 649.53 | 675.51 | 702.53 | 730.63 | 759.86 |
| All Asst. Cooks-White Jackets | 615.98 | 640.62 | 666.24 | 692.89 | 720.61 | 749.43 |
| Pastry Chef | 648.82 | 674.77 | 701.76 | 729.83 | 759.02 | 789.38 |
| First Asst. | 625.98 | 651.02 | 677.06 | 704.14 | 732.31 | 761.6 |
| All Other Assistants | 615.98 | 640.62 | 666.24 | 692.89 | 720.61 | 749.43 |
| Ice Cream Chef | 634.54 | 659.92 | 686.32 | 713.77 | 742.32 | 772.01 |
| Head Baker | 638.85 | 664.40 | 690.98 | 718.62 | 747.36 | 777.25 |
| Night Bakers | 628.83 | 653.98 | 680.14 | 707.35 | 735.64 | 765.07 |
| Bakers | 628.83 | 653.98 | 680.14 | 707.35 | 735.64 | 765.07 |
| Head Veg. Prep | 580.98 | 604.22 | 628.39 | 653.53 | 679.67 | 706.86 |
| All Other Veg. Prep | 576.14 | 599.19 | 623.16 | 648.09 | 674.01 | 700.97 |
| Chicken and Fish Butchers | 615.98 | 640.62 | 666.24 | 692.89 | 720.61 | 749.43 |
| Head Oyster Preparer | 597.42 | 621.32 | 646.17 | 672.02 | 698.90 | 726.86 |
| All Other Oyster Prep | 591.70 | 615.37 | 639.98 | 665.58 | 692.20 | 719.89 |
| Head Pantry Person | 590.28 | 613.89 | 638.45 | 663.99 | 690.55 | 718.17 |
| Pantry, Coffee Persons | 582.43 | 605.73 | 629.96 | 655.16 | 681.37 | 708.62 |
| Head Silver Cleaner | 578.11 | 601.23 | 625.28 | 650.29 | 676.30 | 703.35 |
| Regular Silver Cleaner | 570.98 | 593.82 | 617.57 | 642.27 | 667.96 | 694.68 |
| Dishwashers | 570.98 | 593.82 | 617.57 | 642.27 | 667.96 | 694.68 |
| Potwashers | 575.28 | 598.29 | 622.22 | 647.11 | 672.99 | 699.91 |
| Floor Stewards | 615.98 | 640.62 | 666.24 | 692.89 | 720.61 | 749.43 |
| Kitchen Runners | 570.99 | 593.83 | 617.58 | 642.28 | 667.97 | 694.69 |

Base wage scales fixed herein for all of the foregoing classifications and for cooks, waiters and waitresses in the employee's cafeteria shall include meals.

## EMPLOYEE'S CAFETERIA

| | 7/1/00 | 7/1/01 | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|---|---|
| Head Cook | 615.98 | 640.62 | 666.24 | 692.89 | 720.61 | 749.43 |
| Assistants | 591.70 | 615.37 | 639.98 | 665.58 | 692.2 | 719.89 |

# Memorandum of Understanding

# July 1, 2006
# to
# June 30, 2012

## 2006 MEMORANDUM OF UNDERSTANDING

Memorandum of Understanding entered into as to be effective July 1, 2006 between the Hotel Association of New York City, Inc. in its own behalf and in behalf of the HANYC Bargaining Group Hotels[1] (hereinafter collectively referred to as the "Employer") and the New York Hotel and Motel Trades Council, AFL-CIO in its own behalf and in behalf of its members, now employed or hereafter to be employed by the Employer (hereinafter referred to as "Union").

WHEREAS, the Employer and the Union are signatories to a Collective Bargaining Agreement entered into as to be effective July1, 2001 (hereinafter referred to as the "2001 Agreement"), which Agreement by its terms, expires on June 30, 2006;

WHEREAS, the Employer and the Union desire to modify and extend the 2001 Agreement as now restated in this Memorandum of Understanding, signed June 15, 2006 (hereinafter referred to as "2006 Agreement" or "this Agreement").

NOW, THEREFORE, it is mutually agreed as follows:

1. **Duration**
   Except as expressly provided for herein, the 2001 Agreement is renewed and extended from July 1, 2006 until midnight June 30, 2012.

2. **Wages**
   a.  Effective July 1, 2006, each employee on the Employer's payroll on that date shall receive a wage increase of 4% of the employees' actual rate of pay in effect on that date.
   b.  Effective July 1, 2007, each employee on the Employer's payroll on that date shall receive a wage increase of 4% of the employees' actual rate of pay in effect on that date.
   c.  Effective July 1, 2008, each employee on the Employer's payroll on that date shall receive a wage increase of 4% of the employees' actual rate of pay in effect on that date.
   d.  Effective July 1, 2009, each employee on the Employer's payroll on that date shall receive a wage increase of 3.5% of the employees' actual rate of pay in effect on that date.
   e.  Effective July 1, 2010, each employee on the Employer's payroll on that date shall receive a wage increase of 3.5% of the employees' actual rate of pay in effect on that date.
   f.  Effective July 1, 2011, each employee on the Employer's payroll on that date shall receive a wage increase of 3.5% of the employees' actual rate of pay in effect on that date.
   g.  The Employer and the Union agree that in accordance with past practice the rate of the aforesaid wage increases shall be applicable to all wage-related items contained in this Agreement, e.g., extra room rates, night shift differential rates, banquet rates, etc.

[1] A list of HANYC Bargaining Group Hotels is attached hereto as Exhibit 1. The aforesaid list is current as of June 15, 2006 and is expected to increase on a continuing basis.

following the date of the recall, the number of employees scheduled to work such shift, the names of the employees who called out, and the names of the employees recalled. In addition, when ten percent (10%) or more of the employees scheduled to work a particular shift on a given day call out, the Employer may use "extra" employees pursuant to Article 8 during such shift, if each employee who is on reduced work week or layoff either works such shift or declines to be recalled and there are still an insufficient number of employees in the classification, provided such "extra" employees must be provided with two (2) consecutive days of work."

B. Article 23(B)(3): Seniority: Article 23(B)(3) shall be clarified as follows: "The Union and the Employer further agree that the Employer may not layoff an employee more than three (3) times in any one calendar month and further, the Employer shall, during any such layoff, pay premium pay to the affected employee(s) in accordance with the provisions of Article 8."

C. Article 23(A): Seniority: Add another sentence after the penultimate sentence of Article 23(A) as follows: Each week, the Employer shall further provide the Union written notice of any employees who were recalled from layoff in the previous pay week.

13. A. Article 26: References to Impartial Chairperson: All references to the "Impartial Chairman" shall be replaced by "Impartial Chairperson."

B. Article 26: Add: Effective for instances which arise after the effective date of this Agreement, an Employer found by the Impartial Chairperson to have (1) shown a pattern of repeated violations of a similar type and nature which amounts a finding of an intentional and bad faith contractual violation; or (2) wilfully violated a clearly defined contractual provision or bona-fide established practice relating to scheduling, layoff, recall, wage or a wage-related provision and that in either case above, i.e. (1) or (2), where such violation has resulted in a monetary award to the affected employees the IC shall award to such employees an additional amount equal to fifteen percent (15%) of the awarded amount. It is understood that this provision shall not apply to situations where the IC finds that the Employer has relied upon a reasonable good faith interpretation of the Agreement(s).

14. A. Article 27: Discharges: Add "or discipline" following discharge throughout Subdivision A of Article 27. Change title of Article to "Discharge and Discipline."

15. A. Article 27: Discharges: Add: The Impartial Chairperson shall not require that an employee who is discharged or suspended mitigate his/her damages where said employee registers with the Article 21 job referral office for his/her same or similar position and shift, within seven (7) days following termination or suspension and applies within forty-eight (48) hours for positions referred by the Article 21 job referral office which are the same or similar to the position held by the employee. In the absence of compliance with the foregoing by the employee, the Impartial Chairperson shall require mitigation of the employee. The job referral office and the employee shall provide the Employer with any relevant information in connection with the foregoing upon request.

B. Sunset

1. Discipline other than Attendance Discipline:

Any discipline for a "non-serious offense," i.e., an offense other than a "serious offense" (defined below), shall be deemed null and void for disciplinary purposes after a twenty-four (24) month period, provided the employee has not received any further discipline during such twenty-four (24) month period.

