UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MOISES MENDEZ,                              :
                                            :
                       Plaintiff,           :      08-CIV-4967 (CM) (KNF)
                                            :
              v.                            :      **ECF CASE**
                                            :
STARWOOD HOTELS AND RESORTS                 :
WORLDWIDE, INC.,                            :
                                            :
                       Defendant.           :
                                            :
------------------------------------------------------------x


**DEFENDANT REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT AND COMPEL ARBITRATION**


Michael Starr, Esq.
Christine M. Wilson, Esq.
Hogan & Hartson L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendant Starwood Hotels
and Resorts Worldwide, Inc.*

# TABLE OF CONTENTS

Page

ARGUMENT..................................................................................................1

POINT I.

    THE PURPORTED INVALIDITY OF PLAINTIFF'S INDIVIDUAL AGREEMENT TO ARBITRATE IS WITHIN THE EXCLUSIVE PURVIEW OF ARBITRATION UNDER THE IWA. ...........................................1

POINT II.

    PLAINTIFF'S UNAMBIGUOUS AGREEMENT TO ARBITRATE "DISPUTES" CONCERNING "[HIS] EMPLOYMENT" APPLIES TO THE EMPLOYMENT DISCRIMINATION CLAIMS ASSERTED IN HIS COMPLAINT..................................................................................................4

POINT III.

    PLAINTIFF'S WAIVER AND ESTOPPEL CLAIMS ARE ALL CONTRARY TO SECOND CIRCUIT LAW.........................................................7

CONCLUSION ...........................................................................................10

TABLE OF AUTHORITIES

Cases

*Associated Brick Mason Contractors v. Harrington*,
   820 F.2d 31 (2d Cir. 1987) ..................................................................................2, 3

*AT&T Technologies, Inc. v. Communication Workers of Amer.*,
   475 U.S. 643, 106 S. Ct. 1415 (1986) .......................................................................2

*Beljakovic v. Melohn Properties, Inc.*,
   542 F. Supp. 2d 238 (S.D.N.Y. 2005) ......................................................................1

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002) .....................................................................................9

*Bey v. Welsbach Elec. Corp.*,
   01 Civ. 2667 (LAP), 2001 WL 863419 (S.D.N.Y. July 30, 2001) ............................4

*Brown v. ITT Consumer Financial Corp.*,
   211 F.3d 1217 (11th Cir. 2000) ................................................................................9

*Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*,
   04 Civ. 0299 (DAB), 2004 WL 1386145 (S.D.N.Y. June 22, 2004) ........................7

*Carcich v. Rederi A/B Nordie*,
   389 F.2d 692 (2d Cir. 1968) ..................................................................................7, 8

*Caterpillar Inc. v. Williams*,
   482 U.S. 386, 107 S. C. 2425 (1987)........................................................................3

*Ciago v. Ameriquest Mortgage Co.*,
   295 F. Supp. 2d 324 (S.D.N.Y. 2003) ..................................................................4, 7

*Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*,
   242 F.3d 52 (2d Cir. 2001) .......................................................................................7

*Cronas v. Willis Group Holdings Ltd.*,
   06 Civ. 15295 (GEL), 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007) .....................6

*DiCrisci v. Lydon Guaranty Bank of New York*,
   807 F. Supp. 947 (W.D.N.Y. 1992)..........................................................................9

*Dougherty v. American Tel. and Tel. Co.*,
 902 F.2d 201 (2d Cir. 1990) ............................................................................................3, 4

*EEOC v. Waffle House, Inc.*,
 534 U.S. 279, 122 S.Ct. 754 (2002) .....................................................................................9

*Elwell v. Google, Inc.*,
 05 Civ. 6498 (DLC), 2006 WL 217978 (S.D.N.Y. Jan. 30, 2006)......................................6

*First Options of Chi, Inc. v. Kaplan*,
 514 U.S. 938, 115 S. Ct. 1920 (1995) ..................................................................................4

*Gold v. Deutsche Aktiengesellschaft*,
 365 F.3d 144 (2d Cir. 2004) .............................................................................................4, 6

