UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOISES MENDEZ,

Plaintiff,

v.

STARWOOD HOTELS AND RESORTS WORLDWIDE, INC.,

Defendant.

08-CIV-4967 (CM) (KNF)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

Michael Starr (MS 6851)
Christine M. Wilson (CW 3440)
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10002
(212) 918-3000
*Attorneys for Defendant*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................ 1

STANDARD FOR RECONSIDERATION ........................................ 2

ARGUMENT ........................................ 3

1. HAVING MISPERCEIVED THE SECTION 9(A) PROVISO AND *CATERPILLAR, INC. V. WILLIAMS*, THE COURT SHOULD ENFORCE PLAINTIFF'S INDIVIDUAL AGREEMENT TO ARBITRATE STATUTORY CLAIMS AS BEING FULLY CONSISTENT WITH FEDERAL LABOR LAW. ........................................ 3

2. THE COURT FAILED TO CONSIDER THAT UNDER *GARDNER-DENVER* AND ITS PROGENY, PLAINTIFF'S UNION WAS PRECLUDED FROM WAIVING HIS RIGHT TO BRING HIS STATUTORY CLAIMS TO A JUDICIAL FORUM OR TO ARBITRATION, AS *HE* CHOSE. ........................................ 9

CONCLUSION ........................................ 13

# TABLE OF AUTHORITIES

Federal Cases

*14 Penn Plaza, LLC v. Pyett*,
--- U.S. ----, 128 S. Ct. 1223 (Feb. 19, 2008) .......... 10

*Air Line Pilots Ass'n v. Northwest Airlines*,
199 F.3d 477 (D.C. Cir. 1999) .......... passim

*Alexander v. Gardner-Denver Co.*,
415 U.S. 36, 94 S. Ct. 1011 (1974) .......... 5, 9

*Barrentine v. Arkansas-Best Freight System, Inc.*,
450 U.S. 728, 101 S. Ct. 1437 (1981) .......... 5

*Beljakovic v. Melohn Properties, Inc.*,
542 F. Supp. 2d 238 (S.D.N.Y. 2005) .......... passim

*Belknap Inc. v. Hale*,
463 U.S. 491, 103 S. Ct. 3172 (1983) .......... 5

*Berda v. CBS, Inc.*,
881 F.2d 20 (3rd Cir. 1989) .......... 5

*Branson v. Greyhound Lines*,
126 F.3d 747 (5th Cir. 1997) .......... 5

*Caterpillar Inc. v. Williams*,
482 U.S. 386, 107 S. Ct. 2425 (1987) .......... 1, 3, 5, 6

*Cole v. Burns Int'l Security Servs.*,
105 F.3d 1465 (D.C. Cir. 1997) .......... 8

*Commer v. American Federation of State, County and Mun. Employees*,
272 F. Supp. 2d 332 (S.D.N.Y. 2003) .......... 8

*Dayton Newspapers, Inc. v. NLRB*,
402 F.3d 651 (6th Cir. 2005) .......... 7

*Doe v. New York City Dept. of Social Services*,
709 F.2d 782 (2d Cir. 1983) .......... 2

*Effron v. Sun Lines Cruises, Inc.*,
158 F.R.D. 39 (S.D.N.Y. 1994) .......... 2

*Farkas v. Ellis*,
783 F. Supp. 830 (S.D.N.Y.) ........................................................................................2

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 111 S. Ct. 1647 (1991) ......................................................................11

*Herrera v. Katz Comm'ns, Inc.*,
532 F. Supp. 2d 644 (S.D.N.Y. 2008) ......................................................................8

*J.I. Case v. NLRB*,
321 U.S. 332, 64 S. Ct. 576 (1944) ....................................................................3-4, 7

*Japan Air Lines Co. v. International Ass'n of Machinists*,
538 F.2d 46 (2d Cir. 1976) ..........................................................................................7

*Loewen Group Intern. Inc. v. Haberichter*,
65 F.3d 1417 (7th Cir. 1995) ........................................................................................5

*Metropolitan Edison Co. v. NLRB*,
460 U.S. 693, 103 S. Ct. 1467 (1983) ......................................................................5

