UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                     :

Moises Mendez,                         :
                                     :

              Plaintiff,         :            08 Civ. 4967 (CM)(KNF)
                                     :

    -against-                   :            **MOTION IN LIMINE**
                                   :

Starwood Hotels & Resorts Worldwide, Inc.,  :
                                   :

             Defendant.      :
-------------------------------------------------------------- X

## DEFENDANT'S MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTION IN LIMINE

Of Counsel:

Michael Starr, Esq.
Loren L. Forrest, Jr., Esq.

HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Tel.: (212) 513-3200
Fax: (212) 385-9010
Attorneys for Starwood
Hotels and Resorts
Worldwide, Inc.

# TABLE OF CONTENTS

A.   THE REPORT AND TESTIMONY OF PLAINTIFF'S  PSYCHIATRIC
     EXPERT, ALBERTO GOLDWASER, SHOULD BE EXCLUDED. ..................................1

     1.   Dr. Goldwaser's November 21, 2008 Report  Should Be Excluded as Non-
          Compliant With Rule 702. ...................................................................................2

     2.   The Purported "Addendum" Should  Be Excluded as Untimely, Improper
          and Unfairly Prejudicial. ....................................................................................5

B.   PLAINTIFF'S EVIDENCE AS TO CO-WORKERS' HARASSMENT SHOULD
     BE PRECLUDED AT TRIAL. ......................................................................................10

     1.   Incidents of Co-Worker Harassment Occurring After January 9, 2009
          Should be Excluded. ..........................................................................................13

     2.   Incidents of Co-Worker Harassment Not Based on Ethnicity, Color or
          National Origin Should be Excluded. ...............................................................14

     3.   Plaintiff's Discovery Violation Precludes the Admission Of Plaintiff's
          Complaints of Co-Worker Harassment...............................................................16

     4.   The Testimony as to Tello's  Anti-Black Epithet Should Be Excluded.................18

     6.   Evidence Concerning the Mark Kleinman Incident Should Be Excluded  ...........20

C.   EVIDENCE AS TO TWO ISOLATED "ENGLISH ONLY" DIRECTIVES
     SHOULD BE BECAUSE THEY ARE IRRELEVANT AND PREJUDICIAL .............21

D.   EXCERPTS FROM THE DEPOSITION OF THE  ANTONIO R. ROTOLO
     SHOULD BE PRECLUDED..........................................................................................23

E.   REFERENCE TO CHEF ROTOLO'S TELEPHONE CALL  TO PLAINTIFF'S
     DAUGHTER SHOULD BE EXCLUDED....................................................................24

G.   PLAINTIFF'S SUBJECTIVE OPINION ABOUT HIS OWN QUALIFICATION
     FOR PROMOTION IS INADMISSIBLE. ....................................................................25

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page(s)**

*Agron v. Columbia University*,
  1997 WL 746456 (S.D.N.Y. Dec. 2, 1997) ................................................................4

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)...................................................................................1

*Annis v. County of Westchester*,
  136 F.3d 239 (2d Cir. 1998)............................................................................12, 18

*Arista Records LLC v. Usenet.com, Inc.*,
  608 F.Supp.2d 409 (S.D.N.Y. 2009)......................................................................2

*Bellor v. United States*,
  221 F.R.D. 689 (D. N.Mex. 2008).................................................................6, 8, 9

*Brennan v. Metropolitan Opera Ass'n, Inc.*,
  192 F.3d 310 (2d. Cir. 1999)................................................................................11

*Carlingford Australia Gen. Ins. Ltd. v. St. Paul Fire & Marine Ins. Co.*,
  722 F.Supp. 48 (S.D.N.Y. 1989)..........................................................................24

*Casilla v. N.Y.S. Dep't. of Labor*,
  295 Fed. Appx. 422 (2d Cir. 2008).......................................................................17

*Clark County School District v. Breeden*,
  532 U.S. 268, 121 S. Ct. 1508 (2001)..................................................................11

*Dauer v. Verizon Communications Inc.*,
  2009 WL 186199 (S.D.N.Y)................................................................................23

*Dawson v. Bumble & Bumble*,
  246 F.Supp.2d 301 (S.D.N.Y.2003) .....................................................................11

*Disability Advocates, Inc. v. Paterson*,
  2008 WL 5378365 (E.D.N.Y. Dec. 22, 2008) ........................................................8

*Ebbert v. Nassau County*,
  2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ...............................................6, 7, 8

*Faragher v. City of Boca Raton*,
  524 U.S. 775, 118 S.Ct. 2275 (1998)...................................................................10

*Ford v. New York City Dept. of Health and Mental Hygiene,*
    545 F. Supp. 2d. 377 (S.D.N.Y. 2008)................................................................12

*Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.,*
    2006 WL 1319543 (S.D.N.Y. May 11, 2006) ...................................................2

*Hathaway v. Bazany,*
    507 F.3d 312 (5th Cir. 2007) ...............................................................................1

*Highland Capital Mgmt. L.P. v. Schneider,*
    379 F.Supp.2d 461 (S.D.N.Y. 2005)............................................................1, 2, 4

*Holmes v. Long Island R.R. Co.,*
    2001 WL 797951 (E.D.N.Y., June 4, 2001) ....................................................11

*Holt v. KMI-Cont'l, Inc.,*
    95 F.3d 123 (2d Cir. 1996)................................................................................24

*In re Fosamax Products Liab. Litig,*
    2009 WL 2222910 ...............................................................................................3

*In re Med Diversified, Inc.,*
    346 B.R. 621 (Bankr. E.D.N.Y. 2006)...............................................................5

*In re Rezulin Products Liability Litigation,*
    309 F.Supp.2d 531 (S.D.N.Y. 2004)............................................................1, 2, 4

*In re Taraglione,*
    2008 WL 336844 (S.D.N.Y. 2008)...................................................................17

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,*
    845 F.2d 1172 (2d Cir. 1988)...........................................................................17

*Kelly v. Lopiccolo,*
    5 Fed. Appx. 57 (2d Cir. 2001).........................................................................20

*Kener v. United States,*
    181 F.R.D. 639 (D. Mont. 1998).........................................................................8

*Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner,*
    949 F. Supp. 13 (D.D.C. 1996).........................................................................19

*Leopold v. Baccarat, Inc.,*
    174 F.3d 261 (2d Cir. 1999).............................................................................19

*Leopold v. Baccarat, Inc.,*
    239 F.3d 243 (2d Cir. 2001).............................................................................10

*Lewis v. City of Buffalo Police Dept.*,
  311 Fed Appx. 417 (2d Cir. 2009) ..........................................................................11

*Loussier v. Universal Music Group Inc.*,
  2005 WL 5644420 (S.D.N.Y. August 30, 2005) ......................................................4

*McNally v. Posterloid Corp.*,
  2005 WL 2136948 (2d Cir. Sept. 6, 2005) ...........................................................10

