**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x

MOISES MENDEZ,                                       :

                                                 :

                                     Plaintiff,   :    08 Civ. 4967 (CM)(KNF)

                                                 :

              v.                                  :    **PLAINTIFF'S PROPOSED**

                                                 :    **JURY CHARGE**

STARWOOD HOTELS & RESORTS                            :
WORLDWIDE, INC.                                      :

                                                 :

                                    Defendant.    :
-------------------------------------------------------------- x

      Plaintiff Moises Mendez ("Mr. Mendez") respectfully submits the following proposed

jury instructions pursuant to Fed. R. Civ. P. 51 and respectfully requests that he be

permitted to supplement or modify these proposed instructions as may be necessary or

appropriate after submission of all of the evidence at trial or during an appropriate

conference with the Court.

### PROPOSED JURY INSTRUCTIONS – CAUSES OF ACTION

      Mr. Mendez, the Plaintiff in this action, alleges that Defendant Starwood Hotels &

Resorts Worldwide, Inc. ("Defendant"), subjected him to unlawful employment

discrimination and a hostile work environment due to his race, color, national origin and

disabilities, and that Defendant retaliated against him for complaining about its

discriminatory conduct.  Specifically, Mr. Mendez brings federal claims under of Section

1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); and the Americans with

Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), as well as claims under the

New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights

Law (the "NYCHRL").  Mr. Mendez also alleges that Defendant violated its duty under New York law to reasonably supervise its employees.

## THE LEGAL ELEMENTS OF THE CLAIMS

Mr. Mendez makes several claims against the Defendant.  The parties' differing views of the facts raise issues under several different legal theories, each of which I will explain to you.  It is your responsibility to decide whether Mr. Mendez has proven each of his claims against Defendant.

**First**. ***Discriminatory Treatment and Harassment*** - Mr. Mendez claims that he was subjected to adverse employment actions on the basis of his race, color, national origin, and disabilities, in violation of Section 1981, Title VII, the ADA, the NYSHRL and the NYCHRL.

**Second**. ***Hostile Work Environment*** - Mr. Mendez claims that he was subjected to an unlawful hostile work environment on the basis of his race, color, national origin, and disabilities, in violation off Section 1981, Title VII, the ADA, the NYSHRL and the NYCHRL.

**Third,** ***Retaliation*** – Mr. Mendez claims that he was subjected to unlawful retaliation for complaining of and otherwise opposing unlawful employment discrimination, in violation of Section 1981, Title VII, the NYSHRL and the NYCHRL.

**Fourth,** ***Failure to Accommodate*** – Mr. Mendez claims that Defendant failed to provide him with a reasonable accommodation for his disabilities, and failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, in violation of the ADA, the NYSHRL and the NYCHRL.

**Fifth,** ***Negligent Supervision and Retention*** – Mr. Mendez claims that Defendant breached its duty to reasonably supervise its employees and to retain fit employees, in violation of New York law.

Now that you have a basic understanding of the claims that have been asserted by Mr. Mendez against Defendant, I will discuss the specific claims in detail.

**Proposed Jury Instruction No. 1 –Purposes of Section 1981, Title VII, ADA, NYSHRL and NYCHRL Statutes**

Mr. Mendez, the plaintiff in this action, alleges that Defendant subjected him to unlawful employment discrimination and harassment on the basis of his race, color, national origin and/or disabilities, and that Defendant retaliated against him for making complaints of such discrimination, in violation of Section 1981, with respect to race and color only, in violation of Title VII with respect to race, color and national origin only, in violation of the ADA with respect to disabilities only, and in violation of the NYSHRL and NYCHRL with respect to race, color, national origin and disabilities.

Before I instruct you on each cause of action or claim that Mr. Mendez has alleged under these laws, it will be useful for you to understand the purposes of these laws.

The purpose of the federal civil rights statute, Section 1981 is to secure freedom to all persons and to protect individuals in the full enjoyment of the rights of person and property by prohibiting all racially motivated discrimination. Section 1981 guarantees each person, regardless of race or citizenship, freedom from discrimination in the making and enforcing of contracts, including the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship. This includes all benefits, privileges, terms, and conditions of employment.

The purpose of the federal civil rights statute, Title VII, is to achieve equality of employment opportunities, to remove barriers that have operated in the past to favor an identifiable group of employees over other employees, and to make persons whole for injuries suffered on account of unlawful employment discrimination and retaliation.

The purpose of the federal civil rights statute, the ADA, is to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals

with disabilities and to provide clear, strong, consistent and enforceable standards addressing discrimination against individuals with disabilities.

The purpose of the NYSHRL is to protect the public welfare, health and peace of the State of New York, to assure that every individual within the state of New York is afforded an equal opportunity to enjoy a full and productive life, and to eliminate and prevent discrimination in employment.

