UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
Moises Mendez,                                               :
                                                             :
                              Plaintiff,                     :         08 Civ. 4967 (CM)(KNF)
                                                             :
          -against-                                          :
                                                             :
Starwood Hotels & Resorts Worldwide, Inc.,                   :
                                                             :
                              Defendant.                     :
-------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE
<u>REPORT OF DEFENDANT'S FORENSIC PSYCHIATRIC EXPERT</u>**

<u>Of Counsel</u>:

Michael Starr, Esq.
Loren L. Forrest, Jr., Esq.

HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Tel. : (212) 513-3200
Fax : (212) 385-9010
*Attorneys for Defendant Starwood Hotels &
Resorts Worldwide, Inc.*

## TABLE OF CONTENTS

ARGUMENT.................................................................................................................1

POINT I ......................................................................................................................1

THERE IS NO BASIS TO EXCLUDE DR. LEVIN'S TESTIMONY AS TO
    MATTERS THAT ARE NEITHER OBJECTIONABLE NOR OBJECTED
    TO...............................................................................................................1

DR. LEVIN HAS NOT OPINED AS TO PLAINTIFF'S "CREDIBILITY," AND
    WHAT HE HAS SAID IS PERFECTLY PROPER...................................3

A.   NO IMPERMISSIBLE CREDIBILITY     ASSERTIONS WERE MADE BY
    DR. LEVIN. ..............................................................................................3

B.   PLAINTIFF'S OBJECTIONS     GO TO WEIGHT, NOT ADMISSIBILITY.........11

C.   PLAINTIFF CANNOT NOW RESTRICT THE SCOPE OF THE COURT
    ORDER RULE 35 EXAMINATION. ......................................................13

CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Aventis Environmental Science USA LP v. Scotts Co.,*
   383 F. Supp. 2d 488 (S.D.N.Y. 2005)..................................................................12

*Burlington Northern and Santa Fe Ry. Co. v. White,*
   548 U.S. 53, 126 S.Ct. 2405 (2006)......................................................................8

*Chnapkova v. Koh,*
   985 F.2d 79 (2nd Cir.1993).....................................................................................7

*Davis v. U.S. Steel Corp.,*
   539 F. Supp. 839 (E.D. Penn. 1982) ....................................................................9

*Estate of Radcliffe v. Pradera Realty Co.,*
   No. 05 Civ. 10272 (JFK), 2008 WL 53115 (S.D.N.Y. Jan. 2, 2008) ......................10

*Gabel v. Richards Spears Kibbe & Orbe, LLP,*
   No. 07 Civ. 11031(CM), 2009 WL 1856631 (S.D.N.Y. June 26, 2009)....................1

*Garcia v. Los Banos Unified School District,*
   No. 1:04-CV-6059 SMS, 2007 WL 715526 (E.D. Cal. March 8, 2007) ....................4

*Harris v. Forklift Systems, Inc.,*
   510 U.S. 17, 114 S.Ct. 367 (1993)........................................................................8

*Hernandez v. City of Vancouver,*
   No. C04-5539 FDB, 2009 WL 279038 (W.D.Wash. Feb. 5, 2009) ......................10

*Highland Capital Management v. Schneider,*
   379 F. Supp.2d 461 (S.D.N.Y. 2005)......................................................................5

*Hlinko v. Virgin Atlantic Airways,*
   No. 96 Civ. 2873 (KNW) (THK), 1997 WL 68560 (S.D.N.Y. Feb. 19, 1997)......................14

*In re Rezulin Prods. Liab. Litig.,*
   309 F.Supp.2d 531 (S.D.N.Y. 2004)......................................................................9

*Kakeh v. United Planning Org., Inc.,*
   587 F. Supp.2d 125 (D.D.C. 2008) ....................................................................6, 7

*Koch v. Sports Health Home Care Corp.*,
   54 F. 3d 773, No. 94-1346, 1995 WL 290409 ................................................................7

*Lowe v. Philadelphia Newspapers, Inc.*,
   594 F. Supp. 123 (E.D. Penn. 1984) ........................................................................8

