Michael Starr, Esq.
Loren L. Forrest, Jr., Esq.
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Tel.: (212) 513-3200
Fax: (212) 385-9010
Attorneys for Starwood Hotels and Resorts Worldwide, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Moises Mendez,                                             :
                                                           :
                Plaintiff,                         :    08 Civ. 4967 (CM)(KNF)
                                                           :
   -against-                                              :    **SUPPLEMENTAL**
                                                           :    **AFFIRMATION OF**
Starwood Hotels & Resorts Worldwide, Inc.,                 :    **MICHAEL STARR**
                                                           :
                Defendant.                         :
----------------------------------------------------------X

       Michael Starr, an attorney duly admitted to practice in the courts of the State of New York, does hereby affirm under the penalty of perjury as follows:

       1.    I am a partner in the law firm of Holland & Knight LLP, attorneys for the Defendant, Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*"), in the above-encaptioned action. I submit this affirmation (styled as "Supplemental" to distinguish it from my September 25, 2009 affirmation in support of Defendant's motion in limine) in opposition to Plaintiff's two motions in limine. The first is to exclude the expert report and testimony of Defendant's forensic psychiatric expert, Andrew P. Levin, M.D.; the second is to exclude testimony or evidence by Dr. Levin concerning the MMPI-2 test results. I am fully familiar with the facts and circumstances stated herein.

The Rule 35 Mental Examination

2. By Order of this Court dated November 19, 2008 (Dkt. No. 35), Plaintiff was required to submit to a Rule 35 mental examination. As part of that Order, Plaintiff was required to take a psychological test known as the Minnesota Multiphasic Personality Inventory 2 ("MMPI-2"). (A copy of my November 18, 2008 letter, as was endorsed by Judge Fox, is attached as Exhibit 4.) In response to Defendant's Rule 35 motion, Plaintiff did not ask to be supplied with the MMPI-2 answer sheet or the test booklet. No such condition was imposed by the November 19 Order.

3. In support of Defendant's application for a Rule 35 mental examination, I submitted with my November 18 letter an affirmation, dated November 17, 2008, of Dr. Levin, who was Defendant's intended forensic psychiatric expert. (A copy of Dr. Levin's November 17, 2008 affirmation, excluding his curriculum vitae which had been attached, is annexed as Exhibit 5.)

4. Plaintiff never moved the District Court to reconsider from Judge Fox's November 19, 2008 Order compelling Plaintiff's mental examination.

5. As noted in my November 18 letter to Judge Fox, Defendant had agreed to certain conditions to the mental examination that had been insisted on by Plaintiff's counsel. As it relates to this motion, one of those conditions was that the MMPI-2 be administered to Plaintiff in Spanish, not English. Accordingly, when Plaintiff took the test on December 8, 2008, the test booklet was in Spanish.

Dr. Levin's Report

6. On January 2, 2009 Defendant delivered to Plaintiff Dr. Levin's expert report. His deposition was taken by Plaintiff five days later, on January 7, 2009.

2

7. As stated in Dr. Levin's report, in reaching his opinions he had considered an "Interpretation" of Plaintiff's MMPI-2 test results that had been prepared by Sophie Michelakou, Ph.D., who was the psychologist who scored Plaintiff's MMPI-2. He also considered a multi-page "Extended Score Report," which Dr. Michelakou had appended to her Interpretation.

8. Plaintiff's counsel requested a copy of Dr. Michaelakou's Interpretation after they had received Dr. Levin's report. Because the Interpretation was one of the documents referred to by Dr. Levin, a copy of the Interpretation, and accompanying Extended Score Report, was promptly delivered to Plaintiff. It was used by Plaintiff's counsel as an exhibit in Dr. Levin's deposition.

9. On January 9, 2009, I received from Plaintiff's counsel a purported "Addendum" to the earlier report of Alberto M. Goldwaser, M.D., who was Plaintiff's forensic psychiatrist. Dr. Goldwaser indicated that he had received and considered for his "Addendum" the MMPI-2 Interpretation of Dr. Michelakou and the appended Extended Score Report.

