Michael Starr, Esq.
Loren L. Forrest, Jr., Esq.
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Tel.: (212) 513-3200
Fax: (212) 385-9010
Attorneys for Starwood Hotels and Resorts Worldwide, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Moises Mendez,

            Plaintiff,                        08 Civ. 4967 (CM)(KNF)

  -against-                                **SUPPLEMENTAL**
                                                        **AFFIRMATION OF**
Starwood Hotels & Resorts Worldwide, Inc.,       **ANDREW P. LEVIN, M.D.**

            Defendant.
-----------------------------------------------------------------X

       Andrew P. Levin, M.D., being duly sworn, deposes and affirms under penalty of perjury as follows:

       1.     I am a Board Certified psychiatrist licensed to practice medicine in New York State and hold the Added Qualifications Certification in Forensic Psychiatry. I have personal knowledge of the facts set forth herein, unless indicated otherwise, and make this affirmation with respect to the Defendant, Starwood Hotels & Resorts Worldwide, Inc.'s ("Starwood") opposition to the motions in limine of Moises Mendez ("Mr. Mendez") to preclude my testimony or evidence concerning the MMPI-2 and to preclude Defendant from introducing my expert report and/or testimony into evidence in the above-captioned matter.

My Qualifications

2. Following residency in 1984, I pursued a NIMH research fellowship in anxiety disorders. This work involved comprehensive evaluations of adults with mood and anxiety conditions. In addition, since 1986, I have evaluated and treated victims of trauma, child abuse, and domestic violence. I currently hold the position of Medical Director, Westchester Jewish Community Services, Hartsdale NY and Assistant Clinical Professor of Psychiatry at Columbia University College of Physicians and Surgeons.

3. Since 1993, I have performed numerous forensic evaluations in both criminal and civil settings and have been qualified as an expert in both state and federal venues. In my faculty role at Columbia I supervise residents in general psychiatry and lecture on trauma. In addition, I serve as a site supervisor for the Albert Einstein College of Medicine Fellowship Program in Forensic Psychiatry. I have publications in juried journals in the areas of anxiety, eating, personality disorders, trauma, dissociation, and forensic evaluation. I have proffered more than sixty reports in forensic settings and testified more than fifteen times in civil and criminal matters.

My Examination of Mr. Mendez

4. As noted in my report of January 2, 2009, I interviewed Mr. Mendez for four hours and ten minutes on December 12, 2008 at my office in Hartsdale, NY.

5. In addition to interviewing Mr. Mendez for over four hours in my office, I reviewed a copy of the transcript and portions of video-recording of Mr. Mendez's deposition held on October 27, 2008.

6. During both my examination of Mr. Mendez and my review of Mr. Mendez's deposition, I found that Mr. Mendez did not have major difficulty in understanding and responding to questions in English.

Mr. Mendez's MMPI-2 Questionnaire.

7. On December 5, 2008, I was present when Mr. Mendez began answering the Minnesota Multiphasic Personality Inventory 2 ("MMPI-2").

8. Over the past five to six years, I have administered the MMPI-2 at least ten times. Each time I have given the same instructions to each MMPI-2 test taker based upon the instructions that I have received from certified psychologists regarding the administration of the MMPI-2.

9. In accordance with the instructions that I have received from certified psychologists for administering the MMPI-2, I only instructed Mr. Mendez to answer the questions true or false. I also instructed Mr. Mendez to give his first response and not spend a lot of time thinking about each question. I also told Mr. Mendez that he should try to complete all of the questions.

10. I returned to the room where Mr. Mendez was taking the MMPI-2 about every forty-five minutes, in total three times, to make sure that Mr. Mendez was okay, further checking to see if Mr. Mendez needed to go the bathroom or if he needed a drink of water.

11. To the best of my recollection, during my visits to check on Mr. Mendez, he asked me about six to ten questions that he said he had difficulty understanding.

12. There are 567 questions on the MMPI-2. With the exception of one question, Mr. Mendez answered all of the questions on the MMPI-2.

13. I tried to respond to Mr. Mendez's questions as best I could, by repeating the questions and the instructions for the MMPI-2 questionnaire to Mr. Mendez in both Spanish and English.

14. When Mr. Mendez asked me how he should answer questions, I always repeated the instructions to the MMPI-2 to Mr. Mendez, which is "was it true or false for him."

15. At no time during Mr. Mendez's MMPI-2 did I ever instruct Mr. Mendez how to respond to any particular question other than the instructions detailed above. All of my instructions to Mr. Mendez during his MMPI-2 where consistent with the instructions and protocols for MMPI-2.

16. Since I am not certified to interpret or score the results of an MMPI-2 test, immediately after the test, I delivered the results of the test to Dr. Sophie Michelakou.

17. Dr. Michelakou is certified to interpret or score the results of a MMPI-2 test. At no time did I myself review Mr. Mendez's handwritten notes and other markings on the MMPI-2 answer sheet or test booklet; nor did I discuss such notes or markings with Dr. Michelakou.

18. I subsequently obtained from Dr. Michelakou a copy of the answer sheet that Mr. Mendez completed when he took the MMPI-2 test.

19. I never reviewed nor considered Mr. Mendez's answer sheet or any of Mr. Mendez's handwritten notes and other markings on the MMPI-2 answer sheet or test booklet in reaching my opinion stated in my report of January 2, 2009.

20. I only reviewed the results of Mr. Mendez's scored MMPI-2 test in coming to that opinion. Those results were contained in a one-page "Interpretation" prepared by Dr. Michelakou and a multi-page, computer generated "Extended Score Report" that she attached.

21. Dr. Michelakou never reviewed nor contributed to my January 2, 2009 report regarding Mr. Mendez.

Mr. Mendez Affidavit

22. I have been supplied, and have reviewed, Mr. Mendez's Affidavit dated September 25, 2009, that was submitted to the Court in support of his motions in limine.

23. I never told Mr. Mendez not to worry about the meaning of any question. And, contrary to his Affidavit, I never told Mr. Mendez what to write down on the MMPI-2 answer sheet. Nor did I or instruct Mr. Mendez on how to answer any questions during the MMPI-2 test.

24. I am completely confident that the instruction I gave to Mr. Mendez and my overall administration of Mr. Mendez's MMPI-2 were consistent with the customary methods used for administering the MMPI-2.

Dated: New York, New York
October 2, 2009

_____
Andrew P. Levin, MD

5