UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x

MOISES MENDEZ,

Plaintiff,

-against-

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC.

Defendant.

——————————————————————————x

```
┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____              │
│ DATE FILED:  3 5 10         │
└─────────────────────────────┘
```

08 Civ. 4967(CM)(KNF)

## REVISED JURY CHARGE AND VERDICT SHEET

McMahon, J.:

Attached are a revised jury charge and verdict sheet.

We do not yet have all the transcripts needed to decide whether or not to give a spoliation charge, and we have not completed the research needed to redraft that charge. The rest of the charge has been revised in accordance with our conference of this evening and the further research that was promised. Also, I have beefed up the general discrimination charge, which was a bit skimpy in the last draft, which accounts for the added number of pages.

After re-reading Judge Kaplan's decision in *Zakrzewska v. The New School*, 598 F. Supp. 2d 426 (S.D.N.Y. 2009), I am satisfied that I should charge the affirmative defense contained in the City's Administrative Code. This can only add to the jurors' confusion, but there you have it; we have altered Section II of the verdict sheet to require them to answer a question about this affirmative defense if they answer Question 2-A "YES."

The verdict sheet has been substantially revised. I am going to follow my initial instinct and take a special verdict. For a variety of reasons (relating primarily to the all-but-inevitable post-trial motions), I must insist on a special verdict. The last verdict sheet represented a compromise between a general and a special verdict, primarily because I was not sure which actions Mr. Thompson was going to argue constituted retaliation and which constituted failure to accommodate. I think I have it now, but if I have left something out, Mr. Thompson has to speak now or forever hold his peace.

It should be clear from the charge that I hereby grant Mr. Starr's reserved motion to dismiss any claim of disability discrimination under federal or state (but not city) law insofar as it rests on any failure to promote Mr. Mendez to the position of pastry chef. That conclusion is compelled by *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F. 3d 92, 98 (2d Cir. 2009).

We will try to have a spoliation charge for you to look at by the end of the day Friday; Shireen and I will work via email (she will be in New York with the transcripts). I will probably not decide whether to give the charge it until just before you close, so you should be prepared for either eventuality. But I want to make one thing clear: whether I charge spoliation or not, Mr. Thompson is going to argue that documents were destroyed or altered and that the jury should draw the conclusion that the evidence would have been helpful to his client. He can make that argument whether I give it the added boost of a judicial imprimatur or not. On the record it is fair argument. And Mr. Starr will counter there is no proof that documents were destroyed or altered, and that in this as in all matters except *Faragher-Ellerth* and the corresponding city affirmative defense, the burden of proof rests with the plaintiff. That, too, is fair argument.

Put otherwise, the absence of a charge will not foreclose anyone from making whatever arguments he wishes about the evidence as it exists in the record. Therefore, you should plan to close using whatever arguments are most helpful to your client's position, and if I decide to give the charge, Mr. Thompson will be able to add a line or two to his presentation.

I look forward to Monday's closing arguments with great interest. About the closings, I do want to say one thing: do not hop up and object repeatedly during your opponent's argument if he says something that you believe is not in the record. I never sustain such objections. It is the jury's province to decide whether the record supports this or that point, or whether a witness testified in a particular way. Please keep that in mind.

Dated: March 5, 2010

U.S.D.J.

BY EMAIL AND ECF TO ALL COUNSEL

**Mendez v. Starwood Hotels & Resorts Worldwide, Inc.
No. 08 Civ. 4967 (CM)**

**DRAFT Jury Charge**

**March 4, 2010**

## **Province of the Court and Jury**

Members of the Jury:

Now that you have heard the evidence and the arguments, it is my duty to give you instructions as to the law applicable in this case.

It is your duty as jurors to follow the law as stated in these instructions, and to apply the rules of law to the facts as you find them from the evidence in this case.

You are not to single out one instruction as stating the law, but must consider all of the instructions as a whole.

You also are not to be concerned with the wisdom of any rule of law stated by the Court. It is your sworn duty to issue a verdict based upon the law as instructed by the Court, regardless of any opinion you may have as to what the law ought to be.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case. It is not my function to determine the facts; that duty is yours.

2

## No Sympathy, Bias or Prejudice

You must weigh and consider this case without regard to sympathy, prejudice, or public opinion. In reaching your verdict you must not consider anything other than the evidence which has been presented to you in this action. All of the parties in this case and the public have the right to expect that you will carefully and impartially consider all the evidence in this case, follow the law as I state it, and then reach a just verdict regardless of the consequences.

## Equality of Parties

All parties stand as equals before the Court. The fact that an individual is suing a corporation is of no moment and should not affect your verdict one way or the other

## Decision on the Evidence

As I have told you previously, it is your function as jurors to decide the issues of fact.

Your decision on the issues of fact is to be based solely on evidence. The evidence consists of

the sworn testimony of witnesses and of the exhibits which were received into evidence for your

consideration.

Nothing I say is evidence; nothing either of the lawyers say is evidence. Questions by

themselves are not evidence. Objections are not evidence. Any evidence to which an objection

was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely

disregarded.

## Burden of Proof and Preponderance of the Evidence Standard

The plaintiff in a civil action has the burden of proof with respect to every essential element of his claim. This means that unless the plaintiff can demonstrate each essential element of his claim by what we call a preponderance of the credible evidence, then your verdict must be in favor of the defendant.

The "credible evidence" means the testimony or exhibits that you find worthy of being believed. The plaintiff has convinced you by a "preponderance of the evidence" if, after hearing all the evidence, you believe it is more likely than not that some event occurred or some fact exists. If you believe it more likely that an event did not occur, or that a fact does not exist, then the matter has not been proven to you by a preponderance of the evidence. If you find the likelihood evenly balanced—maybe yes, maybe no—then the party having the burden of proving the fact to you has not succeeded. The balance must tip in favor of believing that the particular event did occur or the particular fact did exist in order for the plaintiff to meet his burden of proof.

