**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
MOISES MENDEZ,                                       :
                                                     :
                              Plaintiff,             :                    08 Civ. 4967 (CM)
                                                     :
              v.                                     :
                                                     :
STARWOOD HOTELS & RESORTS                            :
WORLDWIDE, INC.,                                     :
                                                     :
                              Defendant.             :
---------------------------------------------------------------- x

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S RULE 50(A) MOTION ON RETALIATION CLAIMS**

**March 3, 2010**



# Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Kenneth P. Thompson**
kthompson@twglaw.com

March 3, 2010

**BY HAND DELIVERY**

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:** ***Moises Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,**
> **No. 08 Civ. 4967 (CM)(KNF)**

Dear Judge McMahon:

As Your Honor knows, we represent Plaintiff Moises Mendez ("Mr. Mendez"). We write pursuant to the Court's request yesterday for "a list of incidents that allegedly constitute retaliation," with citations to supporting evidence, in connection with Your Honor's reservation of judgment on Defendant's motion for judgment under Rule 50(a) on Plaintiff's retaliation claims under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[1]  (*See* Trial Tr. 1809).

## I.    Standards for Retaliation

To prevail on his retaliation claims under Title VII and the NYSHRL, Mr. Mendez must prove that: (i) he engaged in a protected activity; (ii) his employer or supervisor at issue was aware of that activity; (iii) he suffered a materially adverse action; and (iv) there was a causal

---

[1]    As stated on the record yesterday, we respectfully request that the Court deny this aspect of Defendant's Rule 50(a) motion in light of the overwhelming evidence of retaliation presented to the jury in Mr. Mendez's case-in-chief. *See generally Jarvis v. Ford Motor Co.*, 283 F.3d 33, 43 (2d Cir. 2002) ("In ruling on a Rule 50 motion, 'the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'") (quoting *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001)).

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Honorable Colleen McMahon
March 3, 2010
Page 2

connection between the protected activity and the adverse employment action.[2]  Under the
NYCHRL, Mr. Mendez must show that: (i) he engaged in a protected activity; (ii) his employer
or supervisor at issue was aware of that activity; (iii) he suffered an action that would be
reasonably likely to deter a person from engaging in a protected activity; and (iv) that there
was a causal connection between the protected activity and the action.[3]

## II.    Incidents Of Retaliation Subsequent To May 20, 2004 Are Not Time Barred

The NYSHRL and NYCHRL allow a party three years from the date of any allegedly
discriminatory act to file suit.[4]  Since Mr. Mendez filed his first Verified Complaint of
Discrimination with the State Division of Human Rights on May 21, 2007 (*see* PX_75), all
incidents of retaliation that occurred subsequent to May 20, 2004 are actionable under the
NYHRL and NYCHRL.  In addition, even incidents that pre-date this time are admissible and
may be considered by the jury as evidence of Starwood's retaliatory motivation for subsequent
acts of reprisal.

## III.    Incidents of Retaliation Established In Mr. Mendez's Case-In-Chief

(1) Kiska's Retaliatory Installation of a Covert Surveillance Camera Over Mr.
Mendez's Workstation in or Around Late March 2008

Nancy Kiska testified that she was aware of Mr. Mendez's protected complaints of
discrimination, *inter alia*, on February 16, 2008. (*See* PX_19; Tr. 1267).  Kiska subsequently
retaliated against Mr. Mendez by directing the installation of a covert surveillance over Mr.
Mendez's workstation in the Hotel kitchen on or about March 26, 2008.  (*See* PX_44).

(2) Rotolo's Retaliatory Solicitation of Unfounded Co-Worker Complaints Against
Mr. Mendez

Former Executive Sous Chef Antonio Rotolo testified that he was aware of Mr. Mendez's written
complaint of discrimination dated September 8, 2007 (*see* PX_14; Tr. 990), and that he
participated in a meeting regarding Mr. Mendez's allegations of discrimination and harassment

---

[2]    *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (In this context
"['materially adverse'] means that the employer's actions must be harmful to the point that they
could well dissuade a reasonable worker from making or supporting a charge of discrimination.");
*Hicks v. Baines*, No. 06-3782-cv, 2010 U.S. App. LEXIS 2146, at *8 (2d Cir. Feb. 2, 2010) (applying
Title VII standard to retaliation claims under NYSHRL).

[3]    *See, e.g., Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009) (McMahon, J.).

[4]    *See* N.Y. Exec. Law § 296; N.Y. C.P.L.R. § 214(2); N.Y. City Admin. Code § 8-502(d); *Kassner v.
2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL and the
NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts.").

Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Colleen McMahon
March 3, 2010
Page 3

on December 11, 2007 (*see* Tr. 937).  Mr. Mendez subsequently submitted a written complaint concerning Rotolo's retaliatory solicitation of false statements against Mr. Mendez by his co-workers "to further incriminate me and cause me stress" on February 16, 2008 (*See* PX_19).

### (3) Rotolo and Tujague Following Mr. Mendez Around the Workplace to Surveil Him

Mr. Mendez complained to Rotolo about discrimination and harassment by his coworkers, and about his need for a schedule change to accommodate his medical conditions, prior to May 18, 2007.  (*See* PX_8 (First Ethics Point Complaint, dated May 18, 2007)).  And in June 2007, Assistant Director of Human Resources Maria Lavides spoke to Rotolo in connection with Mr. Mendez's written complaint of discrimination dated June 28, 2007.  (*See* Tr. 1721-22; PX_11).  Mr. Mendez subsequently complained that Rotolo and his supervisor, Executive Chef Frank Tujague, retaliated against him by following him to the bathroom, among other locations within the workplace.  (*See* PX_76 (Second NYSDHR Complaint, dated Aug. 15, 2007); PX_13, at 2 (Second Ethics Point Complaint, dated Sept. 11, 2007)).

### (4) Ribbens' Retaliatory Refusal to Allow Mr. Mendez to Have A New Schedule As Promised After Working Three Months as Night Shift Baker

Mr. Mendez testified that he agreed to transfer from his Food Runner position on the day shift to a Baker position on the night shift because Executive Chef David Ribbens promised to allow him to choose a new shift for the Baker position within approximately three months. (*See* Tr. 413, 423).  Mr. Mendez began serving as a Baker on or about April 13, 2004.  Thus, Ribbens was to have allowed him to select his own schedule in or around July 2004.

Ribbens reacted with hostility, however, upon learning that Mr. Mendez complained to his supervisors – including Food & Beverage Director John Sheedy and Hotel Manager John Sweeney – about his "No fucking Spanish in the kitchen" directive in March or April 2004.  (*See* Tr. 413, 423).  In retaliation for this protected complaint, Ribbens thereafter reneged on his promise to allow Mr. Mendez to transfer from the night shift, and forced him to continue working the split shift until October 2005, followed by the overnight shift through June 2007. (*See* DX_185).

### (5) Ribbens' Retaliatory Denial of Transfer to Alkees' Former Baker Position in November 2005

Mr. Mendez testified that Al Alkees, the second Baker at the Westin, resigned in or around November 2005. (*See* Trial Tr. 485-88).  Although Mr. Mendez requested that Ribbens transfer him to Alkees' now vacant dayshift schedule, Ribbens refused to do so.  (*Id.*)  Instead, Ribbens converted Alkees' Baker position into a second Pastry Chef position, which he awarded to George Tetteh, an employee with shorter tenure at Starwood and less Baker and/or Pastry Chef experience than Mr. Mendez, who also did not suffer from health problems and was neither

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Honorable Colleen McMahon
March 3, 2010
Page 4

Ecuadorian nor Hispanic. (*Id.*) This denial of transfer followed the protected complaints of Mr. Mendez.

> (6) Ribbens' Retaliatory Denial of Transfer to Burros' Former Pastry Chef Position in Early 2007

Mr. Mendez also testified that he pleaded with Ribbens to transfer him to the Pastry Chef position that became available when Carla Burros transferred to another position at the Westin in early 2007. However, Ribbens awarded that position to Tania Rojas, a temporary employee with far shorter tenure at the Hotel than Mr. Mendez, who had not engaged in protected complaints of discrimination, and who also did not suffer from health problems and was not Ecuadorian. (*See* Tr. 488-90).

> (7) Ribbens, Rotolo and Tujague's Retaliatory Denial of Opportunity to Work Overtime

Finally, Mr. Mendez testified that Ribbens, Rotolo and Tujague discriminated and retaliated against him on numerous occasions by failing to call him when he was entitled to work overtime "many, many times." (*See* Tr. 566-67; PX_63, at SM_00575).

## IV.    Conclusion

Based upon this evidence, particularly under the standards applicable to a Rule 50 motion, the retaliation claims of Mr. Mendez should go to the jury in their entirety. We therefore request that Starwood's motion in this respect be denied.

Thank you very much for Your Honor's consideration.

Respectfully submitted,

*/s/*

Kenneth P. Thompson

cc:     Michael Starr, Esq.
        Loren L. Forrest, Jr., Esq.