**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

MOISES MENDEZ,                               :

                                    :

                     Plaintiff,     :      08 Civ. 4967 (CM)

                                    :

           v.                           :

                                    :

STARWOOD HOTELS & RESORTS       :

WORLDWIDE, INC.,                :

                                    :

                  Defendant.   :

-------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES, COSTS, AND PRE- AND POST-JUDGMENT INTEREST

THOMPSON WIGDOR & GILLY LLP

Kenneth P. Thompson
Ariel Y. Graff
85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
*kthompson@twglaw.com*
*agraff@twglaw.com*

*COUNSEL FOR PLAINTIFF*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 3

   I.  PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION AND IS THEREFORE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS ........................................ 3

   II.  THE CONTROLLING STANDARD FOR DETERMINING THE FEE AWARD TO PLAINTIFF IS WHAT A "REASONABLE PAYING CLIENT" WOULD PAY ........................ 5

   III.  A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEYS' FEES REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE ................................................ 7

       A.  Customary Hourly Rates ................................................................................. 8

       B.  Expertise Of Plaintiff's Counsel And Skill Required To Prosecute Case ..... 10

       C.  Time, Labor And Resources Required To Prosecute The Case ..................... 10

       D.  The Novelty And Difficulty Of The Issues ................................................... 14

       E.  The Results Obtained .................................................................................... 14

       F.  Prevailing Rates In The Southern District Of New York ............................... 15

       G.  The Preclusion Of Other Employment By Acceptance Of This Case ........... 17

       H.  Anticipated Returns Of This Representation ................................................. 17

   IV.  THE TOTAL HOURS REQUESTED ARE REASONABLE AND DOCUMENTED WITH SPECIFICITY ........................................................................................................ 18

       A.  Contemporaneous Documentation ............................................................... 18

       B.  Number Of Hours .......................................................................................... 19

       C.  Voluntary Reductions ................................................................................... 20

   V.  PLAINTIFF IS ENTITLED TO ADDITIONAL FEES, COSTS AND INTEREST ................. 22

       A.  "Fee On Fees" ............................................................................................... 22

B.   Costs Should Be Awarded ..................................................................22

C.   Pre- And Post-Judgment Interest Should Be Awarded....................................24

CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re AOL Time Warner S'holder Derivative Litig.*,
 No. 02 Civ. 6302 (CM), 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009)..............15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*
 522 F.3d 182 (2d Cir. 2008).................................................................5, 6, 8, 7, 10, 17

*Arlington Central Sch. District Board of Education v. Murphy*,
 548 U.S. 291 (2006) ...............................................................................................23

*Arnone v. CA, Inc.*,
 No. 08 Civ. 4458 (SAS), 2009 U.S. Dist. LEXIS 17080 (S.D.N.Y. Mar. 6, 2009).................9

*Auscape v. Nat'l Geographic Soc'y*,
 No. 02 Civ. 6441 (LAK) (HBP), 2003 U.S. Dist. LEXIS 13846
 (S.D.N.Y. Aug. 8, 2003) ..........................................................................................19

*Blanchard v. Bergeron*,
 489 U.S. 87 (1989)...............................................................................................6, 9

*Bonner v. Guccione*,
 No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS 11382 (S.D.N.Y. Aug. 6, 1997),
 *vacated on other grounds*, 178 F.3d 581 (2d Cir. 1999) ........................................16

*Brady v. Wal-Mart Stores, Inc.*,
 455 F. Supp. 2d 157 (E.D.N.Y. 2006)................................................... 4, 14, 20

*Bridges v. Eastman Kodak Co.*,
 102 F.3d 56 (2d Cir. 1996).................................................................................. 4

*City of Burlington v. Dague*,
 505 U.S. 557 (1992) .............................................................................................9

*Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*,
 246 F.3d 142 (2d Cir. 2001) .................................................................................8

*Cruz v. Henry Modell & Co.*,
 No. 04 Civ. 1450 (AKT), 2008 U.S. Dist. LEXIS 25339 (E.D.N.Y. Mar. 31, 2008) ...........14

*Cruz v. Local Union NO. 3 of the IBEW*,
 34 F.3d 1148 (2d Cir. 1994)................................................................................18

*David v. Sullivan*,
    777 F. Supp. 212 (E.D.N.Y. 1991) ...................................................................................19

*Farbotko v. Clinton County*,
    433 F.3d 204 (2d Cir. 2005) .........................................................................................16

*Farrar v. Hobby*,
    506 U.S. 103 (1992) .......................................................................................................4

*Gagne v. Maher*,
    594 F.2d 336 (2d Cir. 1979), *aff'd on other grounds*, 448 U.S. 122 (1980) .....................22

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998) ................................................................................. 19, 20

*Gilbert v. Hotline Delivery*,
    No. 00 Civ. 0160 (MBM) (RLE), 2001 U.S. Dist. LEXIS 9876
    (S.D.N.Y. July 10, 2001) ...............................................................................................25

*Gonzalez v. Bratton*,
    147 F. Supp. 2d 180 (S.D.N.Y. 2001) ...........................................................................20

*Greenway v. Buffalo Hilton Hotel*,
    143 F.3d 47 (2d Cir. 1998) ...........................................................................................25

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1992) ........................................................................................8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .......................................................................................................4

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
    No. 03 Civ. 1548 (GBD), 2008 U.S. Dist. LEXIS 82085 (S.D.N.Y. Oct. 17, 2008) ......17-18

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................................6, 8, 10

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir. 2005) .........................................................................................20

*Kuper v. Empire Blue Cross and Blue Shield*,
    No. 99 Civ. 1190 (JSG), 2003 WL 23350111 (S.D.N.Y. Dec 18, 2003) ...............................16

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987) .........................................................................................23

*Lavely v. Redheads, Inc.,*
    No. 03 Civ. 7752 (RMB), 2007 U.S. Dist. LEXIS 77109 (S.D.N.Y. Oct. 12, 2007) ............25

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998) ..................................................................................................23

*Lochren v. County of Suffolk,*
    344 Fed. Appx. 706, 709 (2d Cir. 2009) .................................................................................7

*Marchisotto v. City of New York,*
    No. 05 Civ. 2699 (RLE), 2009 U.S. Dist. LEXIS 64662 (S.D.N.Y. July 27, 2009)................8