2. Discipline Related to Attendance, Tardiness, or Absence

Any discipline issued as the result of attendance, tardiness or absence ("Attendance Discipline"), shall not be considered discipline for purposes of paragraph 1 hereof. Any Attendance Discipline shall be deemed null and void for disciplinary purposes after a twenty-four (24) month period, provided the employee has not received any further Attendance Discipline during such twenty-four (24) month period.

3. General

i. "Serious offenses" shall be defined to be fighting, theft, threats of violence, workplace violence, harassment, use or possession of drugs or alcohol on the job.

ii. Discipline for a serious offense shall not be subject to the provisions of paragraph 1 hereof.

iii. The failure of the Union to challenge a warning at the time it is issued shall not preclude it from challenging same if the warning is later relied upon by the Employer to justify subsequent discipline, provided that the Union must, within a reasonable time after the issuance of a written warning to the affected employee, notify the Employer in writing of a basis for its contest of, or disagreement with, a written warning.

C. Article 27(B)(1) Amend end of second sentence to read: "the delegate or assistant delegate shall remain on the job in all cases except theft, physical fighting, workplace violence or on the job drug/alcohol abuse, or such related charges."

D. Add to the end of Article 27(B)(1): "Unless mutually agreed to by the parties, if there is no meeting at the Hotel Association mediation within fourteen (14) days after requested, the matter may be filed at the Office of the Impartial Chairperson, which shall bear the matter on an expedited basis."

16. Scheduling Vacations: The following shall be added to Article 28(D): "such schedule must provide for sufficient vacation periods to accommodate every employee's full vacation entitlement pursuant to the following conditions:

Vacation requests received prior to January 15th of each year will be scheduled in accordance with seniority and approved or denied within two (2) weeks after the January 15th deadline. Employees who have not handed in a request by January 15th will have a final opportunity to turn in a vacation request by May 1st for any remaining weeks available and will be scheduled in accordance with seniority and approved or denied within two (2) weeks after the May 1st deadline. Vacation requests received after the May 1st deadline will be scheduled by the Hotel on a "first come, first served" basis for any

SCHEDULE "A" - City-Wide Minimum Wage Rates by Job Classification

APENDICE "A" - Escala de sueldo mínimo por clasificación

July 1, 2006 through June 30, 2012 - 1ero de julio 2006 hasta 30 de junio 2012

**WAGE RATES**
**JULY 1, 2006 – JUNE 30, 2012**

**TIPOS SALARIALES**
**1ERO DE JULIO 2006 – 30 DE JUNIO 2012**

| | | 7/1/05 | 7/1/06 | 7/1/07 | 7/1/08 | 7/1/09 | 7/1/10 | 7/1/11 |
|---|---|---|---|---|---|---|---|---|
| First Asst. | Weekly Wage | $769.86 | $790.25 | $821.86 | $854.73 | $884.65 | $915.61 | $947.65 |
| | Weekly Raise | $29.2300 | $30.3900 | $31.6100 | $32.8700 | $29.9200 | $30.9600 | $32.0500 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| All Asst. Cooks-White Jackets | Weekly Wage | $749.43 | $779.41 | $810.59 | $843.01 | $872.52 | $903.06 | $934.60 |
| | Weekly Raise | $28.8200 | $29.9800 | $31.1600 | $32.4200 | $29.5100 | $30.5400 | $31.6100 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Pastry Chef | Weekly Wage | $768.38 | $820.96 | $853.80 | $887.95 | $919.03 | $951.20 | $984.49 |
| | Weekly Raise | $33.3600 | $31.5800 | $32.8400 | $34.1500 | $31.0800 | $32.1700 | $33.2900 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| First Asst. | Weekly Wage | $751.60 | $790.08 | $853.74 | $856.69 | $886.67 | $917.70 | $949.82 |
| | Weekly Raise | $29.2900 | $30.4500 | $31.6600 | $32.9500 | $29.9800 | $31.0300 | $32.1200 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| All Other Assistants | Weekly Wage | $749.43 | $779.41 | $810.59 | $843.01 | $872.52 | $903.06 | $934.60 |
| | Weekly Raise | $28.8200 | $29.9800 | $31.1600 | $32.4200 | $29.5100 | $30.5400 | $31.6100 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Ice Cream Chef | Weekly Wage | $772.01 | $802.89 | $835.01 | $868.41 | $898.80 | $930.26 | $962.84 |
| | Weekly Raise | $29.6900 | $30.8800 | $32.1200 | $33.4000 | $30.3900 | $31.4500 | $32.5600 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Head Baker | Weekly Wage | $777.25 | $808.34 | $840.67 | $874.30 | $904.90 | $936.57 | $969.35 |
| | Weekly Raise | $29.8900 | $31.0900 | $32.3300 | $33.6300 | $30.6000 | $31.6700 | $32.7800 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Night Bakers | Weekly Wage | $765.07 | $795.67 | $827.50 | $860.60 | $890.72 | $921.90 | $954.07 |
| | Weekly Raise | $29.4300 | $30.6000 | $31.8300 | $33.1000 | $30.1200 | $31.1800 | $32.2700 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Bakers | Weekly Wage | $765.07 | $795.67 | $827.50 | $860.60 | $890.72 | $921.90 | $954.07 |
| | Weekly Raise | $29.4300 | $30.6000 | $31.8300 | $33.1000 | $30.1200 | $31.1800 | $32.2700 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Head Veg. Prep | Weekly Wage | $706.86 | $735.13 | $764.54 | $795.12 | $822.56 | $851.75 | $881.57 |
| | Weekly Raise | $27.1900 | $28.2700 | $29.4100 | $30.5800 | $27.8300 | $28.8000 | $29.8100 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| All Other Veg. Prep | Weekly Wage | $700.97 | $729.01 | $758.17 | $788.50 | $816.10 | $844.66 | $874.22 |
| | Weekly Raise | $26.9600 | $28.0400 | $29.1600 | $30.3300 | $27.6000 | $28.5600 | $29.5600 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |
| Chicken and Fish Butchers | Weekly Wage | $749.43 | $779.41 | $810.59 | $843.01 | $872.52 | $903.06 | $934.60 |
| | Weekly Raise | $28.8200 | $29.9800 | $31.1600 | $32.4200 | $29.5100 | $30.5400 | $31.6100 |
| | Hourly Wage | | | | | | | |
| | Hourly Raise (Base) | | | | | | | |

Exhibit 2

## Memorandum

To:     Moises Mendez
        Baker, Culinary Department

From:  Maria Lavides     *Maria Lavide*
        Assistant Director of Human Resources

Date:  May 1, 2007

Re:     Schedule Change for Moises Mendez / Baker

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

This is to record that we are currently accommodating your request as a
baker for a schedule change due to your health reasons (see attached
schedule).

Please note that if and when management determines that there is a need
to switch back your schedule for business reasons, then we will do so
after giving you the 5-day notice as stated in the Collective
Bargaining Agreement.

If you have any questions, please contact us.

Thank you.

Acknowledged by:

_Moises Mendez_      5/7/07
Moises Mendez / Date

Witnessed by:

_David Moren_  _Del to_      5/07/07
Delegate: Print Name / Signature / Date

_Percival_

'07 MAY 7 AM 10:52

the westin new york at times square
270 west 43rd street, new york, ny 10036
phone 212.201.2700  fax 212.201.2701
westinny.com

WESTIN
HOTELS & RESORTS

Exhibit 3

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

<table>
<tr><td>NEW YORK STATE DIVISION OF<br>HUMAN RIGHTS on the Complaint of<br><br>MOISES MENDEZ,<br><br>                    Complainant,<br><br>             v.<br><br>WESTIN HOTEL MANAGEMENT, L.P.,<br>                   Respondent.</td><td>VERIFIED COMPLAINT<br>Pursuant to Executive<br>Law, Article 15<br><br>Case No.<br><b>10117953</b></td></tr>
</table>

Federal Charge No. 16GA703170

I, Moises Mendez, residing at 704 West 180th Street
Apt. B1, New York, NY, 10033, charge the above named respondent,
whose address is 270 West 43rd Street, New York, NY, 10030 with
an unlawful discriminatory practice relating to employment in
violation of Article 15 of the Executive Law of the State of New
York (Human Rights Law) because of disability, national origin,
race/color.