*Hall v. Metlife Resources/Div. of Metropolitan Life Ins Co.*,
 1995 WL 258061 (S.D.N.Y. May 3, 1995) .........................................................................6

*Hoffman v. Aaron Kamhi, Inc.*,
 927 F. Supp. 640 (S.D.N.Y. 1996) ......................................................................................7

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
 387 F.3d 163 (2d Cir. 2004) ................................................................................................6

*Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*,
 434 F. Supp. 2d 211 (S.D.N.Y. 2006) .................................................................................8

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
 274 F.3d 706 (2d Cir. 2001) ................................................................................................9

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
 67 F.3d 20 (2d Cir. 1995) ....................................................................................................8

*Liles v. New York City Dept. of Educ.*,
 516 F. Supp. 2d 297, (S.D.N.Y. 2007) ................................................................................9

*Marie v. Allied Home Mortgage Corp.*,
 402 F.3d 1 (1st Cir. 2005).................................................................................................8, 9

*Maye v. Smith Barney Inc.*,
 897 F. Supp. 100 (S.D.N.Y. 1995) ......................................................................................4

*NY HHS Union*,
 1199/SEIU v. NYU Hospitals Center, 343 F.3d 117 (2d Cir. 2003)....................................3

*Oldroyd v. Elmira Savings Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998) .................................................................................... 5, 6

*Perry v. New York Law School*,
    03 Civ. 9221 (GBH), 2004 WL 1698622 (S.D.N.Y. July 28, 2004) ......................... 7

*Powers v. Fox Television Stations, Inc.*,
    923 F. Supp. 21 (S.D.N.Y. 1996) .............................................................................. 6

*Sablovsky v. Gordon Co.*,
    73 N.Y.2d 133, 535 N.E.2d 643, 538 N.Y.S.2d 513, (1989) .................................... 6

*Santos v. GE Capital*,
    397 F. Supp. 2d 350 (D. Conn. 2005) ....................................................................... 9

*Spencer-Franklin v. Citigroup/Citibank N.A.*,
    06 Civ. 3475 (GBD) (GWG), 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007) ............. 6

*United Paperworkers Union v. Misco, Inc.*,
    484 U.S. 29, 108 S. Ct. 364 (1987) ........................................................................... 3

*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005) .................................................................................... 10

*Vera v. Saks & Co.*,
    424 F. Supp. 2d 694 (S.D.N.Y. 2006) ....................................................................... 4

<u>Statutes</u>

29 U.S.C. § 159(a) ............................................................................................................. 3

9 U.S.C. § 1 ........................................................................................................................ 4

# ARGUMENT

## Point I.

### THE PURPORTED INVALIDITY OF PLAINTIFF'S INDIVIDUAL AGREEMENT TO ARBITRATE IS WITHIN THE EXCLUSIVE PURVIEW OF ARBITRATION UNDER THE IWA.

Plaintiff does not dispute that he signed an arbitration agreement that provides for binding arbitration of "any disputes with respect to [his] employment by Starwood." (Starr Decl. [*Dkt No. 8*], ¶ 3 & Exh. A.) The broad language of this provision undoubtedly encompasses all the statutory anti-discrimination claims he asserts. (*See* Point II, *infra*). Plaintiff attempts to evade his agreement to arbitrate by contending that it is rendered "Void and Unenforceable" by the collective bargaining agreement ("*CBA*") governing the terms and conditions of Plaintiff's employment with Starwood. (Pltf. Mem. at 4.)

At the outset, any CBA governing Plaintiff's employment could not, as a matter of law, control Plaintiff's ability to assert a federal employment-discrimination claim, nor the forum in which he choose to assert it. See *Beljakovic v. Melohn Properties, Inc.*, 542 F. Supp. 2d 238, 244 (S.D.N.Y. 2005) ("only an individual can determine in what forum he will vindicate" rights under federal anti-discrimination laws). Even assuming *arguendo*, however, that a CBA were legally material to Plaintiff's individual agreement to arbitrate discrimination disputes, the CBA on which he relies itself contains a broad arbitration clause. Therefore, whether or not the CBA governing Plaintiff's employment invalidates his individual arbitration agreement with Starwood is an issue that must be decided by the arbitrator, not the courts.