*NLRB v. Allis-Chalmers Mfg. Co.*,
388 U.S. 175, 87 S. Ct. 2001 (1967) ....................................................................1, 4

*NLRB v. Local 32B-32J Serv. Employees Int'l Union*,
353 F.3d 197 (2d Cir. 2003) ........................................................................................8

*Pyett v. Pennsylvania Bldg. Co.*,
498 F.3d 88 (2d Cir. 2007) ........................................................................................10

*Rogers v. New York University*,
220 F.3d 73 (2d Cir. 2000) ........................................................................................10

*San Diego Building Trades Counsel Millmens Union Local 2020 v. Garmon*,
359 U.S. 236, 79 S. Ct. 773 (1959) ..........................................................................7

*Smart v. Goord*,
04 Civ. 8850 (RWS), 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008)..............................2

*Virga v. Big Apple Constr. & Restoration Inc.*
--- F. Supp. 2d ----, No. 05.CIV.0200(CM), 2008 WL 1849773 (S.D.N.Y. Apr. 22, 2008)..........................................................................................................2

*Walsh v. WOR Radio*,
531 F. Supp. 2d 623 (S.D.N.Y. 2008) ....................................................................5, 8

*Wisconsin Dept. of Industry, Labor and Human Relations v. Gould Inc.*,
475 U.S. 282, 106 S. Ct. 1057 (1986) ......................................................................7

Federal Statutes

29 U.S.C. § 151 .......... 3

45 U.S.C. § 152 .......... 7

Other Authorities

*Dayton Newspapers*, 339 NLRB 650 (2003) .......... 7

*Borden, Inc.*, 279 NLRB 396 (1986) .......... 7

Defendant, Starwood Hotels and Resorts Worldwide, Inc. ("*Starwood*"), submits this Memorandum of Law in support of its motion for reconsideration pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

**PRELIMINARY STATEMENT**

In this action, Starwood sought to dismiss the Complaint and compel arbitration based upon an employment letter dated April 7, 2004 and signed by Plaintiff that contained an agreement to arbitrate "any disputes with respect to his employment."

In its Decision and Order dated July 29, 2008 (the "*Decision*"), the Court, adopting Plaintiff's position, ruled the arbitration agreement to be unenforceable by operation of law, relying solely on one clause of Section 9(a) of the National Labor Relations Act ("*NLRA*") and dicta from a fifty-year-old opinion of the Supreme Court on an unrelated issue, namely, *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S. Ct. 2001 (1967). With respect, the Court failed to address other authority cited by Defendant, including the proviso to Section 9(a) of the NLRA and the Supreme Court's subsequent decision in *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425 (1987), which make clear that individual agreements concerning individual grievances of an employee are fully enforceable provided only that there is no conflict with the applicable collective bargaining agreement.

Moreover, the Court failed to consider this Court's earlier decision in *Beljakovic v. Melohn Properties, Inc.*, 542 F. Supp. 2d 238 (S.D.N.Y. 2005), which was also cited on Defendant's motion papers and which expressly stated that union-represented employees may, if they choose, waive their right to a judicial forum for statutory discrimination claims by signing an individual arbitration agreement. Because, by law, the collective bargaining agreement

cannot speak to employees' arbitration of statutory discrimination claims, it follows that an individual agreement to arbitrate such claims cannot intrude on the collective representative's authority to bargaining over the "terms and conditions of employment." At least one court of appeals has applied just this logic to conclude that individually agreed-to arbitration of statutory discrimination claims does not violate or conflict with collective bargaining. *See Air Line Pilots Ass'n v. Northwest Airlines*, 199 F.3d 477 (D.C. Cir. 1999). Neither Plaintiff nor the Court has cited any case to the contrary.

Accordingly, because the Court's Decision overlooked controlling authority that would have required a different result and was, respectfully, a clear error and manifest injustice, the order denying Starwood's motion to dismiss and compel arbitration should be reconsidered and, upon reconsideration, reversed.