*Mengele v. Patriot II Shipping Corp*,
  2002 WL 237847 (S.D.N.Y. Feb. 19, 2002) ............................................................4

*Minebea v. Papst*,
  231 F.R.D. 3 (D.D.C. 2005) ................................................................................6, 8

*Minton v. Lenox Hill Hosp.*,
  160 F. Supp.2d 687 (S.D.N.Y. 2001) ....................................................................10

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ...........................................11

*Petrosino v. Bell Atlantic*,
  385 F.3d 210 (2d Cir. 2004) ..............................................................................10

*Pronin v. Raffi Custom Photo Lab., Inc.*
  383 F.Supp.2d 628 (S.D.N.Y. 2005) ....................................................................19

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d 759 (2d Cir. 1998) ..............................................................................10

*Rios v. Buffalo Bridge Authority*,
  326 Fed Appx. 612 (2d Cir. 2009) ......................................................................10

*Rivera v. Baccarat, Inc.*,
  1997 WL 777887 (S.D.N.Y. 1997) ......................................................................19

*Rodriguez v. Pataki*,
  293 F.Supp.2d. 305 (S.D.N.Y. 2005) ....................................................................6

*Rowe Entertainment, Inc. v. William Morris Agency, Inc.*,
  2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) ......................................................3

*Securities and Exchange Commission v. Geon Industries, Inc.*
  531 F.2d 39 ......................................................................................................24

*Simonetti v. Runyon*,
  2000 WL 1133066 (D. N.J. 2000) ......................................................................19

*Tomka v, Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995).................................................................................10

*U.S. v. Vulcan Soc. Inc.,*
    2009 WL 2180836 (E.D.N.Y. July 22, 2009) .................................................6, 8

*United States v. Dukagjini,*
    326 F.3d 45 (2d Cir. 2003)................................................................................1, 7

*United States v. Mejia,*
    545 F.3d 179 (2d. Cir. 2008)............................................................................3, 7

*United States v. Stewart,*
    433 F.3d 273 (2d Cir. 2006)................................................................................20

*Viola v. Philips Med. Systems of N.A.,*
    42 F.3d 712 (2d Cir. 1994)..................................................................................24

*Williams v. County of Orange,*
    2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ....................................................4

*Young v. James Green Management, Inc.,*
    327 F.3d 616 (7th Cir., 2003) .............................................................................23

## OTHER AUTHORITIES

Both "English-only" ..............................................................................................21

Dr. Goldwaser's "Addendum" ................................................................................9

Evidence As To Two Isolated "English Only" .......................................................21

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................6, 7, 8

Fed. R. Evid. 702(3)..................................................................................................1

Federal Rule of Civil Procedure 37(b)(2)(A)(ii)...................................................17

Furthermore, Dr. Goldwaser's "Addendum" ..........................................................6

Local Rule 33.3(c) .................................................................................................13

Melvin Morales and Fernando "Tello" ..................................................................15

Plaintiff "Ms. Baker" .............................................................................................14

Rule 26.........................................................................................................8, 9, 24

Rule 26(e) ................................................................................................................8

Rule 26(e)(2) ............................................................................................................8

Rule 37 ...................................................................................................................24

Rule 401 and Rule 403 ...........................................................................................22

*Rule 403* ........................................................................................................ passim

Rule 702 ......................................................................................................1, 2, 3, 4

Rule 702(1) ...............................................................................................................1

Rule 801(d)(2) .........................................................................................................23

Rule 801(d)(2)(D) ...................................................................................................23

Westin's "Service Express" ....................................................................................22

## MATTERS TO BE EXCLUDED

A.    **The Report and Testimony of Plaintiff's
      Psychiatric Expert, Alberto Goldwaser, Should Be Excluded.**

      To be admissible under Rule 702, purported expert testimony must assist the trier of fact in determining an issue before it. *See United States v. Dukagjini*, 326 F.3d 45, 51 (2d Cir. 2003). In ruling on admissibility, the trial court must ensure that an expert's testimony is both "relevant to the task at hand" and based "*on a reliable foundation.*" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (emphasis added). *See also In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 539 (S.D.N.Y. 2004); *Highland Capital Mgmt. L.P. v. Schneider*, 379 F.Supp.2d 461, 467-68 (S.D.N.Y. 2005).

      Most critical here, Rule 702 requires that the putative expert testimony rest on facts and data that are "sufficient" to the matter attested to, *see* Rule 702(1), and, further, that the scientific principles and methods utilized are "applied . . . reliably to the facts of the case." Fed. R. Evid. 702(3). *See also Amorgianos,* 303 F.3d at 268-69 (upholding exclusion of expert testimony as to causation for medical injuries where expert did not apply his methodology "reliably to the facts of the case"); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (upholding exclusion of expert testimony based on "insufficient factual support" and "lack of reliable methodology"). At bottom, the court must ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Amorgianos,* 303 F.3d at 265-66 (internal citations omitted). The proponent of the testimony bears the burden of "demonstrat[ing] admissibility by a preponderance of proof." *Rezulin*, 309 F.Supp.2d at 539.

      Particularly applicable here is U.S. District Judge Kaplan's admonition against the "fashionable" trend of modern litigants to:

> engage[ ] . . . "expert" witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful to resolving the issue of fact presented by the lawsuit.

*Rezulin*, 309 F.Supp.2d at 538. Moreover, Judge Kaplan aptly observed, it "would border on the absurd" for courts to "permit 'experts' to tender purely subjective views in the guise of expert opinions." *Id.* at 544. Indeed, "no expert may 'supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence.'" *Highland Capital*, 379 F.Supp.2d at 469 (internal citation omitted).

Plaintiff here tenders the testimony of Alberto M. Goldwaser, M.D., as contained in his November 21, 2008 Report and a purported January 9, 2009 "Addendum." (*See* Levin Aff. ¶¶ 12 - 13 and Exhs. 3 and 5). Because even a cursory review of Dr. Goldwaser's reports show them to be advocacy in the guise of expert testimony and for the particular deficiencies particularized below, the testimony of Dr. Goldwaser should be excluded.

1.    **Dr. Goldwaser's November 21, 2008 Report**
      **Should Be Excluded as Non-Compliant With Rule 702.**

The most glaring deficiency of the Dr. Goldwaser's November 21 Report is that it is based entirely on the oral and written statements of Plaintiff and his counsel, with no attempt made to validate those reports by other information that had already been produced in discovery. (*See* Levin Aff. ¶ 15 and Exh. 3). This manifest one-sidedness does not reliably apply the principles of forensic psychiatry. (*See* Levin Aff. ¶ 16). It is, in itself, sufficient reason to exclude the November 21 Report and all related testimony. *See, e.g., Arista Records LLC v. Usenet.com, Inc.,* 608 F.Supp.2d 409, 429 (S.D.N.Y. 2009) ("expert who simply repeats the hearsay of the client who retained him, without independent analysis, does not assist the trier of fact"); *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*, 2006 WL 1319543 at *8

(S.D.N.Y. May 11, 2006) (expert "assumed the correctness" of the plaintiff's statements on "core questions of fact uncritically;" "proffered opinions would in large measure simply parrot" the plaintiff's own testimony); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2003 WL 22124991 at *9 (S.D.N.Y. Sept. 15, 2003) (putative expert "took no steps to verify the accuracy of the data Plaintiffs provided to him"). Dr. Goldwaser's November 21 Report and testimony is especially objectionable for its tendency to reiterate the hearsay of others. *See United States v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) (while expert may rely on hearsay in forming his opinions, he "may not, however, simply transmit that hearsay to the jury").