The purpose of the NYCHRL is to eliminate and prevent discrimination from playing any role in actions relating to employment, to ensure that every individual within the City of New York is afforded an equal opportunity to enjoy a full and productive life, and to take other actions against prejudice, intolerance, bigotry, discrimination and bias-related violence or harassment. The NYCHRL is intended to provide the greatest possible protection for civil rights.

*California Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 272 (1987) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-430); *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation*, 463 U.S. 1073, 1091 (1983) (quoting *Paper Co. v. Moody*, 422 U.S. 405 (1975)); 42 U.S.C. §§ 12101 *et seq.*; 42 U.S.C. § 12101(b) (reciting purpose of statue); N.Y. Exec. Law § 290(3) (reciting purpose of statute); N.Y. Admin. Code, § 8-101 (stating purpose of statute); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 74 (N.Y. 1st Dep't 2009).

**Proposed Jury Instruction No. 2 – Simultaneous Analysis of Section 1981, Title VII and the ADA With the NYSHRL and the NYCHRL**

As I just mentioned, Mr. Mendez has alleged claims of employment discrimination, harassment and retaliation under both federal law – Section 1981, Title VII and the ADA – as well as New York State Law – the NYSHRL – and New York City law – the NYCHRL.  The standards applicable to federal employment discrimination claims under Title VII, Section 1981 and the ADA are the same.  Moreover, these same standards also govern state claims brought under the NYSHRL, and may likewise be used to aid in interpretation of the NYCHRL.  However, the NYCHRL is to be more liberally construed than federal and state antidiscrimination laws to provide the greatest possible protection for civil rights.

Accordingly, whenever possible, Mr. Mendez's state and federal employment discrimination claims will be addressed together.  This means certain jury instructions will apply to both the New York State and City law claims as well as the federal Section 1981, Title VII and ADA claims.

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000) (noting the same standards are applied in analyzing claims under Title VII and § 1981); *Bielinski v. Hotel Pierre*, 591 F. Supp. 2d 541, 550 n. 101 (S.D.N.Y. 2008) (applying the same analysis to claims under NYSHRL, NYCHRL, and Title VII claims); *Lacoparra v. Pergament Home Centers, Inc.*, 982 F. Supp. 213, 225 (S.D.N.Y. 1997) (elements of employment discrimination claims are "virtually identical" under New York Executive Law and Title VII); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479 (1982); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir.1996) (citing *Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937 (1985)); *Pace University v. New York City Com'n on Human Rights*, 200 A.D.2d 173 (1st Dep't 1994) (the federal civil rights statute proscribing retaliation (42 U.S.C. § 2000e-3[a]) and Administrative Code § 8-107(7) are virtually identical, and we may accordingly look to federal cases for a description of the elements of unlawful retaliation) (citing *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991); *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990); *DeCintio v. Westchester County Med. Center*, 821 F.2d 111, 115 (2d Cir. 1987), *cert. denied* 484 U.S. 965; Administrative Code § 8-130, as amended by Local Civil Rights Restoration Act § 1 ("Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the New York City Human Rights

Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise"); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 74 (1st Dep't 2009).

**Proposed Jury Instruction No. 3 – Preponderance of the Evidence**

You, as the jury, are charged with analyzing the facts presented to you, and determining whether Mr. Mendez has presented enough evidence for you to find in his favor.  In doing so, you are asked to determine whether Mr. Mendez has established the elements of his Section 1981, Title VII, ADA, NYSHRL and NYCHRL claims by a "preponderance of the evidence."

To "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Mr. Mendez has the burden of proving each element of him claims by a preponderance of the evidence.  If you find that he has not proven any one of the elements by a preponderance of the evidence, you must return a verdict for Defendant.

Likewise, Defendant has the burden of proving each element of its affirmative defenses by a preponderance of the evidence, and should Defendant fail to do so, the defense will fail.

Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Instr. § 171.60 and § 171.61 (5th ed.); *Desert Palace Inc. v. Costa*, 539 U.S. 90 (2003) (citing O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 171.60).

**<u>Plaintiff's Proposed Instruction No. 4 – Direct Evidence and Circumstantial Evidence</u>**

"Direct Evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  "Circumstantial Evidence" is proof of one or more facts from which you could find another fact.  You should consider both types of evidence.  The law makes no distinction between the weight given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Inst. § 101.42 (5th ed.) (Circumstantial and Direct Evidence).

**Plaintiff's Proposed Instruction No. 5 - Direct Evidence of Intent is Not Required**

As used in these instructions, Mr. Mendez must show that Defendant intentionally discriminated or retaliated against him.  However, Mr. Mendez is not required to produce direct evidence of intentional discrimination or retaliation.  Intentional discrimination and retaliation may be inferred from the existence of other facts, or the cumulative weight of circumstantial evidence.

Because employers rarely leave a paper trail – or "smoking gun" – attesting to a discriminatory intent, plaintiffs, such as Mr. Mendez, must often build their cases from indirect evidence and pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.  Therefore, you may consider circumstantial evidence such as the testimony and evidence offered by other employees, evidence relating to company-wide practices which may reveal patterns of discrimination against a group of employees, and other indirect evidence of discriminatory motive.