*Macquesten General Contractors v. HCE, Inc.*,
   No. 99 Civ. 8598(JCF), 2002 WL 31388716 (S.D.N.Y. Oct. 22, 2002) ................................11

*Martin v. Cavalier Hotel Corp.*,
   48 F. 3d 1343 (4th Cir. 1995) ..............................................................................4

*Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*,
   No. 06-CV-3893, 2009 WL 875553 (E.D.N.Y. March 30, 2009) ....................................11

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75, 118 S.Ct. 998 (1998) ..........................................................................8

*Pascouau v. Martin Marietta Corp.*,
   994 F. Supp. 1276 (D. Co. 1998) ............................................................................9

*Petrosino v. Bell Atlantic*,
   385 F. 3d 210, 221 (2d Cir. 2004) ..........................................................................8

*Shea v. Long Island R. Co.*,
   No. 05 Civ. 9768 (US), 2009 WL 1424115, *2 (S.D.N.Y. May 21, 2009) ...........................11

*Skidmore v. Precision Printing and Packaging, Inc.*,
   188 F.3d 606 (5th Cir. 1999) ................................................................................4

*Stokes v. Xerox Corp.*,
   No. 05-71683, 2008 WL 275672 (E.D.Mich. Jan 28, 2008) ..........................................10

*Taylor v. Evans*,
   No. 94-cv-8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ..................................9

*Thomas v. iStar Financial, Inc.*,
   438 F.Supp.2d 348 (S.D.N.Y. 2006) ........................................................................8

*U.S. v. Thomas*,
   No. CRIM. CCB-03-0150, 2006 WL 140558 (D. Md. Jan. 13, 2006) ..............................6, 8

*U.S. v. Vitale*,
   459 F.3d 190 (2d Cir. 2006) ................................................................................7

Defendant Starwood Hotels and Resorts Worldwide, Inc. submits this memorandum of law in opposition to Plaintiff's motion *in limine* to exclude the report of Defendant's forensic psychiatric expert, Andrew P. Levin, M.D.

Defendant recognizes that there is no dispute that Dr. Levin's expert report itself cannot be admitted as evidence. *Gabel v. Richards Spears Kibbe & Orbe, LLP*, No. 07 Civ. 11031(CM), 2009 WL 1856631 (S.D.N.Y. June 26, 2009). Accordingly, Defendant regards Plaintiff's motion and memorandum as seeking to exclude all or portions of Dr. Levin's testimony for the reasons stated in Plaintiff's supporting memorandum of law. This memorandum addresses those issues.[1]

## ARGUMENT

### Point I

### THERE IS NO BASIS TO EXCLUDE DR. LEVIN'S TESTIMONY AS TO MATTERS THAT ARE NEITHER OBJECTIONABLE NOR OBJECTED TO

While Plaintiff expressly opposes Dr. Levin's testimony only to the extent it supposedly addresses "Mr. Mendez's credibility," he nonetheless seeks to exclude from trial the entire report and testimony, even the portions of Dr. Levin's opinion that have nothing to do with the alleged "credibility" issue. Even if Plaintiff's arguments as to the credibility issue had any merit (which they do not), there is no justification to exclude Dr. Levin's testimony in its entirety.

Dr. Levin's examination of Plaintiff was thorough. Testimony consistent with the opinions set forth in his report would clearly assist a trier of fact to better understand the evidence and resolve factual questions. Additionally, Plaintiff has not questioned Dr. Levin's qualifications as an expert witness in this matter. Given that Dr. Levin's report contains

---

[1] There is no reason to strike the report for Defendant's exhibit list. It could properly be used by Defendant to refresh Dr. Levin's recollection or arguably for rehabilitation depending on Plaintiff's cross-examination. In either case, having it pre-marked would aid the efficiency of the trial.

information that is relevant to this case and not objected to by Plaintiff, his entire testimony should not be excluded.

For example, Dr. Levin addresses two issues of specific causation. The first is whether Plaintiff's mood disorder was solely caused by the circumstances alleged in the complaint. Dr. Levin reaches several conclusions concerning this, as follows:

> [I]t is my opinion that it is not scientifically possible to state that only the night shift work and his perceptions of harassment and maltreatment were the sole cause of [Mr. Mendez's] mood disorder. Lastly, given the discrepancy between Dr. Cerra's report of his prior alcohol use and Plaintiff's strong denial, alcohol use cannot be definitively ruled out as a contributor to his condition.