Plaintiff's Additional Document Demands

10. In the course of Dr. Levin's deposition certain documents were identified. Dr. Levin testified that he had prepared a list of questions to ask Plaintiff in advance of his examination. He also testified that he had prepared typewritten notes of his interview after it had occurred.

11. Following the deposition, Plaintiff asked for Dr. Levin's list of questions and his interview notes. They were supplied.

12. Plaintiff's counsel also asked to see what he referred to as Plaintiff's "handwritten response" to the court-ordered MMPI-2. I understood from Dr. Levin and my own experience that Plaintiff's "answers" were a series of filled in blanks on a sheet of paper. I could not imagine

3

what purpose Plaintiff would have for seeing it or how it could have any relevance to this lawsuit. Furthermore, Plaintiff had never identified a licensed psychologist that Plaintiff intended to use as their expert to interpret the answers (which are meaningless except to a psychologist trained in scoring MMPI-2 tests). It was also long past the time for Plaintiff to identify and produce expert reports.

13. The Plaintiff's MMPI-2 answer sheet had been given by Dr. Levin to Dr. Michelakou, and she used it to prepare her Interpretation and Extended Score Report. I was informed by Dr. Levin that she did not return it to him and that he did not refer to it in formulating his opinions. Because that answer sheet was not itself considered by Dr. Levin, Defendant took the position that it was not required to produce it to Plaintiff.

14. It now appears that Plaintiff's counsel was actually referring to the test's question booklet in which Plaintiff, allegedly, made some markings, rather than the answer sheet. But he never said that to me.

15. Plaintiff's counsel also never informed me, even after Dr. Levin's deposition had been taken, that Plaintiff was alleging that Dr. Levin had directed him on how to answer any questions. He never informed me that Plaintiff had made markings or notations in the test booklet that could substantiate that allegation. He never tried to explain why it was he thought Plaintiff's "handwritten responses" to a test whose results were computer-generated and, then, scored and evaluated only by a licensed psychologist could have any relevance to this lawsuit. Defendant's position was that while the test results were relevant (and were produced) the raw-data answer sheet was not.

16. Plaintiff's counsel persisted in his demand for that "handwritten response" (which I understood to refer to the answer sheet). At one point he said he would bring the matter to the

4

attention of Judge Fox, who had been directed by the Court to handle discovery matters in this action, if he did not receive it by March 23, 2009.

17. The deadline unilaterally established by Plaintiff's counsel came and went. No application was made to Judge Fox to compel production of Plaintiff's MMPI-2 "handwritten responses" or answer sheet. We had assumed that Plaintiff's counsel, having received all the other documents he had requested concerning Dr. Levin's evaluation, had realized that Plaintiff was not entitled to the answer sheet and that he, consequently, decided to abandon his demand.

18. At no time after the March 18 letter of opposing counsel to me or after the March 23 "deadline" unilaterally established by Mr. Thompson did Plaintiff's counsel reiterate his demand for the question sheet or make any application to Judge Fox to compel its production.

19. In fact, Plaintiff never sought court intervention or made an application to the court for another Rule 35 mental examination regarding his allegations that anything improper occurred during his MMPI-2 test.

20. Plaintiff's ability to bring this matter before Judge Fox was not affected by the Second Circuit stay. That stay only applied to pretrial, post-discovery matters, but not as to any outstanding discovery disputes. In fact, discovery disputes were brought to Judge Fox's attention after the stay had issued.

Dated: New York, New York
October 2, 2009

_____
Michael Starr

# 8874299_v1

5

EXHIBIT 4

MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 11/19/09

RECEIVED
NOV 18 2008
CHAMBERS OF
KEVIN NATHANIEL FOX
U.S. MAGISTRATE JUDGE




# HOGAN & HARTSON

Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
+1.212.918.3000 Tel
+1.212.918.3100 Fax

www.hhlaw.com

Michael Starr
(212) 918-3638
mstarr@hhlaw.com

November 18, 2008

**BY FACSIMILE**

Hon. Kevin Nathaniel Fox
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 640
New York, New York 10007

   Re: *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*
     No. 08 Civ. 4967 (CM) (KNF)

Dear Judge Fox:

As Your Honor knows, this firm represents defendant Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*") in the above-referenced matter. This letter supplements prior letters to Your Honor concerning Starwood's application for a Rule 35 mental examination of Plaintiff, Moises Mendez.