In determining whether a fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them. However, a preponderance of the evidence does not mean the greater number of witnesses, or how much time either side employs in the trial. The phrase refers to the quality of the evidence—its weight or significance—and the effect it has on your minds.

Some of you may have served as a juror in a criminal trial, or watched movies or read articles or books dealing with criminal cases and the "proof beyond a reasonable doubt" standard

that is required in criminal cases. That standard does not apply in a civil trial. Put out of your mind any discussion you may have heard about proof beyond a reasonable doubt. In a civil case, the proof must be by a preponderance of the credible evidence, as I have just explained that standard to you.

## Direct and Circumstantial Evidence

As I explained to you at the beginning of the trial, there are two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence—such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the credible evidence in the case, both direct and circumstantial.

## Credibility of Witnesses

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence you find credible that is contrary to the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness testified, and every matter in evidence that tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive, state of mind, and demeanor or manner while on the stand. Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness' testimony is supported or contradicted by other evidence in the case.

Inconsistencies within the testimony of a witness may or may not cause you to discredit that testimony. The same is true of discrepancies between the testimony of different witnesses. Two or more persons witnessing an incident or transaction may see or hear it differently; and innocent mis-recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or an unimportant detail, and whether you believe it results from innocent error or intentional falsehood.

After making your own judgment, you should give the testimony of each witness such weight, if any, as you may think it deserves.

9

## Trial Preparation

As you have heard, the lawyers prepared their cases by talking to witnesses prior to the trial.  This is appropriate professional behavior, unless the lawyer counsels the witness not to tell the truth.

## Interested Witnesses

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Interest in the outcome can create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. If you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind that you should not automatically refuse to believe testimony given by an interested witness. There are many people who would not testify falsely, no matter what their interest in the outcome of the case may be. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness' interest has affected his or her testimony.

11

## Expert Witnesses

You have heard testimony from Dr. Andrew Levin and Dr. Carlos Ortiz. They were qualified as experts. An expert is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

An expert's opinion is subject to the same rules concerning reliability as the testimony of all other witnesses. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case

In weighing the expert's testimony, you may consider his qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You should not, however, accept an expert's testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

## Medical Testimony

You have heard the testimony of Dr. Alexander Chun concerning the statements made by plaintiff, who was a patient, for the purpose of facilitating medical diagnosis or treatment. These statements included descriptions of the patient's medical history and symptoms and the general cause of his illness. You may consider these statements as evidence of the facts stated. It is up to you, the jury, to decide what weight, if any, to give these statements.

13

## Impeachment by Prior Inconsistent Statement

You have heard the lawyers argue that certain witnesses said things at an earlier time—such as at a pre-trial deposition—that are inconsistent with the testimony that the witness gave here at trial.

A prior inconsistent statement is not testimony, and so may not be considered by you as affirmative evidence in determining liability. However, if you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that inconsistency in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much weight, if any, to give to the fact of the inconsistency as you decide whether to believe all or part of the witness' trial testimony.

**Falsis in Unum**

      If you find that a witness has testified falsely about any material fact—put otherwise, if a witness lied to you about a fact that is important in deciding this case—the law permits you to disregard the testimony of that witness completely.  You are not required, however, to consider such a witness as totally unworthy of belief.  You may accept as much of his or her testimony as you deem true and disregard what you feel is false.  It is entirely within your discretion.

## Overview

In this case, Mr. Mendez contends that:

(1)     Starwood subjected him to unlawful employment discrimination, and to a hostile work environment, on the basis of his race, national origin and/or his disabilities (diabetes and diverticulitis), in violation of various federal, state and city laws; and

(2)     Starwood retaliated against him for complaining about its discriminatory conduct;

The defendant denies all of these allegations.

For your information, the laws involved are

Section 1981 of the federal Civil Rights Act of 1867, which prohibits discrimination in the making of contracts on the basis of race or color.

Title VII of the federal Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, national origin, religion and sex.

The New York State Human Rights Law, which prohibits discrimination on the basis of race, color, national origin, religion, disability and sex.

And the New York City Human Rights Law, which prohibits discrimination on the basis of race, color, national origin, religion, disability and sex.

For the most part, the standards for proving discrimination are the same under all of these laws.  There are a few key differences between the federal and state laws, on the one hand, and the city law on the other; I will point these out to you as I go.  I realize that this can be confusing,

16

but we are going to make it easy for you: we are going to give you a list of Yes or No questions

to answer on your verdict sheet, and you will answer them.

## Discrimination Based On A Prohibited Factor

Plaintiff claims that, as a result of his race (Hispanic) and national origin (Ecuadorian), he was discriminated against in the terms and conditions of his employment.  Terms and conditions of employment include things like hiring and firing, pay, benefits, and opportunities for advancement.

Plaintiff contends that he was discriminated against on the ground of his race and national origin because he was not promoted to the job of pastry chef on two occasions: when George Tetteh got the job, and when Tanya Rojas got the job.  Plaintiff also claims that he was discriminated against because he was not given the opportunity to work overtime assignments, again because of his race and national origin.

To establish these claims, plaintiff must prove by a preponderance of the evidence that (1) he met the minimum qualification for the position of pastry chef or for overtime assignments, as the case may be; (2) he applied for the position he sought or made himself available for overtime; and (3) the failure to promote him or to give him overtime assignments occurred under circumstances that suggest discrimination on the basis of race or national origin.

18

## Discrimination

In order to prevail on hisclaims, Mr. Mendez must prove, by a preponderance of the evidence, evidence that his race and/or his national origin was a "motivating factor" in making any or all of these decisions. A "motivating factor" is a factor that played some part in defendant's employment practice decision. Mr. Mendez is not required to prove that his race or national origin was the only motivation, or even the primary motivation, for the defendant's decision. Mr. Mendez need only prove that a forbidden factor, such as race or his national origin played some part in the defendant's decision, even though other factors may also have motivated the defendant.