*Marfia v. T.C. Ziraat Bankasi,*
    903 F. Supp. 463 (S.D.N.Y. 1995), *rev'd on other grounds*, 100 F.3d 243
    (2d Cir. 1996) ........................................................................................................................17

*In re Marsh Erisa Litig.,*
    No. 04 Civ. 8157 (CM), 2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010)..................15

*Morgenstern v. County of Nassau,*
    No. 04 Civ. 58 (ARL), 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009).......20, 24

*Morin v. Modern Cont'l Constr. Co.,*
    No. 07 Civ. 4815 (JFB), 2009 U.S. Dist. LEXIS 72525 (E.D.N.Y. July 1, 2009) .................18

*O'Quinn v. New York University Medical Center,*
    933 F. Supp. 341 (S.D.N.Y. 1996)........................................................................................24

*Perdue v. Kenny A.,*
    No. 08 Civ. 970, 2010 U.S. LEXIS 3481 (U.S. Apr. 21, 2010) ..................................................9

*Putnam Leasing Co. v. Fields,*
    No. 05 Civ. 141 (RML), 2007 U.S. Dist. LEXIS 58794 (E.D.N.Y. June 27, 2007).............18

*Quaratino v. Tiffany & Co.,*
    166 F.3d 422 (2d Cir. 1999)..................................................................................................18

*Raishevic v. Foster,*
    247 F.3d 337 (2d Cir. 2001) ....................................................................................................3

*Ramnarain v. City of New York,*
    474 F. Supp. 2d 443 (E.D.N.Y. 2007)...................................................................................25

*Reed v. A.W. Lawrence & Co.,*
    95 F.3d 1170 (2d Cir. 1996)..................................................................................................22

*Reiter v. Metropolitan Transport Authority of New York*,
No. 01 Civ. 2762 (GWG), 2007 U.S. Dist. LEXIS 71008 (S.D.N.Y. Sept. 26, 2007)..........22

*Robinson v. City of New York*,
No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009)............15

*Robinson v. Instructional System, Inc.*,
80 F. Supp. 2d 203 (S.D.N.Y. 2000) ...................................................................................24

*Rodriguez ex rel. Kelly v. McLoughlin*,
84 F. Supp. 2d 417 (S.D.N.Y. 1999) ............................................................................ 16, 20

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................................8, 16

*Silberblatt v. Morgan Stanley*,
No. 05 Civ. 7569 (PKC), 2007 U.S. Dist. LEXIS 85895 (S.D.N.Y. Nov. 19, 2007) ...........16

*Skold v. America International Group*,
No. 96 Civ. 7137 (HB), 1999 U.S. Dist. LEXIS 9209 (S.D.N.Y. June 18, 1999),
*aff'd*, 205 F.3d 1324 (2d Cir. 2000) ...................................................................................16

*Steinberg v. Nationwide Mutual Insurance Co.*,
612 F. Supp. 2d 219 (E.D.N.Y. 2009) .................................................................................16

*Texas State Teachers Assn. v. Garland Independent Sch. District*,
489 U.S. 782 (1989) ............................................................................................................ 4

*Tlacoapa v. Carregal*,
386 F. Supp. 2d 362 (S.D.N.Y. 2005) .................................................................................19

*U.S. v. Tate & Lyle North American Sugars, Inc.*,
228 F. Supp. 2d 308 (S.D.N.Y. 2002) .................................................................................25

*Wickham Contracting Co. v. Local Union Number 3, IBEW*,
955 F.2d 831 (2d Cir. 1992) ...............................................................................................24

*Wilson v. Nomura Sec. International, Inc.*,
361 F.3d 86 (2d Cir. 2004) .................................................................................................. 4

*Zicherman v. Korean Air Lines Co., Ltd.*,
814 F. Supp. 605 (S.D.N.Y. 1993) ......................................................................................24

**FEDERAL STATUTES**

28 U.S.C. § 1828 .................................................................................................................23

28 U.S.C. § 1920 .................................................................................................................23

28 U.S.C. § 1923 .................................................................................................................23

28 U.S.C. § 1961 .................................................................................................................25

42 U.S.C. § 1988 .............................................................................................................3, 23

42 U.S.C. § 2000 ..........................................................................................................1, 3, 23

Fed. R. Civ. P. 50 ..............................................................................................................22

Fed. R. Civ. P. 54 ........................................................................................................1, 22

After more than two years of litigation, which included an interlocutory appeal, ten depositions,[1] 34 docketed Court orders, and a more than three-week jury trial involving testimony by 22 different witnesses, including several expert witnesses, this employment discrimination action culminated in a $3 million verdict in Plaintiff Moises Mendez's ("Plaintiff" or "Mr. Mendez") favor on compensatory and punitive damages.  As the prevailing party, Plaintiff respectfully submits this Memorandum of Law in Support of his Motion for Attorneys' Fees, Costs, and Pre- and Post-Judgment Interest pursuant to 42 U.S.C. §§ 2000e-5(k) and 1988, 28 U.S.C. § 1961(a), N.Y.C. Admin. Code § 8-502(f), and Fed. R. Civ. P. 54 (the "Motion").  For all of the reasons set forth below, and in the supporting papers submitted herewith, Plaintiff's Motion should be granted.[2]

## PRELIMINARY STATEMENT

This memorandum of law and supporting papers are submitted on behalf of Plaintiff in support of his request that the Court order Defendant Starwood Hotels and Resorts Worldwide, Inc. ("Defendant" or "Starwood") to fairly and fully compensate his attorneys, Thompson Wigdor & Gilly LLP ("TWG" or "Plaintiff's Counsel"), for all of the reasonable time and costs expended in this matter from its inception in January 2008 through trial, as well as the submission of post-trial motions, including the present Motion.  Such an award of attorneys' fees and costs is necessary to ensure that future employees subjected to unlawful retaliatory employment actions, like Mr. Mendez, can secure the lawyers needed

---

[1]     Not included in this number are the two separate days of deposition each for Human Resources Director Nancy Kiska and Mr. Mendez's treating psychiatrist Dr. Ortiz.

[2]     Plaintiff respectfully requests permission to file an updated fee application and bill of costs after briefing his opposition to Starwood's Rule 50 and 59 motions, and after filing a reply brief in support of this Motion.  The information submitted herein is current through April 21, 2010.

to combat the vast resources of international corporations such as Starwood and vindicate their rights in a court of law.