Date most recent or continuing discrimination took place is
5/18/2007.

The allegations are:

1.    I am Ecuadorean, Hispanic and have disabilities (Diabetes
and surgery to remove a portion of my colon.  Because of this, I
have been subject to unlawful discriminatory actions.

2.    I began my employment with the above named Respondent on
June 2003 as a Food Runner. My current position is Baker working
the 11:00 PM - 6:30 AM. My work Performance, time and attendance
are satisfactory.

3.    During my tenure with Respondent I have requested earlier
shifts but have been denied. One earlier shift (Pastry Chef) was
given to a new employee who is Dominican and no known
disability. On a weekly basis, for most of my tenure, I have
requested an earlier shift to accommodate my disabilities. On
May 18, 2007, I requested, again, a reasonable accommodation to
an earlier shift but David Ribbons, Chef, told me I was too
reliable to be given any other shift. Another Pastry Chef
position working an earlier shift was given to an African

employee who has no known disability. One Union delegate who intervened on my behalf asked Chef Ribbons "Isn't that discrimination Chef Ribbons?" Chef Ribbons replied "I don't know."

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of disability, national origin, race/color, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I also charge the above-named respondent with violating the Americans with Disabilities Act (ADA) (covers disability relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

Moises Mendez

STATE OF NEW YORK  )
                   )  SS:
COUNTY OF NEW YORK )

Moises Mendez, being duly sworn, deposes and says: that he/she
is the complainant herein; that he/she has read (or had read to
him or her) the foregoing complaint and knows the content
thereof; that the same is true of his/her own knowledge except
as to the matters therein stated on information and belief; and
that as to those matters, he/she believes the same to be true.

_____
Moises Mendez

Subscribed and sworn to
before me this 21st day
of May, 2007

_____
Signature of Notary Public


DAVID E. POWELL
COMMISSIONER OF DEEDS  6229
CITY OF NEW YORK - No. 1-
CERTIFICATE FILED IN_____ N.Y.
                            COUNTY
COMMISSION EXPIRES_____ 10/23/8007

- 3 -

Exhibit 4

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK: EXECUTIVE DEPARTMENT
-----------------------------------------------------------------------x
MOISES MENDEZ,

                                                    CASE No.: 10117953

                              Complainant,

              v.                                    VERIFIED ANSWER

WESTIN HOTEL MANAGEMENT, LP,

                              Respondent.

-----------------------------------------------------------------------x

Respondent, by its attorneys, Norris, McLaughlin & Marcus, PA, for its Verified Answer states as follows:

1.      Respondent denies any knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complainant's Verified Complaint except to deny that Complainant was subject to unlawful discrimination.

2.      Respondent denies the allegations contained in Paragraph 2 of the Complainant's Verified Complaint except to admit that Complainant began his employment with Respondent in June of 2003.

3.      Respondent denies the allegations contained in Sentence 1 of Paragraph 3 of the Complainant's Verified Complaint, including the inference raised by the allegations that Respondent was required to accommodate Complainant's request for a schedule shift change. Respondent admits the allegations contained in Sentence 2 of Paragraph 3 of the Complainant's Verified Complaint that at an earlier shift for a Pastry Chef was given to another employee, but denies any inference that the hiring of such employee resulted in discrimination against Complainant. Respondent denies the allegations contained in Sentence 3 of Paragraph 3 of the Complainant's Verified Complaint. Respondent denies any knowledge or information sufficient to form a belief as to the truth of the allegations contained in Sentence 4 of Paragraph 3 of the Complainant's Verified

Complaint. Respondent admits the allegations contained in Sentence 5 of Paragraph 3 of the Complainant's Verified Complaint that at an earlier shift for a Pastry Chef was given to another employee, but denies any inference that the hiring of such employee resulted in discrimination against Complainant. Respondent denies any knowledge or information sufficient to form a belief as to the truth of the allegations contained in Sentence 6 of Paragraph 3 of the Complainant's Verified Complaint.

## AFFIRMATIVE DEFENSES

Respondent states the following affirmative defenses in response to the Verified Complaint:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted against Respondent.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because allegations in the Verified Complaint are preempted, at least in part, by Section 301 of the LRMA, 29 U.S.C. Section 185 et. seq. and Complainant has failed to file a grievance under the governing labor agreement.

### THIRD AFFIRMATIVE DEFENSE

Complainant was not subject to actionable adverse employment actions that are related to any alleged protected characteristic.

### FOURTH AFFIRMATIVE DEFENSE

Complainant's action is barred for his failure to exhaust available procedures in the applicable collective bargaining agreement prior to initiating this action.

## FIFTH AFFIRMATIVE DEFENSE

All employment actions taken in this matter were based upon legitimate, non-discriminatory reasons. Complainant's alleged protected characteristic(s) was not a factor in any employment actions taken by Respondent.

## SIXTH AFFIRMATIVE DEFENSE

Complainant cannot state a prima facie claim for discrimination, nor can he show he suffered an adverse employment action that was proffered for a pretextual reason.

## SEVENTH AFFIRMATIVE DEFENSE

Respondent complied with the governing labor agreement when determining Complainant's request for scheduling changes.

## EIGHT AFFIRMATIVE DEFENSE

Complainant cannot establish a prima facie case of discrimination where the Respondent has negotiated with the union an accommodation for the Complainant to work the day shift.

## NINTH AFFIRMATIVE DEFENSE

Complainant cannot establish a prima facie case of discrimination where the employees who Respondent alleges were hired in lieu of Complainant were hired in accordance with the governing labor agreement and applicable law.

## TENTH AFFIRMATIVE DEFENSE

The proper employer is Starwood Hotels & Resorts Worldwide, Inc.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint does not describe the matters asserted with sufficient particularity to enable Respondent to determine what defenses it may have in response to the Complaint. Respondent therefore reserve the right to assert all defenses which may be pertinent to the Complaint once the precise nature of such Complaint is ascertained through discovery.

**WHEREFORE**, Respondent requests judgment in its favor dismissing the Verified Complaint.

NORRIS, McLAUGHLIN & MARCUS, PA

Dated: July 3, 2007

David E. Cassidy, Esq.
Attorneys for Respondent
721 Route 202-206
Bridgewater, NJ 08807

4

Exhibit 5

# NORRIS MCLAUGHLIN & MARCUS, PA

### ATTORNEYS AT LAW
## 875 THIRD AVENUE
## 18TH FLOOR
## NEW YORK, NY 10022
## (212) 808-0700
#### FAX: (212) 808-0844
#### www.NMMLAW.COM

**NEW JERSEY OFFICE**
P.O. BOX 1018
.RVILLE, NJ 08876-1018

 TTT MERITAS LAW FIRMS WORLDWIDE

July 19, 2007

### Via Facsimile & First Class Mail

Mr. Wilson P. Ortiz
Acting Regional Director
Division of Human Rights
Adam Clayton Powell state Office Building
163 West 125th Street, Room 415
New York, New York  10027

JUL 2 3 2007

Re:   **Moises Mendez v. Westin Hotel Management, L.P.**
      **Complaint No. 10117853**

Dear Mr. Ortiz:

This firm represents respondent, Starwood Hotel & Resorts Worldwide, Inc. (improperly pled as "West Hotel Management, L.P.") (the "Hotel" or "Respondent"). Please accept this letter as the Hotel's position statement in response to the above-referenced charge.

This response is submitted solely for the purpose of the investigation being conducted by your office as it contains confidential information, which should not be disclosed to any person or entity in order to protect the privacy rights of the parties.

## A.   GENERAL BACKGROUND

On or about May 21, 2007, Complainant, Moises Mendez, filed a Verified Complaint with the Division of Human Rights, alleging that Respondent engaged in unlawful discrimination in violation of Section 297.2 of the Human Rights Law and in violation of the Americans Disabilities Act. Specifically, Complainant alleges that Respondent discriminated against him on the basis of his disability[1] by (1) failing to accommodate his request for a scheduling change from a night shift to day shift; and (2)

---

[1] The instant charge is based on an alleged failure to accommodate. To the extent Complainant claims that there has been national origin discrimination, the Hotel respectfully submits that there has been no adverse employment action against Complainant, nor does the Complaint contain any meaningful allegations of such discrimination.  Should the Commission wish a supplemental position statement on this issue, the Hotel will provide one.