Starwood is an employer subject to the Industry-Wide Agreement ("IWA") entered into between a union representing New York City hotel workers and a trade association of New York

City hotels. The IWA contains an exceedingly broad arbitration clause, which states in pertinent part as follows:

> All complaints or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, *or any acts, conduct or relations between the parties, directly or indirectly*, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairman.

(*See* Thompson Decl. [*Dkt No. 13*], ¶ 2 & Exhibit 1, at 30-32 (emphasis added).) Plaintiff's assertion that the IWA "deprived Mr. Mendez and Starwood alike of the capacity to enter into" the individual arbitration agreement at issue here (Pltf. Mem. at 5) or that Starwood's doing so is "antithetical to national labor policy" (*id.*) is a dispute "involving . . . application" of the IWA. At the very least, it is a dispute "arising" from an "act[], conduct or relation" of the parties "directly or indirectly." This means that it must be resolved by – and only by – the Impartial Chairman selected under the IWA to "adjust[]" all such disputes. Plaintiff cannot depend upon the IWA in his attempt to invalidate his individual arbitration agreement while simultaneously ignoring the arbitration procedures it itself adopts.

It is well-established that court review of the arbitration clause of a CBA is "quite narrow," and that such clauses enjoy

> a presumption of arbitrability that can be overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' . . . [A court] will order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract, even if the claim appears to be frivolous.

*Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 35 (2d Cir. 1987), quoting *AT&T Technologies, Inc. v. Communication Workers of Amer.*, 475 U.S. 643, 106 S. Ct. 1415 (1986). As in *Associated Brick*, the arbitration provision in the IWA "could hardly be broader"

and mirrors the arbitration clause in that case, which covered disputes involving "any acts, conduct or relations between the parties . . . directly or indirectly, claiming to be aggrieved." 820 F.2d at 35-36. Accordingly, whether the IWA invalidates Plaintiff's individual agreement to arbitrate can itself be decided only by arbitration under the IWA.

Also, when determining arbitrability of a claim, "courts should not stray into the merits of the underlying grievance." *NY HHS Union, 1199/SEIU v. NYU Hospitals Center*, 343 F.3d 117, 119 (2d Cir. 2003). Thus, the merit of Plaintiff's assertion of invalidity is not before this Court.[1]

Moreover, federal labor law mandates that unionized employees exhaust the grievance and arbitration procedures laid out in their CBA before asserting such contractual claims in federal court. *See United Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S. Ct. 364, 370 (1987). Plaintiff does not allege that he has ever attempted to assert a grievance under the IWA that his individual arbitration agreement with Starwood is "void and unenforceable" by operation of the IWA – let along that he has exhausted those processes. Accordingly, this Court has no jurisdiction to decide whether that individual agreement is invalidated by the IWA – only the Impartial Chairman can rule on that. *See Dougherty v. American Tel. and Tel. Co.*, 902 F.2d

---

[1] It needs nonetheless to be noted that Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), expressly provides as follows:

> [A]ny individual employee . . . shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect.

Accordingly, contrary to what Plaintiff asserts, his individual agreement to arbitrate disputes of purported employment discrimination with Starwood is not the least bit "antithetical" to federal labor law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396, 107 S. C. 2425, 2431 (1987) ("individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee").

201, 203 (2d Cir. 1990); *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 703-04 (S.D.N.Y. 2006); *Bey v. Welsbach Elec. Corp.*, 01 Civ. 2667 (LAP), 2001 WL 863419, at *3 (S.D.N.Y. July 30, 2001).

## Point II.

### PLAINTIFF'S UNAMBIGUOUS AGREEMENT TO ARBITRATE "DISPUTES" CONCERNING "[HIS] EMPLOYMENT" APPLIES TO THE EMPLOYMENT DISCRIMINATION CLAIMS ASSERTED IN HIS COMPLAINT.