## STANDARD FOR RECONSIDERATION

Under Local Rule 6.3 of the Southern District, a motion for reconsideration should be granted when the movant demonstrates that the court overlooked matters or, as is applicable here, controlling decisions that, had they been considered, would have required a different result or "might have influenced [the Court's] decision." *Effron v. Sun Lines Cruises, Inc.*, 158 F.R.D. 39, 40 (S.D.N.Y. 1994); *see also Farkas v. Ellis*, 783 F. Supp. 830, 834 (S.D.N.Y 1992.), *aff'd*, 979 F.2d 845 (2d Cir. 1992). Furthermore, reconsideration may also be granted "to correct clear error [or] prevent manifest injustice. . . ." *Virga v. Big Apple Constr. & Restoration Inc.*, --- F. Supp. 2d ----, No. 05 Civ. 0200 (CM), 2008 WL 1849773, at *6 (S.D.N.Y. Apr. 22, 2008) (McMahon, J.) (internal quotations omitted); *see also Doe v. New York City Dep't. of Social Services*, 709 F.2d 782 (2d Cir. 1983); *Smart v. Goord*, No. 04 Civ. 8850 (RWS), 2008 WL 591230, at *1 (S.D.N.Y. Mar. 3, 2008).

For the reasons stated below, Defendant submits that grounds for reconsideration are fully satisfied here.

## ARGUMENT

### 1. Having Misperceived The Section 9(a) Proviso and *Caterpillar, Inc. v. Williams*, The Court Should Enforce Plaintiff's Individual Agreement to Arbitrate Statutory Claims As Being Fully Consistent With Federal Labor Law.

In its Decision, the Court asserts there to be an "absolute bar" against separately-negotiated agreements by union-represented employees and their employers, and that the only exception is if the dispute does not concern a "term" or "condition" of employment. (Decision at 2.) With respect, this incorrectly states the law and fails to consider the proviso to Section 9(a) and the Supreme Court's decision in *Caterpillar, Inc.*, 482 U.S. at 396, 107 S.Ct. at 2431, both of which were previously put before the Court (*see* Def. R. Mem. at 3, n. 1).

The National Labor Relations Act ("*NLRA*"), 29 U.S.C. § 151, *et seq.*, itself and case law construing it have made clear for over 60 years that individual agreements concerning terms and conditions of employment are perfectly permitted – as are, even more so, agreements to adjust grievances, like Plaintiff's arbitration agreement here – as long as those agreements are not inconsistent with the applicable collective bargaining agreement.

The Court's Decision quotes the first clause of Section 9(a) of the NLRA, but fails to mention the proviso to Section 9(a) immediately following the cited language, which states as follows:

> *Provided*, That any individual employee . . . shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect.

Congress enacted this proviso shortly after the Supreme Court's decision *J.I. Case v. NLRB*, 321

U.S. 332, 339, 64 S. Ct. 576, 581 (1944). In *J.I. Case*, the Supreme Court determined that individual employment agreements did not bar union representation proceedings. In the course of its analysis, the Court stated what has been the law for over sixty years, which is that there is nothing "to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice." *Id.*

Twenty years later, in *Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S. Ct. 2001 (1967), the Court did not contradict or overturn *J.I. Case*, but rather favorably cited to it when it stated the following:

> National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees. 'Congress has seen to fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents . . . .' Thus only the union may contract the employee's terms and conditions of employment, and provisions for processing his grievances; the union may even bargain away his right to strike during the contract term, and his right to refuse to cross a lawful picket line. The employee may disagree with many of the union decisions but is bound by them. 'The majority-rule concept is today unquestionably at the center of our federal labor policy.'

*Allis-Chalmers*, 388 U.S. at 180, 87 S. Ct. at 2006 (footnotes and citations omitted).