Second, Dr. Goldwaser frequently injects his own subjective value-ladened assertions as to the conduct and motives of Defendant's personnel without any substantiating references. For example, the November 21 Report states that Plaintiff's supervisors "set up" an environment that "encourages others (co-workers) to speak out against" Plaintiff (at 4); that Plaintiff was the object of "severe and unrelenting insults and mistreatment" (at 5); that kitchen managers and hotel management "created" an "oppressive and humiliating environment" (at 8); that due to "deliberate actions of hotel management," Plaintiff was "forced to endure" discrimination, which was "condoned and promoted" by his supervisors and hotel management (at 9); and that he was made weary by "open and lingering discrimination" (at 11).

This is advocacy in the guise of medical opinion. It does not reliably apply the principles of forensic psychiatry. (*See* Levin Aff. ¶ 16 and Exh. 3). It is testimony that "simply transmit[s] hearsay [from Plaintiff] to the jury." *Mejia*, 545 F.3d at 197. Because it is really nothing but a narrative of the case – that lay jurors are fully capable of constructing for themselves – and because, further, it attempts to "substitute expert testimony for factual evidence," it is inadmissible under Rule 702. *Id.* at 195. *See also In re Fosamax Products Liab. Litig*, 2009 WL

2222910 at * 23 (S.D.N.Y. July 27, 2009) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (internal citations omitted)); *Rezulin*, 309 F.Supp.2d at 546, 551 (rejecting portion of expert report presenting "an historical commentary of what happened"). Further, because Dr. Goldwaser's November 21 Report speculates as to the state of mind of other parties, it is inadmissible under Rule 702 on that grounds as well. *See Highland Capital*, 379 F.Supp.2d at 469-70 (collecting cases); *Agron v. Columbia University*, 1997 WL 746456 (S.D.N.Y. Dec. 2, 1997) (excluding expert testimony as to defendant's view of plaintiff's emotional disturbances and whether they failed to provide reasonable accommodation).

Third, the November 21 Report is cumulative of the testimony of two other psychiatrists who were Plaintiff's treating physicians and whom Plaintiff has identified as trial witnesses. (Starr Aff. ¶ 12). Having three psychiatrists testify as to essentially the same facts is unduly prejudicial to Defendant. To the extent Dr. Goldwaser's November 21 Report and his testimony contains any admissible opinions, it is cumulative to the testimony of Plaintiff's treating physicians, and should be excluded on that ground as well. *See Williams v. County of Orange*, 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) (excluding second designated expert as cumulative); *Loussier v. Universal Music Group Inc.*, 2005 WL 5644420 (S.D.N.Y. August 30, 2005) (same); *Mengele v. Patriot II Shipping Corp*, 2002 WL 237847 at *2 (S.D.N.Y. Feb. 19, 2002) (finding other medical testimony provided jury "ample assistance in evaluating" medical fact at issue); *accord Rule 403* (cumulative testimony may be excluded).[1]

---

[1] While the two treating physicians here are not specifically denominated as "experts" under Rule 26(a), they are permitted to give opinion testimony, *see Reilly v. Revlon, Inc.*, 2009 WL 2900252 at *3 (S.D.N.Y. Sept. 9, 2009) (McMahon, J.) and Plaintiff has expressly reserved the right to call them for that purpose. (*See* Starr Aff. ¶ 12).

Furthermore, where, as here, the expert's report and anticipated testimony is so obviously one-sided, it cannot be salvaged by precluding only certain portions, but must be excluded in its entirety. *See In re Med Diversified, Inc.*, 346 B.R. 621, 642 (Bankr. E.D.N.Y. 2006); *See also id.* at 629 (while minor flaws will not automatically cause exclusion, the court "must exclude" the evidence "if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions'" (internal quotations omitted)).

**2.    The Purported "Addendum" Should Be Excluded as Untimely, Improper and Unfairly Prejudicial.**

In this Court's September 19, 2008 Scheduling Order, a precise sequence for expert reports was established. Plaintiff was to produce his expert report on or before November 21, 2008, and Defendant was to have its expert report on or before January 2, 2009, with discovery scheduled to be concluded by January 9, 2009.

Apparently recognizing the manifest deficiencies of Dr. Goldwaser's November 21 Report, on January 9, 2009 – on the same date as the close of discovery – Plaintiff served a purported "Addendum." (Starr Aff. ¶ 1 & Exh. 5.) Nothing in this Court's Order authorized such an "addendum." The consent of Defendant was neither sought nor obtained; no application was made by Plaintiff for permission to do so. (Starr Aff. ¶ 5.) The "Addendum" was based in large part on Dr. Goldwaser's review of discovery materials that he had not reviewed for his November 21 report.[2]

_____

[2] To the extent Plaintiff may argue that some of this discovery material was not available to Dr. Goldwaser as of November 21, 2008, he misses the point. Plaintiff controlled this timing of discovery by his tactical decision to delay taking depositions until after virtually all discovery documents have been produced. (*See* Starr Aff. ¶ 11). Furthermore, Plaintiff never requested or moved for an extension of the November 21 deadline for his expert's report. Lastly, the Court's scheduling order necessarily contemplated that there would be substantial discovery after the report of Plaintiff's expert, as that report was made due 8 weeks before the close of discovery.

Furthermore, Dr. Goldwaser's "Addendum" report was substantively unfair to Defendant in many ways. Most egregiously, it relied heavily on information that Plaintiff affirmatively prevented Defendant from having access to. Specifically, a significant portion of the Addendum rests on a conversation Dr. Goldwaser had had with Plaintiff's supervisor at Plaintiff's secondary job as a banquet waiter at Yale Club. (*See* Starr Aff. ¶ 7.) Defendants, however, had issued a deposition subpoena to the Yale Club seeking, *inter alia*, information concerning Plaintiff's "workplace demeanor and attitude." Plaintiff, opposed the subpoena, moving to quash on the ground that it was not relevant and intrusive. (*See* Starr Aff. ¶¶ 8.) Judge Fox granted the motion to quash, and that Order prevented Defendant from ever having the opportunity to depose Plaintiff's Yale Club supervisor or from making that information available to its expert, Andrew P. Levin, MD.