*Epstein v. Kalvin-Miller International, Inc.*, 121 F. Supp. 2d 742, 748 (S.D.N.Y. 2000); O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, 3C Fed. Jury Prac. & Instr. § 171.26 (5th ed. 2001); *Hollander v. American Cyanmid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990).

**Proposed Jury Instruction No. 6 – Motivating Factor**

As used in these instructions, it is not necessary that Mr. Mendez prove that his race, color, national origin and/or disabilities, or the fact that he complained of and otherwise opposed discrimination, was the sole motivating factor, the primary motivating factor, or the real motivating factor in the adverse employment action.  All that Mr. Mendez needs to show is that his race, color, national origin and/or disabilities, or the fact that he complained of and otherwise opposed discrimination, was a "motivating factor" in adverse employment actions against him.

Mr. Mendez's race, color, national origin and/or disabilities, or the fact that he complained of and otherwise opposed discrimination is a "motivating factor" if it played a role in Defendant's adverse employment actions against him, and need not have been the only reason for Defendant's decision to engage in such adverse employment actions.

*Olson v. New York*, 315 Fed. Appx. 361 (2d Cir. 2009); O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, 3C Fed. Jury Prac. & Instr. § 171.20 (5th ed. 2001); 5 L. Sand, *et al.*, *Modern Federal Jury Instructions* § 88-50 (2004); *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 337 (2d Cir. 2000) (asserting employers are liable under ADA where discrimination was motivating factor for an employment practice, even though other factors also motivated practice); *Owen v. Thermatool Corp.,* 155 F.3d 137, 139 n.1 (2d Cir. 1998) ("[T]he particular words used in a jury instruction may (depending on the circumstances) be less important than the meaning or substance of the charge as a whole. What is important is that the charge conveys the idea that (1) the impermissible factor . . . must have played a role in the employer's decision, and (2) the factor need not have been the sole consideration motivating the employer's decision.") (internal citations omitted); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors."); *Warmsley v. New York City Transit Authority*, 308 F. Supp.2d 114, 121-22 (E.D.N.Y. 2004) (ultimate issue in employment discrimination case is whether plaintiff has met burden of proving that adverse employment decision was motivated, at least in part, by impermissible reason, *i.e.*, discriminatory reason (*citing Gonzalez v. Rite Aid of New York, Inc.,* 199 F. Supp.2d 122, 130 (S.D.N.Y. 2002))); *Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 162 (E.D.N.Y. 2002) (noting

term "motivating factor" is standard one in field of employment discrimination (internal citations omitted)).

**Proposed Jury Instruction No. 7 – Witness Credibility**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness

and probability of his or her testimony and its consistency or lack of consistency and its corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

If you find that any witness has testified falsely with respect to a material fact in the case, you may, but you are not required to, disregard his or her entire testimony. Or, in your discretion, you may choose to follow that which you believe is true, and reject the balance. It is entirely within your discretion to weigh it, to determine the weight to be given to the testimony and to judge the credibility of the witness.

*See, e.g., Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620 (1944); *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952); *Hogan v. New York Times Co.*, 211 F. Supp. 99, 119 (D. Conn. 1962).

## Proposed Jury Instruction No. 8 – Interested Witness – Employee of Party

The fact that certain witnesses were and still are employed by Defendant and the testimony you have heard of these witnesses' relationships with their employer may be considered by you in deciding whether the testimony of one or more of these witnesses is in any way influenced by the employment relationship with Defendant.

*Adams v. Supermarkets General Corp.*, 525 N.Y.S.2d 208 (It is error to refuse to give the suggested charge if the witness is an employee of a party at the time of trial); *Dobro v. Sloan*, 48 A.D.2d 243 (4th Dep't 1975) (accord); *Christensen v. Pittston Stevedoring Corp.*, 283 App. Div. 1088 (2nd Dep't 1954) (where the employer will benefit as a result of the verdict, the jury may find that the employee witness is in fact interested); *Majestic v. Louisville & N. R. Co.*, 147 F.2d 621 (6th Cir. 1945) (accord).

**<u>Proposed Jury Instruction No. 9 – Discriminatory Treatment and Harassment</u>**

As you have heard, this is an action to recover damages for employment discrimination.  Section 1981 is directed only at discrimination based on race or color.  Title VII prohibits race, color and national origin discrimination.  The ADA is directed only at disability discrimination.  The NYSHRL and the NYCHRL prohibit employment discrimination because of race, color, national origin, and disabilities.  In this case, Mr. Mendez claims that Defendant subjected him to adverse employment actions that constitute unlawful discrimination because of race, color, national origin, and disabilities, including: by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race, color, national origin and/or disabilities.