Levin Report at 25 of 31. Dr. Levin further states as follows:

> It is my opinion that it is not scientifically possible to state that only the night shift work and his perceptions for harassment and maltreatment were the sole cause of [Mr. Mendez's] mood disorder.

*Id.* at 30 of 31.

Dr. Levin will also offer opinions as to whether the conditions at the Westin Hotel caused or exacerbated Plaintiff's physical ailments. With respect of those matters, Dr. Levin's opinion is as follows:

> Regarding the Plaintiff's allegation that the night schedule and the stress of the perceived harassment at the Westin caused and exacerbated his medical conditions, these allegations are not consistent with the facts. First, these conditions clearly existed prior to his employment at the Westin. Second, although the stressors noted might likely play some part in his illness, his continued obesity and strong family history were, and continue to be the principle [*sic*] contributors to the development and maintenance of his diabetes. It should be noted that although he blames the food at the Westin to contributing to his diabetes, he is currently 10 lbs. lighter that he was in 2002. Regarding his diverticulitis symptoms of this condition also pre-dated his work at the Westin. This is a multi-determined condition and it is not possible to make a clear connection between a specific stress and his ultimate need for a partial colectomy.

2

*Id.* at 27 of 31.

In addition to these opinions concerning specific causation, Dr. Levin rendered opinions

concerning Plaintiff's current mental state.  Thus, Dr. Levin stated as follows:

> For these reasons, it is my opinion that his [plaintiff's] current
> level impairment should be rated 60/61 placing him on the cusp
> between moderate and mild impairment.  His overall prognosis is
> good, particularly if he were to receive the counselling that has
> been recommended by several of his doctors and he takes
> medication as prescribed.

*Id.* at 27 of 31.  Dr. Levin also stated with respect to this issue, as follows:

> At present, based on my interview of the plaintiff it is my opinion
> that his symptoms fall into the mild to moderate range.  His
> prognosis for recovery is good with proper treatment.

*Id.* at 30 of 31.

These particular opinions are well within the scope of the opinions a forensic psychiatrist

might render.   They are unobjectionable and have not been objected to by Plaintiff.

Accordingly, the motion insofar as it seeks a total exclusion of Dr. Levin's testimony is

overreaching.

### Point II

### DR. LEVIN HAS NOT OPINED
### AS TO PLAINTIFF'S "CREDIBILITY," AND
### WHAT HE HAS SAID IS PERFECTLY PROPER.

**A. No Impermissible Credibility
Assertions Were Made by Dr. Levin.**

Despite Plaintiff's strained mischaracterizations, the opinions set forth in Dr. Levin's

report are not impermissible attacks on Plaintiff's credibility.  Black's Law Dictionary defines

"credibility" as "the quality that makes something (as a witness or some evidence) worthy of

belief."  Black's Law Dictionary (8[th] ed. 2004).  Nowhere in his report does Dr. Levin state or

even insinuate that Plaintiff is lying or is otherwise unworthy of belief.  Rather, Dr. Levin offers

3

opinions solely as to Plaintiff's psychological capacity to accurately perceive the social significance of behaviors and events occurring in his social milieu. (Levin Report at p. 27).[2]

Furthermore, while credibility determinations fall within the jury's province, a psychiatric expert can properly testify as to whether he or she thought the person interviewed was being truthful in that setting. *See Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 618 (5th Cir. 1999) (allowing expert's testimony that he did not think plaintiff had lied to him or fabricated her symptoms; such testimony is not a general endorsement of the plaintiff's credibility). Thus, while opinions that are nothing more than vouchers for attacks on credibility do not assist the trier of fact and should be excluded, *see Garcia v. Los Banos Unified School District,* No. 1:04-CV-6059 SMS, 2007 WL 715526, *4 (E.D. Cal. March 8, 2007), expert opinions as to the effect of the alleged discrimination or harassment on the plaintiff or the plaintiff's possible hypersensitivity are admissible, *see Martin v. Cavalier Hotel Corp.,* 48 F. 3d 1343, 1358 (4th Cir. 1995) (allowing expert's testimony that plaintiff's personality was such that she might be an "easy victim" and that her symptoms were consistent with someone who had been sexually assaulted).