Counsel for both parties have now conferred concerning this matter and have reached agreement on substantially all issues. The parties could not agree, however, on one question, and Starwood respectfully requests Your Honor's determination of that outstanding issue.

**Matters Agreed To**

Plaintiff does not object to Starwood's having the Rule 35 mental examination of Mr. Mendez. Opposing counsel has, however, asked for certain restrictions and limitations to be placed on that examination. Starwood has accepted all those restrictions except one.

The agreed-upon restrictions are as follows:

 1. The Rule 35 mental examination will involve only one psychological test, that being the Minnesota Multiphasic Personality Inventory - II ("*MMPI-II*"), and it will be administered in its Spanish-language version.

 2. There will be no recording made of the psychiatric interview.

 3. No lawyers will be present at the mental examination or at the site of the mental examination while it is being administered.

Hon. Kevin Nathaniel Fox
November 18, 2008
Page 2

4. The mental examination will not be given in any attorney's office. It will, rather, be administered at the offices of Andrew P. Levin, M.D. at 141 North Central Avenue, Hartsdale, New York.

5. The Rule 35 mental examination will not be administered by an individual who regularly provides such services for this law firm and the undersigned hereby affirms that Dr. Levin has not performed forensic psychiatric services for the firm of Hogan & Hartson LLP prior to his engagement for this matter.

### Matters in Dispute

The only matter remaining in dispute is the duration of the mental examination. Plaintiff has asked that the examination be limited to no more than 4 hours, including both the personal interview and any psychological testing.

Defendant asks that it be permitted to have a mental examination consisting from 2 to 3 hours for administration of the MMPI-II in Spanish and a personal interview of up to, but no more than 4 hours, in addition to the psychological testing. Defendant is prepared, as an accommodation to Plaintiff, to have the mental examination administered in two parts, as follows: the administration of the MMPI-II (in Spanish) at the offices of Dr. Levin on December 5, 2008 and the personal interview of Plaintiff by Dr. Levin for up to, but no more than, 4 hours, at the offices of Dr. Levin on December 12, 2008.

### Grounds for Starwood's Application

Defendant submits that a Rule 35 mental examination of Plaintiff be administered as it requests because in the opinion of its forensic psychiatric expert, anything less than the examination period and components outlined above would hamper his ability to render an opinion as to the matters for which an opinion is required in this action. A full statement of the reasons for that position (as well as the background and qualifications of Dr. Levin) are set forth in his Affirmation, dated November 17, 2008, which is submitted together with this letter.

The purpose of a Rule 35 mental examination is to "'preserve[] the equal footing of the parties to evaluate the plaintiff's mental state...'" *Gattegno v. PriceWaterhouseCoopers, LLP*, 204 F.R.D. 228, 233 (D. Conn. 2001), quoting *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994); *see Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993) (Rule 35 attempts to provide a "level playing field" between the parties in their appraisals of Plaintiff's psychological state) (internal quotations omitted).

Limiting Defendant's examination to only four hours would hardly level the playing field between the parties. Under Plaintiff's proposed time frame, after the MMPI-II is administered, Dr. Levin would have only an hour or two to actually interview Plaintiff on the myriad of sensitive and time-consuming issues Dr. Levin details in his Affirmation. In this particular case, Plaintiff has made serious allegations of harassment by several different people over a period of years. Plaintiff claims $5.5 million in emotional and physical damages for conditions which he claims have originated or been aggravated by the behavior he experienced at work. He has been under the treatment of two, different psychiatrists for the past three years.