Plaintiff must also prove that defendant acted with the intent to discriminate on the basis of one or more prohibited factors. Intentional action is action that is taken consciously, not accidentally or negligently, and with the purpose of bringing about a particular result. The plaintiff is not required to prove that the defendant acted with the particular intent to violate the plaintiff's civil rights—only with intent to discriminate on the basis of race or national origin on the basis of race or national origin.

You must consider separately each of the three instances alleged by plaintiff to have been motivated by discriminatory intent, and as to each one, plaintiff must prove by a preponderance of the evidence that the employer intended to discriminate on a legally forbidden basis. Your verdict on one instance does not compel a like verdict on other instances.

19

## Discrimination—Legitimate Reasons and Pretext

Starwood has argued that reasons other than discrimination motivated the three employment decisions about which Mr. Mendez complains. Starwood contends that Mr. Tetteh and Ms. Rojas has superior credentials to Mr. Mendez, and that union seniority rules dictated who got overtime assignments.

Starwood has no burden to prove that its stated reasons were the actual reason why a particular action was taken. The defendant is only required to articulate a legitimate, non-discriminatory reason for its action, and it has done so. As a result, Mr. Mendez has the burden to prove that defendant's explanation for why it took the action it took is a pretext for discrimination—that is, that defendant is not to be believed, and that discrimination against him was in fact a substantial motivating factor in what happened to him.

To establish that the reason offered by defendant for taking an adverse employment action against Mr. Mendez was a pretext for discrimination, plaintiff must prove that the defendant's employment decision was more likely than not based, in whole or in part, on a forbidden factor—his race or his national origin. Remember, plaintiff has the burden of proving that discrimination was a motivating factor in Starwood's actions; defendant does not have to prove that discrimination was not a motivating factor.

Unless plaintiff proves by a preponderance of the evidence that discrimination was a motivating factor in what happened to plaintiff, your verdict must be for the defendant. That is true even if you do not believe the reasons asserted by Starwood for its decisions. Of course, if you do not believe the reason the defendant gives, you may infer that Starwood acted for a reason forbidden by law; however, you are not required to draw such an inference. Even if you

20

conclude that defendant did not act for the reason it gave, it is nonetheless not automatically the case that Starwood acted to discriminate.  The plaintiff bears the burden of proving that defendant acted out of a desire to retaliate against him; the defendant does not have to disprove that.

You may disagree with the defendant's reason for taking a particular action against the plaintiff, but as long as the action was not motivated, in whole or in part, by an intent to discriminate, it does not violate the law.  As a matter of law, an employer has the right to decide who to hire, as well as to set the terms and conditions of a person's employment.  It can do so for a bad reason, a good reason, or for no reason at all, as long as discrimination was not part of the reason for doing so.  You may not conclude that the defendant discriminated against plaintiff just because you disagree with the decisions the employer made or because you would have made a different decision.

21

## Hostile Work Environment

Plaintiff also contends that he was subjected to what we call a "hostile work environment." Hostile work environment is a form of discrimination that violates federal, state and city anti-discrimination law, but only if it is based on one of those legally forbidden factors. Here, plaintiff claims that he was subjected to a hostile work environment on the basis of his race, national origin, and disability.

Under federal and state law, a hostile work environment is one so permeated with discriminatory intimidation, ridicule and insult that is severe enough or pervasive enough to effectively alter the conditions of a person's employment.

Under city law, a hostile work environment is one in which a person is subjected to any degree of discriminatory intimidation, ridicule and insult as a result of his membership in a protected group.

You know what intimidation, ridicule and insult are; there is no special meaning to those familiar words, and you should give them their ordinary meaning. Intimidation, ridicule and insult are discriminatory if they are based on some factor prohibited by law. I charge you that subjecting someone to a hostile work environment because of that persons's race, national origin or disability violates various federal, state and city laws. Harassment that is not predicated on one of these prohibited factors is rude and objectionable, and it may violate an employer's workplace rules, but it is not prohibited by law. That is why I have told you several times that this lawsuit is about whether the law was violated, not whether Starwood's corporate policies were violated.

22

There are four things that a plaintiff must prove in order to prove a claim of hostile work environment under city law:

First, plaintiff must prove that he is a member of a protected group. The protected groups he contends he is a member of are the Hispanic race, Ecuadorian national origin, and the disability for the purposes of his claim is diverticulitis.

Second, he must prove that there was objectionable and offensive conduct in his workplace.

Third, plaintiff must prove that the objectionable and unwelcome conduct was directed at him because of some prohibited factor: his race, his national origin, or his disability, real or perceived. On your verdict sheet, you will be asked to identify the factor or factors that you find precipitated the objectionable and unwelcome conduct that rendered plaintiff's workplace hostile. You must consider separately whether each factor was a precipitating cause of offensive or objectionable conduct in plaintiff's workplace.

Fourth, plaintiff must prove that the objectionable and offensive conduct was unwelcome —that the conduct offended the plaintiff, that it was not simply banter or something plaintiff did not find offensive. To do this, plaintiff must prove that he actually perceived that his work environment was hostile, and he must also prove that a reasonable person who shares the same characteristic or belongs to the same group as plaintiff would perceive the work place as hostile. To take one example, if you concluded that plaintiff was subjected to a hostile work environment because he came from Ecuador, you would have to find both that plaintiff himself perceived that his workplace had become a hostile place because of his national origin, and that a reasonable

23

person of Ecuadorian descent would share that perception. A reasonable person is a person of normal sensitivity, not someone who is unduly sensitive.

In deciding whether a work environment is hostile, you should consider the frequency of any hostile or objectionable conduct, its severity, whether it was threatening or humiliating, and whether the hostile conduct unreasonably interfered with plaintiff's ability to do his job. There is no magic number of objectionable events that must occur to turn a workplace into a hostile work environment. Isolated instances of harassment or hostility will generally not be sufficient to turn a workplace into a hostile environment under federal or state law, but even a single instance of harassment or hostility can create a hostile work environment if it is sufficiently severe. Whatever the number of incidents, they must effectively work a change in the plaintiff's workplace environment, or else the plaintiff has not proved his claim of hostile work environment under federal and state law.