As the Second Circuit has made clear, the measure of the fee award due to Plaintiff's Counsel is calculated by multiplying the reasonable hourly rate for each attorney and paralegal who worked on the case by the number of hours that they expended. Consistent with recent Second Circuit law, this method best aligns with what a reasonable paying client would have paid for TWG's services. The hourly rates are further justified in light of Plaintiff's Counsel's expertise and skill, the time, effort and resources required to prosecute this case, and the successful result obtained, among other factors.

As demonstrated by the Declaration of Kenneth P. Thompson in Support of the Motion (hereinafter, "Thompson Decl."), and the 109 pages of contemporaneous computerized daily billing records attached thereto, an enormous amount of time and labor was required to successfully pursue Mr. Mendez's claims against Starwood. The reasonable hourly rates that Plaintiff's Counsel seeks here are justified by the customary hourly rates charged to TWG's fee-paying clients, the prevailing hourly rates charged by lawyers of comparable skill, experience, and reputation in this district, and the success Mr. Mendez achieved in the case.

Accordingly, Mr. Mendez respectfully requests that the Court award reasonable attorneys' fees based on the following rate and hour calculations:

| | **Hourly Rate** | **No. Hours** | **Sub-Total** |
|---|---|---|---|
| Kenneth P. Thompson (partner) | $750 | 1,431.00 | $1,073,250.00 |
| Andrew S. Goodstadt (partner) | $625 | 177.20 | $110,750.00 |
| Ariel Y. Graff (associate) | $450 | 1,796.30 | $808,335.00 |
| Marshall Hendler (paralegal) | $180 | 574.10 | $103,338.00 |
| Ryan Rudich (paralegal) | $180 | 170.35 | $30,663.00 |

| Lynne Kellet (legal assistant) | $180 | 332.55 | $59,859.00 |
|---|---|---|---|
| | | **Total** | <u>$2,186,195.00</u> |

Finally, Plaintiff is also entitled to recovery of taxable and discretionary costs pursuant to the federal and local rules, as well as pre- and post-judgment interest.

## ARGUMENT

### I.   PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION AND IS THEREFORE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS

A "prevailing party" in an action under Title VII or Section 1981 may recover, in the Court's discretion, "a reasonable attorney's fee (including expert fees) as part of the costs," pursuant to 42 U.S.C. § 2000e-5(k) or 42 U.S.C. § 1988, respectively.  Likewise, under the New York City Human Rights Law ("CHRL"), "the court . . . may award the prevailing party costs and reasonable attorney's fees."  N.Y.C. Admin. Code § 8-502(f).  Indeed, a presumption exists that successful civil rights litigants should ordinarily recover attorneys' fees.  *See Raishevic v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) (function of award of attorneys' fees is to encourage bringing of meritorious civil rights claims which might otherwise be abandoned due to financial imperatives of hiring competent counsel).  An award of attorneys' fees and costs is particularly appropriate in this case.

Here, the need to provide an incentive to competent lawyers to continue to prosecute such cases and hold employers accountable for their violations of law is underscored by the Defendant's willful and knowing unlawful retaliatory conduct against Plaintiff, as determined by the jury.  It is therefore likely, while unfortunate, that similar disregard for the rights of employees will occur and that competent counsel will continue to be needed to bring cases to enforce the laws prohibiting such conduct.  It is in order to meet this laudable goal that fee shifting is required to encourage such enforcement of the

civil rights laws.  *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006) ("An award of attorney's fees in this case thus furthers the legislative aim of providing individuals whose civil rights have been denied effective access to the judicial process.").

 The United States Supreme Court has held that a plaintiff qualifies for an award of attorneys' fees as a "prevailing party" when he "succeed[s] on any significant issue in litigation which achieves some of the benefit" sought in the lawsuit.  *See Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  Success in this context is defined as a change in the legal relationship between the parties that materially benefits the plaintiff.  *See Farrar*, 506 U.S. at 111-12; *Texas State Tchrs. Ass'n*, 489 U.S. at 792-93; *Bridges v. Eastman Kodak Co.*, 102 F.3d 56, 58 (2d Cir. 1996).  Accordingly, a jury verdict in an employee's favor on retaliation claims under Title VII, Section 1981 or the CHRL renders him a prevailing party entitled to recover attorneys' fees and costs.  *See Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90-91 (2d Cir. 2004) ("[W]hen a plaintiff fails to prove one of two overlapping claims -- *e.g.* a discriminatory discharge -- but prevails on the other -- *e.g.* retaliation for complaining of discrimination -- the plaintiff may recover fees for all the legal work.") (citing and quoting *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1259-60 (2d Cir. 1987) ("The factual and legal theories underlying [plaintiff's] age discrimination claim were inextricably intertwined with those underlying his retaliatory discharge claim.  Consequently, a fully compensatory fee award was justified because [plaintiff] recovered the same relief on the retaliation claim that he would have on his discrimination claim.")).

4

By these standards, Mr. Mendez is the prevailing party in this action because the

jury verdict rendered in his favor found that he had been subjected to unlawful retaliation

for having repeatedly complained about discrimination and a hostile work environment,

and awarded him substantial compensatory and punitive damages for such claims.

Accordingly, Mr. Mendez easily satisfies the standards to establish his status as a prevailing

party, and is thus entitled to an award of attorneys' fees and costs.

## II.  THE CONTROLLING STANDARD FOR DETERMINING THE FEE AWARD TO PLAINTIFF IS WHAT A "REASONABLE PAYING CLIENT" WOULD PAY

The Second Circuit recently clarified the method to be used to determine the

appropriate attorneys' fees to be awarded to a prevailing plaintiff in this Circuit.

Specifically, in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493

F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), the

Second Circuit found that the familiar "lodestar" formula relied upon by several courts "has

become needlessly confused -- it has become untethered from the free market it is meant to

approximate."  522 F.3d at 184.  Concluding that the value of the lodestar formula "has

deteriorated to the point of unhelpfulness," *id.* at 190, the Second Circuit urged that district

courts abandon the lodestar concept entirely and instead anchor fee awards on the

determination of a "presumptively reasonable fee," which amounts to "what a reasonable,

paying client would be willing to pay" for counsels' services under the particular

circumstances of each case.  *See id.* at 190.

In making this determination, the Second Circuit held that it was incumbent upon

the district court to "step[] into the shoes of the reasonable, paying client," and "bear in

mind *all* of the case-specific variables that we and other courts have identified as relevant

to the reasonableness of attorneys' fees in setting a reasonable hourly rate."  *Id.* at 184, 190.