NORRIS MCLAUGHLIN . M~..CUS, PA
Page 2

refusing to hire him for the position of a Pastry Chef with a day shift schedule.  We understand from the Complaint that Complainant's claimed disability is that he suffers from diabetes and is recovering from colon surgery.

On July 5, 2007, Respondent filed a Verified Answer to the Verified Complaint denying the allegations set forth therein and setting forth its affirmative defenses.  (See Verified Answer annexed hereto as Exhibit A.).

As demonstrated below, Complainant's allegations are without merit.  On or about May 1, 2007, the Hotel specifically reached an accommodation agreement with the Union and Complainant, which resulted in Complainant **working the day shift, 3:00 p.m. to 10:30 p.m., as he requested.**   The Hotel is unaware of any further accommodation that is being requested at this time.  Since, the Hotel accommodated Complainant, Complainant's complaint fails as a matter of law.  Moreover, and as set forth herein, any further accommodations are not required as of this date because Complainant has failed to comply with the proper procedure set forth in the Collective Bargaining Agreement ("CBA") between the Hotel Association of New York City and the New York Hotel-Motel Trades Council (the "Union"), which governs the parties' employment relationship.

### B.    FACTUAL BACKGROUND

The Hotel is an equal opportunity employer with detailed anti-discrimination policies and is also bound to the CBA for its unionized staff, which contains an anti-discrimination clause and a grievance and arbitration clause.

On June 16, 2003, Complainant began working for Respondent as a Food Runner in the Hotel's culinary department at the Westin New York at Times Square ("Westin").  In this position, he worked  from 11:00 a.m. to 6:30 p.m. (hereinafter the "day shift").

Thereafter, in or around March of 2004, the Hotel had an opening for a Baker. The notice provided by the Hotel to potential candidates indicated that the Baker would be required to work from 11:00 p.m. to 6:30 a.m. (hereinafter the "night shift").  On March 4, 2004, Complainant applied for the posted Baker position and the Hotel hired Complainant for this position on April 4, 2004, at which time he began working the night shift in his new position.

### Request for Schedule Change and Transfer of Positions

After Complainant's request to work as a night-shift Baker, and after serving in this position for approximately a year and five months, Complainant requested that the Hotel place him on a day shift schedule as a Baker, claiming that he suffered from Adjustment Disorder with Mixed Emotional Procedures, which allegedly caused him

NORRIS MCLAUGHLIN . MAR . JS, PA
Page 3

sleep-cycle disturbances.[2]  The doctor's note relating to this condition is dated
September 12, 2005 and is attached hereto as Exhibit B.

Because Complainant is a union-represented employee, the Hotel is not allowed
to simply change his hours of work.  Rather, under established practice and the CBA,
the Hotel is obligated to consider seniority before changing hours of work for union-
represented employees.  The CBA provides, in pertinent part, as follows:

> The EMPLOYER shall be free to fix the daily working hours.  The
> EMPLOYER agrees that it will give the affected employee at least five (5)
> calendar days prior written notice of their work schedules, including a
> notice of a change of an employer's work schedule.  In the event of a
> change in schedule of daily working hours, seniority will be observed
> insofar as compatible with efficiency.  Should the UNION claim that
> changes in the schedule of hours result in any abuses of the rights of
> employees, the claim shall be subject to the grievance and arbitration
> procedure set forth in the [CBA].

(See CBA at ¶ 11(C), an excerpt of this provision is annexed hereto as Exhibit C.).

After receiving the above request to change hours, and pursuant to the CBA, the
Hotel advised Complainant that the Hotel must honor requests for schedule changes
based on seniority and, further, the needs of the business require Bakers to work the
night shift to ensure that baked goods served during breakfast were fresh.  However, in
an effort to accommodate the Complainant's request to work the day shift, the Hotel
offered Complainant the position of day-shift Food Runner[3], his prior position.  When
the Complainant refused such position, the Hotel advised the Complainant to confer
with his union delegate to process his request for a new schedule via the CBA.

Approximately two months later after this exchange, on November 15, 2005,
Complainant applied for the position of day-shift, Pastry Chef at the Westin.  The Hotel,
however, hired another union employee for the position who was working at the Hotel
and who had significantly more experience in the baking industry as compared to
Complainant.  Contrary to Complainant's allegations, the Hotel did not hire another
candidate in lieu of the Complainant due to his alleged disability.  Notably, at the time
Complainant requested the transfers, the Complainant had yet to undergo colon surgery
and the Hotel was unaware that he suffered from diabetes.

---

[2] The Complainant's Verified Complaint does not refer to this condition as the basis of his need to work a
day shift schedule, but rather sets forth other alleged disabilities.
[3] On or about September 7, 2005, Complainant submitted a transfer request to work as a Food Runner
with a day shift at the St. Regis Hotel.  Upon information and belief, the St. Regis Hotel did not hire the
Complainant.

NORRIS MCLAUGHLIN · MA· JS, PA
Page 4

## Accommodations Made by the Hotel

After the above requests for transfers to new positions, Complainant again requested a change in his work schedule to the day shift. The Hotel attempted to accommodate the Complainant with a day shift schedule, notwithstanding the fact that it would disrupt the Hotel's preparation of baked goods for breakfast by discussing with Complainant a schedule from 11:00 a.m. to 6:30 p.m. Remarkably, the Complainant refused this accommodation because it provided him with different days off than his schedule at the time and he insisted on keeping Sunday and Monday as his days off. Again, the Hotel advised Complainant to contact his union delegate regarding the issue per the CBA.

On or about May 1, 2007, the Hotel, the Complainant's union delegate, and Complainant met and reached an agreement regarding Complainant's schedule. The agreed upon change was memorialized in writing to include (and currently is) the following: (1) Sunday and Monday off; (2) Tuesday through Friday 3:00 p.m. to 10:30 p.m.; and (3) Saturday 10:00 am to 5:30 pm. (See Exhibit D memorializing the Union's agreement with the Hotel.). This is the specific schedule Complainant requested and the schedule he received from the Hotel and the Union. Despite this accommodation, approximately twenty days later, the Complainant filed the instant charge. No grievance has been filed by the Union regarding the events that led to Complainant's accommodation or the circumstances that lead to his Complaint.

## C.    Legal Argument

As demonstrated herein, neither the law nor the CBA require the Hotel to provide Complainant another schedule change. The CBA, along with the practice of the Hotel and Union, dictates that seniority will control when changing schedules and that the Union is to be involved in such issues when an employee requests a deviation from the CBA. This is consistent with judicial precedent and EEOC regulations; courts and the EEOC have universally held that accommodation requests in the unionized setting must be balanced with the seniority rights of other employees to be reasonable and not to impose an undue hardship on the employer, the union and the affected third parties.

This rule of law is captured within New York Code of Rules and Regulations § 466.11, which governs "reasonable accommodations" that must be provided by an employer. The regulation defines "reasonable accommodation" as the following:

> actions taken which permit an employee . . . to perform in a reasonable manner the activities involved in the job or occupation . . . held and include, but are not limited to, provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring, modified work schedules; **provided, however, that such actions do not impose an undue**

hardship on the business, program or enterprise of the entity from
which action is requested.

NYCRR § 466.11(a)(1) (emphasis added). Under this regulation, "[t]he employer has
the right to select which reasonable accommodation will be provided, so long as it is
effective in meeting the need." Id. at § 466.11(j)(6). In turn, "[t]he employee must
cooperate with the employer in the consideration and implementation of the requested
reasonable accommodation." Id. at § 466.11(k)(3).

In this case, the Hotel complied with the CBA and the law in addressing the
Complainant's request for a schedule change. In fact, the Complainant's union
delegate and the Hotel negotiated the need for a reasonable accommodation and
implemented an agreed-upon accommodation. This is the process that is regularly
employed by the Union and the Hotel and the process that governs Complainant's
employment. Thus, the Complaint fails to state a claim for discrimination or failure to
accommodate. Moreover, the Complainant's refusal to utilize this process as relates to
any other claimed accommodation exonerates the Hotel. When Complainant invoked
the proper process, he received his desired accommodation, which ends an inquiry
about disability discrimination by the Hotel.