Plaintiff does not dispute that he signed an agreement to submit to "binding arbitration" "any disputes" that he might have with Starwood "with respect to [his] employment." Under well-settled Second Circuit law, neither the absence of explicit reference to specific anti-discrimination statutes nor Plaintiff's purported lack of understanding of the agreement he signed is enough to relieve him of his contractual duty to arbitrate.

Whether the parties have entered into a binding agreement to arbitrate that the federal courts will enforce under the Federal Arbitration Act ("*FAA*"), 9 U.S.C. § 1 *et seq.*, is determined by state contract law. *See First Options of Chi, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995); *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003). New York law has no special rules regarding a signatory's asserted knowledge of the agreement he or she chose to sign, which is legally binding regardless of whether he or she chose to read it. *See, e.g., Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004); *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108 (S.D.N.Y. 1995) (one who signs a written contract "is *conclusively presumed* to know its contents and to assent to them") (emphasis added). Thus, despite Plaintiff's self-serving assertions that he did not know what the letter "meant" when it was presented to him by his supervisor (Mendez Aff. [*Dkt No. 14*], ¶ 6), he is nonetheless bound to the letter he signed.

There is also no requirement that an agreement to arbitrate disputes "with respect to [Plaintiff's] employment" specifically refer to "employment discrimination" to be applicable to such claims. Thus, contrary to what Plaintiff insinuates, it need not be shown that he "knowingly" understood himself to be "waiving" a right to litigate in federal courts. Just the opposite is true. As the Second Circuit said in *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72 (2d Cir. 1998) – which was cited by Starwood in its opening brief but is ignored by Plaintiff – because federal policy so strongly favors arbitration, courts "will construe arbitration clauses as broadly as possible, resolving any doubts concerning the scope of arbitrable issues in favor of arbitration," even for alleged violation of an anti-discrimination statute. *Id*. at 76. (quotation and citation omitted)

In *Oldroyd*, the Court of Appeals vacated a district court order denying a stay and remanded with instructions to compel arbitration, giving full effect to what it termed a "prototypical broad arbitration provision." That clause required arbitration of "any dispute, controversy or claim arising under or in connection with [the plaintiff's employment agreement]." *Id*. As the court explained, "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted disputed*." *Id*. (emphasis in original). On that basis, it found that the agreement to arbitrate disputes "arising . . . in connection with" Oldroyd's employment contract encompassed that plaintiff's Title VII claim for retaliatory discharge. *Id*. at 76-77.

Here, the arbitration clause is even more all-encompassing than was the "prototypical[ly] broad" clause in *Oldroyd*. The critical issue is therefore not what Plaintiff understood about his "right to litigate" but whether his agreement to arbitrate "any dispute with respect to [his]

employment" is "susceptible of an interpretation" that extends to the matters asserted in his federal Complaint. That it assuredly is.

Notwithstanding Plaintiff's contrary assertion, there is no special rule for employment discrimination claims. *Oldroyd* made this clear as well:

> "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." . . . "If the allegations underlying the claims 'touch matters' covered by the parties' contracts, then those claims must be arbitrated whatever legal labels attached to them."

134 F.3d at 77 (citation omitted); *see also JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 173 (2d Cir. 2004).

Not surprisingly, therefore, where, as here, there is a "broad agreement to arbitrate," courts have regularly compelled arbitration of claims under federal and state anti-discrimination statutes, regardless of whether the arbitration clause at issue explicitly referenced those statutes or included a talismanic incantation of the phrase "employment discrimination." *See, e.g., Gold*, 365 F.3d at 147-48; *Spencer-Franklin v. Citigroup/Citibank N.A.*, 06 Civ. 3475 (GBD) (GWG), 2007 WL 521295, at *1-3 (S.D.N.Y. Feb. 21, 2007); *Elwell v. Google, Inc.*, 05 Civ. 6498 (DLC), 2006 WL 217978, at *2-4 (S.D.N.Y. Jan. 30, 2006); *Powers v. Fox Television Stations, Inc.*, 923 F. Supp. 21, 24 (S.D.N.Y. 1996); *Hall v. Metlife Resources/Div. of Metropolitan Life Ins Co.*, 1995 WL 258061, at *3-4 (S.D.N.Y. May 3, 1995); *Sablovsky v. Gordon Co.*, 73 N.Y.2d 133, 135, 138, 535 N.E.2d 643, 644, 646, 538 N.Y.S.2d 513, 515, 516 (1989).