Thus, the Court in *Allis-Chalmers* merely reiterated the concept of majority rule as a long-standing principle of federal labor law and limited "an individual employee's power to order his own [economic] relations" with his employer, but it no way negated the right to individual employees to adjust their grievances directly with their employer, as authorized by the Section 9(a) proviso, or to enter into individual agreements not inconsistent with the collective

bargaining agreement, as previously acknowledged in *J.I. Case*. More particularly, the *Allis-Chalmers* Court ruled that unions could lawfully punish members who had crossed a picket line – a clear instance of employees "pooling their economic strength," but not at all comparable to an employee's individual rights under federal anti-discrimination law, which barely existed at the time *Allis-Chalmers* was decided. The Court's use of the phrase "terms and conditions of employment" nowhere suggests that it includes agreements to arbitrate statutory discrimination claims, which later courts have recognized to involve individual rights not properly subject to collective negotiation. *See* Part II, below.[1]

Subsequent to *Allis-Chalmers*, numerous courts have recognized that individual contracts with employees represented by unions are nonetheless enforceable, as long as they are not inconsistent with their collective bargaining agreements. *See, e.g., Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S. Ct. 3172 (1983); *Branson v. Greyhound Lines, Inc.*, 126 F.3d 747 (5th Cir. 1997); *Loewen Group Int'l., Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995); *Berda v. CBS, Inc.*, 881 F.2d 20, 24-25 (3rd Cir. 1989); *Walsh v. WOR Radio*, 531 F.Supp. 2d 623, 627 (S.D.N.Y. 2008).

Most significant in this regard is *Caterpillar, Inc.,* 482 U.S. at 396, 107 S.Ct. at 2431 (1987), which Defendant had previously cited (Def. R. Mem. at 3 n.1). There, the plaintiffs were allowed to proceed on a breach of contract claim premised on individual employment

---

[1] Indeed, even the power of unions to "restrict the rights of those whom it represents" as recognized in *Allis-Chalmers*, was limited by later Supreme Court decisions both with respect to statutory discrimination claims, *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 945 S. Ct. 1011 (1974) and other statutory rights, *see Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S. Ct. 1437 (1981) (federal wage-and-hour claims), but permitted only as to legal rights directly related to NLRA, *see Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S. Ct. 1467 (1983) (union authority to waive Section 8(a)(3) discrimination claim of union shop steward).

agreements despite the existence of a collective bargaining agreement. Invoking both *J.I. Case* and *Allis-Chalmers*, the Court found that "individual employment contracts *are not inevitably superseded* by any subsequent collective agreement covering an individual employee, and claims based on them may arise under state law." *Caterpillar, Inc.*, 482 U.S. at 396, 107 S. Ct. at 2431 (emphasis added). Indeed, the *Caterpillar* Court went on to affirm as follows:

> [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied on is *not* a collective-bargaining agreement.

*Id.* (emphasis in the original).

Similarly to *Caterpillar*, the state-law contract that Plaintiff Mendez made with Starwood to arbitrate all grievances he had concerning his employment creates a "legal right" that is "independent" of the IWA entered into by his union representative, surely as to purported statutory claims not themselves grounded in that collective agreement.

*Caterpillar* is clearly controlling precedent not addressed in the Decision at issue. Moreover, as Plaintiff Mendez would be empowered under *Caterpillar* to enforce his state-law arbitration agreement against Starwood, it is manifestly unjust to prevent Starwood from asserting it as a defense against Plaintiff Mendez.

In *Air Line Pilots Ass'n*, 199 F.3d 477, *reinstated en banc*, 211 F.3d 1312 (2000), the Court of Appeals for the District of Columbia directly addressed the enforceability of individual agreements to arbitrate statutory discrimination claims in the face of an existing collective bargaining agreement, and it concluded that they were perfectly enforceable. The court in *Air Line Piolts Ass'n* recognized as "well-established" law that employees represented by a union may nonetheless deal directly with their employer on a non-mandatory subject of bargaining, as long as the resulting agreement "is not inconsistent with a collective agreement. . . . " *Id.* at 486

(citing *J.I. Case*, 321 U.S. at 339, 64 S. Ct. at 581). After concluding that arbitration clauses encompassing statutory discrimination claims are not mandatory subjects of bargaining, the court held that federal labor law was "no bar to [the employer's] contracting individually with its employees" to arbitrate statutory discrimination claims. *Air Line Pilots Ass'n,* 199 F.3d at 486. [2]