Additionally, a party's expert report must contain "a complete" statement to "all" of that expert's opinion and of the "basis and reasons" for it. *See* Fed. R. Civ. P. 26(a)(2)(B); *U.S. v. Vulcan Soc. Inc.*, 2009 WL 2180836 at *25 (E.D.N.Y. July 22, 2009); *Minebea v. Papst*, 231 F.R.D. 3 (D.D.C. 2005). Accordingly, a party cannot through the "subterfuge" of a revised report "expand[ ] the potential scope of [the expert's] testimony," especially where, as here, the expert relies on documents not previously referenced. *Rodriguez v. Pataki*, 293 F.Supp.2d 305, 310 (S.D.N.Y. 2005) (striking "revised" report and limiting trial testimony to original report). *See also Vulcan Soc. Inc.*, 2009 WL 2180836 at *26 (striking new expert report in its entirety where the "numerous conclusory assertions" suggested that "they were constructed to fill holes" in the evidence that party failed to gather during discovery); *Ebbert v. Nassau County*, 2008 WL 4443238 at *14 (E.D.N.Y. Sept. 26, 2008); *Bellor v. United States*, 221 F.R.D. 689, 695 (D. N.Mex. 2008) (striking supplemental report filed, without leave, beyond court-imposed deadline,

and expressing opinions "broader and deeper" or, sometimes "different than" opinions in original report).

The "Addendum" reaffirms Dr. Goldwaser's earlier opinion but offers no explanation for how he analyzed the new information. This is not a proper application of the principles of forensic psychiatry (*see* Levin Aff. ¶ 16), and it does not comply with the Rule 26(a)(2)(B) requirement that "all" bases of the expert's opinion be stated. *See e.g., Ebbert v. Nassau County*, 2008 WL 4443238 at *13.

Compounding these deficiencies is the fact the opinions expressed in the "Addendum" and still advocacy in the guise of opinion[3]  And, too, Dr. Goldwaser reaches conclusions not based on all the information available to him at the time, and, indeed, sometimes selectively using information that is not reliable.[4] This does not reliably apply on principles of forensic psychiatry (Levin Aff. ¶¶ 15-16.) At times, Dr. Goldwaser elects to render opinions that are wildly outside the scope of his expertise, and that, too, is grounds for preclusion.[5]  *See Mejia*, 545 F.3d at 196 (error to admit expert testimony about matters "outside the scope of any

---

[3] For example, based on the new information, Dr. Goldwaser opines that the Westin either "did not investigate" or only "haphazardly investigated" Plaintiff's complaint (Addendum at 3.)

[4] Dr. Goldwaser opines that Plaintiff felt singled out when a camera was "secretly installed . . . at" his work station (Addendum at 3). The only person, however, with actual knowledge of the reason for the camera's installation was Nancy Kiska (Starr Aff. ¶ 14-15), but her deposition, concluded on December 4, 2008, was never given to Dr. Goldwaser to review. Other people who discussed the camera in their depositions admitted that they had no direct knowledge. (Id.)

[5] Dr. Goldwaser opines that management "inept[ly] handl[ed]" its inquiry into Plaintiff's complaints, but he has no expertise in human resources administration and the "ineptness" or not of the Westin's investigation is something to be argued by Plaintiff's counsel and within the competence of the jury to decide.

conceivable expertise"); *Dukagjini,* 326 F.3d at 59 (error to permit expert testimony where the expert, "went outside the scope of his expertise").

Nor can the "Addendum" be justified as a supplement pursuant to Rule 26(e)(2). To call the "Addendum" a supplement necessarily concedes that the November 21 Report did not comply with Rule 26 or this Court's Scheduling Order because it was not complete. *See Kener v. United States,* 181 F.R.D. 639, 642 (D. Mont. 1998). Moreover, supplemental reports are permitted under Rule 26(e)(2) "only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of initial report," and not merely because a party deems it desirable of advantageous. *See Maneba Co. v. Papst,* 231 F.R.D. at *6. It would be prejudicial to Plaintiffs to have to address new assertions at this late point in the litigation. *See Disability Advocates, Inc. v. Paterson,* 2008 WL 5378365 at *11 (E.D.N.Y. Dec. 22, 2008) ("purpose of the disclosure rules is to prevent the practice of 'sandbagging' an opposing party with new evidence."); *Beller v. United States,* 221 F.R.D. at 695 (Rule 26(e) "does not give license to sandbag one's opponent with claims and issues that should have been included in "the initial expert report").

This Court's "broad discretion" to remedy Rule 26(a)(2)(b) violations permits exclusion of "newly added portion" in a rebuttal report that should have been disclosed initially. *Ebbert* v. *Nassau* Count, 2008 WL 4443238 at *14. Especially relevant here is *Vulcan Soc. Inc.,* 2009 WL 2180836 at *26, where the court struck a new expert report in its entirety because "numerous conclusory assertions "suggest[ed] *inter alia* that "were constructed to fill holes in the evidence that the City failed to gather during discovery" and, further, because the "largely conclusory and unsupported statements strongly suggest an attempt by the City to 'sandbag' its opponents with new information."

Here, Plaintiff's expert issued an initial report that was conclusory and egregiously unsupported by factual information. There would be no point to this Court's scheduling order and deadline for Plaintiff's expert report, if Plaintiff could submit by the due date a hurried, conclusory, unsubstantiated report and then correct that deliberate tactical omission weeks later by a purported "supplement."

Lastly, Defendant had the option to depose Plaintiff's expert. It made an election not to do so based on the nature and quality of the November 21 Report – the one that complied with this Court's scheduling order. (*See* Starr Aff. ¶ 11.) By submitting a purported supplemental report on the same day that discovery closed, Plaintiff deprived Defendant of its right to determine whether to take Dr. Goldwaser's deposition in light of the substance of his report. This is additional grounds for the Addendum to be excluded. *See Beller v. United States*, 221 F.R.D. at 694 ("[it] is not sufficient that opposing parties have the supplemental report in hand now before trial. The intent of [Rule 26] is to ensure that deposition testimony can proceed with parties already armed with the expert's report so as to be able to evaluate the opinions offered").

In sum, to preserve the integrity of this Court's September 19, 2008 Scheduling Order, to avoid the manifest unfairness of having Dr. Goldwaser render an opinion before the jury based, in part, on information that was affirmatively precluded from Defendant's expert, and to shield from the jury one-sided advocacy is the guise of expert opinion, this Court should exclude from evidence Dr. Goldwaser's "Addendum" and any testimony based on it. For reasons stated above, the November 21 Report was also fatally deficient. Thus, there is no basis for Dr. Goldwaser to testify at all. His entire testimony should be precluded.

**B.     Plaintiff's Evidence as to Co-Workers'
        Harassment Should be Precluded at Trial.**

Plaintiff's claim of discriminatory harassment falls into two legally distinct categories: alleged harassing behavior by co-workers in the kitchen at the Westin New York at Times Square hotel (the "Westin") and alleged harassing behavior by his supervisors (who, for the most part, held the positions of Executive Chef and Executive Sous Chef). There are fundamentally different standards of legal liability for each of these two categories.