Mr. Mendez is not required to produce direct evidence that Defendant discriminated against him on the basis of race, color, national origin and/or disabilities.  Discrimination is rarely admitted and may be inferred from the existence of other facts.  Defendant claims that the adverse employment actions were all because of legitimate, non-discriminatory business reasons.  Mr. Mendez claims that these are not the real reasons for the adverse actions taken by Defendant.  Mr. Mendez has the burden of establishing by a preponderance of the evidence that the reasons offered by Defendant were not really the reasons for these adverse employment actions, and that Mr. Mendez's race, color, national origin, and/or disabilities were a motivating factor in the decisions to take these adverse actions against him.

If you find that Mr. Mendez has failed to prove that the reasons offered by Defendant were not really the reasons for the adverse employment actions, then you will find for Defendant on this issue.  If you find that Mr. Mendez has proven that the reasons offered by Defendant were an excuse for discrimination, then you will find for Mr. Mendez on this issue and you should proceed to determine the amount of damages.

*McDonnell Douglas Corp. v. Green*, 411 US 792 (1973) (race); *Forrest v. Jewish Guild for the Blind*, 786 N.Y.S.2d 382 (2004) (race); *Consolidated Edison Co. v. New York State Div. of Human Rights*, 568 N.Y.S.2d 569 (1991) (sex and race); *State Div. of Human Rights ex rel. Cottongim v. Onondaga Sheriff's Dept.*, 528 N.Y.S.2d 802 (1988) (sex and race); *Sogg v. American Airlines*, 193 AD.2d 153, 603 NYS.2d 21 (1st Dep't 1993) (sex, age and disability); Executive Law § 296; *see Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (cautioning against instructing jury about shifting burdens).  The elements and burdens of a successful employment discrimination claim because of circumstantial evidence are virtually identical under state and federal law, *Stephenson v Hotel Employees and Restaurant Employees Union Local 100 of the AFL-CIO*, 811 N.Y.S.2d 633 (2006); *Mittl v. New York State Division of Human Rights*, 763 N.Y.S.2d 518 (2003); *Ferrante v. American Lung Ass'n*, 665 N.Y.S.2d 25 (1997); *Kent v. Papert Companies, Inc.*, 764 N.Y.S.2d 675 (N.Y. 1st Dep't 2003).

**Proposed Jury Instruction No. 10 - Hostile Work Environment**

As I explained to you earlier, Mr. Mendez has alleged that he was subjected to a hostile work environment.

To establish a hostile or abusive work environment, Mr. Mendez must prove by a preponderance of the evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive work environment. With respect to Mr. Mendez's Section 1981 claims, he must establish a hostile work environment on the basis of race and/or color; with respect to Mr. Mendez's Title VII claims, he must establish a hostile working environment on the basis of race, color and/or national origin; and with respect to his NYSHRL, and NYCHRL claims, he must establish a hostile work environment on the basis of race, color, national origin and/or disabilities.

In order to prove his hostile work environment claims, Mr. Mendez must submit evidence that he endured offensive conduct that is severe or pervasive in the workplace and that he personally perceived that this work environment was abusive. However, Mr. Mendez does not have to prove that the offensive conduct he endured was intolerable. Instead, he must prove that the harassment he has endured while working for Defendant was of such a quality or quantity that a reasonable person would find the conditions of his or her employment altered for the worse. In order to determine whether a work environment is hostile or abusive, you must look at all the circumstances.

If Mr. Mendez proves that Defendant subjected him to a hostile work environment, then you must enter a verdict in his favor.

O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions* 3C Fed. Jury Prac. & Instr. § 171.45 (5th ed. 2001); *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (proving existence of hostile work environment involves showing both objective and subjective elements: misconduct shown must be severe or pervasive enough to create objectively hostile or abusive work environment, and victim must also subjectively perceive that environment to be abusive); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (to establish hostile work environment claim, employment environment need not be unendurable or intolerable); *Id.* (law's requirement that harassment be severe or pervasive before it is actionable does not mean that employers avoid liability for all but most egregious cases *quoting*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (Second Circuit has "repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such a quality or quantity that a reasonable employee would find the conditions of him employment *altered for the worse*.'" (alteration and emphasis in the original) quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d at 70); *Harris v. Forklift Sys., Inc.*,510 U.S. 17, 23 (1993) (factors that Court may consider, among others, include frequency of discriminatory conduct and whether it unreasonably interferes with employee's work performance); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir. 1998) (employee can impute hostile work environment claim to his employer if discriminatory conduct at issue was undertaken by employee's supervisors).

**Proposed Jury Instruction No. 11 – Violation of the ADA, the NYSHRL and the NYCHRL for Failing to Provide a Reasonable Accommodation**

Mr. Mendez has also alleged separate and distinct claims under the ADA, the NYSHRL and the NYCHRL based on his allegation Defendant violated its duty to provide him with a reasonable accommodation for his disabilities when it denied his request for the reasonable accommodation identified by his treating physicians (modified work schedule).

An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce.  A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity standards.