Plaintiff contends that, in his report, Dr. Levin "improperly interjects a factual narrative in a transparent attempt to discredit Mr. Mendez's credibility." (Pltf. Mem. at 2). However, Plaintiff's conclusory argument is not supported by either fact or law. Specifically, at no point in his report does Dr. Levin offer any opinion on the ultimate issue in this case – whether Plaintiff was subjected to unlawful discrimination or retaliation. Nor does Dr. Levin relate, in the guise

---

[2] As used herein, "Levin Report" refers to the January 2, 2009 report from Dr. Andrew P. Levin, which was appended as Exhibit 4 to the Affirmation of Andrew P. Levin, M.D., dated September 25, 2009 [Dkt. No. 59] and submitted in support of defendant's motion in limine.

of opinion, a narrative that merely endorses the Defendant's account of the relevant circumstances.[3]

Rather, Dr. Levin properly compares the information he received from Plaintiff with that contained in Plaintiff's own medical records, and he highlights the significant disparities. Dr. Levin also notes, where appropriate, his observation of Plaintiff's apparent and repeated "inability to entertain alternate explanations for events or imagine the motives of others." (Levin Report at p. 28). This finding by Dr. Levin was confirmed by the results of Plaintiff's MMPI-2 test, which revealed that Plaintiff "lacks insight and demonstrates" a "proclivity to externalize responsibility of his difficulties and blame others for his predicament." (Levin Report at p. 28). Plaintiff is, of course, permitted in cross-examination to question Dr. Levin about the basis for his opinion as to Plaintiff's rigidity of thought, but it is not grounds to exclude the opinion from evidence.[4]

Plaintiff's further assertion that Dr. Levin rendered an opinion as to Mr. Mendez's "credibility" or the "veracity of Mr. Mendez's allegations in this case" (see Pltf. Mem. at 1, 3), is

---

[3] In contrast, the report and purported "Addendum" of Plaintiff's forensic psychiatrist, Albert M. Goldwaser, M.D., actually is merely a "factual narrative based on record evidence" that presents Plaintiff's rendition of the facts as expert opinion. *See Highland Capital Management v. Schneider*, 379 F. Supp.2d 461, 469 (S.D.N.Y. 2005). Dr. Goldwaser's testimony is properly excluded on that ground, as Defendant argued in its motion in limine. But, Dr. Levin's report cannot fairly be described as being such a narrative. Thus, while Defendant and Plaintiff agree on the applicable legal standard, proper application of that standard requires exclusion of Dr. Goldwaser's testimony but not that of Dr. Levin.

[4] Plaintiff's excerpt from Dr. Levin's report is also misleadingly taken out of context. In that portion of the report, Dr. Levin was exploring Plaintiff's complaint that he, as a baker, was discriminated against by the Hotel's decision on certain occasions to obtain pre-baked croissants from a sister hotel. Since it was undisputed that the union had not filed a grievance over this event, Dr. Levin commented upon Plaintiff's apparent inability to see some innocent explanation for that circumstance other than purposeful discrimination against himself. Clearly, there Dr. Levin was exploring by means of his interview what had already been indicated by the results of Plaintiff's psychological test, which were that he "tends to lack insight" and has a "proclivity to externalize responsibility of his difficulties and to blame others for his predicament." (*See* Moscovitz Aff. ¶ 4 & Exh. 2 [MMPI test results].) Once again, even if opposing counsel found this basis of Dr. Levin's opinion to be problematic, that is a proper subject for cross-examination and goes to weight, but not admissibility of the evidence.

similarly unfounded.  Dr. Levin did nothing of the sort.  Instead, Dr. Levin properly performed a thorough psychiatric examination of Plaintiff, including analyzing Plaintiff's substantial medical and psychological history (including the notes of his treating physicians) and the numerous depositions conducted in this case.  In his report, Dr. Levin appropriately makes repeated references to subject areas where the information provided by Plaintiff during the oral interview contradicts the information contained in his medical records.  This is not, as Plaintiff argues, a "transparent attempt to attack Mr. Mendez's credibility." (Pltf. Motion at p. 3.)  Rather, Dr. Levin's consideration of the disparities between what Plaintiff told him and what is reflected in his voluminous medical records, is well within his purview as a psychiatric expert.