Hon. Kevin Nathaniel Fox
November 18, 2008
Page 3

Plaintiff's counsel has refused to represent that he would not call Mr. Mendez's treating psychiatrists to be witnesses at the jury trial of this matter. Plaintiff's counsel has refused to represent that he would not attempt to elicit from these treating physicians their opinions as to the extent of Mr. Mendez's emotional distress or its causation. And, at trial, Plaintiff's counsel will surely try to discredit Dr. Levin's opinion based on the relatively limited time he spent interviewing Mr. Mendez as compared to his treating physician. Plaintiff's counsel has also refused to say whether or not he would use at trial a psychiatric expert other than Mr. Mendez's treating physicians.

Under all the foregoing circumstances, Dr. Levin should at least be allowed to take the time he deems necessary to fully evaluate Plaintiff. Anything less would not "level the playing field" or give Defendant the "equal footing" it is entitled to have.

The time parameters requested by Defendant are well within the range deemed reasonable in other cases. For example, in *Stoner v. The New York City Ballet Co.*, No. 99Civ.0196, 2002 WL 31875404, at *5 (S.D.N.Y. Dec. 24, 2002), the court found good cause for defendant's psychiatrist to examine plaintiff for two 4-hour sessions on separate days, finding such a time period reasonable and plaintiff's objections regarding the possible stress associated with the examinations to be unpersuasive. *See also Gibson v. Walgreen Co.*, No. 6:07-cv-1053-Orl-28KRS, 2008 WL 746845, at *2 (M.D. Fla. March 18, 2008) (4 to 6 hours exclusive of breaks is reasonable for an interview and testing, and rejecting a 4-hour limit because the "examinee potentially could manipulate the length of the oral interview by taking *unnecessarily long on the written tests*") (emphasis added); *Juell v. Forest Pharms., Inc.*, Civ. No. S-05-0378, 2006 WL 1837929, at *2 (E.D. Ca. July 5, 2006); (8-hour exam in a single day with one hour lunch break reasonable); *Greenhorn v. Marriot Int'l, Inc.*, 216 F.R.D. 649, 653 (court declined to impose a 2-hour limit on psychiatric interview, instead finding 3 to 5 hours reasonable); *Jackson v. Entergy Operations, Inc.*, Nos. Civ.A. 96-4111 and 97-0943, 1998 WL 28272, at *3 (E.D. La. Jan. 26, 1998) (4 hours each for psychological testing and psychiatric examination was reasonable).

For all the foregoing reasons, Defendant requests that it be permitted to have a Rule 35 mental examination of Plaintiff in this action as follows: the administration of the MMPI-II (in Spanish) at the offices of Andrew P. Levin, M.D. on December 5, 2008 lasting for approximately 2 to 3 hours to be followed by a personal interview of Plaintiff by Dr. Levin at his offices on December 12, 2008 lasting up to, but no more than 4 hours in duration.

11/19/08
Having considered the instant application and the plaintiff's written opposition thereto, the application is granted.
SO ORDERED:
/Kevin Nathaniel Fox/
KEVIN NATHANIEL FOX, U.S.M.J.

Respectfully submitted,

Michael Starr

MS:scc
Attachment

cc (via e-mail): Kenneth P. Thompson, Esq.
                Jamie E. Balanoff, Esq.

EXHIBIT 5

NOV-17-2008 15:58                                                                                     P.02

Michael Starr (MS 6851)
Christine M. Wagner (CW 3440)
Hogan & Hartson LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
MOISES MENDEZ,

                Plaintiff,        08-CIV-4967 (CM) (KNF)

     v.                         **ECF CASE**

STARWOOD HOTELS AND RESORTS     **AFFIRMATION OF**
WORLDWIDE, INC.,                            **DR. ANDREW P. LEVIN**

                Defendant.
---------------------------------------------------------x

     ANDREW P. LEVIN, M.D., declares under penalty of perjury as follows:

     1.    I am a licensed medical doctor certified in the field of psychiatry and forensic psychiatry. I have been retained by Defendant Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") to conduct an independent mental examination of Plaintiff Moises Mendez pursuant to Rule 35 of the Federal Rules of Civil Procedure.