The laws against hostile work environment are not a general civility code. If a reasonable person would view the behavior no more than petty slights or trivial inconveniences, it is not a hostile work environment.

If the plaintiff proves those four things, he has made out a claim of hostile work environment under city law. On your verdict sheet, you will answer YES or NO to the question "Has plaintiff proved by a preponderance of the evidence that he was subjected to a hostile work environment under city law?" If you answer that question YES, you will then proceed to specify on what forbidden basis or bases he was subjected to that environment. If you answer that question NO, you will find for the defendant on the claim of hostile work environment under every law.

24

To make out his hostile work environment claim under federal and state law, the plaintiff must prove all four of the things I have just described, and one more thing: that the objectionable or offensive conduct was so severe or pervasive as to effectively alter the terms and conditions of his employment by creating an abusive work environment.

You all know the meaning of the word "severe." "Pervasive" means present or spread throughout. The phrase "terms and conditions of employment" is to be construed broadly; it is not limited to terms or conditions that are economic, like pay, but includes the conditions under which a person has to work.

On the verdict sheet, you will be asked to answer whether the plaintiff has proved that the hostile work environment was severe or pervasive, as I have explained those terms to you. You will answer that question YES or NO.

25

## Employer Liability

Plaintiff seeks to hold Starwood, the corporation, liable for the creation of the hostile environment in his workplace by Starwood employees. Federal and state law have one standard for holding an employer liable for the conduct of its workers; the city has a slightly different standard.

A plaintiff who alleges hostile work environment must also prove, by a preponderance of the evidence, that a specific basis exists for imputing the objectionable conduct to his corporate employer. That is, Mr. Mendez must demonstrate that Starwood was responsible for the harassment or objectionable conduct to which he was subjected in order to prevail.

Under federal, state and local law, if the objectionable conduct that created a hostile work environment was committed by a supervisor, someone with immediate or successively higher authority over the plaintiff, then Starwood is, without more, legally responsible for such behavior and the resulting work environment.

Unfortunately, there are three different legal standards for imputing liability to a corporate employer for a non-supervisory or non-managerial employee—someone who I will hereafter refer to as a "co-worker" of the plaintiff.

Under federal law, if the objectionable conduct was committed by a co-worker the employer is responsible for permitting such behavior if the plaintiff proves, by a preponderance of the evidence, that the plaintiff's supervisors knew, or should have known, about the conduct creating the hostile or abusive environment, and permitted it to continue by failing to take remedial action.

26

Under state law, the employer is liable only if it "encouraged, condoned or approved" of the conduct of a co-worker; this has been interpreted as requiring that the employer know about the offensive conduct and permit it to continue.

Under city law, if a managerial or supervisory employee of the corporate employer knew about conduct committed by a co-worker and failed to take immediate and appropriate remedial action, the employer is liable. Also, if a managerial or supervisory employee of the corporate employer should have known about discriminatorily harassing conduct by a co-worker, and failed to exercise reasonable diligence to prevent that discriminatory conduct, the employer is liable under city law.

If you find that the employer took prompt effective remedial action once it learned of any conduct that could contribute to a hostile work environment, you may conclude that the defendant did not tolerate or condone a discriminatory work environment. This is true under federal, state and city law. "Prompt" means what it says. "Remedial action" is action intended to deal with the conduct, ameliorate its impact and ensure that it does not recur. Employers have wide latitude in deciding what type of remedial action to take to remedy a particular situation—they do not have to take the action that the plaintiff deems appropriate. Whether a particular action was in fact remedial is for you to determine. But if you conclude that the action taken was prompt and remedial, you cannot find against Starwood for co-worker harassment on the ground that you would have taken some different action if you were in the defendant's shoes.

27

**Affirmative Defense to Liability (Federal and State Law Only)**

Under federal and state law, an employer who exercises reasonable care to prevent and correct promptly any behavior that may contribute to a hostile work environment cannot be held liable to a plaintiff who knows about the policy but who unreasonably fails to avail himself of the procedures for reporting his hostile work environment claims. This is true even if the employer would otherwise be liable for the employee's behavior under the rules I have just given you.

This exception to liability is something called an affirmative defense. Starwood has asserted that it has taken reasonable care to prevent and correct promptly any behavior that would violate the law, by having an anti-discrimination and anti-harassment policy and by enforcing that policy. And it also argues that Mr. Mendez unreasonably failed to avail himself of the procedures for reporting that his work environment was hostile. Plaintiff disputes both of those arguments.

The burden of proof with respect to an affirmative defense is on the defendant. Just as the plaintiff must establish each element of his claim by a preponderance of the evidence, so Starwood must establish its affirmative defense by a preponderance of the evidence.

If the defendant proves by a preponderance of the evidence that (1) it had an anti-discrimination policy that was reasonably designed to prevent and correct any discriminatory behavior, (2) plaintiff knew about the policy, and (3) plaintiff unreasonably failed to avail himself of the complaint procedures set forth in the policy, then it will have made out its affirmative defense and it cannot be held liable to plaintiff for a hostile work environment under federal or state law.

28

**Affirmative Defense to Liability (City Law)**

The affirmative defense to employer liability under city law is somewhat different. If you find that the employer is liable for the acts of its employees under the rules I stated a few minutes ago, the employer can avoid liability to the plaintiff if the defendant proves by a preponderance of the evidence that the employer:

(1)     established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees, by having:

(a)     a meaningful and responsive procedure for investigating complaints of discriminatory practices and for taking appropriate action against those persons who are found to have engaged in such practices;

(b)     a firm policy against such practices which is effectively communicated to employees;

(c)     a program to educate employees and agents about unlawful discriminatory practices under local, state and federal law;

(d)     procedures for the supervision of employees specifically directed at the prevention and detection of such practices; and

(2)     It has a record of no, or relatively few, prior incidents of discriminatory conduct by the employee who has engaged in a discriminatory practice.