Among those factors cited by the Second Circuit that should be considered in calculating

the appropriate measure of an attorneys' fee award are:

> [T]he complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required to
> prosecute the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth tactics), the
> timing demands of the case, whether the attorney had an interest
> (independent of that of his client) in achieving the ends of the litigation or
> initiated the representation himself, whether the attorney was initially acting
> *pro bono* (such that a client might be aware that the attorney expected low or
> non-existent remuneration), and other returns (such as reputation, etc.) the
> attorney expected from the representation.

*Arbor Hill*, 522 F.3d at 184.

The Second Circuit further identified the frequently cited "*Johnson* factors" as

relevant.  *Id*. at 190 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

1974), *abrogated on other grounds*, *by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).

These include the following 12 case-specific factors:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the
> case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed by the client or the
> circumstances; (8) the amount involved in the case and the results obtained;
> (9) the experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 493 F.3d at 186-87 n.3 (citing *Johnson*, 488 F.2d at 717-19).  The Second Circuit

made clear, however, that the list of factors specifically identified in *Arbor Hill* is not

exclusive, and that all of the case-specific variables for fee determination previously

identified in the relevant jurisprudence may be considered in ascertaining what rate a

reasonable paying client would pay.  *Id*. at 190.  Applying the *Arbor Hill* standard in this

case, the Court should grant the attorneys' fees requested by Plaintiff's Counsel.

III.   **A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEYS' FEES
       REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE**

In light of the substantial time and resources expended by Plaintiff's Counsel in this

lengthy and hard fought case, it is clear that Mr. Mendez benefited greatly from having

skilled counsel with significant trial experience and expertise in employment civil rights

cases prosecuting his claims.  Because Plaintiff's Counsel litigated this case on a

contingency basis, without any guarantee of recovery, the more than 3,000 hours of

attorney time expended on this case were hours that the firm's attorneys necessarily were

unavailable to work on other, billable matters for which TWG would have been guaranteed

to receive payment of its fees.  Ultimately, after more than two years of aggressive litigation

lodged against him, Mr. Mendez achieved a highly successful result, obtaining a

compensatory damages award at the highest end of sustainable emotional distress awards,

as well as a measured, but nevertheless significant, punitive damages award against

Starwood.  A reasonable paying client in Mr. Mendez's shoes, therefore, would certainly pay

the fees requested by Plaintiff's Counsel in this case (assuming the financial wherewithal to

do so), especially because the proposed billing rates represent a discount from TWG's

customary billing rates charged to paying clients.[3]  *Cf. Lochren v. County of Suffolk*, 344 Fed.

Appx. 706, 709 (2d Cir. 2009) ("Current rates, rather than historical rates, should be

applied in order to compensate for the delay in payment.").  Moreover, based on the factors

cited by the Second Circuit in *Arbor Hill* and other factors considered within the Second

Circuit, the attorneys' fees requested by Plaintiff's Counsel are reasonable and supported

---

[3]     As set forth at pages 20-21 below and reflected in the Thompson Decl. (¶¶ 10-11;
Ex. F), the requested fee award incorporates substantial reductions of TWG's customary
hourly billing rates, as well as the total number of hours that were actually expended by
Plaintiff's Counsel in this litigation.

by the case law.  Because the requested hourly rates are what a reasonable client would

(and, in fact, does) pay TWG when working on a billable hourly basis, the Court should

grant the requested fee award in full.

###### A.   Customary Hourly Rates

By emphasizing the "reasonable paying client" in *Arbor Hill*, the Second Circuit

elevated the importance of counsel's customary hourly rate, as compared to the now

abandoned lodestar fee calculation, in determining the appropriate billing rate for a fee

award.  *See Arbor Hill*, 522 F.3d at 184.  Indeed, the Second Circuit explicitly criticized

certain trends in the case law that were "untethered" from the free market and emphasized

that it is market rates that a reasonable fee is meant to approximate.  *Id*.  The customary

hourly rate is a well-recognized basis for determining market rates and was specifically

embraced as a relevant consideration in *Arbor Hill*.  *Id.* at 186-87, n.3 (citing *Johnson*, 488

F.2d at 717-19); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("The

first such factor is the range of rates that plaintiff's counsel actually charge their clients.

This is obviously strong evidence of what the market will bear."); *Crescent Publ'g Group, Inc.*

*v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement

certainly provides a strong indication of what private parties believe is the 'reasonable' fee

to be awarded."); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150-51 (7th Cir. 1992) ("[T]he

best measure of the cost of an attorney's time is what that attorney could earn from paying

clients. . . .  A judge who departs from this presumptive rate must have some reason other

than the ability to identify a different average rate in the community."); *Marchisotto v. City*

*of New York*, No. 05 Civ. 2699 (RLE), 2009 U.S. Dist. LEXIS 64662, at *17-19 (S.D.N.Y. July

27, 2009) (awarding attorneys' fees in amount of customary hourly rates); *Arnone v. CA,*

*Inc.*, No. 08 Civ. 4458 (SAS), 2009 U.S. Dist. LEXIS 17080, at *10-11 (S.D.N.Y. Mar. 6, 2009) (same).

Calculating this rate for a plaintiff-side employment litigation case such as this, however, is more difficult, as the majority of these cases are handled on a contingency basis. As such, the underlying "hourly rate" for contingency matters varies widely, depending upon the length of time a case lasts, the amount of work expended and the ultimate result achieved. Given these varying components, the "customary hourly rate" for contingency matters can be very large, and risks skewing any attempt to ascertain the reasonable fee. Courts have recognized the need to prevent contingency arrangements from unfairly affecting the ultimate fee award, including avoidance of either upward or downward effects.[4]

For these reasons, for the calculation of the proposed fee award in this case, Plaintiff's Counsel proposes billing rates *below* the customary rates actually paid by TWG clients who are billed on an hourly basis. *See Perdue v. Kenny A.*, No. 08-970, slip op. at 7, 2010 U.S. LEXIS 3481, at *16 (U.S. Apr. 21, 2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.") (emphasis in original). TWG represents numerous clients in this District who pay hourly billable rates in excess of those requested here. (*See* Thompson Decl. ¶ 10, Ex. F). Thus, the proposed hourly rates are well below those that reasonable

---

[4]     *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (contingency factor cannot lead to upward adjustment of lodestar); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (contingent fee arrangement does not impose automatic ceiling on award of attorneys' fees; to hold otherwise would be inconsistent with statute, its policy and purpose).

paying clients would pay Plaintiff's Counsel, underscoring the propriety of applying the requested rates in calculating a reasonable fee award in this matter.