Further, proving the Hotel's good faith and non-discriminatory intent in this matter
is that throughout the process the Hotel offered the Complainant two other
accommodations that did not invade upon the seniority rights of other employees: 1) his
old position, which was a day shift position; and 2) when Complainant refused this offer,
the Hotel offered him a day shift schedule as a Baker. Complainant rejected both
accommodations. This evidences that the Hotel has acted lawfully and that the
Complainant has been uncooperative in engaging in the interactive process required to
find an appropriate accommodation. With respect to the second accommodation,
Complainant was merely unsatisfied with the days off provided, which is an
unacceptable response to an employer's proposed accommodation.

Simply put, Complainant cannot establish a prima facie case of discrimination.
Also note that the Hotel reserves its right to challenge whether Complainant has a
covered disability under the law. Without addressing this issue, however,
Complainant's case still fails because, even assuming a covered disability exists, there
is no evidence that the Hotel failed to accommodate Complainant or otherwise engaged
in discrimination against him. To the contrary, the Hotel complied with the CBA and the
law at all times.

Based on the foregoing, Respondent respectfully requests dismissal of the
instant charge.

Thank you for your consideration of this matter.  Should you have any questions or require further information, please contact me directly.

Respectfully submitted,

David E. Cassidy  (map)

David E. Cassidy, Esq.
NORRIS, McLAUGHLIN & MARCUS, PA

Exhibit 6

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>MOISES MENDEZ,<br>                              Complainant,<br><br>                    v.<br><br>WESTIN HOTEL MANAGEMENT, L.P.,<br>                              Respondent. | VERIFIED COMPLAINT<br>Pursuant to Executive<br>Law, Article 15<br><br>Case No.<br>**10119634** |

Federal Charge No. 16GA704551

I, Moises Mendez, residing at 704 West 180th Street
Apt. B1, New York, NY, 10033, charge the above named respondent,
whose address is 270 West 43rd Street, New York, NY, 10030 with
an unlawful discriminatory practice relating to employment in
violation of Article 15 of the Executive Law of the State of New
York (Human Rights Law) because of opposed
discrimination/retaliation.

Date most recent or continuing discrimination took place is
8/15/2007.

The allegations are:

1.   I have filed a previous discrimination complaint with the
NYSDHR #10117953.  Because of this, I have been subject to
unlawful discriminatory actions.

2.   After Respondent was served with my complaint management
began following me even when I go to the bathroom. I have not
been allowed to go home when I became ill at work. Although I
was granted a particular shift because of my disability, my
shift was changed again by Frank Tejage, Chef, after I filed my
complaint.

3.   I was yelled at and threatened by Antonio Rotolo, Chef,
on June 28, 2007. I have also been denied the Pastry Chef
position, which was given to Tania Rojas, who has less
seniority.

4.   I submitted a Doctor's note, dated August 10, 2007,
instructing Respondent that because of my disability I require

non seasoned food. Frank Tejag refused and told me to purchase my food nearby.

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

Moises Mendez

```
STATE OF NEW YORK   )
                       ) SS:
COUNTY OF NEW YORK  )
```

Moises Mendez, being duly sworn, deposes and says: that he/she
is the complainant herein; that he/she has read (or had read to
him or her) the foregoing complaint and knows the content
thereof; that the same is true of his/her own knowledge except
as to the matters therein stated on information and belief; and
that as to those matters, he/she believes the same to be true.

_____
Moises Mendez

Subscribed and sworn to
before me this 15th day
of August, 2007

Signature of Notary Public

WILLIAM F. MARSHALL
Notary Public, State of New York
No. 01MA6066080
Qualified in New York County
My Commission Expires November 5, 20 _09_

- 3 -

Exhibit 7

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MOISES MENDEZ,

                Complainant,

         v.

STARWOOD HOTELS & RESORTS WORLDWIDE,
INC. D/B/A WESTIN HOTEL MANAGEMENT,
L.P.,

                Respondent.

Case No.
10117953

---

Federal Charge No. 16GA703170

## ADJOURNMENT OF CONFERENCE

To the parties listed below:

The conference previously scheduled in the above-captioned case has been adjourned

     FROM:    September 20, 2007 @ 10:00 AM

     TO:      **October 5, 2007 @ 11:00 AM**

This adjournment was at the request of the Respondent.

Please Note: Conference location, documents requested and witnesses remain the same as stated in the original Notice of Conference.

Dated:  September 27, 2007
        New York, New York

                              STATE DIVISION OF HUMAN RIGHTS

                    By:    _____
                              Wilson P. Ortiz
                              Acting Regional Director
                              Tel: (212) 961-8650
                              Fax: (212) 961-4425

TO:

Complainant
Moises Mendez
704 West 180th Street
Apt. B1
New York, NY 10033

Respondent
Westin Hotel Management, L.P.
Attn: Nancy Kistka, Human Resource Director
270 West 43rd Street
New York, NY 10030

Respondent Secondary Address
Starwood Hotels & Resorts Worldwide, Inc.
201 Park Ave South
New York, NY 10003

Respondent Attorney
David E. Cassidy, Esq.
Norris McLaughlin & Marcus
875 Third Avenue, 18th Floor
New York, NY 10022

- 2 -

Exhibit 8

# NORRIS MCLAUGHLIN & MARCUS, PA

ATTORNEYS AT LAW

875 THIRD AVENUE
18TH FLOOR
NEW YORK, NY 10022
(212) 808-0700
FAX: (212) 806-0844
www.NMMLAW.COM

NEW JERSEY OFFICE
P.O. BOX 1018
SOMERVILLE, NJ 08876-1018

January 15, 2008

**VIA FACSIMILE 718-741-8102**
Molly Doherty, Esq.
DHR Hearing Attorney
New York Division of Human Rights
One Fordham Plaza, 4th FL
Bronx, NY 10458

RE:   **Moises Mendez v. Starwood Hotel & Resorts Worldwide, Inc.**
      **Case No. 10117953 and 10119634**

Dear Ms Doherty:

Enclosed, please find subpoena duces tecum being served upon The Yale Club for New York City in the above-referenced matters.

Very truly yours,

Norris McLaughlin & Marcus

Melissa A. Pena

MAP/tmm
Enclosures

cc:    Moises Mendez
       704 West 180th Street, Apt. B1
       New York, New York 10033
       REGULAR MAIL, CERTIFIED, RETURN RECEIPT REQUESTED

cc:    VIA FACSIMILE 718-741-8104
       Bronx ALJ, Administrative Law Judge
       One Fordham Plaza
       Bronx, NY 10458

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK: EXECUTIVE DEPARTMENT
-----------------------------------------------------------------x
MOISES MENDEZ,

                         CASE No.: 10119634

                   Complainant,

          v.                       ***SUBPOENA DUCES TECUM***


STARWOOD HOTEL & RESORTS WORLDWIDE,
INC.

                   Respondent.

-----------------------------------------------------------------x

TO:    **THE YALE CLUB OF NEW YORK CITY**
       c/o Officer, Director, Manager or General Agent
       50 Vanderbilt Avenue
       New York, New York 10017


**GREETING:**

     **YOU ARE HEREBY COMMANDED**, that all business and excuses being laid aside,

you appear at the NYS Division of Human Rights, One Fordham Plaza, 4th Floor, Hearing Room

#2, Bronx, New York 10458, at 10:00 a.m. on Wednesday, January 30, 2008 and that you

produce and permit inspection and copying of the documents set forth in Schedule A, annexed

hereto.

     All papers or other items delivered pursuant to this *subpoena* shall be accompanied by a copy

of this *subpoena*.

     Failure to comply with this *subpoena* is punishable as a contempt of Court and shall make

you liable to the person on whose behalf this *subpoena* was issued for a penalty not to exceed fifty

dollars and all damages sustained by reason of your failure to comply.

Dated: New York, New York
      January 15, 2008

                                     NORRIS MCLAUGHLIN & MARCUS, PA..
                                     Attorneys for Respondent,
                                     Starwood Hotel & Resorts Worldwide, Inc.