Plaintiff's cases are not to the contrary. For example, *Cronas v. Willis Group Holdings Ltd.*, 06 Civ. 15295 (GEL), 2007 WL 2739769, at *11-12 (S.D.N.Y. Sept. 17, 2007), involved a narrow arbitration clause limited to disputes "arising under" the plaintiff's employment contract, which distinguished that case from the clause in *Oldroyd*, which encompassed disputes arising

under or "in connection with" that plaintiff's contract. Similarly, in *Hoffman v. Aaron Kamhi, Inc.*, 927 F. Supp. 640 (S.D.N.Y. 1996), a clause limited to claims "pertaining to the Corporations" or to differences as to "the interpretation of any of the provisions of this Agreement" was ruled not to encompass federal statutory claims. *Id.* at 645. But, in neither case was there the prototypically broad clause that Plaintiff Mendez signed.

In other cases cited by Plaintiff, the court actually compelled arbitration. *See Perry v. New York Law School*, 03 Civ. 9221 (GBH), 2004 WL 1698622, at *2 (S.D.N.Y. July 28, 2004); *Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, 04 Civ. 0299 (DAB), 2004 WL 1386145, at *6 (S.D.N.Y. June 22, 2004); *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003). While the arbitration provision in some of these cases may have referenced an anti-discriminatory statute, the decisions nowhere stated that the omission of such language would have led to a different result.[2]

**Point III.**

**PLAINTIFF'S WAIVER AND ESTOPPEL CLAIMS
ARE ALL CONTRARY TO SECOND CIRCUIT LAW.**

Plaintiff further contends that Starwood has waived, or is somehow estopped from asserting, its right to arbitrate by not having demanded it before this lawsuit was ever commenced. That contention has no basis in law.

The Second Circuit has held that waiver of the right to arbitrate "is not to be lightly inferred." *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001)(internal citation omitted); *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696

---

[2] Indeed, in *Perry,* the arbitration clause referenced only a "violat[ion] of any federal, state or local law," saying nothing about "discrimination" and referencing no particular statute – which is no more specifically targeted to the "right to litigate" discrimination claims than is the clause that Plaintiff Mendez signed.

(2d Cir. 1968). Moreover, the existence or not of such waiver must be decided "with a healthy regard for the policy of promoting arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

In *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211 (S.D.N.Y. 2006), this Court rejected a waiver argument even though the arbitration defense was not asserted until *after* the defendant's Rule 12(b)(6) motion to dismiss – and re-argument thereof – had been denied. If an employer can, as in *Jung*, seek first a court ruling on the legal sufficiency of a plaintiff's claim and only then demand arbitration without effecting a waiver, then surely Starwood cannot have waived a right it asserted in its very first pleading.

Plaintiff's purported reliance on *Leadertex* ignores its focus on "the amount of *litigation*" (usually exchanges of pleadings and discovery) that has occurred and the time elapsed since the "commencement of *litigation* to the request for arbitration." 67 F.3d at 25 (emphasis added). Furthermore, even an extended delay in litigation does not result in waiver unless it causes prejudice, and pretrial expense and delay are not, without more, prejudice sufficient to establish waiver. *Id.* at 26. Such prejudice has only been found in cases like *Leadertex*, where the party seeking arbitration did so "[o]nly at the eleventh hour, with trial eminent" and where the existence of the opposing party's business was threatened by further delay. *Id.* That is clearly not this case.