As this line of case law shows, this Court's assertion that collective bargaining agreements are an "absolute bar" to individual employment agreement is, with respect, a misstatement of the applicable law. Rather, such agreements are enforceable to the extent they are not inconsistent with the collective bargaining agreement, and, in particular, individual agreements to arbitrate statutory discrimination claims or, alternatively stated, to waive a judicial forum for such claims are perfectly valid under federal labor law. Furthermore, to the extent Plaintiff persists in his contention that his individual arbitration agreement actually conflicts with the IWA, that must be decided by the Impartial Chairman, not this Court. (*See* Def. R. Mem. at 1-4.) [3]

---

[2] While *Air Line Pilots* was decided under Section 2, First and Seventh of the Railway Labor Act ("*RLA*"), 45 U.S.C. § 152 First & Seventh, that statute's delegation of exclusive bargaining authority to unions concerning "rates of pay, rules, or working conditions" is substantially equivalent to the NLRA's phrase "terms and conditions of employment," and the D.C. Circuit considered cases under both laws interchangeable in this regard. *See* 199 F.3d at 479, *citing Japan Air Lines Co. v. International Ass'n of Machinists*, 538 F.2d 46, 52 (2d Cir. 1976).

[3] This Court also lacks subject-matter jurisdiction to decide in the first instance whether or not Plaintiff's letter agreement to arbitrate is unenforceable as being in derogation of his Union's rights under Section 9(a) of the NLRA as exclusive collective representative. If that were so, Starwood's effort to enforce the agreement would be an arguable unfair labor practice under Section 8(a)(5) of the NLRA. *See Dayton Newspapers*, 339 NLRB 650, 653 (2003), enfd. in relevant part 402 F.3d 651 (6th Cir. 2005). *But see Borden, Inc.*, 279 NLRB 396 (1986) (no violation of 8(a)(5) where individual agreement related to non-mandatory subject of bargaining). Under well-settled law, however, the National Labor Relations Board ("NLRB") has primary jurisdiction to determine what conduct constitutes an unfair labor practice and what the remedy for such a violation should be, since Congress has entrusted enforcement of the NLRA in the first instance to the NLRB. *See Wisconsin Dep't. of Industry, Labor and Human Relations v. Gould, Inc.*, 475 U.S. 282, 288-89, 106 S. Ct. 1057, 1062 (1986); *San Diego Building Trades Counsel v. Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 780 (1959). Therefore, where a claim is

It bears emphasis that Defendant is seeking to enforce the Plaintiff's arbitration agreement only with respect to his statutory discrimination claims that are asserted in this lawsuit. To the extent the agreement might be broadly construed to apply as well to disputes governed by the IWA, that would not be a basis for ruling the agreement unenforceable *per se* or to deny enforcement of the arbitration agreement as to matters – namely, statutory discrimination claims – that in no way derogate the Union's authority as collective representative. *See Herrera v. Katz Commc'n, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008)(granting motion to compel arbitration and construing possibly unlawful arbitration clause so as to render it enforceable); *Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1483-86 (D.C. Cir. 1997) (same); *cf. NLRB v. Local 32B-32J Serv. Employees Int'l Union*, 353 F.3d 197, 202 (2d Cir. 2003) (clause that arguably violates NLRA § 8(e) should be afforded logically acceptable construction that renders it legal and enforceable). Indeed, it is well settled that because federal law favors arbitration of disputes in the area of labor relation, "any doubt that a dispute is arbitrable must be resolved in favor of arbitrability." *See, e.g., Walsh*, 531 F. Supp. 2d at 628 (internal citation and quotation omitted).

Plaintiff has not cited a single case holding that individual agreements to arbitrate statutory discrimination claims by union-represented employees are *per se* unenforceable. Defendant is not aware of one, other than this Court's decision which, for the reasons stated, should be reconsidered.