An employer may be held vicariously liable under Title VII when a supervisor creates a hostile work environment, subject to an affirmative defense that the employee did not avail himself or herself of the employer's complaint and remedial procedure. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 2293 (1998); *Leopold v. Baccarat,* Inc., 239 F.3d 243, 245 (2d Cir. 2001).

In contrast, the employer is ***not*** vicariously liable when non-supervisors are alleged to have created the hostile or abusive environment. Rather, employer liability for co-worker harassment requires, as one element, for the plaintiff to allege and prove that the employer had actual or constructive knowledge of harassment and failed to take prompt and effective remedial action. *Petrosino v. Bell Atlantic,* 385 F.3d 210, 255 (2d Cir. 2004); *see also Rios v. Buffalo Bridge Authority,* 326 Fed Appx. 612 (2d Cir. 2009) (because employer responded to complaints of gender-ethnicity harassment by coworkers with reasonable remedial measures, liability for objectionable conduct could not be imputed); *McNally v. Posterloid Corp.,* 2005 WL 2136948 (2d Cir. Sept. 6, 2005) (no imputed liability for harassing coworker conduct where employer took prompt action reasonably calculated to prevent further incidents); *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 245 (2d Cir. 2001). *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995) (for coworker harassment, "employer will generally not be liable unless the employer either

provided no reasonable avenue of complaint or knew of the harassment but did nothing about it");  *Minton v. Lenox Hill Hosp.*, 160 F. Supp.2d 687, 697 (S.D.N.Y. 2001).

Especially pertinent here is *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998), abrogated in part on unrelated grounds, *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061 (2002), where the Court approval of the trial court's refusal to consider allegations of coworker harassment because the Plaintiff failed to adduce evidence tending to show that the employer either failed to provide a reasonable complaint procedure or that it knew of her harassment and failed to take any action.

Furthermore, "bullying," horseplay, incivility and other tribulations of the workplace do not constitute actionable harassment, even if denominated as such by the employee.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 1509 (2001) ("Mere instances of incivility do not meet the "demanding" test for finding workplace hostility . . . .  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes 'in the terms and conditions of employment' and thus do not constitute harassment."); *Dawson v. Bumble & Bumble*, 246 F.Supp.2d 301, 329 (S.D.N.Y.2003), *aff'd*, 398 F.3d 211 (2d Cir. 2005) ("conduct founded on 'the ordinary tribulations of the workplace, such as the use of abusive language, gender-related jokes, and occasional teasing' is not actionable under the discrimination laws") (citation omitted); *Holmes v. Long Island R.R. Co.*, 2001 WL 797951 at *4 (E.D.N.Y., June 4, 2001); *Lewis v. City of Buffalo Police Dept.*, 311 Fed Appx. 417 (2d Cir. 2009) (no actionable sexually hostile work environment where employee's supervisor occasionally referred to her by vulgar or derogatory names; such conduct was merely

unprofessional, and supervisor was disciplined when matter was called to department's attention).

Nor is the employer liable for something labeled "harassment" by an employee if the conduct is not "because of" race, color, national origin or other classification protected under the anti-discrimination statutes, no matter how vulgar and threatening that behavior may be. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998; *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 320-21 (2d. Cir. 1999) (verbal comments); *Ford v. New York City Dept. of Health and Mental Hygiene*, 545 F. Supp. 2d. 377, 389-90 (S.D.N.Y. 2008) (coworkers looks and abusive comments such as "fat fish", "stupid fish", "dyke", and "faggot"). Accordingly, complaints to employers that do not suggest that the purported "harassment" occurred "because of" some protected characteristic of the complaining employee do not give rise to a *legal* obligation to investigate or remediate.

Here, Plaintiff has not provided Defendant in discovery with information requested that was necessary to determine the factual and evidentiary basis for his claim of legally actionable, discriminatory harassment by co-workers. And, where information was provided, it did not establish even a colorable basis for such illegal discriminatory harassment (as opposed to horseplay and other incivilities unrelated to Plaintiff's ethnicity, color, national origin or disability).

Therefore, and for other reasons more particularized below, evidence concerning co-worker harassment should not be admitted, even as background for Plaintiff's claim of supervisor harassment because any limited probative value such evidence may have is far outweighed by its undue prejudice to Defendant and its tendency to confuse issues and mislead the jury as to the different legal standard for co-worker versus supervisor harassment. *See* Fed.

R. Evid. 403; *Annis v. County of Westchester*, 136 F.3d 239, 247 (2d Cir. 1998) (trial court "should never have admitted" evidence as to police department's "sexist and sexually undisciplined" environment pre-dating tenure of current commissioner as it was "fiercely prejudicial" to the lawfulness of that manager's own dealings with plaintiff).

### 1.    Incidents of Co-Worker Harassment Occurring After January 9, 2009 Should be Excluded.

In conformance with Local Rule 33.3(c), Starwood served contention interrogatories upon Plaintiff on December 2, 2008. (Starr Aff.¶ 17 and Exh. 14.) Plaintiff's responses were inadequate, and Starwood moved the Court for an order to compel. (Starr Aff. ¶ 21.) By Order dated January 15, 2009 (Dkt No. 46), United States Magistrate Judge Kevin N. Fox directed Plaintiff to supplement his previously inadequate responses to Starwood's Contention Interrogatories. (*See* Starr Aff. ¶ 21,) As applicable to this branch of Starwood's motion in limine, Defendant asked Plaintiff to identify each instance of co-worker harassment and, for each incident, whom he orally complained to, when, and what he said as to the substance of his complaint. (*Id.* ¶ 21 & Interrog. No. 1(a) & (4).)[6]

Discovery closed on January 9, 2009. On September 8, 2009, the Court issued an Order directing the parties to supplement discovery responses by September 11, 2009, and provide all "new information." Plaintiff provided no further information to Defendant as of that date. Accordingly, Plaintiff should be precluded for introducing at trial evidence of an incident of

---

[6] For example, Plaintiff alleges that a co-worker named Tello once told him "F___ your mother, you f___ing ass, you are mine and I am going to make them fire you." (*See* Exh. 14 at 7.) If that is all Plaintiff reported to management, it would not have been enough to put the Westin on notice that he was claiming harassment "because of" his race, ethnicity, color or disability.

alleged co-worker harassment occurring after January 9, 2009, or otherwise not disclosed in his supplemental responses to Defendant's Contention Interrogatories.[7]

**2.     Incidents of Co-Worker Harassment Not Based on Ethnicity, Color or National Origin Should be Excluded.**

In purported compliance with Judge's Fox's order, on Feb. 17, 2009, Plaintiff served supplemental responses to Defendant's Contention Interrogatories.  (Starr Aff. ¶ 21.)  With respect to allegation of co-worker harassment, he lists 15 incidents of unwelcome behavior that was purportedly directed toward him due to his ethnicity, color, national origin or disability. None of the instances, however, or the surrounding circumstances, make any reference, directly or indirectly, to Plaintiff's ethnicity or color.  Indeed, some of the perpetrators are, by Plaintiff's own testimony, of his ethnicity and color. (*See* Starr Aff. ¶ 14.)