An accommodation is not reasonable if it conflicts with an established seniority system, unless Plaintiff proves by a preponderance of the evidence that "special circumstances" make an exception reasonable.  For example, an exception might be reasonable if exceptions were often made to the seniority policy.

Another example might be where the seniority system already contains its own exceptions so that, under the circumstances, one more exception is not significant.

If you find that Defendant failed to provide Mr. Mendez with a reasonable accommodation, then you must enter a verdict in his favor.

*US Airways v. Barnett*, 535 U.S. at 405 (*citing Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 137 (2nd Cir. 1995) ("an accommodation that imposed burdens that would be unreasonable for most members of an industry might nevertheless be required of an individual defendant in light of that employer's particular circumstances")).

**Proposed Jury Instruction No. 12 – Violation of the ADA, the NYSHRL and the NYCHRL for Failing to Engage in Interactive Process Concerning Accommodation**

Mr. Mendez also alleges that Defendant failed and refused to engage in discussion with him regarding his need for an accommodation, and/or failed and refused to engage in discussion with him regarding the potential provision of alternative accommodations after repeatedly denying Mr. Mendez's request for the accommodation identified by his treating physicians.

In connection with this claim, Mr. Mendez must first prove that he had requested an accommodation from Defendant for his disability and/or that he suffered from an obvious disability and that Defendant should have engaged in or initiated a discussion with him concerning the need for an accommodation. If no one at Defendant responded to Mr. Mendez's attempts to initiate a conversation with Mr. Mendez about various ways to accommodate his disability, and/or if Defendant failed to initiate such a conversation with Mr. Mendez despite his known or apparent disability, then you must also enter a verdict in his favor.

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. N.Y. 2008) ("Discrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'") (quoting 42 U.S.C. § 12112(b)(5)(A); accord 29 C.F.R. § 1630.9(a)); *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.), *cert. denied*, 531 U.S. 931 (2000) ("The ADA 'envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.'"); *see* 29 C.F.R. § 1630.2 ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."); accord *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001).

**Proposed Jury Instruction No. 13 – Retaliation**

Section 1981, Title VII, the ADA, the NYSHRL and the NYCHRL all prohibit employers from retaliating against employees for opposing unlawful employment discrimination or for filing or making a complaint regarding unlawful employment discrimination.  The anti-retaliation provisions cover those employer actions that would have been materially adverse to a reasonable employee or job applicant.  In other words, the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

For Mr. Mendez to prevail on this issue, he must show, by a preponderance of the evidence, (1) the he opposed or complained of discrimination, (2) his opposition was known to the Defendant, (3) Defendant took materially adverse actions against him that would dissuade a reasonable employee from engaging in protected conduct, and (4) a causal connection between his opposition to or complaints of employment discrimination and the adverse action.

If you find that Defendant has produced evidence that the alleged retaliation was all because of legitimate, non-retaliatory business reasons, then Mr. Mendez has the burden of establishing by a preponderance of the evidence that the reasons offered by Defendant were not the real reasons for the alleged retaliation, and that Mr. Mendez's opposition to or complaints of employment discrimination were a motivating factor in those actions.

If you find that Mr. Mendez has failed to prove that the reasons offered by Defendant were not really the reasons for the adverse employment actions, then you must find for Defendant on this issue.  If you find that Mr. Mendez has proven that the reasons offered by

Defendant were an excuse for retaliation, then you must find for Mr. Mendez on this issue

and you should proceed to determine the amount of damages.


*Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006); *Forrest v Jewish Guild for the Blind*, 786 N.Y.S.2d 382 (2004); *Mitchell v TAM Equities, Inc.*, 812 N.Y.S.2d 611; *Thide v New York State Dept. of Transp.*, 811 N.Y.S.2d 418 (N.Y. 2d Dep't 2006); *Gallaghim v Delaney*, 139 F.3d 338 (2d Cir. 1998); *Holt v KMI-Continental*, 95 F.3d 123 (2d Cir. 1995); *DeCintio v Westchester County Medical Center*, 821 F.2d 111 (2d Cir. 1997); *Johnson v Palma*, 931 F2d 203 (2d Cir)  Once a prima facie case is made, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason, *Pace v Ogden Services Corp.*, 692 N.Y.S.2d 220; *Johnson v Palma*, 931 F.2d 203 (2d Cir. 1991); *Maloff v City Com. on Human Rights*, 414 N.Y.S.2d 901 (1979).

**Proposed Jury Instruction No. 14 - Respondeat Superior**

Defendant is a corporation.  A corporation may act only through natural persons such as its employees and, in general, an employee of a corporation may bind the corporation by the employee's actions and statements while acting within the scope of the employee's authority or within the scope of the employee's duties as an employee of the corporation.

An employee acting outside the employee's delegated authority or outside the scope of the employee's duties may not bind the corporation.  However, even though an act is forbidden by the law, it may still be within the scope of employment so as to impose liability on the corporation.  In deciding whether the act complained of was within the scope of authority, you should consider such factors as where the acts took place and their foreseeability.