Especially pertinent here is *Kakeh v. United Planning Org., Inc.*, 587 F. Supp.2d 125, 130 (D.D.C. 2008), where, as here, the expert relied, with great specificity, on the contradictions between what the plaintiff told him and what facts were contained in the plaintiff's medical records.  In allowing the expert's testimony that the plaintiff was not telling the truth during the examination, the court stated the following principle that also applies here:

> While an expert witness cannot usurp the jury's function by opining on the general credibility or honesty of a person, it is certainly within the expertise of a forensic psychiatrist to opine on whether the individual he is evaluating *is telling him the truth during his examination.*

*Kakeh*, 587 F. Supp.2d at 130 (emphasis added).  *See also U.S. v. Thomas*, No. CRIM. CCB-03-0150, 2006 WL 140558, *2 (D. Md. Jan. 13, 2006) (admitting expert's forensic psychiatric evaluation of the defendant which consisted of a mental status examination, interview of defendant regarding his medical and psychological history, direct observation of defendant, psychological testing, and interviews of defendant's family members).

Here, Dr. Levin has done nothing more than the forensic psychiatrist in *Kakeh* – compare Plaintiff's version of events with that recorded by his various physicians in his medical records.

Such a comparison is not an attack on Plaintiff's credibility, and Plaintiff does not cite to any authority to the contrary.

That Dr. Levin's opinions and observations may tend to discredit Plaintiff or his version of events does not render them inadmissible attacks on Plaintiff's credibility. *See, e.g., Koch v. Sports Health Home Care Corp.,* 54 F. 3d 773, No. 94-1346, 1995 WL 290409 *9-10 (4th Cir. May 15, 1995) (expert's testimony may have served to discredit plaintiff, but was not a "thinly disguised" comment on the plaintiff's credibility and "was by no means improper testimony for a medical expert"); *cf. U.S. v. Vitale,* 459 F.3d 190, 195-96 (2d Cir. 2006) (restricting access to medical or psychological records may deny a defendant the right to confrontation because "[e]vidence of a witness's psychological history may be admissible when it goes to her credibility") (internal citations omitted); *Chnapkova v. Koh,* 985 F.2d 79, 81 (2nd Cir.1993) (abuse of discretion by trial court to exclude medical records offered to show Plaintiff's "history of psychiatric problems," because "[a] clinical history of mental illness is probative of the credibility of the witness").

Additionally, Dr. Levin's review and reliance upon Mr. Mendez's medical and psychological history is not, as Plaintiff claims, "irrelevant and prejudicial." (Pltf. Mem. at pp. 2, 3). Instead such information is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 702. Furthermore, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." *Id.*

Accordingly, psychiatric opinions based, in part, on Plaintiff's medical and psychological history – as well as his family history (to which Plaintiff also objects) – is perfectly proper and admissible. *See, e.g., Kakeh v. United Planning Org., Inc.,* 587 F. Supp.2d at 130 (facts used by

forensic psychiatrist in reaching his expert conclusions were "all part of the standard family history which *any competent psychiatrist* would gather in performing a psychiatric assessment") (emphasis added); *U.S. v. Thomas,* 2006 WL 140558 at *2 (nothing that expert's forensic psychiatric evaluation of the defendant consisted of a mental status examination, interview of defendant regarding his medical and psychological history, direct observation of defendant, psychological testing, and interviews of defendant's family members).