     2.    As I understand from Starwood's counsel, Mr. Mendez's counsel has consented to having a mental examination, including both psychological testing and a psychiatric interview, but objects to any such examination lasting longer than four hours. I offer this declaration to explain why such a proposal is inadequate to perform a thorough examination

NOV-17-2008 15:59                                                                 P.03

that would enable me to render a fully informed decision regarding Mr. Mendez's mental state as is relevant to this lawsuit.

**Levin Qualifications**

3. I received my M.D. degree in 1980 from the University of Pennsylvania School of Medicine. I am certified by the American Board of Psychiatry in Neurology and Psychiatry (November 1985) and Forensic Psychiatry (April 1996, recertification May 2006). In addition to my own private practice, I am currently the Forensic Fellowship Site Supervisor at the Albert Einstein College of Medicine, a position I have held since July 2003. Since December 2003, I have been an Assistant Clinical Professor of Psychiatry at Columbia University, a position I also held from January 1986 to January 1997. Between 1997 and 2003 I was an Assistant Clinical Professor of Psychiatry at New York Medical College. I am also currently the Medical Director of Westchester Jewish Community Services.

4. In addition to my clinical and teaching work, I am a member of several professional societies in my field, including, but not limited to, the American Medical Association, the American Psychiatric Society and the American Academy of Psychiatry and the Law, where I serve on the Trauma and Stress Committee. Furthermore, I have written and presented extensively in the field of psychiatry over the past nearly 25 years.

5. I have testified as an expert witness in the field of psychiatry more than a dozen times. In addition, I have submitted expert reports on behalf of plaintiffs and defendants in nearly sixty cases over the years.

**The Mental Examination**

6. Typically, when performing forensic examinations, I require a minimum of four hours of face-to-face psychiatric interviews with an examinee. In addition, I regularly

2

administer the Minnesota Multiphasic Personality Inventory - II ("*MMPI-II*"), which is a well-accepted written psychological test that typically requires between two to three hours to complete, depending on the pace of the examinee.

7. The tests and time parameters requested by Starwood are fully warranted and necessary here, where as I understand, Mr. Mendez suffers from depression, anxiety, and bipolar disorder, and claims that he suffers past and on-going mental distress as a result of behavior directed toward him in the workplace. I am also informed by Starwood's counsel that Mr. Mendez suffers from two physical illnesses, diverticulitis and diabetes, which he has said were aggravated by the mental distress and anxiety that he attributes to his workplace environment.

8. The MMPI-II is an important tool in providing wide-ranging information about the examinee's symptoms, thought patterns, responses to symptoms and complaints. Without a sufficient amount of time to complete a minimum number of questions, however, the test would lack statistical validity. It is, therefore, imperative for an accurate psychiatric assessment that, if the MMPI-II is administered at all, at least two or three hours be allowed for the individual to complete that test instrument.

9. In performing my mental examination, my goal is to evaluate Mr. Mendez's current clinical problems, conditions and symptoms and their severity relevant to the general population; the extent, if any, to which his current psychiatric conditions are attributable to the alleged conduct in the workplace or are influenced by pre-existing conditions or mental illness or other factors; and whether he suffers from any psychological conditions that would affect his ability to accurately perceive the social significance of behavior occurring in his social milieu. I would also attempt to develop an opinion, within a degree of medical probability, about the

3

causal relationships, if any, between Mr. Mendez's conditions (past and present) and the conduct of the individuals about whom Mr. Mendez complains.

10.  These are complicated and sensitive issues. I believe that if I am not allowed to administer the MMPI-II (and given the time necessary for a valid test) and in addition to that to have a full four hours for a personal interview with Mr. Mendez, my ability to render a medical opinion as to the matters relevant to the lawsuit would be hampered.

Dated: New York, New York
       November 17, 2008

*[signature]* 11/17/08

ANDREW P. LEVIN, MD

4