29

## Retaliation Claims

Mr. Mendez claims that Starwood retaliated against him because he complained about discrimination in the workplace. Mr. Mendez contends that this retaliation took several forms, including: the installation of the hidden camera in the kitchen and various instances of intimidation by Chef Rotolo, Chef Tujague and other co-workers.

In order to find for the plaintiff on this claim, whether under federal, state or city law, the plaintiff must prove four things by a preponderance of the evidence.

### Engaging in Protected Activity

First, plaintiff must prove that he engaged in an activity protected under the various anti-discrimination laws. I charge you that complaining about illegal discrimination, or a hostile work environment based on a factor prohibited by law, qualifies as "protected activity" under all of the relevant laws. It is not necessary that complaints take any particular form—they can be oral or written—or that the complaint be made at any particular time in relation to when the discriminatory conduct occurred.

To prove that he engaged in protected activity, Mr. Mendez does not have to prove that the conduct he complained about actually violated the antidiscrimination laws. He must prove, however, that he had believed, reasonably and in good faith, that the underlying conduct that he opposed was unlawfully discriminatory.

In this case, complaints that relate to aspects of the work environment other than matters related to race, color, national origin or a disability are not protected activity under any of the statutes.

31

## Employer Awareness

To establish the second element of his retaliation claim, plaintiff must prove by a preponderance of the evidence that his employer knew about Mr. Mendez's protected activity when it took some adverse employment action against him.

## Adverse Employment Action

An adverse employment action is any action that either (1) materially changes the terms and conditions of an individual's employment for the worse (this applies under federal and state law only), or (2) would deter a reasonable person from complaining about discrimination in the workplace (all three laws), or that (3) materially changes the terns and conditions of an individual's employment for the worse (this applies under federal and state law only).

Under all three laws (federal, state and city), the plaintiff may establish adverse employment action by proving that a reasonable person would be deterred from engaging in protected activity if he knew that whatever happened to Mr. Mendez was going to happen to him as a result. It need not cause any material change in the plaintiff's work environment.

A materially adverse change in working conditions is a significant change, one that is more disruptive than a mere inconvenience or a *de minimis* alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion, a material decrease in compensation, a material loss of benefits, significantly diminished responsibilities, or other indicia unique to a particular situation. This standard is an alternative standard under federal and state law, and does not apply at all under city law.

33

## Causation

The fourth element Mr. Mendez must show, by a preponderance of the evidence, is that the adverse employment action occurred because of the plaintiff's participation in the protected activity.

The plaintiff need not prove that his participation in protected activity was the only reason, or even the principal reason, reason for defendant's act of retaliation. However, the protected activity must have been a substantial or a motivating factor for the adverse action.

In deciding whether plaintiff has proved that the adverse employment action occurred because of the protected activity, you may, if you wish, consider how soon after Mr. Mendez engaged in protected activity the alleged adverse employment action occurred. Mere closeness in time between a plaintiff's complaint and an adverse action does not automatically establish causation; however, as a general rule, the more distant in time an adverse employment action is from protected activity, the less likely it is that the adverse employment action was motivated by the protected activity.

## Discrimination—Legitimate Reasons and Pretext

Starwood has argued that reasons other than retaliation motivated the three employment decisions about which Mr. Mendez complains.  To take one example, Ms. Kiska testified that she put up the camera to try to get proof of objectionable behavior by Mr. Mendez's co-workers.

Again, Starwood has no burden to prove that its stated reasons were the actual reason why a particular action was taken.  The defendant is only required to articulate a legitimate, non-discriminatory reason for its action, and it has done so.  Mr. Mendez has the burden to prove that defendant's explanation for why it took the action it took is a pretext for retaliation—that is, that defendant is not to be believed, and that discrimination against him was in fact a substantial motivating factor in what happened to him.

You are to judge whether Starwood's asserted reasons are legitimate or are a pretext for retaliation using the same standards I gave you for deciding whether Starwood's actions were a pretext for discrimination.  To establish that the reason offered by defendant for taking an adverse employment action against Mr. Mendez was a pretext for discrimination, plaintiff must prove that the defendant's employment decision was more likely than not based, in whole or in part, on a forbidden factor—his race or his national origin.  Remember, plaintiff has the burden of proving that discrimination was a motivating factor in Starwood's actions; defendant does not have to prove that discrimination was not a motivating factor.

I refer you back to the instructions on pages 19-20 of this charge.  Substitute the words "retaliation" for "discrimination" and follow the same rules.

35

## Disability Discrimination

Mr. Mendez next claims that the defendant violated its duty to provide him with a "reasonable accommodation" for his disabilities in violation of state and city law. He contends that Starwood failed to accommodate him when it denied his request for a modified work schedule and his request for accommodation in the matter of his inability to eat spicy food.

The first thing that will no doubt occur to you is that there are sharp disputes between the parties over whether Starwood denied plaintiff's request for a modified schedule or his request to be allowed to bring food from home. So you need to decide what evidence relating to this issue you believe. Once you decide what actually happened, you can go on to apply the law to the facts as you find them.

Plaintiff must prove, by a preponderance of the evidence, that he suffers from a disability. I charge you that a chronic illness such as diverticulitis is a disability within the meaning of both city and state laws.

An employer has an obligation to accommodate an employee who has a disability if some reasonable accommodation will allow that person to do his or her job. An accommodation is "reasonable" if it is effective and if its costs are not clearly disproportionate to the benefits it will produce. Reasonable accommodation may include things like altering ordinary work rules, facilities, conditions or schedules, but it does not include elimination or changes in essential job functions, assignment of essential job functions to other employees, or lower productivity standards. Promotion is not a reasonable accommodation under federal or state law, but under city law, it can be. However, under city law, an employer is not required to give a preference to a

36

person with a disability in filling a vacant position if there is a better qualified candidate for that position.

Plaintiff must prove by a preponderance of the evidence that he asked for a reasonable accommodation to deal with his disability and the employer refused to grant him a reasonable accommodation.