### B.     Expertise Of Plaintiff's Counsel And Skill Required To Prosecute Case

In addition to the customary hourly rates established above, another major factor in support of the requested fee award is the "experience, reputation, and ability of the attorneys" working on the case.  *See Arbor Hill,* 522 F.3d at 186-87, n.3 (citing *Johnson*, 488 F.2d at 717-19).  Here, Plaintiff's Counsel has an exceptional record of success in the courtroom.  By way of example only, Kenneth P. Thompson has obtained multiple verdicts in excess of $1 million on behalf of employment discrimination plaintiffs in the Southern District.  (*See* Thompson Decl. ¶ 20).

As further demonstrated in the Thompson Declaration, all of the lawyers and paralegals who worked on Plaintiff's litigation are highly capable and skilled professionals who easily command -- and receive -- the requested hourly rates in the legal market.  (*See id.* ¶¶ 12-29).  The skill and abilities of Plaintiff's trial counsel, as well as the other attorneys and staff at TWG, were a crucial and necessary factor in the success achieved at every stage of this litigation.

### C.     Time, Labor And Resources Required To Prosecute The Case

As reflected in the 109 pages of contemporaneous time and billing records annexed to the Thompson Declaration, and during the course of the more than three-week trial itself, the successful prosecution of Mr. Mendez's claims necessarily demanded an incredible commitment of attorney and paralegal hours.  First, at the outset of this case, Plaintiff's Counsel was forced to oppose Starwood's motion to dismiss and compel arbitration on the purported basis of an unenforceable arbitration provision that Starwood

inadvertently included in a letter from Nancy Kiska to Mr. Mendez in connection with his transfer from the Food Runner to Baker position in 2004, notwithstanding that Mr. Mendez was a union member -- and thus incapable of entering into a side-contract with Starwood in derogation of the governing CBA. (*See* ECF #12-14).  When the Court properly denied its motion, Starwood proceeded to move for reconsideration, and refused to file its Answer to the Complaint, forcing Plaintiff's Counsel to make an application for the Court to expressly order Starwood to comply with its initial ruling.  (*See* ECF #23).  Starwood proceeded to file an interlocutory appeal with the Second Circuit, which Plaintiff's Counsel successfully opposed.

Discovery in this case was needlessly contentious, as Starwood repeatedly failed to comply with its discovery obligations and agreements, while simultaneously forcing Plaintiff's Counsel to defend against a continuous barrage of correspondence to Magistrate Judge Fox asserting specious purported discovery violations by Mr. Mendez.  For example, the parties' first telephonic conference with Judge Fox was occasioned by Starwood's attempt to compel Mr. Mendez to respond to interrogatories requests that Starwood had propounded in clear violation of Local Civil rule 33.3(a).  After Judge Fox denied its application on this basis, Mr. Mendez was forced to request intervention in response to Starwood's failure to produce documents in response to *any* of his document requests.

In response to repeated applications and discovery rulings, Starwood ultimately produced over 11,000 pages of haphazardly arranged documents that required significant time to organize and review.  Indeed, it was only through the laborious commitment of Plaintiff's Counsel that the altered documents included in Starwood's production (*i.e.*, PX_54/55 and PX_53/63) were identified at all.  Starwood likewise produced the video

recorded by the covert surveillance camera -- which it installed over Mr. Mendez's workstation in reprisal for his repeated complaints of discrimination -- in the form of over 20,000 individual electronic video files of approximately 22 seconds duration each, which greatly increased the time required for review.

Plaintiff's Counsel also successfully opposed Starwood's unfounded application to continue Mr. Mendez's deposition (*see* ECF #33), and successfully prevailed upon Judge Fox to quash the deposition subpoena that Starwood served upon Mr. Mendez's part-time employer (*see* ECF #39). Judge Fox also granted Plaintiff's application for sanctions when Starwood failed to produce Lourdes Shapiro, the Assistant Director of HR (who drafted the original versions of the altered documents), for her duly noticed deposition (*see* ECF #43). Judge Fox also granted Plaintiff's application to continue the deposition of Nancy Kiska with respect to relevant documents that Starwood inexplicably failed to timely produce in advance of her initial deposition (*see* ECF #41; *see also id.* #46).

Although the trial of this case was scheduled to commence on March 9, 2009, Starwood delayed filing its motion for a stay of trial by the Second Circuit, which was granted, over Plaintiff's opposition, on January 7, 2009, only two days before the deadline for completion of all discovery (*see* ECF #30, 45). When Starwood's appeal was denied, Plaintiff's Counsel was forced to oppose Starwood's further attempts to adjourn the new trial date set for November 2, 2009 (*see* ECF #50, 54). Plaintiff was also forced to contend with Starwood's refusal to cooperate in the timely exchange of materials required for preparation of the Joint Pretrial Order (*see* ECF #75, 76).

As this Court is already intimately familiar with the course of the trial over which it presided from jury selection on February 16, 2010, through the $3 million verdict rendered

in Mr. Mendez's favor on March 10, the time and labor required to successfully try this case

is apparent.  *See generally* Trial Tr. 2629:25-2630:3 ("This is the hardest trial I've ever

done. . . . It took a lot out of me, and I was sitting up here, and I know it how much it has

taken out of you.").  In addition to Mr. Mendez's three days on the stand, Plaintiff also called

ten other witnesses during his case-in-chief, including: three co-workers, Luze Ayala,

Jessica Ocasio, Anna Liza Bay; his union delegate, Carlos Urrutia; his gastroenterologist,

Alexander Chun, M.D.; his treating psychiatrist, Carlos Ortiz, M.D.; Nancy Kiska, the Director

of HR at the Westin; Lourdes Shapiro, the Assistant Director of HR; Maria Lavides, the

former Assistant Director of HR; and Antonio Rotolo, the former Executive Chef.  The

testimony of these witnesses resulted in the Court's determination, at the close of Mr.

Mendez's case-in-chief, that:

> Boy is there evidence for the jury on this.  I've never heard of a human
> resources department in my life that works like Starwood's, and I
> used to sit in your seat and do what you did, which is why punitive
> damages are going to the jury in this case.