                              By: _Meli—a P—_

                                     Melissa A. Peña, Esq.
                                     875 Third Avenue, 18th Floor
                                     New York, New York 10022
                                     (212) 808-0700

TO:

Complainant

Moises Mendez
704 West 180th Street, Apt. B1
New York, New York 10033
(Via Certified Mail, R.R.R. and First Class Mail)

Division Attorney
Molly Doherty, Esq.
(Via Facsimile)

Bronx ALJ, Administrative Law Judge
One Fordham Plaza, 4th Floor
Bronx, New York 10458
(Via Facsimile (718) 741-8104)

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1.       The term "document" shall include the original and any non-identical copy, regardless

of origin or location, of any writing or record or type of description, including but not limited to the

original and any copy of any blueprint, plans, architectural drawings, book, pamphlet, periodical,

letter, diary, purchase order, bill of lading, bid tabulation, questionnaire, survey, contract, option to

purchase, memorandum of agreement, assignment, license, book of account, order, invoice,

statement, bill (including, but not limited to, telephone bills), check, voucher, notebook, film,

photograph, photographic negative, telephone record, tape recording, wire recording, transcript of

recordings, drawing, catalogue, brochure, any other data compilations from which information can

be obtained and translated if necessary, or any other written, recorded, transcribed, punched, taped,

filed or graphic matter, however, produced or reproduced memorandum, telegram, telex, report,

record, study, inter-office or intra-office communications, handwritten or other note, working page,

chart, drawing, photograph, paper, graph, index, tape, disk, DVD-ROM, DVD-R, CD-ROM, CD-R,

CD-RW, floppy diskette, ZIP drive tape or other computer backup tape, hard drive, optical storage

disk or any similar electronic or computer storage device, correspondence, table, analysis, schedule,

data sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filed,

or graphic matter, however produced or reproduced, to which the responding party/parties have or

have had access. The term "document" shall specifically include, without limitation, any "written

communication" as defined below. **"Document" also includes all emails.**

3

2. "You" or "your" means The Yale Club of New York City and includes all of its predecessors and successors in interest, all affiliates, agents, representatives, departments, divisions or subsidiaries or any of the foregoing, and all of its present and former directors, officers, representatives, employees, attorneys, agents and any other person or entities acting on its behalf or under its control.

3. When a corporation is referred to herein, said reference shall be construed to include all predecessors and successors in interest, all affiliates, agents, representatives, departments, divisions or subsidiaries of any of the foregoing, whether in the past or the present, and all present and former directors, officers, representatives, employees, attorneys, agents and any other person or entities acting on its behalf or under its control.

4. "Personnel file" means papers, documents and reports, including electronic mail and facsimiles, pertaining to a particular employee that are used or have been used by an employer to determine such employee's eligibility for employment, promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action including employee evaluations or reports relating to such employee's character, credit and work habits. "Personnel file" does not mean stock option or management bonus plan records, medical records, letters of reference or recommendations from third parties including former employers, materials that are used by the employer to plan for future operations or information contained in separately maintained security files.

## DOCUMENTS REQUESTED

1. All documents contained in the personnel file of Moises Mendez.

4

Exhibit 9

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MOISES MENDEZ,
                          Complainant,

                v.

STARWOOD HOTELS & RESORTS WORLDWIDE,
INC. D/B/A WESTIN HOTEL MANAGEMENT,
L.P.,
                          Respondent.

NOTICE OF HEARING

Case No.
10117953

**PLEASE TAKE NOTICE** that, pursuant to Section 297 of the New York
State Human Rights Law (N.Y. Executive Law, Article 15), the
above-referenced matter has been officially scheduled for a
public hearing before **Bronx ALJ**, an Administrative Law Judge of
the New York State Division of Human Rights, on the dates and
time below, to determine the charges of unlawful discriminatory
practices alleged in the verified complaint filed in this case.

        Dates:       Wed 1/30/2008 - Thu 1/31/2008

        Time:        10:00 AM

        Place:       Hearing Room #2
                     NYS Division of Human Rights
                     One Fordham Plaza, 4th Floor
                     Bronx, NY 10458

Parties are reminded to tailor their case presentation within
the time allotted for the hearing.  The public hearing is
scheduled only for the two (2) days listed above.

Five (5) business days before the hearing, parties (or their
attorneys) shall submit the following information to the
Administrative Law Judge with a copy to all parties: (1) a brief
statement of the issue in the case; (2) the names of witnesses,
with a brief explanation of their identities and the subject of
their testimony; and (3) a list of all documentary evidence that
is to be offered into evidence.  Further, prior to the hearing,

parties should exchange, among themselves, all documents to be
offered into evidence including, but not limited to, medical
documentation relevant to the claims or defenses.  Please note
that said documents should not be submitted to the judge prior
to the hearing.

At least two (2) business days prior to the hearing, Respondent
shall, and any necessary party may, file a written answer to the
complaint, sworn to and subject to the penalties of perjury,
with the Administrative Law Judge, and shall serve a copy upon
each of the other parties to the proceeding.  The answer shall
contain all affirmative defenses, including any defense of lack
of jurisdiction.

**A failure to answer the complaint shall be deemed an admission
of the allegations of the complaint; the presiding
Administrative Law Judge shall note the default; and the hearing
shall proceed on the evidence in support of the complaint.**

Respondent who has filed an answer shall appear at the public
hearing in person or with an attorney.  All parties appearing at
the public hearing shall be allowed to present evidence in
accordance with the Rules of Practice of the Division
(9 N.Y.C.R.R. § 465).  All parties should appear with at least
three (3) copies of any documents they wish to present into
evidence.  Parties will not be permitted to use Division's
equipment to copy files or documents at the Division's expense.

If upon all the evidence at the hearing, the Commissioner finds
that Respondent has engaged in an unlawful discriminatory
practice as defined in the New York State Human Rights Law (N.Y.
Executive Law, Article 15), the Commissioner will issue an order
against a Respondent, as provided for by Section 297 of the New
York State Human Rights Law, requiring such Respondent to cease
and desist from such unlawful discriminatory practice and to
take such actions as in the judgment of the Commissioner will
effectuate the purposes of the law, which may include the
payment of monetary damages to Complainant.

**No adjournment of the public hearing shall be granted, except
for actual engagement before a higher tribunal or for other good
cause shown.  <u>Please be advised that settlement discussions do
not constitute good cause.</u>  Requests for adjournment must be in
writing to the Administrative Law Judge assigned to the case.**

Dated:    January 10, 2008
          Bronx, New York

TO:

Complainant
Moises Mendez
704 West 180th Street
Apt. B1
New York, NY 10033

Respondent
Westin Hotel Management, L.P.
Attn: Nancy Kistka, Human Resource Director
270 West 43rd Street
New York, NY 10030

Respondent Secondary Address
Starwood Hotels & Resorts Worldwide, Inc.
201 Park Ave South
New York, NY 10003

Respondent Attorney
David E. Cassidy, Esq.
Norris McLaughlin & Marcus
875 Third Avenue, 18th Floor
New York, NY 10022

State Division of Human Rights
Prosecutions Unit
One Fordham Plaza, 4th Floor
Bronx, New York 10458
Office of Administrative Law Judges
One Fordham Plaza, 4th Floor
Bronx, New York 10458

Assigned: Bronx ALJ, Administrative Law Judge
         One Fordham Plaza, 4th Floor
         Bronx, NY 10458
         Tel:
         Fax: (718) 741-8104

Exhibit 10

# NORRIS MCLAUGHLIN & MARCUS, PA

### ATTORNEYS AT LAW

875 THIRD AVENUE
18TH FLOOR
NEW YORK, NY 10022
(212) 808-0700
FAX: (212) 808-0844
www.NMMLAW.COM

NEW JERSEY OFFICE
P.O. BOX 1018
SOMERVILLE, NJ 08876-1018

December 10, 2007

**Via Facsimile & First Class Mail**

Ms. Shena Babb-Esty
Calendar Clerk
New York Division of Human Rights
Office of Administrative Law Judges
One Fordham Plaza, 4th Floor
Bronx, New York 10458

> Re:    **Moises Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,**
> **Case No.: 10117953**
> **Moises Mendez v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119634**
> **Lucy Ayala v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119570**
> **Janett Rubio v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119751**
> **Jessica Ocascio v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10120156**
> **Anna M. Rodriguez v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119637**
> **Anna M. Rodriguez v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No. 10119441**
> **Giovanni Toro v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No. 10119440**
> **Anna Liza Bay v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119644**
> **Olga Z. Thomas v. Starwood Hotel & Resorts Worldwide, Inc.**
> **Case No.: 10119442**

Dear Ms. Babb-Esty:

This firm represents Respondent, Starwood Hotels & Resorts Worldwide, Inc. Today, we received notices scheduling all of the above matters for public hearing on January 30, 2008 – January 31, 2008 at 10:00 am. For the reasons set forth below, Respondent requests that the above matters be scheduled for public hearing on separate dates.