Nor can a waiver be inferred from Starwood's defense of Mr. Mendez's claims before the New York State Division of Human Rights (the "*SDHR*"). Participation in proceedings before administrative agencies responsible for enforcing fair employment laws, such as the Equal Employment Opportunity Commission or the SDHR, is *not* a waiver of the right to arbitrate such claims – period. *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005); *Brown v.*

*ITT Consumer Financial Corp.*, 211 F.3d 1217, 122-23 (11th Cir. 2000) (employer has "no obligation to make a pre-suit demand for arbitration"); *Santos v. GE Capital*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) (participation in a one-day mediation conducted by EEOC does not constitute waiver); *DiCrisci v. Lydon Guaranty Bank of New York*, 807 F. Supp. 947, 954 (W.D.N.Y. 1992); *cf. Liles v. New York City Dept. of Educ.*, 516 F. Supp. 2d 297, 314 n.19 (S.D.N.Y. 2007) (timeliness argument not raised before EEOC not waived).[3] Indeed, under Second Circuit law, whether a party's pre-litigation conduct constitutes a waiver is something to be decided by the arbitrator, not the courts. *See Bell v. Cendant Corp.*, 293 F.3d 563, 569-70 (2d Cir. 2002).

Plaintiff's estoppel contentions are equally as untenable. An employer is not estopped from demanding arbitration by its failure to raise the issue of arbitration with the SDHR or the EEOC. *See DiCrisci v. Lyndon Guar. Bank of New York*, 807 F. Supp. 947, 954 (W.D.N.Y. 1992).

Nor have the formal elements of estoppel been shown. Agreeing to accept service of Plaintiff's federal complaint while not "hint[ing]" at the existence of an arbitration agreement, as Plaintiff contends, is not a misrepresentation of fact on which Plaintiff could or did rely. *See Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Indeed, Plaintiff points to no actual statement to him of any kind made by Starwood that relates to arbitration one way or the other. That Starwood elected not to assert a particular defense in its

---

[3] As the First Circuit noted in *Marie*, engaging in arbitration with the employee would not halt the agency investigation, which was especially made clear by the Supreme Court's decision in *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297-98, 122 S.Ct. 754, 766-67 (2002). Requiring employers to demand arbitration during pendency of the EEOC or other administrative investigation of employment discrimination charge on pain of waiving their right to arbitrate is, therefore, "a waste of resources and is contrary to the general purposes of the FAA." 402 F.3d at 16.

Answer to the SDHR but asserts that defense here is not the affirmative assertion of necessarily inconsistent positions, which is what judicial estoppel requires, *see Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005); nor did any prior tribunal adopt or rely upon any purported inconsistent assertion, *see id.* at 146, 148, since Plaintiff voluntarily aborted the SDHR proceedings before any final determination on his claims or Starwood's defenses was ever made.

Plaintiff's waiver and estoppel contentions are even more untenable given that this lawsuit is so much broader than what was at issue before the SDHR. Plaintiff's complaint there challenged only denial of a change of work shifts (*see* Thompson Decl. [*Dkt No. 13*], ¶ 4 & Exhibit 3). This lawsuit, however, places harassment and ridicule front and center, and allocates only eight of its over 100 paragraphs to the issue of schedule change. Even Plaintiff's second SDHR complaint (*see* Thompson Decl. [*Dkt No. 13*], ¶ 7 & Exhibit 6) alleges only incidents that are recent and mild compared to what he alleges in this lawsuit. Because Starwood's had no notice that Plaintiff's federal lawsuit would so dramatically expand on the limited scope of his SDHR allegations, there was nothing untoward or misleading in Starwood's delaying its demand for arbitration until after it knew what Plaintiff was actually intending to allege in this Court.

## CONCLUSION

For all the foregoing reasons, defendant's motion to dismiss the complaint and compel arbitration should be granted.

Dated: New York, New York  
       July 18, 2008

HOGAN & HARTSON LLP

By: _____/s/_____  
Michael Starr (MS 6851)  
Christine M. Wilson (CW 3440)  
875 Third Avenue  
New York, New York 10022  
Tel: (212) 918-3000  
Fax: (212) 918-3100  
*Attorneys for Defendant*