---

made that conduct of a party before the court violates the NLRA, the court must decline to hear it because the "NLRA preempts state and federal court jurisdiction of conduct which is arguably prohibited under either § 7 or § 8 of the NLRA." *Commer v. American Federation of State, County and Mun. Employees*, 272 F. Supp. 2d 332, 339 (S.D.N.Y. 2003), *aff'd*, 390 F.3d 203 (2d Cir. 2004).

**2. The Court Failed To Consider That Under *Gardner-Denver* And Its Progeny, Plaintiff's Union Was Precluded From Waiving His Right To Bring His Statutory Claims To A Judicial Forum Or To Arbitration, As *He* Chose.**

In its Decision, this court impliedly determined that Plaintiff's letter agreement to arbitrate statutory discrimination claims was an agreement concerning "a term and condition of [his] employment" (Decision at 2) or, in labor law parlance, a mandatory subject of bargaining. Under Second Circuit law, however (which Defendant accepted for the purposes of its motion, *see* note 5, below), unions cannot waive an individual employee's rights under anti-discrimination statutes, and therefore an agreement to arbitrate such disputes is decidedly *not* a term and condition of his employment over which his Union has exclusive authority or, indeed, any authority at all.

The Supreme Court's decision in *Gardner-Denver,* 415 U.S. 36, 94 S. Ct. 1011 (1974), is the starting point of analysis for the scope of a union's authority with respect to the arbitration of statutory discrimination claims.[4] As is pertinent here, the Court there stated as follows:

> It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, *stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities*. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, *the rights conferred can form no part of the collective-bargaining process* since waiver of these rights would defeat the paramount congressional purpose behind Title VII.

*Gardner-Denver,* 415 U.S. at 51, 94 S. Ct. at 1021 (emphasis added)(internal citation omitted). *Gardner-Denver* thus expressly distinguishes an individual employee's rights under Title VII (or

[4] While Defendant did not explicitly cite *Gardner-Denver* in its Reply Memorandum, it did cite *Beljakovic,* 542 F. Supp. 2d at 238 (*see* Def. R. Mem. at 1), which expressly relied on *Gardner-Denver* and its Second Circuit progeny. The *Beljakovic* decision is addressed below.

other anti-discrimination statute) from those types of collective economic conditions of employment that the Court addressed in *Allis-Chalmers*.

Applying the Supreme Court's *Gardner-Denver* analysis, the Second Circuit has twice expressly ruled that the mandatory arbitration provisions of a collective bargaining agreement cannot prevent union-represented employees from bringing their statutory discrimination claims to federal court. *See Pyett v. Pennsylvania Bldg. Co.,* 498 F.3d 88, 93-94 (2d Cir. 2007), *cert. granted sub nom. 14 Penn Plaza, LLC v. Pyett*, --- U.S. ----, 128 S. Ct. 1223 (Feb. 19, 2008); *Rogers v. New York University*, 220 F.3d 73 (2d Cir. 2000).

It necessarily follows from the *Pyett/Rogers* interpretation of *Gardner-Denver* that if individual employees cannot be compelled by their union to arbitrate their statutory discrimination claims under the labor agreement, they cannot be prohibited by their union from pursuing such claims in arbitration, rather than in court. Plaintiff Mendez previously voluntarily agreed to submit employment disputes, including statutory discrimination claims, to arbitration under the auspices of the American Arbitration Association ("*AAA*"). While he now tries to avoid that prior agreement, this was his choice to make, and it is not rendered invalid by the mere fact that he is represented by a labor union.

That was exactly the conclusion of the District of Columbia Circuit in *Air Line Pilots Ass'n, supra*, and of this Court itself in *Beljakovic,* 542 F. Supp.2d at 238. Defendant is aware of no contrary authority, and the implications of *Gardner-Denver* for the matter at issue were, with respect, simply not addressed by the Decision at issue.