Only five of the 15 specified incidents make reference to the fact that Plaintiff's national origin is Ecuador.  (*See* Pltf. Suppl. Resp. at 6-9, items (i), (iv), (v), (x) and (xv).)[8]  The other instances – 10 of 15 – are, for the most part, antognistic remarks that have no reference, explicit or implied, to Plaintiff's national origin.  These vulgar notes placed in Plaintiff's locker, that refer to him as Mexican, not Ecuadorian (no. iii).  There is also a crude and threatening remark from Fernando Tello (no. vii), but plaintiff admits that Mr. Tello was hostile to him because he (Mr. Tello) believed that Plaintiff had "snitched" on a co-worker who was disciplined for sleeping on the job. (*See* Starr Aff. ¶ 14 & Exh. 12). It is also alleged that unknown workers vandalized

---

[7] This Branch of Defendant's motion also applies to allegations of supervisor harassment or incidents of violence. (*See* Contention Interrog. No. 2(a) & 3(a).)

[8] Even here the record points to no illegal. As to item (v), Plaintiff's co-workers called him a "f__king Ecuadorian" and "f__king faggot" *BECAUSE* they believed that he snitched. This is how Plaintiff understood the circumstance when he first reported they mistreated and opined because they thought it was he who had reported another employee sleeping on the job. (*See* Starr Aff. Ex. 12.) No reasonable jury could imagine they presumed to be a "snitch" because he came from Ecuador.

Plaintiff's locker, rearranging contents (no. viii) or caused his baked goods to burn or be thrown away (no. ix); that co-workers preparing special food and mockingly telling Plaintiff to clean up after them (no. xi); that a co-worker mocking dietary restrictions (no. xii); that unknown co-workers calling Plaintiff "Ms. Baker" (no. xiii).

This is not the basis for a claim of illegal, discriminatory co-worker harassment on the basis of ethnicity, color, or national origin. These incidents (often undated) occurred over a long period of time, did not involve protected classifications, and are not so severe or pervasive so as to create a hostile and abusive work environment.[9]  At worst they are teasing, vulgar name-calling, horseplay tribulations of the workplace or, in general, incivility. They would not be objectively offensive to any similarly situated kitchen co-worker in any hotel in New York City (the less prestigious hotels having, if anything, even more bawdy environments). As a matter of law, they are not even collectively so severe or pervasive enough to have substantially altered the terms and conditions of Plaintiff's employment and do not constitute an environment "permeated" with discriminatory abuse. *See* pages 11 - 12, supra.[10]

They are also not conduct that is "because of" Plaintiff's ethnicity, color, national origin or disability. Co-workers calling him "Ms. Baker" does not relate to any of those categories. Since the perpetrator of that act is unknown, it is only Plaintiff's speculations that links it to any legally-protected characteristic, as opposed to his being perceived to be a snitch or vexation co-worker. Nor is the same true of vandalizing his locker, burning his baked goods, or throwing the goods away.

---

[9] The few remarks mocked Plaintiff's dietary needs is not nearly enough for actionable harassment on the basis of disability.

[10] While the New York City standard is different, the conduct amounts to no more than a series of "petty slights" and therefore are not actionable under the New York City Human Rights Law. *See Wilson v. New York Post*, 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009).

By contrast, the undisputed evidence suggests that many of these incidents of generalized rudeness from Plaintiff's co-workers are tied to their perception that he reported an employee who was found sleeping on the job. That is what Plaintiff said before he filed his lawsuit. Plaintiff complained by *notarized* statement on February 27, 2006, that he was being "harassed" repeatedly by co-workers because "for some reason a few of the employees have made [him] out to be the employee that informed the supervisor that another employee was sleeping on the job." (Starr Aff. Exh. 22.) After that occurred, co-workers, which started with Melvin Morales and Fernando "Tello" (misspelled as "Tallo"), began calling him names and that "these forms of intimidation have been done in song and verbal abuse." All because of his being thought of as "the snitch," employees have begun "dropping heavy equipment with such force that it causes [him] to believe that they are doing this as also a form of intimidation." He later added Pedro Seguro and Francisco Rodriguez (all, incidentally, Hispanic) to the night-staff kitchen workers who taunted him before he transferred to the dayside. That accounts for half of the incidents that have an identified antagonist.

For these reasons, Defendant moves for the exclusion of the following 12 incidents of purported co-worker harassment: Nos. (ii), (iii), (iv), (v), (vi), (vii), (viii), (ix), (x), (xi), (xiii) and (xv). Two other incidents are discussed separately below.

### 3.    Plaintiff's Discovery Violation Precludes the Admission Of Plaintiff's Complaints of Co-Worker Harassment.

In its Contention Interrogatory 1(a), Starwood asked Plaintiff to identify each and who witnessed or knew about it. (*See* Exh. 16 [Def. Contention Interrogatories, at 3 (defining "identify with respect to an incident")].) In Contention Interrogatory No. 4, Starwood asked Plaintiff to identify each oral report he made, *inter alia,* co-worker harassment, including not

only whom he made it to, but also when, where and what precisely he said (defining "identify" with respect to a communication).

Judge Fox's January 16, 2009 Order required Plaintiff "to supplement its answer to Contention Interrogatory 4, as well as its answer to subsection (a) of Contention Interrogatories 1-3." Plaintiff served its supplemental responses on February 17, 2009 – a full month after Judge Fox's order – and has provided no additional information since then. (Starr Aff. ¶ 21).

Plaintiff supplemental responses were still deficient in ways critical to the issues of co-worker harassment. Most incidents of harassment are completely undated or specified as being "approximately in or around" a certain year. The reports to management are completely undated (*See* Exh. 21). That is critical because Defendants contend that reports of most of the co-worker harassment incidents were not made until *AFTER* Plaintiff threatened a federal lawsuit. Defendant is entitled to know if Plaintiff disputes that and, if so, when, according to him, were the reports made. Plaintiff also fails to give the substance of what he said to management. Defendant contends that Plaintiff did not, in most instances, specify a perpetuator until much after the report, if any, was made – and sometimes after the accused perpetuator had left employment and sometimes not until just before this lawsuit was commenced.

Plaintiff is represented by sophisticated counsel who presumably read the "Definitions" for Defendant's Contention Interrogatories. Accordingly, Plaintiff's failure to comply with Judge Fox's order was willful, and that warrants exclusion for trial of the evidence of co-worker harassment as a sanction for discovery non-compliance pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii). *See, e.g., Casilla v. N.Y.S. Dep't. of Labor*, 295 Fed. Appx. 422 (2d Cir. 2008) (upholding dismissal of a national origin discrimination complaint where employee failed specificity, noting that the plaintiff repeatedly refused to identify the discriminatory

conduct, despite being repeatedly ordered to do so by the court); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988) (upholding dismissal of complaint where the plaintiff had repeatedly failed to answer interrogatories regarding theories of causation and damages, only eventually providing answers found to be inadequate); *In re Taraglione,* 2008 WL 336844 at *4 (S.D.N.Y. 2008) (finding that although party eventually provided some sort of response to discovery requests, later response did not preclude the imposition of sanctions).