O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions* Fed., 3C Jury Prac. & Instr. § 171.27 (Respondeat Superior) (5th ed. 2001); *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997) (no error in refusing to charge jury on respondeat superior liability where plaintiff had alleged harassment by him co-workers not by him superiors).

**Proposed Jury Instruction No. 15 – Negligent Hiring, Retention and Supervision**

New York law requires Defendant to exercise reasonable care to provide a reasonably safe workplace.  Mr. Mendez claims that Defendant violated its duty under New York law to provide a safe workplace by failing to take reasonable steps to determine the fitness of his co-workers and/or supervisors, to reasonably supervise his co-workers and/or supervisors, and to investigate and/or take appropriate disciplinary or other action in response to his repeated verbal and written complaints of discriminatory, harassing and/or violent conduct by his co-workers and/or supervisors.

For Plaintiff to succeed on this claim, you must find based on a preponderance of the evidence that: (1) Defendant was negligent; and (2) that Defendant's negligence caused or contributed to Plaintiff's injuries.  Negligence is the failure to use the care that a reasonably prudent person would use in the same circumstances.  The law does not say how a reasonably prudent person should act.  That is for you to decide.

*See*, *e.g.*, *Bush v. St. Clare's Hosp.*, 82 N.Y.2d 738, 739 (1993) ("A question of fact exists as to whether breach of its duty to supervise, if there was such a breach, was the proximate cause of plaintiff's injury").

**Proposed Jury Instruction No. 16 – Damages for Section 1981, Title VII, the ADA, the NYSHRL, and the NYCHRL – Four Different Types of Damages**

If you determine that the Defendant is liable for some or all of the various causes of action Mr. Mendez has alleged under Section 1981, Title VII, the ADA, the NYSHRL or the NYCHRL, you must then determine the amount of damages to award Mr. Mendez.  Based on the various causes of action Mr. Mendez has alleged, there are four potential types of damages you may award him:

(1) *Economic Damages* – These are the damages directly related to lost wages, benefits and other compensation Mr. Mendez may be entitled to recover that may take the form of back pay and/or front pay.

(2) *Compensatory Damages* – This type of damages provides an award to compensate Mr. Mendez for pain and suffering, emotional distress, including feelings of depression, anxiety and/or humiliation, and/or harm to reputation that he may have suffered;

(3) *Nominal Damages* – These are damages, which are typically a minimal amount, awarded because a statute or law has been violated without any regard to the actual damages that Mr. Mendez may have suffered as a result of that violation; and

(4) *Punitive Damages* – These are damages that you may award to punish Defendant for especially egregious conduct and to deter Defendant and others from engaging in similar conduct in the future.

*Katt v. City of New York*, 151 F. Supp. 2d 313, 369 (S.D.N.Y. 2001) (calculation of damages is the province of the jury) (citing *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1996)).

**Proposed Jury Instruction No. 17 – Economic Damages – Back Pay Damages**

If you determine that Mr. Mendez was discriminated or retaliated against, he may recover the wages and other benefits he would have earned if he had not been discriminated or retaliated against by Defendant. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Mendez is entitled to from the day Defendant took discriminatory and/or retaliatory action against him through the present. In other words, you must determine the total amount of compensation Mr. Mendez would have earned between the time Defendant began subjecting him to unlawful conduct through the present day. In making this determination, you should include any reduction of hours that Mr. Mendez was able to work, as well as the loss of any overtime pay, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Mendez whole in determining your total award of front pay damages.

Mr. Mendez seeks back pay damages because of the following separate and distinct causes of action he has alleged: (1) adverse employment actions taken against him by Defendant due to race, color, national origin, and/or disability discrimination; (2) retaliation against him by Defendant due to his complaints and/or opposition to discrimination; (3) Defendant's failure to provide him with a reasonable accommodation for his disabilities; and (4) Defendant's negligent supervision or retention of co-workers and/or managers who harmed him. Accordingly, you must consider this instruction when you ultimately determine whether to award back pay for each of these causes of action.