Finally, Dr. Levin's opinion's regarding Plaintiff's relative inability to perceive the significance of social behaviors is perfectly appropriate in the context of an employment discrimination lawsuit. It has long been the law that a claim of discriminatory harassment cannot be maintained by a hypersensitive person who claims to be offended by conduct that would not be offensive to a reasonable person who is similarly stimulated. *See, e.g., Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1003 (1998) ("the objective severity of harassment should be judged from the perspective of a *reasonable* person in the plaintiff's position considering all the circumstances"); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370-71 (1993) (for alleged harassment to be actionable under Title VII, the affected individual must both "subjectively perceive the environment to be abusive" and it must be "severe or pervasive enough to create an *objectively* hostile or abusive work environment"); *Petrosino v. Bell Atlantic,* 385 F. 3d 210, 221 (2d Cir. 2004) ("...the perspective from which the evidence must be assessed is that of a "reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs"); *Thomas v. iStar Financial, Inc.,* 438 F.Supp.2d 348 (S.D.N.Y. 2006) (same); *cf. Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68-69, 126 S.Ct. 2405, 2415 (2006) (emphasizing the need for an objective, "reasonable employee" standard in Title VII

retaliation cases because it "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings").

Accordingly, expert testimony of a psychiatrist that the plaintiff is such a hypersensitive individual is perfectly admissible. *See, e.g., Lowe v. Philadelphia Newspapers, Inc.,* 594 F. Supp. 123 (E.D. Penn. 1984) (denying plaintiff's motion in limine; expert testimony to effect that plaintiff's mental disorder causes him to perceive criticism as harassment and to perceive racial slurs where no racial motivation is present is highly relevant to plaintiff's racial harassment claim); *Pascouau v. Martin Marietta Corp.,* 994 F. Supp. 1276 (D. Co. 1998) (relying, in part, on expert's testimony that plaintiff's mental disorders caused misinterpretations of events and interactions with fellow employees that were far more intense that would be interpreted by a reasonable person); *Davis v. U.S. Steel Corp.,* 539 F. Supp. 839 (E.D. Penn. 1982) (judgment entered for employer where evidence established that plaintiff was mentally ill and perceived normal discipline as harassment).

Plaintiff Moises Mendez is just such a hypersensitive individual. And, Defendant has a right to present to the jury evidence of Mr. Mendez's perceptions of discrimination, harassment and retaliation were more the product of his own "unusual" psychological make-up than of any actual hostility in his work environment. Dr. Levin's opinions pertaining to the "pattern of repeated misinterpretation and misperception of events" is, therefore, highly relevant to that defense and part of the evidence that Defendant intends to present to the jury on this critical issue. It cannot be excluded under the guise that it relates to "credibility."[5]

---

[5] Defendant will also establish this fact by the testimony of co-workers who witnessed the same events that Plaintiff cites as harassing and whose testimony as to what had actually occurred will contrast sharply with Plaintiff's allegations. The critical point, however, is that nothing in law or logic limits Defendant only to that kind of evidence, or limits psychiatric experts to testify only as to damages.

In his memorandum, to the extent that he relies on any legal authority at all, the cases relied upon by Plaintiff do not compel a different result. Plaintiff's reliance on *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531 (S.D.N.Y. 2004) and *Taylor v. Evans*, No. 94-cv-8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) is misplaced because here, Defendant does not intend to present Dr. Levin to the jury for the purpose of explaining lay matters to the jury or to opine on the state of mind of *other* witnesses whom he has not examined. Rather, Dr. Levin will be called in this case to testify, as a forensic psychiatric expert, as to his findings with respect to Plaintiff's psychological make-up as determined by both his study of the records and his examination of Plaintiff. Nothing in the cases cited by Plaintiff precludes such testimony. [6]

Two other cases to which Plaintiff cites – namely *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038 (W.D.Wash. Feb. 5, 2009), and *Stokes v. Xerox Corp.*, No. 05-71683, 2008 WL 275672 (E.D.Mich. Jan 28, 2008) – deal with the subject of expert attacks on credibility which, as discussed above, is not at issue in this case. Similarly, Dr. Levin's testimony is not speculative and thus the rationale set forth in *Estate of Radcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2008 WL 53115 (S.D.N.Y. Jan. 2, 2008), is simply not apposite.