An accommodation is not unreasonable simply because it is not the particular accommodation requested by the plaintiff. A plaintiff is entitled only to a reasonable accommodation, and that may not necessarily be the accommodation of his choosing. If an employer offers an accommodation that would work for the employee without being disproportionately costly to the employer, then the employer has discharged its obligation to make reasonable accommodation—even if the accommodation offered is not what the plaintiff had hoped for. For these purposes, "cost" is not measured solely in terms of money; it can include other deleterious effects on the workplace.

An employer is not required to violate the terms of a collective bargaining agreement with a union in order to accommodate a plaintiff. The terms of a collective bargaining agreement govern the employment of unionized employees and an employer has no right to alter those terms for the benefit of one particular employee.

An accommodation may be unreasonable if it conflicts with an established seniority system.

In determining the availability of a reasonable accommodation, both parties have an obligation to make good faith efforts to engage in an "interactive process," whereby they work together to try to find something that will work for the employee without unduly inconveniencing

37

the employer.  If you find that Starwood refused to engage in an interactive process with Mr.

Mendez regarding accommodation of a disability, you must find in favor of Mr. Mendez.  By the

same token, if you find that Mr. Mendez failed to engage in an interactive process with Starwood

in order to find a solution to his problems, then you must find in favor of Starwood.

### Damages

I will now instruct you about damages. You should draw no inference from my instruction on damages that I have concluded that the defendant is liable to the plaintiff. That is your decision to make. If you find that the plaintiff has not sustained his burden of proof on a given claim against the defendant, then there is no need even to consider damages on that claim; you will simply report a verdict in favor of the defendant on that claim. But if you find that the plaintiff has proved all the necessary elements of any of his claims against the defendant, you will then consider the question of damages.

Whether damages are actually to be awarded in this case, and if so, in what dollar amount, are matters for you, the jury, to decide in accordance with my instructions. In determining the amount of damages, if any, that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Your award, if any, must be fair and just. It should neither be excessive nor inadequate, but should be reasonable.

I caution you that you should not award damages more than once for the same injury. If two separate claims result in an award of damages to compensate plaintiff for the same loss or injury, only one award can be made. So, for example, plaintiff would not be entitled to double damages if he proved, say, hostile work environment under both federal and state law.

39

## Nominal Damages

If you find, by a preponderance of the evidence, that plaintiff has proved the essential elements of any of his claims, but you find that plaintiff's damages have no monetary value, or that plaintiff has not proven the amount of his damages, then you must return a verdict for plaintiff in the nominal amount of One Dollar ($1.00).

Nominal damages must be awarded when the plaintiff has been deprived by the defendant of a statutory right, but has suffered no actual damage as a natural consequence of that deprivation. The mere fact that a deprivation of rights occurred is an injury to the person entitled to enjoy those rights, even when no actual damage flows from the deprivation. Therefore, if you find that the plaintiff has suffered no actual injury as a result of adjudicated violations of his statutory rights—other than the fact of a deprivation of those rights—or the damages were not proved, you must award nominal damages not to exceed one dollar.

### Back Pay

If you conclude that the defendant violated Mr. Mendez's rights under one or more of his claims, and that Mr. Mendez lost wages or benefits as a result, you will first decide the amount of "back pay" to which Mr. Mendez is entitled. Back pay is an amount equal to the pay that he would have received from the defendant had the challenged employment action not been taken. This calculation includes the compensation—any raises, bonuses, overtime or other employee benefits—that you find Mr. Mendez would have received if he had not been subject to discrimination and/or retaliation. You will calculate the amount of back pay starting from the date you identify as the first incident of discrimination or retaliation to which the plaintiff was subjected, and continuing up to the date of your verdict. You should subtract from that amount whatever money plaintiff actually earned from other employment during that period.

Any award you make for back pay must not be the result of speculation or guesswork; it must be based on the evidence before you and reasonable inferences you draw from that evidence. The plaintiff has the burden of proving the amount of damages he suffered by a preponderance of the evidence. He is not required to prove damages with precision, but must provide some reasonable proof of the amount of his loss.

41

## Front Pay

If you find plaintiff has proved, by a preponderance of the evidence, that as a result of defendant's actions, he has suffered a reduction in his capacity to earn money in the future, you may award damages for the loss of future earnings—this is called "front pay." Any award you make for the reduction of plaintiff's earning capacity in the future should be determined on the basis of his earnings before his termination and any other circumstances you find would have a bearing on plaintiff's earning capacity. The appropriate measure of front pay damages is the amount of lost compensation and fringe benefits from the date of your verdict until the date when Mr. Mendez can reasonably be expected to earn the amount of which he claims to have been deprived. Fringe benefits include, but are not limited to, the following items: (1) any pension contribution made by the employer; (2) any insurance payments made by the employer; and (3) any vacation pay, sick leave bonus or stock options.

Plaintiff has a continuing duty to mitigate his damages going forward; that is, he must continue to make reasonable efforts to seek alternative employment where he could earn a higher rate of pay elsewhere. After the time you conclude when plaintiff should have found suitable alternative employment, his right to front pay ends.

Any award of front pay that you award will be discounted to its present value, to make up for the fact that Mr. Mendez will be getting this extra money now, and not at the points in the future when he would otherwise have earned it. You must tell us on the verdict sheet over what period of years you find Mr. Mendez's earning capacity to have been damaged. We will take care of applying the appropriate discount rate.

42

## Pain and Suffering

Plaintiff seeks damages for pain, suffering and emotional distress, as a result of the hostile work environment, discrimination and retaliation he allegedly endured during his employment. You will only reach this question if you find that the plaintiff has met his burden of proving that the defendant unlawfully discriminated or retaliated against him under federal, state and/or city law.

Remember, the fact that I am instructing you on these types of damages does not mean that I have any opinion on whether or not you should award such damages. That is your decision to make.

To recover damages for pain, suffering and emotional distress, you must find that the plaintiff proved, by a preponderance of the evidence, (1) that he experienced pain, suffering and emotional distress, and (2) that the pain, suffering and emotional distress was the direct result of any unlawful conduct that has been proven. You may only compensate the plaintiff for any pain, suffering and emotional distress you find was caused by the defendant's unlawful conduct.