(Trial Tr. 1783:7-11).

And, after hearing the direct and cross-examinations of the 11 witnesses who

testified for Starwood, the jury concluded that Starwood's Human Resources department

unlawfully retaliated against Mr. Mendez in reprisal for his protected complaints of

discrimination, and that Mr. Mendez had suffered severe emotional distress, warranting a

compensatory damages award of $1 million, as well as a measured punitive damages

award of $2 million against Starwood.

Notwithstanding the resounding jury verdict in Mr. Mendez's favor, Plaintiff must

now oppose Defendant's Rule 50 motion for judgment as a matter of law, and Rule 59

motion for a new trial and/or remittitur.  Furthermore, based on Defendant's consistent

conduct throughout this litigation, it is apparent that Defendant will make efforts to obstruct Plaintiff's enforcement of whatever final judgment is ultimately entered by this Court.  Thus, this case has been extraordinarily difficult and laborious to prosecute, which supports the determination that a paying client would be willing to retain Plaintiff's Counsel at the fees requested here.  *See, e.g., Brady*, 455 F. Supp. 2d at 203 ("Absent the possibility of fee-shifting, it is unlikely that [Plaintiff] would have found counsel willing to prosecute his claim in light of the substantial time and resources required to litigate a civil rights claim against an opponent like [Defendant]").

### D.    The Novelty And Difficulty Of The Issues

The Court should also consider the novelty and difficulty of the issues that Plaintiff's Counsel has had to litigate as a precursor to obtaining a successful verdict on behalf of Plaintiff.  *See, e.g., Cruz v. Henry Modell & Co.*, No. 04 Civ. 1450 (AKT), 2008 U.S. Dist. LEXIS 25339, at *30-31 (E.D.N.Y. Mar. 31, 2008) (awarding higher attorneys' fees based on complexity of issues in case).  Here, based upon the above summary of only some of the issues litigated in this case, there is no question that this case posed numerous legal and factual difficulties that needed to be overcome to obtain the successful Plaintiff's verdict achieved here.

### E.    The Results Obtained

The $3 million verdict in this case represents a highly successful verdict for Mr. Mendez, who continues to work as a Baker at the Westin Hotel, at a wage of approximately $23.00 per hour.  The $1 million compensatory damages award represents fair compensation for the very substantial emotional distress that Mr. Mendez suffered -- and continues to suffer -- as a result of Starwood's unlawful retaliatory conduct.  And, the $2

million in punitive damages is a measured award to punish Starwood's knowing and
reckless disregard for Mr. Mendez's protected rights, and to deter it from continuing to
violate its employees' rights in the future.  Accordingly, this highly successful result justifies
an award of the full attorneys' fees requested by Plaintiff's Counsel.

### F.    Prevailing Rates In The Southern District Of New York

The hourly rates that Plaintiff seeks to recover are reasonably comparable with
those charged by lawyers of like skill, experience and reputation practicing in the Southern
District of New York.  *See*, *e.g.*, *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ.
6302 (McMahon, J.), 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) (accepting hourly
rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other
non-partner level attorneys and from $300 to $850 for partners, as within range of those
commanded in Southern District); *In re Marsh Erisa Litig.*, No. 04 Civ. 8157 (McMahon, J.),
2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010) (awarding fees equal to 33.3% of
settlement fund, where percentage award reflected billing rates from $125 for
administrative personnel to $775 for senior lawyers); *see also Steinberg v. Nationwide Mut.
Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (awarding prevailing attorneys billing
rates of $585 to $790 for partners and $270 to $500 for associates).

Moreover, Plaintiff's proposed billing rates are consistent with the market,
particularly when prior awards are adjusted to reflect the overall increases in attorneys'
hourly rates over time.  *See*, *e.g.*, *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009
U.S. Dist. LEXIS 89981, at *13 (S.D.N.Y. Sept. 29, 2009) ("A review of precedent in the
Southern District reveals that rates awarded to experienced civil rights attorneys over the
past ten years have ranged from $250 to $600, and that rates for associates have ranged

from $200 to $350, with average awards increasing over time.") (citations omitted); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (two years ago, awarding partner rates of $600 per hour under Title VII and CHRL); *Silberblatt v. Morgan Stanley*, No. 05 Civ. 7569 (PKC), 2007 U.S. Dist. LEXIS 85895, at *20-22 (S.D.N.Y. Nov. 19, 2007) (three years ago, approving reasonable hourly rate of $675 per hour for partners at eight-attorney boutique firm, and noting court's history of approving fees in the $400-$555 per hour range); *Skold v. Am. Int'l Group*, No. 96 Civ. 7137 (HB), 1999 U.S. Dist. LEXIS 9209, at *21, 23 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) (10 years ago, awarding $400 for partner overseeing employment discrimination litigation); *Bonner v. Guccione*, No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS 11382, at *23 (S.D.N.Y. Aug. 6, 1997), *vacated on other grounds*, 178 F.3d 581 (2d Cir. 1999) (13 years ago, noting partner rate of $400-$425 per hour in a sexual harassment and discrimination case); *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 421 (S.D.N.Y. 1999) (11 years ago, awarding $425 for partner on civil rights case); *see also Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005) ("Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace.  This undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation.").

Finally, Plaintiff's Counsel has a nationally recognized employment litigation practice and reputation meriting hourly rates commensurate with those of employment law firms with established defense practices.  *See Kuper v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 1190 (JSG/MHD), 2003 WL 23350111, at *10 (S.D.N.Y. Dec 18, 2003) (seven years ago, noting that "hourly rates in excess of $400.00 are not limited to big

firms").  This is so because "[i]t would be incongruous to limit plaintiffs' counsel in these cases to an hourly rate of $200 or less when Defendant's counsel, in defending the same cases, are commanding rates of up to $400 an hour (or more) for partners."  *Marfia v. T.C. Ziraat Bankasi*, 903 F. Supp. 463, 476 (S.D.N.Y. 1995), *rev'd on other grounds*, 100 F.3d 243 (2d Cir. 1996).