NORRIS, MCLAUGHLIN & MARCUS, PA.
December 10, 2007
Page 2

The above charges are factually distinct and they involve several different complainants, except for two of the charges. It is anticipated that each charge will require two days of hearing to allow a proper defense to be submitted by Respondent and, because of the number of charges at issue, Respondent requests a reasonable period of time to prepare and present its separate defenses to the separate charges. Under these circumstances, and given counsel and a corporate representatives must be present for each hearing, it is respectfully requested that the above-referenced matters be scheduled for public hearing on separate dates with sufficient time between hearings dates to allow the parties to prepare their respective presentations. For the convenience of the parties, we recognize that it may be best to proceed with the two charges filed by Moises Mendez on the same date and the two charges filed by Anna Rodriguez on the same date.

Prior to rescheduling the matters, please be advised that this firm is unavailable from February 13 -20, 2008. Further, Respondent intends to file an application to reopen all proceedings pursuant to N.Y. Human Rights Rule 465.20 by the close of the month.

Lastly, we note that Respondent's proper service address for the above charges is as follows:

Starwood Hotels & Resorts Worldwide, Inc.
Attn: Nancy Kiska, Human Resources Director
270 West 43rd Street
New York, New York 10036.

Kindly correct your records to reflect this address.

Should you have any questions, please feel free to contact me.

Very truly yours,
NORRIS, McLAUGHLIN & MARCUS, PA

*David E. Cassidy* (mar)
David E. Cassidy, Esq.

cc:


State Division of Human Rights
Prosecution Unit
One Fordham Plaza, 4th Floor
Bronx, New York 10458
(Via Certified Mail, R.R.R.)

NORRIS, McLAUGHLIN & MARCUS, PA.
December 10, 2007
Page 3


Office of the Administrative Law Judges
Assigned:  Bronx ALJ, Administrative Law Judge
One Fordham Plaza, 4th Floor
Bronx, New York 10458
(Via Facsimile at (718) 741-8104 and First Class Mail)

Mr. Moises Mendez
704 West 180th Street, Apt. B1
New York, New York 10033
(Via Certified Mail, R.R.R.)

Ms. Lucy Ayala
1024 Quincy Avenue
Bronx, New York 10465
(Via Certified Mail, R.R.R.)

Ms. Janett Rubio
16 First Street
Garden City, New York 11530
(Via Certified Mail, R.R.R.)

Ms. Jessica Ocasio
164 East 8th Street, #3
Brooklyn, New York 11218
(Via Certified Mail, R.R.R.)

Ms. Anna M. Rodrgiuez
2125 Holland Avenue #2E
Bronx, New York 10462
(Via Certified Mail, R.R.R.)

Mr. Giovanni Toro
4143 39th Place #1D
Sunnyside, New York 11104
(Via Certified Mail, R.R.R.)

Ms. Anna Liza Bay
294 Riverside Drive, Apt. 1C
New York, New York 10025
(Via Certified Mail, R.R.R.)

Ms. Olga Thomas
87-03 76th Street, #2
Woodhaven, New York 11421
(Via Certified Mail, R.R.R.)

Exhibit 11

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION
OF HUMAN RIGHTS
  on the Complaint of

**MOISES MENDEZ,**

                         Complainant,

            v.

**STARWOOD HOTELS & RESORTS
WORLDWIDE, INC. D/B/A WESTIN HOTEL
MANAGEMENT, L.P.,**

                        Respondent.

**NOTICE AND
FINAL ORDER**

Case No. 10117953

---

    **PLEASE TAKE NOTICE** that the attached is a true copy of the Recommended Order

of Dismissal for Administrative Convenience ("Recommended Order"), issued on

February 27, 2008, by Thomas S. Protano, an Administrative Law Judge of the New York State

Division of Human Rights ("Division"). An opportunity was given to all parties to object to the

Recommended Order, and all Objections received have been reviewed.

    **PLEASE BE ADVISED THAT, UPON REVIEW, THE RECOMMENDED**

**ORDER IS HEREBY ADOPTED AND ISSUED BY THE HONORABLE KUMIKI**

**GIBSON, COMMISSIONER, AS THE FINAL ORDER OF THE NEW YORK STATE**

**DIVISION OF HUMAN RIGHTS ("ORDER").** In accordance with the Division's Rules of

Practice, a copy of this Order has been filed in the offices maintained by the Division at One

Fordham Plaza, 4th Floor, Bronx, New York 10458. The Order may be inspected by any

member of the public during the regular office hours of the Division.

**PLEASE TAKE FURTHER NOTICE** that any party to this proceeding may appeal this Order to the Supreme Court in the County wherein the unlawful discriminatory practice that is the subject of the Order occurred, or wherein any person required in the Order to cease and desist from an unlawful discriminatory practice, or to take other affirmative action, resides or transacts business, by filing with such Supreme Court of the State a Petition and Notice of Petition, within sixty (60) days after service of this Order. A copy of the Petition and Notice of Petition must also be served on all parties, including the General Counsel, New York State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. Please do not file the original Notice or Petition with the Division.

**ADOPTED, ISSUED, AND ORDERED,** this 28th day of February, 2008.

KUMIKI GIBSON
COMMISSIONER

TO:

Complainant
Moises Mendez
704 West 180th Street, Apt. B1
New York, NY 10033

Complainant Attorney
Ari Graff, Esq.
Thompson Wigdor & Gilly LLP
Empire State Building
350 Fifth Avenue, Ste. 5720
New York, NY 10118

Respondent
Westin Hotel Management, L.P.
Attn: Nancy Kistka, Human Resource Director
270 West 43rd Street
New York, NY 10030

Respondent Secondary Address
Starwood Hotel & Resorts Worldwide, Inc.
201 Park Ave South
New York, NY 10003

Respondent Attorney
David E. Cassidy, Esq.
Norris McLaughlin & Marcus
875 Third Avenue, 18th Floor
New York, NY 10022

Hon. Andrew Cuomo, Attorney General
Attn: Civil Rights Bureau
120 Broadway
New York, New York 10271

State Division of Human Rights
Enforcement Unit
One Fordham Plaza, 4th Floor
Bronx, New York 10458

Pamela Chen
Deputy Commissioner for Enforcement

Thomas S. Protano
Administrative Law Judge

- 3 -

Sara Toll East
Chief, Litigation and Appeals

Caroline J. Downey
General Counsel

Peter G. Buchenholz
Adjudication Counsel

Matthew Menes
Adjudication Counsel

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS
    on the Complaint of

MOISES MENDEZ,
                        Complainant,
          v.

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC. D/B/A WESTIN HOTEL
MANAGEMENT, L.P.,
                        Respondent.

RECOMMENDED ORDER
OF DISMISSAL FOR
ADMINISTRATIVE
CONVENIENCE

Case No. **10117953**

---

## PROCEEDINGS IN THE CASE

On May 21, 2007, Complainant filed a verified complaint with the New York State

Division of Human Rights ("Division"), charging Respondent with unlawful discriminatory

practices relating to employment in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division found that it had jurisdiction over the complaint and that

probable cause existed to believe that Respondent had engaged in unlawful discriminatory

practices. The Division thereupon referred the case to public hearing.

The case was assigned to Thomas S. Protano, an Administrative Law Judge ("ALJ") of

the Division. Complainant was represented by Ari Graff, Esq. Respondent was represented by

David E. Cassidy, Esq.

On January 31, 2008, Complainant, by his attorney, requested that the case be dismissed

for administrative conveninece. Thereafter, Respondent, by its attorney, was given an

opportunity to object and offered no objection.

Pursuant to Section 297.3(c) of the Human Rights Law, the complaint should be dismissed on the grounds of administrative convenience. The Complainant intends to pursue remedies in another forum, in which all the issues concerning the question of discrimination charged can be resolved.

ORDERED, that the case be dismissed for administrative convenience.