In *Northwest Airlines*, the District of Columbia Circuit expressly considered whether *Gardner-Denver* requires courts to enforce individual agreements to arbitrate statutory discrimination claims and concluded that it did. There, the court reversed a district court

injunction against the employer's use of individual arbitration agreements, reasoning as follows: "Because *Gardner-Denver* precludes [the union] from agreeing to binding arbitration of individual statutory claims, we conclude that the Arbitration Clause is not a mandatory subject of bargaining." *Air Lines Pilots Ass'n.*, 199 F.3d at 485. The D.C. Circuit then, in words directly applicable here, reasoned as follows:

> [A]s we read *Gardner-Denver* and *Gilmer [v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S. Ct. 1647 (1991)], [the union] can have no role in negotiating obligatory procedural rules for arbitration of individual statutory claims. Read together those cases establish that *only the individual can determine in what forum he will vindicate his statutory rights*, and this choice should not be burdened by the majoritarian concerns that motivate a union."

*Air Lines Pilots Ass'n.*, 199 F.3d at 485-86 (emphasis added). This, in turn, required that an arbitration provision going to statutory claims is not inconsistent with a collective bargaining agreement – the employer is not changing anyone's obligations under the collective bargaining agreement or avoiding dealing with a union on a mandatory subject of bargaining. *Id.* at 486.

This Court itself came to exactly that same conclusion in *Beljakovic*, 542 F. Supp. 2d 238 at 242, which Defendant previously cited (Def. R. Mem. at 1), but which was not addressed in the Court's Decision. In *Beljakovic*, this Court gave careful consideration to *Alexander* and *Gilmer*, to the Second Circuit precedent of *Rogers v. New York University* (the Second Circuit's decision in *Pyett* not yet having issued), and to *Air Lines Pilot Ass'n.*. It then concluded as follows:

> [T]he Court has considered the argument carefully, and concludes that *Gilmore* and *Alexander [v. Gardner-Denver]* are in fact reconcilable on the following principle: An *individual* may prospectively waive his own statutory right to a judicial forum to litigate [a statutory discrimination] claim, but his *union* may not do so for him.

*Beljakovic*, 542 F. Supp. 2d at 242 (emphasis in original); *see also id.* at 244 ("Read together, *Gilmore* and *Alexander [v. Gardner-Denver]* establish that only an individual can determine in what forum he will vindicate certain statutory rights, including rights under the [federal age-discrimination statute]").

With respect, this Court's Decision that Plaintiff's agreement to arbitrate statutory discrimination claims is precluded by the mere fact of union representation is clearly at odds with established Second Circuit law that a collective representatives cannot make such claims subject to a labor agreement, *cf. Air Line Pilots Ass'n.*, 199 F.3d at 484 ("the statutory right [to a judicial forum for discrimination claims] 'can form no part of the collective bargaining process'") (citing *Gardner-Denver*), and it directly contradicts this Court's prior ruling in *Beljakovic* that an individual subject to a collective bargaining agreement "*may* prospectively waive his own statutory right to a judicial forum to litigate [a statutory discrimination] claim . . . ." *Beljakovic,* 542 F. Supp. 2d at 242 (emphasis added).[5]

Plaintiff here is clearly trying to play both ends against the middle. By bringing his dispute to federal court, he is happy to evade his Union's authority as exclusive collective representative and his obligation under the IWA's broad arbitration clause to arbitrate his claims against Starwood before the Impartial Chairman. But, he is all too willing to contend that the mere existence of a collective representative relieves him of his individual agreement to arbitrate such disputes before the AAA.

[5] Defendant, accepting *Pyett* as Second Circuit precedent, did not assert that Plaintiff Mendez was required to arbitrate his statutory discrimination claim before the Impartial Chairman under the IWA's broad arbitration clause. Nevertheless, it expressly reserves its right to assert that defense and seek to compel arbitration under the IWA should the current Second Circuit rule be reversed by the Supreme Court in its consideration of *Pyett*.

For the reasons previously stated, the Court clearly erred and permitted a manifest injustice by allowing this evasion to occur. It should, with respect, reconsider its Decision not to compel arbitration of Plaintiff's statutory discrimination claims.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for reconsideration should be granted, and the Court should grant Starwood's motion to dismiss and compel arbitration.

Dated: New York, New York
August 8, 2008

HOGAN & HARTSON LLP

By: /s/

Michael Starr (MS 6851)
Christine M. Wilson (CW 3440)
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
*Attorneys for Defendant*