Even as "background" evidence for supervisor-harassment claims, such incidents should be excluded because, as previously noted, their tendency to incite prejudice, issue confusion and misleading the jury far outweigh any marginal probative value they may have.

### 4.    The Testimony as to Tello's Anti-Black Epithet Should Be Excluded.

In May 2007, one of Plaintiff's co-worker's, Demba Bagayoko, made a written complaint, countersigned by 8 other employees, against fellow kitchen worker named Fernando Tello. (Starr Aff., ¶ 24 & Exh. 18.) Mr. Babayoko alleged Mr. Tallo had engaged in belligerent and intemperate behavior and that "[h]e discriminates [against] blacks and call[s] them "mono" and "monkey." (*Id.*) Mr. Bagayoko requested a transfer to a daytime shift as Mr. Tallo worked at night. The matter was investigated by Westin's Director of Human Recourses, Nancy Kiska, who, without making particularized findings as to the specific allegations, concluded that Mr. Tallo had engaged in inappropriate and inacceptable behavior. She re-issued to him, in the presence of his Union Representative, the Westin's policy on workplace violence and harassment, directed him to attend anger management training and cautioned that any future aggressive behavior "will result in termination." (Starr Aff. at 25 and Exh. 19.)

Plaintiff's counsel has indicated an intention to refer this incident at trial, either (1) to suggest that the Westin's discipline of Mr. Tello was so slight as to indicate acceptance of the

kind of discriminatory harassment Plaintiff alleges was directed toward him; or (2) as further support for Plaintiff's claim of co-worker harassment. On either ground, the evidence must be excluded under Rule 403 as "fiercely prejudicial." *See Annis v. County of Westchester*, 136 F.3d at 247 (criticizing trial court for not excluding testimony concerning "deplorable" sexist and sexually undisciplined environment that predated tenure of defendant accused of sex discrimination); *see also Leopold v. Baccarat, Inc.*, 174 F.3d 261, 270 (2d Cir. 1999) (affirming trial court's exclusion of supervisor comment that "he admired Nazi's," in action alleging that some supervisor created a hostile work environment based on sex).

Because Tello's comments were directed against *other employees* in *different* protected statuses, (Plaintiff claims he is a non-white Hispanic from Ecuador with a disability, but not that he is black) this evidence has no probative value to *Plaintiff's claims*. *See, e.g., Pronin v. Raffi Custom Photo Lab., Inc.* 383 F.Supp.2d 628, 634 (S.D.N.Y. 2005); *Rivera v. Baccarat, Inc.*, 1997 WL 777887, *2 (S.D.N.Y. 1997); *Simonetti v. Runyon*, 2000 WL 1133066 (D. N.J. 2000); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) (discrimination based on race and national origin are conceptually distinct under Title VII). Especially here, when Tello's repulsive epithet for blacks could so influence jury passions against Defendants that it might not render a judgment based solely on a detached application of the law to the facts of this case, Tello's individual bigotry and because it has such limited, if any, probative value to Plaintiff's claims, should be excluded under Rule 403.[11]

---

[11] The Second Circuit has held that where, for example, a black employee has suffered a "barrage" of highly offensive harassment, biased comments towards other minorities must be considered on motion for summary judgment, even though they are of "limited probative value." That, however, is not applicable here, as the trial court has broad discretion under Rule 403 to balance slight probative value against extreme prejudice and jury confusion. That is certainly so because so few of the alleged incidents have even a marginal connection to any protected

As to Plaintiff's contention that the Westin's discipline of Tello somehow suggests an acceptance of discriminatory harassment, exclusion on Rule 403 is even more apt. Before Plaintiff could use the Tello incident for that purpose, it would have to prove that Tello actually said what he was accused of saying (as so far, there is only hearsay) or that would have to establish the Westin's investigation proved the allegation (and there is no evidence of that) or that it was inadequate, and he would have to have evidence that the discipline was slight in a unionized environment where any discipline imposed could be brought to arbitration if the Union thought the discipline excessive from its perspective.

Put simply, allowing evidence as to Mr. Tello's needless and distracting "mini-trial" with this trial or for matters that are marginally (at best) to Plaintiff's claim, which is one of the things Rule 403 was intended to prevent. *See, e.g., United States v. Stewart,* 433 F.3d 273, 313 (2d Cir. 2006) (upholding exclusion of evidence concerning witnesses' possible violation of testimonial cooperation agreement as it would have resulted in a "mini-trial" and a "confusing distraction"); *Kelly v. Lopiccolo,* 5 Fed. Appx. 57, 60 (2d Cir. 2001) (upholding exclusion of evidence concerning witness's prior arrest and lawsuits because it would have resulted in "mini-trials" and a "confusing distraction" to the jury).

### 6.    Evidence Concerning the Mark Kleinman Incident Should Be Excluded            .

Plaintiff identifies as discriminatory harassment an incident of horseplay when, he alleges, a co-worker named Mark Kleinman hit him in the face with a salad bowl. As will be explained below, there is not the slightest evidence that the incident was anything but horseplay.

---

category and because an even multitude of "petty slights and inconvenience" is not the same as a "barrage" of abuse.

To admit the evidence concerning this incident would mislead the jury and confuse the issue of innocent workplace shenanigans with illegal discriminatory harassment.

Mr. Kleinman is not mentioned or involved in any other instance of alleged co-worker harassment, and there is no allegation that he ever uttered an ethnic epithet or referred at any time to Plaintiff's ethnicity, color, national origin or disability.  (Starr Aff. ¶ 24.)  Plaintiff admitted during the Westin's investigation of this incident that he "never had problems with" Mr. Kleinman and "didn't understand why he would do" what he did. (*Id. & Exh. 12*). Mr. Kleinman stated during the investigation that "he would never hurt anyone and that he thought him and Moises were friends." (Starr Aff. ¶ 15, [Kiska Dep. Tr. at  188].).

Plaintiff speculates that Mr. Kleinman may be biased just because Mr. Kleinman is white. He also conjectures that Mr. Kleinman must have been involved in another incident in which "Sir! Moses/Ms. Baker" was written on a kitchen appliance because, to Plaintiff's way of thinking, that would explain why he (Mr. Kleinman) hit him with the salad bowl some 14 months later.  Both are inadmissible speculation, and the later circular reasoning, as well.

The jury should not be led to believe that this lawsuit is about Plaintiff's tribulations in the workplace but only whether he was subjected to actionable harassment "because of" his ethnicity, color or national origin.  Since there is no evidence that the Kleinman incident was the latter, admitting evidence about that incident could lead the jury to just such a confusion of issues.  This salad bowl incident was a foolish act of male-on-male horseplay that got out of hand – nothing more.