*Gatti v. Community Action Agency of Greene County, Inc.*, 263 F. Supp. 2d 496 (N.D.N.Y. 2003) (plaintiff who has proven employment discrimination claim was entitled to back pay from date of discharge until date of judgment); *Taddeo v. Ruggiero Farenga, Inc.*, 102 F. Supp. 2d 197, 198 (S.D.N.Y. 2000) (back pay encompasses the time period between the firing and court judgment, offer of reinstatement, or better employment, but "interim" earnings, less than those previously paid, are applied to mitigate a continuing injury however, if despite reasonable efforts plaintiff has no earnings in that period, nothing mitigates him damages); *Nordquist v. Uddeholm Corp.,* 615 F. Supp. 1191, 1204 (D. Conn. 1985) (back pay damages are calculated from the date of termination to the date of employment at equal or higher salary if the plaintiff was fortunate enough to obtain such employment prior to the date of trial); Statler v. Buffalo-Bodega Complex, Inc., 06 cv 5003, 2008 U.S. Dist. LEXIS 75512, at *9-10 (D.S.D. Sept. 29, 2008) (awarding backpay damages for unlawful reduction of hours); *Vernon v. Port Authority of New York and New Jersey*, No. 95 Civ. 4594, 2003 WL 1563219, at *1 (S.D.N.Y. Mar. 26, 2003) (holding it was necessary to incorporate employer's merit and promotional increase policies during the period at issue in calculating back pay award to employee and also including prejudgment interest on an award of back pay damages); *Epter v. New York City Transit Authority*, 216 F. Supp. 2d 131, 135 (E.D.N.Y. 2002) (Unless it would result in a highly speculative award, back pay usually "runs from the date of the discriminatory action to the date of the judgment, and should include any anticipatory raises, step increases, cost of living increases, and other increases necessary to make the plaintiff whole.") (quoting *EEOC v. Joint Apprenticeship Comm.,* 186 F.3d 110, 124 (2d Cir. 1999)); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (back pay award in Title VII case should include lost salary, including anticipated raises, and fringe benefits), *cert. denied,* 510 U.S. 1164 (1994); *Matter of Anagnostakos v. New York State Div. of Human Rights*, 846 N.Y.S.2d 798, 800 (N.Y.  3d Dep't 2007)(awarding back pay for reduction of hours under NYSHRL).

**Proposed Jury Instruction No. 18 – Economic Damages – Front Pay Damages**

If you find that Mr. Mendez will sustain economic damages in the future because of Defendant's discrimination and/or retaliation, you may also award front pay damages. Front pay is separate and distinct from back pay. The purpose of front pay is to compensate an employee who has been discriminated or retaliated against for any continuing harm caused by his employer's discrimination, retaliation, failure to accommodate and/or negligent supervision or retention of co-workers and/or managers who harmed him.

In calculating front pay, you must determine the total salary, benefits and other compensation that Mr. Mendez would have received from the date of the verdict and forward if he had not been subjected to Defendant's discrimination, retaliation, failure to accommodate and/or negligent supervision or retention of co-workers and/or managers who harmed him. In other words, you must determine how many years into the future that compensation should be awarded based on how long you believe that Mr. Mendez will continue to suffer from the effects of Defendant's discrimination, retaliation, failure to accommodate and/or negligent supervision or retention of co-workers and/or managers who harmed him. You should also include any anticipated pay raises, step increases, cost of living increases, health benefits, fringe benefits and other compensation increases or payments necessary to make Mr. Mendez whole in determining your total award of front pay damages. You may consider the number of years between the verdict up to the anticipated date that Mr. Mendez would be eligible for retirement.

Mr. Mendez seeks front pay damages based on the following separate and distinct causes of action he has alleged (1) adverse employment actions taken against him by

Defendant due to race, color, national origin, and/or disability discrimination; (2)

retaliation against him by Defendant due to his complaints and/or opposition to

discrimination; (3) Defendant's failure to provide him with a reasonable accommodation

for his disabilities; and (4) Defendant's negligent supervision or retention of co-workers

and/or managers who harmed him.  Accordingly, you must consider this instruction when

you ultimately determine whether to award front pay for each of these causes of action.


*U.S. v. Burke*, 504 U.S. 229, 229 n.9 (1992) (defining front pay as award for future lost earnings); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir. 1984) (holding district courts may, in appropriate circumstances, award front pay in employment discrimination cases as relief when plaintiff cannot be reinstated to his or him former position); *Gatti v. Community Action Agency of Greene County, Inc.,* 263 F. Supp. 2d 496, 507-514 (N.D.N.Y. 2003) (permitting district court to fashion equitable remedies which can include front pay for loss of future earnings and court may receive advisory verdict from jury on issue of front pay); *Hogan v. General Elec. Co.*, 144 F. Supp. 2d 138, 144 (N.D.N.Y. 2001) (adopting jury's advisory verdict regarding front pay).  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 964 (10th Cir. 2002) (front pay is intended to compensate for losses after trial); *Vernon v. Port Auth. of New York and New Jersey*, No. 95 Civ. 4594, 2003 WL 1563219, *7 (S.D.N.Y. Mar. 26, 2003) (front pay award calculated as ceasing when plaintiff is first eligible for retirement); (*Ward v. New York City Transit Auth.*, No. 97 Civ. 8550, 1999 WL 446025, *8-9 (S.D.N.Y. June 28, 1999) (awarding 12 years of front pay was neither speculative nor unreasonable); *Tanzini v. Marine Midland Bank, N.A.*, 978 F. Supp. 70, 81 (N.D.N.Y. 1997) (front pay awards always involve some degree of speculation and noting front pay award of up to 20 years may be proper).