Ironically, Plaintiff argues that Dr. Levin's opinions and findings "amount to nothing more than pure speculation that should never be presented to the jury, especially under the guise of expert testimony" because Dr. Levin did not personally bear witness to any of the underlying events giving rise to the instant litigation. (Pltf. Mem. at p. 5). Of course, Dr. Levin did no such

---

[6]  Defendant does not take issue with the legal proposition that "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (Pltf. Mem. at p. 4). Defendant does not intend to elicit such a "factual narrative" from Dr. Levin, though it has objected to the testimony offered by Plaintiff's expert, Dr. Goldwaser because his report was infused with such impermissible narrative, and virtually nothing else.

thing, while Plaintiff's psychiatric expert did that to excess, which is why his opinion should be excluded, but not Dr. Levin's.

## B. Plaintiff's Objections Go To Weight, Not Admissibility

The real issue being raised by Plaintiff in his Memorandum is not Dr. Levin's purported attack on Plaintiff's credibility, but his reliance, in part, on Plaintiff's medical and psychological history. Plaintiff refers to the information in Dr. Levin's report regarding Plaintiff's upbringing and various life experiences as "irrelevant and prejudicial" and states that such information is not "even tangentially relevant" to the issue of the emotional distress purportedly experienced by Plaintiff due to the alleged discrimination and retaliation he allegedly suffered during his employment at Westin. (Pltf. Mem. at 2).

This contention ignores the cases which hold that this sort of information is precisely what "any competent psychiatrist" would gather in performing a psychiatric assessment. (*See* page 7, *supra*).[7] It also misapprehends the role of a forensic psychiatrist and the necessary scope of the examination and resulting opinions:

> A properly conducted forensic evaluation is an extended, in-depth process. It entails multiple interviews, detailed review and comparison of what the examinee has communicated on different occasions, microanalysis of the data (with consideration of

---

[7] In *Shea v. Long Island R. Co.*, No. 05 Civ. 9768 (US), 2009 WL 1424115, *2 (S.D.N.Y. May 21, 2009), the court took note of the following from Kenneth S. Pope et al., *The MMPI, MMPI-2 & MMPI-A in Court A Practical Guide for Expert Witnesses and Attorneys* (American Psychological Association 1993):

> But expert witnesses conducting assessments have a responsibility to conduct an adequate review of records and to inquire specifically about incidents that may affect the interpretation of test results, even if the incidents occurred long ago.

> Without a structured interview and adequate review of records, it is easy to arrive at compelling but thoroughly misinformed and misleading conclusions.
> Pope et al. 68

sequence, tone, and nonverbal behavior), and cross-checking with corroborative evidence (interviews with relevant others, police and medical records, other expert witness reports, and psychological testing).

*See* Harold J. Bursztajn, M.D., *The role of a Forensic Psychologist in Legal Proceedings,* at www.forensic-psych.com/articles/artAskexp01.html (last visited September 29, 2009).

Moreover, to the extent that Plaintiff takes issue with the factual underpinnings contained in Dr. Levin's report, such objections go to the weight of the testimony and not its admissibility. *See Macquesten General Contractors v. HCE, Inc.,* No. 99 Civ. 8598(JCF), 2002 WL 31388716, at *2 (S.D.N.Y. Oct. 22, 2002) (denying motion to exclude defendant's expert where plaintiff argued that expert's opinion was based on hearsay), citing *Boucher v. United States Suzuki Motor Corp.,* 73 F.3d 18, 21 (2nd Cir. 1996); *see also, Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC,* No. 06-CV-3893, 2009 WL 875553, *14 (E.D.N.Y. March 30, 2009) (expert's report admissible notwithstanding attacks on methodology and reliance on contested facts where there are sufficient indicia of reliability; issues raised concern the weight and credibility of the report, not admissibility); *Aventis Environmental Science USA LP v. Scotts Co.,* 383 F. Supp. 2d 488, 513-515 (S.D.N.Y. 2005) ("Defendants are free to challenge the basis and source of [the proposed expert's] numbers, but a challenge to the facts or data relied upon by [the proposed expert] does not go to the admissibility of his testimony, but only to the weight of his testimony").