In awarding pain and suffering damages, you must be guided by dispassionate common sense. You must use your sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. Again, you may not award damages based on sympathy, speculation, or guesswork, or on the basis of nebulous evidence.

43

## Damages For Plaintiff's Hostile Work Environment Claim Under City Law

This instruction I am about to give you will come into play *only* if you find for plaintiff on the hostile work environment claim under New York City law, but for defendant on the hostile work environment claims under federal and/or state law. If that is your verdict, then you should consider the severity and pervasiveness of the offensive conduct when you make your award of damages for pain and suffering. If you find that offensive conduct was not severe or pervasive, then any amount you award for this claim should reflect that belief.

So if you answer YES to the question about whether plaintiff has proved the four factors for a hostile work environment under city law (Question # 2-A on the verdict sheet), but NO to the question about whether the hostile work environment was severe and pervasive (Question # 2-F on the verdict sheet), you will consider this special damages instruction. Otherwise, just forget about it.

44

## Punitive Damages

In addition to awarding either actual or nominal damages, you may decide that a separate award of punitive damages against the defendant is appropriate.

You may award punitive damages against Starwood only if you find that the acts of the defendant that violated plaintiff's rights were committed maliciously or wantonly. An act is maliciously done if it is prompted by ill will or spite towards the injured person. An act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the injured person. The plaintiff has the burden of proving, by a preponderance of the evidence, that the defendant violated plaintiff's rights in a malicious or wanton manner.

An award of punitive damages is always discretionary; that is, even if plaintiff proves that the defendant acted maliciously or wantonly, you may decide not to award punitive damages.

In deciding whether or not to award punitive damages, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. In deciding whether to award punitive damages, you should consider whether the defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous, or was committed in such callous disregard of the plaintiff's rights, that actual damages are inadequate to punish the wrongful conduct.

You should also consider whether an award of actual damages, standing alone, is likely to deter or prevent the defendant from again performing any wrongful acts he may have performed, or whether punitive damages are necessary to provide deterrence.

45

Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the defendant may have committed.

If you decide to award punitive damages, you have to decide how much to award. You should consider the degree to which the defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter the defendant or persons like him from committing wrongful acts in the future.

The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend on the financial resources of the defendant against which damages are awarded. For that reason you have been told about defendant's publicly reported earnings. You may only consider that evidence on the question of punitive damages; so unless you decide that punitive damages should be awarded, you are to disregard that particular evidence.

## Unanimous Verdict/Duty to Deliberate

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous—all 7 of you.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

47

## Election of a Foreperson

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open Court. The foreperson's vote is not entitled to any greater weight than any other individual juror.

### Communications Between Court and Jury During Jury's Deliberations

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing, and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open Court.

You will note from the oath about to be taken by the bailiff that she too, like all other persons, is forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict. In other words, do not tell me in any note what your vote is on any count.

49

**Exhibits to Jury Room**

You will have all of the exhibits that I admitted into evidence with you in the jury room.

### Reviewing My Legal Instructions

l will be sending a portion of my charge back into the jury room—specifically, the parts that deal with the issues of liability and damages.  l am sending them back with you in case you want to review them during your deliberations.

If you find that you do not understand any of my instructions, or you want me to go over them yet again, to clarify some matters for you or just to reinforce what I had to say, send a note asking for re-instruction and I will be happy to go over them.

Don't assume, because I am sending a portion of the instructions back with you, that you can't ask me to go over the instructions again.  You can, and I will.

51

### Read-Back of Testimony

If it should happen in your deliberations that you want any of the testimony read back to you by the court reporter in open Court, that can be done. If that is what you want, please send a note telling the Court precisely what you want to hear. And be very specific. For example, if you only want to hear the cross examination of Mr. Jones about the time that the cat ate the canary, say so.

I urge you not to ask for the reading of testimony unless you first speak amongst yourselves and exhaust your total memory, since the collective memory of seven people is better than that of any one juror. But, if after discussion, you are still in doubt or vague as to a particular point in the testimony and you want to have it read back, I will come out in open Court and I will have the court reporter read whatever testimony you want read.

[Insert paean to court reporter]

## Check With Attorneys for Objections

At this point I am going to ask the jury to remain seated where you are for a brief minute more and I ask that you do not discuss the case amongst yourselves. I am going to speak briefly with the attorneys to see if there is something I may have left out of my instructions, or if there may be something they wish to have me clarify or expand upon in some way. So please do not discuss the case and continue to keep an open mind, because I might have more to say to you after I have talked with the lawyers.

**Conclusion**

[Mention smoking, bathroom breaks, and that all jurors must wait until the others return to resume their deliberations, etc.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

MOISES MENDEZ,

                                            Plaintiff

                                                                08 CV 4967 (CM)

              -against-

STARWOOD HOTELS & RESORTS WORLDWIDE,
INC.

                                            Defendant.

------------------------------------------------------------------------x


## SPECIAL VERDICT SHEET


**SECTION I.          Discrimination (other than Hostile Work Environment)**

    1-A.    Did plaintiff prove by a preponderance of the evidence that defendant
            discriminated against him in the terms and conditions of his employment by
            making decisions about his position and duties based, in whole or in part, on a
            factor prohibited by law?

            (1)    by failing to promote him to pastry chef (George Tetteh)?

            YES_____        NO_____

            (2)    by failing to promote him to pastry chef (Tanja Rojas)?

            YES_____        NO_____

            (3)    by not giving him overtime assignments?

            YES_____        NO_____


IF YOUR ANSWER TO ANY SUBSECTION OF QUESTION 1-A IS "YES," ANSWER THE
NEXT QUESTION; OTHERWISE PROCEED TO SECTION II OF THIS VERDICT SHEET.

1-B.    What prohibited factor or factors were the basis on which defendant discriminated against plaintiff?  (Mark all that apply.)

(1)    As to failing to promote him to pastry chef (George Tetteh)?