### G.     The Preclusion Of Other Employment By Acceptance Of This Case

As *Arbor Hill* recognized, a time-consuming, extensively litigated matter not only draws significant resources from a firm, but can also deprive counsel of other income producing opportunities.  *See Arbor* Hill, 522 F.3d at 182.  In the instant case, as the accompanying billing records demonstrate, TWG has spent over 3,000 hours litigating the claims and defenses asserted in Plaintiff's lawsuit.  This is obviously a substantial amount of time that could have otherwise been devoted to serving other, hourly paying clients.  Given the magnitude of the time and effort expended on this case, it is evident that TWG's representation of Plaintiff warrants a substantial fee award, best approximated by the rates requested by Plaintiff here.  Indeed, this representation unquestionably precluded TWG from other employment, including hourly billable matters with no risk of non-recovery, which is another compelling factor in support of the fees requested.

### H.     Anticipated Returns Of This Representation

As previously noted, Plaintiff's Counsel accepted this representation on a contingency fee basis and thereby assumed the risk that the prosecution of this action would yield no return at all.  As noted in the Thompson Declaration, the lawyers at TWG possessed substantial salient experience in the field of employment discrimination and civil rights law prior to this lawsuit.  As such, the non-monetary remuneration that TWG, and its

attorneys, has obtained by virtue of this lawsuit is *de minimis*.  Rather, the only anticipated return from this representation has been the possibility of collecting a contingency fee and in making the instant fee application.  As Plaintiff's Counsel did not seek out this representation or expect to obtain any return from this representation from other sources, a paying client seeking to retain TWG in this matter would have been charged fees in excess of the billable rates requested herein.  *See, e.g., Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (explaining that "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation").

## IV.   THE TOTAL HOURS REQUESTED ARE REASONABLE AND DOCUMENTED WITH SPECIFICITY

### A.   Contemporaneous Documentation

To demonstrate its entitlement to fees, a party must submit "contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed."  *Morin v. Modern Cont'l Constr. Co.*, No. 07 Civ. 4815 (JFB/WDW), 2009 U.S. Dist. LEXIS 72525, at *8 (E.D.N.Y. July 1, 2009) (citing *Cruz v. Local Union NO. 3 of the IBEW*, 34 F.3d 1148, 1160-61 (2d Cir. 1994)).  Courts have consistently acknowledged, however, that there is no requirement that the party seeking attorneys' fees present extensive documentation "record[ing] in great detail how each minute of his time was expended."  *Putnam Leasing Co. v. Fields*, No. 05 Civ. 141 (RML), 2007 U.S. Dist. LEXIS 58794, at *12 (E.D.N.Y. June 27, 2007).  Rather, the time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application.  *J.S. Nicol, Inc. v.*

*Peking Handicraft, Inc.*, No. 03 Civ. 1548 (GBD/AJP), 2008 U.S. Dist. LEXIS 82085, at *19-20 (S.D.N.Y. Oct. 17, 2008).

In the instant case, Plaintiff has furnished the Court with the detailed computerized time records contemporaneously recorded by the attorneys and paralegals who have provided legal services in connection with this litigation.  (*See* Thompson Decl., Ex. D).  Accordingly, Plaintiff has clearly satisfied the requirements for documenting the reasonable hours expended on this litigation.  *See, e.g., Auscape v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441 (LAK/HBP), 2003 U.S. Dist. LEXIS 13846, at *11 (S.D.N.Y. Aug. 8, 2003) ("[Plaintiff] has submitted a printout from what appears to be its counsels' billing software which contains all the required information.  Such a submission clearly meets the evidentiary threshold for the recovery of attorneys' fees."); *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records . . . suffice to permit recovery of attorneys' fees").

### B.    Number Of Hours

To determine the number of hours that are properly compensable, the Court should initially consider the amount of time reasonably spent on each category of tasks, as documented by the contemporaneous time records of Plaintiff's Counsel.  "To determine the number of hours reasonably expended, the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case."  *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the

case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876.

Further, as noted in *Gonzalez v. Bratton*, 147 F. Supp. 2d 180 (S.D.N.Y. 2001), the time spent prosecuting a litigation may be "a direct function of the forcefulness and chosen strategies of the defense." *Id.* at 211. Indeed, the Second Circuit has recognized that, "in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands . . . the hours required to litigate even a simple matter can expand enormously." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). As the record in this case makes clear, Starwood's sustained and aggressive challenge to Mr. Mendez's claims required the commitment of substantial resources by Plaintiff's Counsel. Given the substantial resources required to prosecute this case, the total hours billed are reasonable. *See Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (over 3,450 hours held reasonable in civil rights case); *Morgenstern v. County of Nassau*, No. 04 Civ. 58 (ARL), 2009 U.S. Dist. LEXIS 116602, at *32 (E.D.N.Y. Dec. 15, 2009) (over 4,100 hours billed by TWG in single-plaintiff employment case held reasonable); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 161 (E.D.N.Y. 2006) (over 2,300 hours billed by TWG in single-plaintiff employment discrimination case held reasonable).

### C.     Voluntary Reductions

As set forth in the Thompson Declaration, both the total number of hours that were actually expended by Plaintiff's Counsel in this case, as well as the hourly rates that TWG regularly charges its clients in hourly billable employment matters, have been substantially

20

reduced for purposes of calculating the requested fee award.  For example, although all of the partners at TWG contributed time to this litigation that would normally be charged to a paying client, the requested fee award is limited to the time expended by only two partners, Kenneth P. Thompson, who served as lead trial counsel, and Andrew S. Goodstadt, who spent substantial time assisting with witness and pre-trial preparation in anticipation of participating the trial that was scheduled for November 30, 2009.  A total of 71 hours expended by other partners at TWG -- each of whom regularly bills paying clients at the rate of $750 per hour or more for representation in employment matters -- have been voluntarily eliminated for purposes of this fee application.  Similarly, although many associates at TWG worked on various aspects of this case over the past two years, the requested fee award seeks compensation for the time expended by only one associate, Ariel Graff, who worked on this matter continuously from its inception through trial.  Thus, a total of 88.4 hours of associate time -- which would ordinarily be billed at rates of $400 to $600 per hour, depending on seniority -- have also been eliminated from the requested fee calculation.  Finally, a total of 191.6 hours of time expended by various paralegals and legal assistants -- who normally bill at a current rate of $185 per hour -- have also been voluntarily excluded from the requested award.  The scrupulous review of the billing records annexed to the Thompson Declaration, together with the wholesale elimination of hours expended by attorneys and staff whose involvement with this case was only intermittent, underscores the reasonableness of the attorneys' fee award requested herein.