DATED:  February 26, 2008
        Bronx, New York

Thomas S. Protano
Administrative Law Judge

Exhibit 12

# Thompson Wigdor & Gilly LLP

**Kenneth P. Thompson**
kthompson@twglawyers.com

March 31, 2008

## VIA FACSIMILE AND OVERNIGHT DELIVERY

Caroline Downey, Esq.
General Counsel for the New York State
Division of Human Rights
1 Fordham Plaza, 4th Floor
Bronx, New York 10458
Fax: 718-741-8103

> **Re:**    **Moises Mendez v. Starwood Hotels & Resorts Worldwide, Inc.**
> **Case Nos. 10117953 and 10119634**

Dear Ms. Downey:

My firm represents Moises Mendez, Complainant in the above referenced charges of discrimination, harassment and retaliation against his employer, Respondent Starwood Hotels & Resorts Worldwide, Inc.

On January 24, 2008, we submitted a request to the New York State Division of Human Rights (the "Division") seeking dismissal of Complainant's actions on grounds of administrative convenience, pursuant to § 465.5(e) of the New York State Human Rights Law, so that Complainant could initiate an action in another forum based on the same claims and grievances alleged therein. (Exhibit 1).

On February 28, 2008, the Division issued a Notice and Final Order (the "Order") granting our request for an administrative convenience dismissal. (Exhibit 2). However, the Order refers only to the initial charge of discrimination and harassment that Complainant filed with the Division on May 21, 2007 (Case No. 10117953). The Order does <u>not</u> refer to the subsequent charge of retaliation that Complainant filed with Division on August 15, 2007

# Thompson Wigdor & Gilly LLP  ATTORNEYS AND COUNSELORS AT LAW

(Case No. 10119634) (alleging that Respondent retaliated against him for filing the initial charge).[1]

We have been advised by the federal EEOC that although Case No. 10117953 has been dismissed pursuant to the Division's Order of February 28, Case No. 10119634 is still pending before the Division, and Complainant therefore cannot initiate an action in another forum based on the allegations of retaliation set forth therein.

Accordingly, we write to respectfully request that the Division issue an amended Order of Dismissal for Administrative Convenience that references both Case No. 10117953 and Case No. 10119634.

We have conferred with David Cassidy, attorney for Respondent, who has authorized us to represent that Respondent does not object to this request to amend the Division's Order of February 28, 2008 by adding Case No. 10119634 to its caption.

Please feel free to contact me if you have any questions or if we can provide you with anything further in support of this request. Thank you for your assistance.

Sincerely,

Kenneth P. Thompson, Esq.

cc:    David E. Cassidy, Esq.
       Norris McLaughlin & Marcus, PA
       Attorneys for Respondent

---

[1]      On October 26, 2007, the Division issued a determination finding probable cause to support both charges. The parties thereafter referenced both case numbers in the subject lines of all subsequent correspondence with the Division.

Exhibit 13

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION
OF HUMAN RIGHTS
   on the Complaint of

MOISES MENDEZ,

               Complainant,

         v.

STARWOOD HOTEL & RESORTS WORLDWIDE,
INC.,

               Respondent.

**NOTICE AND
FINAL ORDER**

Case No. 10119634

---

**PLEASE TAKE NOTICE** that the attached is a true copy of the Recommended Order

of Dismissal for Administrative Convenience ("Recommended Order"), issued on April 7, 2008,

by Thomas S. Protano, an Administrative Law Judge of the New York State Division of Human

Rights ("Division").

      <u>**PLEASE BE ADVISED THAT, UPON REVIEW, THE RECOMMENDED**</u>

<u>**ORDER IS HEREBY ADOPTED AND ISSUED BY THE HONORABLE KUMIKI**</u>

<u>**GIBSON, COMMISSIONER, AS THE FINAL ORDER OF THE NEW YORK STATE**</u>

<u>**DIVISION OF HUMAN RIGHTS ("ORDER")**</u>.

      In accordance with the Division's Rules of Practice, a copy of this Order has been filed in

the offices maintained by the Division at One Fordham Plaza, 4th Floor, Bronx, New York

10458. The Order may be inspected by any member of the public during the regular office hours

of the Division.

      **PLEASE TAKE FURTHER NOTICE** that any party to this proceeding may appeal this

Order to the Supreme Court in the County wherein the unlawful discriminatory practice that is

the subject of the Order occurred, or wherein any person required in the Order to cease and desist from an unlawful discriminatory practice, or to take other affirmative action, resides or transacts business, by filing with such Supreme Court of the State a Petition and Notice of Petition, within sixty (60) days after service of this Order. A copy of the Petition and Notice of Petition must also be served on all parties, including the General Counsel, New York State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. Please do not file the original Notice or Petition with the Division.

**ADOPTED, ISSUED, AND ORDERED,** this 8th day of April, 2008.

KUMIKI GIBSON
COMMISSIONER

- 2 -

TO:

<u>Complainant</u>
Moises Mendez
704 West 180th Street, Apt. B1
New York, NY 10033

<u>Complainant Attorney</u>
Ari Graff, Esq.
Thompson Wigdor & Gilly LLP
Empire State Building, 350 Fifth Avenue, Ste. 5720
New York, NY 10118

<u>Respondent</u>
Starwood Hotel & Resorts Worldwide, Inc.
Attn: Nancy Kistka, Human Resource Director
201 Park Ave South
New York, NY 10003

<u>Respondent Attorney</u>
David E. Cassidy, Esq.
Norris McLaughlin & Marcus
P.O. Box 1018
Somerville, NJ 08876-1018

Hon. Andrew Cuomo, Attorney General
Attn: Civil Rights Bureau
120 Broadway
New York, New York 10271

<u>State Division of Human Rights</u>
Enforcement Unit
One Fordham Plaza, 4th Floor
Bronx, New York 10458

Pamela Chen
Deputy Commissioner for Enforcement

Thomas S. Protano
Administrative Law Judge

Sara Toll East
Chief, Litigation and Appeals

Caroline J. Downey
General Counsel

Sharon J Field
Associate Attorney

Peter G. Buchenholz
Adjudication Counsel

Matthew Menes
Adjudication Counsel

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

**NEW YORK STATE DIVISION OF**
**HUMAN RIGHTS**
    on the Complaint of

**MOISES MENDEZ,**

                    **Complainant,**

           v.

**STARWOOD HOTEL & RESORTS**
**WORLDWIDE, INC.,**

                  **Respondent.**

**RECOMMENDED ORDER**
**OF DISMISSAL FOR**
**ADMINISTRATIVE**
**CONVENIENCE**

Case No. **10119634**

---

## PROCEEDINGS IN THE CASE

On August 15, 2007, Complainant filed a verified complaint with the New York State

Division of Human Rights ("Division"), charging Respondent with unlawful discriminatory

practices relating to employment in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division found that it had jurisdiction over the complaint and that

probable cause existed to believe that Respondent had engaged in unlawful discriminatory

practices. The Division thereupon referred the case to public hearing.

The case was assigned to Thomas S. Protano, an Administrative Law Judge ("ALJ") of

the Division. Complainant was represented by Ari Graff, Esq. Respondent was represented by

David E. Cassidy, Esq.

On March 31, 2008, Complainant, by his attorney, requested that the case be dismissed

for administrative convenience. Thereafter, Respondent, by its attorney, indicated Division staff

members that he had no objections to the application.

Pursuant to Section 297.3(c) of the Human Rights Law, the complaint should be dismissed on the grounds of administrative convenience. The Complainant intends to pursue remedies in another forum, in which forum all the issues concerning the question of discrimination charged can be resolved.

ORDERED, that the case be dismissed for administrative convenience.

DATED:    April 7, 2008
          Bronx, New York

Thomas S. Protano
Administrative Law Judge

Exhibit 14

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Empire State Building
350 Fifth Avenue
Suite 5720
New York, NY 10118
Tel 212.239.9292
Fax 212.239.9001
www.twglawyers.com

**Kenneth P. Thompson**
kthompson@twglawyers.com

May 30, 2008

**BY OVERNIGHT DELIVERY**

David E. Cassidy, Esq.
Norris McLaughlin & Marcus, PA
875 Third Avenue, 18th Floor
New York, New York 10022

>    Re:  **Moises Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 08-CV-4967**

Dear Mr. Cassidy:

Enclosed for service upon you in the above-referenced action please find copies of the
Summons and Complaint that were filed yesterday in the Southern District of New York,
which you have agreed to accept on behalf of Defendant Starwood Hotels & Resorts
Worldwide, Inc.

Sincerely,

Kenneth P. Thompson