**C.    Evidence As To Two Isolated "English Only" Directives**
**Should be Because They Are Irrelevant and Prejudicial**

Defendants understand that a persistent prohibition against speaking Spanish in the workplace, especially during an employee's break time or outside work areas, can, in

conjunction, with other evidence be probative of anti-Hispanic or national origin discrimination. But, a supervisor's isolated directive to employees not to speak Spanish in the work area when other non-Spanish speaking employees are about, is not, in and of itself, an illegal discrimination; in certain circumstance may be perfectly lawful and not even suggest anti-Hispanic bias. *See., e.g.* [cite]. Both "English-only" incidents fall into the later category.

### 1.    <u>The Ribbens Time-Barred Comment</u>.

Plaintiff alleges that in 2003, during the first six months of his employment, his supervisor, Executive Chef David Ribbens once himself said "no f—king Spanish in the kitchen," but that he never made such a comment after Plaintiff was promoted to baker.  (Starr Affirmation ¶ 14, [Pltf. Dep. at 74-76]), which was in April 2004.

The particular incident is time-barred because it occurred more than four years before this action was commenced.  The comment itself is not per se illegal or indicative in and of itself of Hispanic bias.  There was not a "no Spanish" comment directed toward Plaintiff or any other kitchen worker at any other time by Chef Ribben or anyone else - certainly not by Chef Tujague, who succeeded Chef Ribben in April 2007, or by Chef Rotollo.  Reference to that incident is more of the Plaintiff's hoping to create enough "smoke" for the jury to believe it sees "fire," even though the actual evidence cannot support a jury verdict in Plaintiff's favor.  Reference to the incident should be excluded under Rule 401 and Rule 403.

### 2.    <u>The Service Express Incident</u>

Employees of the Westin's "Service Express" Department (which receive guest requests for services) were told by a new supervisor to speak "English only" in the workplace. As noted, this is in and of itself not national origin or ethnicity discrimination.  Plaintiff worked in the kitchen, had no involvement with Service Express, and did not himself actually hear the remark.

As it turns out, the new supervisor's instruction was *not* consistent with Starwood policy, and was immediately corrected by Starwood's Human Resources Manager when she learn of it. (Starr Aff., ¶ 15 [Kiska Dep. Tr. 118-119, 122-123, 127-128, 479].)  Plaintiff has no admissible evidence to the contrary.  As this alleged act of discrimination involves a different department, in a different location, and different workers with whom Plaintiff had no interaction, it should be excluded. *See Dauer v. Verizon Communications Inc.*, 2009 WL 186199, *4 (S.D.N.Y).[12]

## D.     Excerpts from the Deposition of the Antonio R. Rotolo Should be Precluded

Plaintiff intends to introduce as direct evidence in his case in chief substantially all of the transcript of the deposition of Antonio Rotolo, who was at one time the Executive Sous Chef at the Westin.  The deposition of Mr. Rotolo was taken, however, on November 12, 2008.  As of that date, Mr. Rotolo was no longer employed by Defendant.  Accordingly, the deposition transcript of Mr. Rotolo is hearsay and not within the scope of Rule 801(d)(2) because the statements were not made during the existence of an employment or agency relationship.  *See e.g., Young v. James Green Management, Inc.,*  327 F.3d 616, 622 (7th Cir., 2003).

A party's assertion of racial discrimination "not made during the existence of his employment relationship" with defendant corporation is not admissible under Rule 801(d)(2)(D). *Young v. James Green Management, Inc.,*  327 F.3d 616, 622 (7th Cir., 2003) (upholding district court's determination that a letter alleging race discrimination not made during the existence of the employment relationship was inadmissible under Rule 801(d)(2)(D)).

According to the Seventh Circuit, "[w]e cannot say that, in light of the totality of the circumstances, this ruling was an abuse of discretion. Olson's assertions regarding discrimination

---

[12] Reference to any settlement agreements concerning this matter must be excluded under Rule 408.

were not made during the existence of his employment relationship with [defendant corporation] Green. Olson's letter of resignation is not admissible under Rule 801(d)(2)(D) because the justification for the rule simply is not present in this situation." *Id.* at *622.

A party is not allowed to introduce as evidence the testimony of a suspended employee or a former employee who is no longer an employee of the agent against his employer under Rule 801(d)(2)(D) "as an admission by an agent." *Securities and Exchange Commission v. Geon Industries, Inc.* 531 F.2d 39, *43 n.3 (2d.Cir.1976) (holding that district judge properly declined to receive employee's testimony against employer under these circumstances); *Carlingford Australia Gen. Ins. Ltd. v. St. Paul Fire & Marine Ins. Co.*, 722 F.Supp. 48, 53 (S.D.N.Y. 1989) (at the time of the deposition, deponent "was no longer an employee of plaintiff so that his testimony does not constitute an admission").

**E.     Reference to Chef Rotolo's Telephone Call
        to Plaintiff's Daughter Should be Excluded.**

In July 2007, Executive Sous Chef Antonio Rotolo, called Plaintiff to ask why he was not at work. Because Plaintiff was not at home, Chef Rotolo spoke to his daughter. (Plaintiff Dept. at 441.)   Plaintiff was not on the call but contends his daughter told him Chef Rotolo "yelled" at her. Rotolo acknowledges the call but denies yelling or being abusive.

The only witness who could substantiate Plaintiff's allegation with non-hearsay evidence is Plaintiff's daughter herself.   But, she was never listed on Plaintiff's Rule 26 disclosure statement, nor in response to Starwood's interrogatory to identify potential trial witnesses. (*See* Starr Ex. 21). (*Id.*)   The Plaintiff offered her as a witness (whether she is or not cannot be determined from the fact of his witness list). She should be excluded because Plaintiff's prior discovery defaults in this regard were neither substantially justified nor harmless. *See* Rule 37.

G.    **Plaintiff's Subjective Opinion about His Own Qualification for Promotion is Inadmissible.**

Starwood anticipates that Plaintiff will testify that he believes he should have been promoted to Pastry Chef given his strong work performance.  But an employee's subjective opinion about whose qualifications are superior is no evidence at all.  *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (plaintiff's personal belief regarding her own qualifications inadequate raise a triable issue of fact); *Viola v. Philips Med. Systems of N.A.,* 42 F.3d 712, 718 (2d Cir. 1994) (employee's disagreement with employer's negative performance evaluation not enough to support discrimination claim).

## CONCLUSION

Based upon the foregoing, Starwood Hotels and Resorts Worldwide, Inc. respectfully requests that this Court grant its motion for an order *in limine* in its entirety.


Dated:  New York, New York
            September 25, 2009

                                        HOLLAND & KNIGHT LLP
                                        *Attorneys for Defendant STARWOOD HOTELS*
                                        *AND RESORTS WORLDWIDE, INC.*


                                        By: _____
                                             Michael Starr
                                             195 Broadway
                                             New York, New York  10007
                                             (212) 513-3200


# 8847251_v10