**Proposed Jury Instruction No. 19 – Compensatory Damages**

Mr. Mendez is also seeking compensatory damages because of the physical and emotional pain and suffering, including feelings of depression, anxiety, humiliation, mental anguish, harm to his professional and personal reputations and/or loss of career fulfillment he alleges he suffered as a result of Defendant's misconduct. Compensatory damages are separate from back pay and front pay. Accordingly, in order to receive compensatory damages, Mr. Mendez must prove that he has suffered physical pain, emotional distress, harm to his professional and personal reputations and/or loss of career fulfillment as a result of being discriminated and/or retaliated against by Defendant. Mr. Mendez can prove this through his own testimony, as well as the testimony of his doctors or medical experts.

Additionally, you can distinguish between the level of emotional distress Mr. Mendez may be feeling today from the levels of emotional distress he alleges he suffered during and in the period immediately following being discriminated and/or retaliated against and otherwise mistreated by Defendant. In other words, you can award compensatory damages because of severe physical and emotional anguish Mr. Mendez may have suffered immediately after any of Defendant's acts, even though he may not still be suffering at the same level today.

Mr. Mendez seeks compensatory damages because of the following separate and distinct causes of action he has alleged: (1) adverse employment actions taken against him by Defendant due to race, color, national origin, and/or disability discrimination; (2) retaliation against him by Defendant due to his complaints and/or opposition to discrimination; (3) Defendant's failure to provide him with a reasonable accommodation

for his disabilities; and (4) Defendant's negligent supervision or retention of co-workers

and/or managers who harmed him.  Accordingly, you must consider this instruction when

you ultimately determine whether to award compensatory damages for each of these

causes of action.

*Bick v. City of New York*, No. 95 Civ. 8781, 1998 WL 190283, at * 24-5 (S.D.N.Y. Apr. 21, 1998) (awarded damages for pain and suffering to victim of employment discrimination who proved compensatory damages though him own testimony and that of his therapist, which established that he suffered from severe emotional anguish for extended period although he had improved by time of trial).

**Proposed Jury Instruction No. 20 – Punitive Damages**

Mr. Mendez is also seeking punitive damages.  Punitive damages are designed to punish especially egregious acts or violations of the law and deter or discourage wrongdoers from engaging in similar conduct in the future.  You can determine that Mr. Mendez is entitled to punitive damages if Mr. Mendez demonstrates that Defendant engaged in discriminatory practices and/or retaliation against him with malice or with a reckless indifference to his rights, and/or that Defendant knowingly failed to supervise unfit co-workers and/or managers who harmed him.

For example, you may award punitive damages if you determine that Defendant knew it was violating antidiscrimination statutes and/or was recklessly indifferent to that fact, or if Defendant had actual knowledge of the undue risk of harm to which it was exposing Plaintiff by retaining and failing to adequately supervise his unfit co-workers or managers.  Accordingly, you may consider the fact that during the time period that Mr. Mendez has been employed with Defendant, Defendant was aware of discriminatory conduct, retaliation, and/or  harmful conduct against him by his co-workers and/or supervisors, and  was intentionally allowing it to continue, or was recklessly indifferent to that fact.

If you determine from the evidence received in the case that Defendant's conduct justifies an award of punitive damages, you may award an amount of punitive damages, which all jurors must agree is proper.  In fixing the amount, you should consider the following questions:

– How offensive was the conduct?

– What amount is needed, considering the Defendant's financial condition, to prevent repetition?

33

– Does the amount have a reasonable relationship to the actual damage award?

If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

Mr. Mendez seeks punitive damages under each of his claims under Section 1981, Title VII, the ADA and the NYCHRL, as well as his claim that Defendant had actual knowledge of the undue risk of harm to which it was exposing Plaintiff by retaining and failing to adequately supervise his unfit co-workers or managers, because of the following separate and distinct causes of action he has alleged: (1) adverse employment actions taken against him by Defendant due to race, color, national origin, and/or disability discrimination; (2) retaliation against him by Defendant due to his complaints and/or opposition to discrimination; (3) Defendant's failure to provide him with a reasonable accommodation for his disabilities; and (4) Defendant's knowing failure to properly supervise co-workers and/or managers who harmed him. Accordingly, you must consider this instruction when you ultimately determine whether to award punitive damages for each of these causes of action.

42 U.S.C. § 1981a (punitive damages available under Title VII); 42 U.S.C. § 12117(b) (complaining party may recover punitive damages under this section against respondent if complaining party demonstrates that respondent engaged in discriminatory practice or discriminatory practices with malice or with reckless indifference to federally protected rights of aggrieved individual); *Loughry v. Lincoln First Bank*, 67 N.Y.2d 369, 378 (N.Y. 1986) ("[P]unitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant").

Dated: New York, New York
      September 25, 2009

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

_____

Kenneth P. Thompson
Andrew S. Goodstadt
Ariel Y. Graff

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
*kthompson@twglaw.com*
*agoodstadt@twglaw.com*
*agraff@twglaw.com*

*COUNSEL FOR PLAINTIFF MOISES MENDEZ*