A similar situation exists here.  The information relied upon by Dr. Levin, Plaintiff's medical and psychological history, is consistent with that utilized in forensic psychiatric examinations.  Dr. Levin's background and curriculum vitae provide sufficient evidence of his reliability as an expert.  Additionally, the opinions objected to by Plaintiff are the types of observation that a forensic psychiatrist is not only qualified but also expected to make.

12

Plaintiff's objections to Dr. Levin's report bear not on its admissibility, as it is clearly admissible, but only on the weight that it should be afforded.

## C. Plaintiff Cannot Now Restrict the Scope of the Court Order Rule 35 Examination.

In requesting a Rule 35 mental examination, Defendant submitted to the Court both a letter of counsel (Starr S. Aff. ¶ 3 & Exh. 4) and the supporting affirmation of Dr. Levin (*Id.* & Exh. 5).[8] Judge Fox endorsed Defendant's letter and ordered the examination stating, as follows:

> Having considered the instant application of the Plaintiff's written opposition thereto, the application is granted.

Dkt. # 35 at 3 of 3.

Dr. Levin's affidavit in support of the Rule 35 motion stated the precisely scope of his intended examination, as follows:

> In performing my mental examination, my goal is to evaluate Mr. Mendez's current clinical problems, conditions and symptoms and their severity relevant to the general population; the extent, if any, to which his current psychiatric conditions are attributable to the alleged conduct in the workplace or influence by pre-existing conditions or mental illness or other factors; and whether he suffers from any psychological conditions that would effect his *ability to accurately perceive the social significance of behavior occurring in his social milieu.* I would also attempt to develop an opinion, with a degree of medical probability, about the causal relationships, if any, between Mr. Mendez's' conditions (past and present) and the conduct of the individuals about whom Mr. Mendez complains.

(*See* Exh. 5 at ¶ 9 (emphasis added).)

Thus, Dr. Levin's intention to render an opinion as to Plaintiff's ability to accurately perceive the social significance of behavior occurring in his social setting was clearly stated in the request for the Rule 35 mental examination that Judge Fox approved. Plaintiff did not appeal

---

[8]As used herein, "Starr S. Aff." refers to the Supplemental Affirmation of Michael Starr, dated October 4, 2009, which is submitted by Defendant in opposition to Plaintiff's motions in limine.

such reconsideration from Judge Fox's order to the District Court in any regard, including with respect to the scope of the examination (Starr A. Aff. ¶ 4), *see* 28 U.S.C. § 636(b)(1)(A), he cannot now object to Dr. Levin's having provided an opinion on the precise subject that he was permitted to opine upon.

Consequently, there is neither factual nor legal basis for Plaintiff's assertion that Dr. Levin's "role as an expert *is limited* to an assessment of Mr. Mendez's current emotional state," or that his "*sole function* [was] to determine whether Mr. Mendez suffered from emotional distress that could be attributed to Defendant's misconduct" or that "the *only* issue for which Dr. Levin is designated as an expert" is for an assessment of Plaintiff's emotional distress damages. (Pltf. Mem. at 1, 3 & 4 (emphasis added).)   Quite the contrary, as noted above, Dr. Levin properly conducted his Rule 35 examination for other purposes as well.   Plaintiff's *post hoc* effort to unilaterally restrict the scope of Dr. Levin's opinion by means of his counsel's *ipse dixit* is both improper and untimely. *See Hlinko v. Virgin Atlantic Airways*, No. 96 Civ. 2873 (KNW) (THK), 1997 WL 68560, *2 (S.D.N.Y. Feb. 19, 1997) ("[p]laintiff's objection to . . . her examination on the eve of the examination and near the close of discovery is untimely").

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion in limine to exclude the testimony of Defendant's forensic psychiatric expert, Dr. Andrew P. Levin, should be denied.

Dated: New York, New York
       October 2, 2009

HOLLAND & KNIGHT LLP

By:  _____

Michael Starr
Loren L. Forrest, Jr.
195 Broadway
New York, New York 10007
Tel.: 212-513-3200
Fax: 212-385-9010

*Attorneys for Defendant*
*Starwood Hotels & Resorts Worldwide, Inc.*

# 8875174_v3

15