☐  Race (Hispanic)

☐  National Origin (Ecuadorian)


(2)    As to failing to promote him to pastry chef (Tanja Rojas)?

☐  Race (Hispanic)

☐  National Origin (Ecuadorian)


(3)    As by not giving him an overtime assignment?

☐  Race (Hispanic)

☐  National Origin (Ecuadorian)


**\*\*\*PROCEED TO SECTION II OF THIS VERDICT SHEET\*\*\***

**SECTION II.**      **Hostile Work Environment Employment Discrimination**

2-A.   Did plaintiff prove by a preponderance of the evidence that defendant subjected him to a hostile work environment, by subjecting him to discriminatory intimidation, ridicule and insult as a result of his membership in a protected group?

YES_____          NO_____

IF YOUR ANSWER TO QUESTION 2-A IS "YES," ANSWER THE NEXT FIVE QUESTIONS (2-B, 2-C, 2-D, 2-E, 2-F); OTHERWISE PROCEED TO SECTION III OF THIS VERDICT SHEET.

2-B.   What prohibited factor or factors were the basis on which defendant subjected plaintiff to a hostile work environment?

☐   Race (Hispanic)

☐   National Origin (Ecuadorian)

☐   Disability (Diverticulitis)

2-C.   Did defendant prove by a preponderance of the evidence *all* of the following:

(1)   Starwood had a meaningful and responsive procedure for investigating complaints of discrimination;

(2)   Starwood effectively communicated a firm policy against discrimination to its employees;

(3)   Starwood had a program to educate employees about discrimination under city, state and federal law;

(4)   Starwood had procedures for the supervision of employees specifically directed at preventing and detecting of discriminatory practices; and

(5)   Starwood had a record of no, or relatively few, prior incidents of discriminatory conduct by the employees who subjected plaintiff to a hostile work environment?

YES_____ . NO_____

2-D.   Was plaintiff subjected to a hostile work environment by supervisory employee(s) at the Westin Times Square?   YES___   NO___

2-E.   Was plaintiff subjected to a hostile work environment by co-worker(s) at the Westin Times Square?   YES___   NO___

3

2-F.   Was the hostile work environment to which plaintiff was subjected severe or pervasive on the basis of:

    (1)  race?           YES___   NO___

    (2)  national origin?  YES___   NO___

    (3)  disability?     YES___   NO___

ANSWER THE NEXT QUESTION (QUESTION 2-G) <u>ONLY</u> IF YOU ANSWERED "YES" TO QUESTION 2-F(1) or 2-F(2); OTHERWISE, PROCEED TO SECTION III.

2-G.   Did defendant prove by a preponderance of the evidence *all* of the following:

    (1)   Starwood had an anti-discrimination policy;

    (2)   plaintiff knew about the policy; and

    (3)   plaintiff unreasonably failed to avail himself of the complaint procedures set forth in the policy?

        YES_____          NO_____

\*\*\*PROCEED TO SECTION III OF THIS VERDICT SHEET\*\*\*

4

**SECTION III.**      **Retaliation**

3-A.   Did plaintiff prove by a preponderance of the evidence that defendant retaliated against him for engaging in activity protected by federal, state and/or city anti-discrimination laws?

YES_____        NO_____

ANSWER THE NEXT QUESTION (QUESTION 3-B) <u>ONLY</u> IF YOU ANSWERED "YES" TO QUESTION 3-A; OTHERWISE PROCEED TO SECTION IV.

3-B.   What act or acts has plaintiff proven were motivated by a desire to retaliate against him?

(1)   Installation of the hidden camera

YES_____        NO_____

(2)   Following plaintiff to the bathroom?

YES_____        NO_____

(3)   Other (please specify)

_____

_____

_____

_____

\*\*\*PROCEED TO SECTION IV OF THIS VERDICT SHEET\*\*\*

5

**SECTION IV.**       <u>Reasonable Accommodation</u>

4-A.    Did plaintiff prove by a preponderance of the evidence that defendant discriminated against him by failing to provide him with a reasonable accommodation for any disability?

YES_____          NO_____

ANSWER THE NEXT QUESTION (QUESTION 4-B) <u>ONLY</u> IF YOU ANSWERED "YES" TO QUESTION 4-A; OTHERWISE, PROCEED TO SECTION V.

4-B.    What accommodation or accommodations were not provided to plaintiff?

(1)     Shift change?

YES_____          NO_____

(2)     Dietary?

YES_____          NO_____

(3)     Promotion to pastry chef (city law only)?

YES_____          NO_____

**\*\*\*PROCEED TO SECTION V OF THIS VERDICT SHEET\*\*\***

**SECTION V.**       <u>Damages</u>

6

ANSWER THESE QUESTIONS <u>ONLY</u> IF YOU HAVE FOUND DEFENDANT LIABLE TO PLAINTIFF FOR ONE OR MORE OF THE REASONS SET FORTH IN SECTIONS I THROUGH IV OF THIS VERDICT FORM.

    5-A.   Plaintiff is entitled to \$__ __ __ __ __ in back pay.

    5-B.   Plaintiff is entitled to \$__ __ __ in front pay.  The period covered

         by this award of front pay begins today and ends ___ __ ___[mm/dd/yyyy].

    5-C.   Plaintiff is entitled to \$___ __ __ in compensatory damages for pain and suffering.

**\*\*\*PROCEED TO SECTION VI OF THIS VERDICT SHEET\*\*\***

**SECTION VI.**     **Punitive Damages**

ANSWER THESE QUESTIONS <u>ONLY</u> IF YOU ANSWERED THE QUESTIONS IN SECTION V.

      6-A.   Do you award plaintiff punitive damages against defendant?

            YES_____        NO_____

      6-B.   If you answered question 6-A "YES" please indicate the amount of

            punitive damages that you award:  $ \_\_ _____

\*\*\*YOU HAVE REACHED THE END OF THE VERDICT SHEET\*\*\*
THE FOREPERSON SHOULD SIGN AND DATE BELOW.

Date:   March \_\_\_\_, 2010

                            _____
                                   Foreperson