### V. **PLAINTIFF IS ENTITLED TO ADDITIONAL FEES, COSTS AND INTEREST**

#### A. **"Fees On Fees"**

Under the law, Plaintiff's Counsel is not limited to recovering attorneys' fees only on the work performed through trial, but is also entitled to recover its fees for the work done in preparing the instant attorneys' fee application, as well as in opposing any post-trial motions. *Reiter v. Metro .Transp. Auth. of N.Y.*, No. 01 Civ. 2762 (GWG), 2007 U.S. Dist. LEXIS 71008, at *56 (S.D.N.Y. Sept. 26, 2007) ("It is settled that the time spent on a fee application is itself compensable.") (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996)). As the Second Circuit has explained in holding such time compensable:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased . . . . Such a result would not comport with the purpose behind most statutory fee authorizations . . . the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) (internal citations and quotations omitted), *aff'd on other grounds*, 448 U.S. 122 (1980).

Accordingly, the submitted time for preparing the instant fee application -- albeit only partially submitted at this point -- is reasonable and should therefore be compensated. The Court also should permit Mr. Mendez to make a supplemental application to address any reply briefing to be completed in responding to Starwood's opposition to Plaintiff's attorneys' fee application, as well as in opposing Starwood's post-trial motion under Fed. R. Civ. P. Rules 50(b) and 59.

#### B. **Costs Should Be Awarded**

In addition to attorneys' fees, taxable and discretionary costs were incurred in connection with this litigation. Federal Rule 54(d) provides that, unless otherwise

provided by a statute, the federal rules or a directive issued by a court, "costs - other than attorneys' fees - should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). "[The] list of [] recoverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298 (2006). This list of taxable costs includes: (1) fees of the clerk and marshal; (2) fees of a court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See* 28 U.S.C. § 1920. Further, pursuant to Local Civil Rule 54.1, taxable costs such as the costs associated with transcripts, depositions, witness fees, copying, docket fees and other miscellaneous fees may also be recovered. And a prevailing party's expert witness fees are compensable under both 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(c).

Plaintiff has submitted a bill of costs and additional out-of-pocket expenses attached to the Thompson Declaration together with supporting documentation for these expenses and costs. (*See* Thompson Decl. Ex. F). Accordingly, Plaintiff respectfully requests that Defendant be ordered to reimburse Plaintiff for these taxable costs and other discretionary costs. *See*, *e.g.*, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (reversing district order denying plaintiff's costs for "duplicating, postage, telephone, computerized legal research and other office expenses"); *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel,

and telephone costs are generally taxable under § 1988"); *Morgenstern v. County of Nassau*, No. 04-58 (ARL), 2009 U.S. Dist. LEXIS 116602, at *35 (E.D.N.Y. Dec. 15, 2009) ("expenses related to travel, transportation and meals are now routinely recoverable as costs").

### C.   Pre- And Post-Judgment Interest Should Be Awarded

Under applicable Second Circuit case law, Plaintiff is entitled to an award of both pre- and post-judgment interest on the damages awarded to him.  Moreover, a district court may, in its discretion, award pre-judgment interest on compensatory damages awards in employment cases such as this.  As courts have explained, "the purpose of pre-judgment interest is compensatory."  *Zicherman v. Korean Air Lines Co., Ltd.,* 814 F. Supp. 605, 608 (S.D.N.Y. 1993).  The Second Circuit has identified four factors to assist district courts in determining whether prejudgment interest is appropriate:

> (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 834 (2d Cir. 1992).

Here, the jury found that Plaintiff was entitled to $1 million in compensatory damages to properly compensate him for the emotional distress he suffered as a result of Defendant's unlawful conduct.  This substantial and prolonged emotional distress that will continue in the future, compels the finding that, to properly make Plaintiff whole for the emotional damages he suffered, an award of pre-judgment interest should be included on his compensatory damages award.  *See, e.g., Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 207 (S.D.N.Y. 2000) (awarding pre-judgment interest on compensatory damages to make plaintiff whole and to serve remedial purpose of civil rights statute); *O'Quinn v. New York Univ. Med. Center*, 933 F. Supp. 341, 345 (S.D.N.Y. 1996) (awarding pre-judgment

interest on compensatory damages).  To hold otherwise would undermine the "broad remedial purpose" of the civil rights statutes under the circumstances of this case.

In contrast to pre-judgment interest, "[p]ost-judgment interest is awarded as a matter of course in federal courts and is mandatory for any money judgment."  *Ramnarain v. City of New York*, 474 F. Supp. 2d 443, 448 (E.D.N.Y. 2007); *see also Gilbert v. Hotline Delivery*, No. 00 Civ. 0160, 2001 U.S. Dist. LEXIS 9876 (MBM/RLE), at *13 (S.D.N.Y. July 10, 2001); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998).  Post-judgment interest is calculated by the Clerk of the Court pursuant to the provisions of 28 U.S.C. § 1961, and is available on the full judgment amount, "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Post-judgment interest is computed daily and compounded annually to the date of payment.  28 U.S.C. § 1961(b); *see also Lavely v. Redheads, Inc.*, No. 03 Civ. 7752 (RMB/KNF), 2007 U.S. Dist. LEXIS 77109, at *27 (S.D.N.Y. Oct. 12, 2007).  The purpose of awarding post-judgment interest is to compensate Plaintiff for the delay suffered from the time his damages are entered into an enforceable judgment, until the time that Defendant ultimately pays the judgment.  *See U.S. v. Tate & Lyle North American Sugars, Inc.*, 228 F. Supp. 2d 308, 326 (S.D.N.Y. 2002).  Accordingly, as the prevailing party on his federal and CHRL claims, Plaintiff is entitled to post-judgment interest on all money awards in accordance with the provisions of 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the

Motion and enter an Order against Defendant: (1) awarding Plaintiff attorneys' fees in the

amount of $2,186,195.00; (2) awarding costs in the amount of $128,679.38; (3) awarding

pre- and post-judgment interest; and (4) granting such other and further relief as the Court

deems proper.

Dated: New York, New York
      April 21, 2010            Respectfully submitted,

                              **THOMPSON WIGDOR & GILLY LLP**

                              Kenneth P. Thompson
                              Ariel Y. Graff

                              85 Fifth Avenue
                              New York, NY 10003
                              Telephone:  (212) 257-6800
                              Facsimile:  (212) 257-6845
                              *kthompson@twglaw.com*
                              *agraff@twglaw.com*

                              *COUNSEL FOR PLAINTIFF MOISES MENDEZ*