UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                :

Moises Mendez,                         :

                               :

             Plaintiff,          :          08 Civ. 4967 (CM)(KNF)

                               :

      -against-                 :

                               :

Starwood Hotels & Resorts Worldwide, Inc.,  :

                               :

           Defendant.       :

-------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN
## <u>OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>

<u>Of Counsel:</u>

Michael Starr, Esq.
Loren L. Forrest, Jr., Esq.

HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010
*Attorneys for Defendant Starwood Hotels &*
*Resorts Worldwide, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................4

POINT I ..................................................................................................................4

    THE ATTORNEYS' FEES SOUGHT ARE FAR MORE THAN THE
    MINIMUM NECESSARY TO HAVE LITIGATED THIS CASE
    EFFECTIVELY. ................................................................................................ 4

        A.    The Proposed Rates Are Far More Than
             the Market Requires To Attract
             Competent Counsel. ...............................................................5

        B.    No Adjustment Can Be Made For
             Reputation, Market Demand, Novelty or
             Payment Delay. .....................................................................11

POINT II ...............................................................................................................14

    A REDUCTION FROM THE PRESUMPTIVE FEE IS WARRANTED FOR
    EXCESSIVE HOURS, DUPLICATIVE EFFORTS AND VAGUE BILLING
    PRACTICES. .................................................................................................. 14

        A.    Vague Billing Entries Alone Warrant a
             Significant Reduction. ..........................................................14

        B.    The Bills Should Be Reduced for
             Excessive Staffing and Duplication of
             Work. ....................................................................................15

        C.    Plaintiff's Counsel Should Not Be
             Compensated For Activity Not Necessary
             to Effective Litigation. .........................................................16

POINT III ..............................................................................................................19

    GIVEN THAT PLAINTIFF WAS UNSUCCESSFUL ON VIRTUALLY ALL
    OF HIS CLAIMS, A SUBSTANTIAL REDUCTION IS REQUIRED. ...................... 19

POINT IV ..............................................................................................................28

    COSTS WERE EXCESSIVE AND SHOULD BE REDUCED. ............................... 28

POINT V ...............................................................................................................29

    MENDEZ IS NOT ENTITLED TO PREJUDGMENT INTEREST ON HIS
    COMPENSATORY DAMAGES. ...................................................................... 29

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Access 4 All, Inc. v. Hi 57 Hotel, LLC,*
  2006 WL 196969 (S.D.N.Y. Jan. 26, 2006) .................................................................9, 13

*Adorno v. Port Authority of New York and New Jersey,*
  __ F. Supp. 2d __, 2010 WL 582045 (S.D.N.Y. Feb. 19, 2010) ...........................................10

*Anderson v. Rochester-Genesee Regional Transp. Auth.,*
  388 F. Supp. 2d 159 (W.D.N.Y. 2005) .................................................................................13

*Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany,*
  522 F.3d 182 (2d Cir. 2008)...........................................................4, 5, 12, 15, 20, 22

*Barfield v. New York City Health and Hospitals Corp.,*
  537 F.3d 132 (2d Cir. 2008)...................................................................................1, 19

*Becerril v. East Bronx NAACP Child Development Center,*
  2009 WL 2611950 (S.D.N.Y. Aug. 18, 2009) .......................................................5, 8

*Betancourt v. Giuliani,*
  325 F. Supp. 2d 330 (S.D.N.Y. 2004).................................................................20, 26

*Bonner v. Guccione,*
  1997 WL 441910 (S.D.N.Y. Aug. 6, 1997) ........................................................18, 26

*Bonner v. Guccione,*
  2000 WL 12152 (S.D.N.Y. Jan. 6, 2000) ...........................................................23, 24

*Brady v. Wal-Mart Stores, Inc.,*
  455 F. Supp. 2d 157 (E.D.N.Y. 2006) .............................................................5, 8, 10

*Carroll v. Blinken,*
  105 F.3d 79 (2d Cir. 1997)...................................................................................21

*City of Burlington v. Dague,*
  505 U.S. 557 (1992)...........................................................................................13

*City of Riverside v. Rivera,*
  477 U.S. 561 (1986)...........................................................................................17

*Dominic v. Consolidated Edison Co.,*
  822 F.2d 1249 (2d Cir. 1987)...........................................................................20, 28

*E.E.O.C. v. Everdry Marketing and Management, Inc.*
  556 F. Supp. 2d 213 (W.D.N.Y. 2008) ...................................................................31

*Farbotko v. Clinton County of New York,*
    433 F.3d 204 (2d Cir. 2005)...................................................................................12

*Gilbert v. Hotline Delivery,*
    2001 WL 799576 (S.D.N.Y. July 10, 2001) ...........................................................30

*Green v. Torres,*
    361 F.3d 96 (2d Cir. 2004).....................................................................................19

*Greenbaum v. Svenska Handelsbanken, N.Y.,*
    998 F. Supp. 301 (S.D.N.Y. 1998) ........................................................................29

*Hine v. Mineta,*
    253 F. Supp. 2d 464 (E.D.N.Y. 2003) .......................................................20, 23, 26

*Kassim v. City of Schenectady,*
    415 F.3d 246 (2d Cir. 2005)........................................................................19, 21, 22

*Kirsch v. Fleet St., Ltd.,*
    148 F.3d 149 (2d Cir. 1998)............................................................................14, 17

*Knoll v. Equinox Fitness Clubs,*
    2006 WL 2998754 (S.D.N.Y. Oct. 20, 2006) ..................................................20, 23

*Kuper v. Empire Blue Cross and Blue Shield,*
    2003 WL 23350111 (S.D.N.Y. Dec. 18, 2003) .....................................................30

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998)...................................................................................29

*Levy v. Powell,*
    2005 WL 1719972 (E.D.N.Y. July 22, 2005) ........................................................15

*Lochren v. County of Suffolk,*
    344 Fed. Appx. 706, 2009 WL 2778431 (2d Cir. 2009)........................................13

*Luca v. County of Nassau,*
    2008 WL 2435569 (E.D.N.Y. June 16, 2008) .........................................................6

*Meacham v. Knolls Atomic Power Lab, Inc.,*
    185 F. Supp. 2d 193 (N.D.N.Y. 2002)...................................................................30

*Molefi v. Oppenheimer Trust,*
    2007 WL 538547 (E.D.N.Y. 2007).........................................................................14

*Perdue v. Kenny A. ex rel. Winn,*
    __ U.S. __ , 2010 WL 1558980 (2010).........................................................4, 12, 13

*Pinner v. Budget Mortgage Bankers, Ltd.*,
   336 F. Supp. 2d 217 (S.D.N.Y. 2004).................................................................27

*Port Authority Police Asian Jade Society v. Port Authority of New York and New Jersey*,
   ___ F. Supp.2d ___, 2010 WL 1507784 (S.D.N.Y. Apr. 15, 2010)
   ........................................................................................................7, 8, 9, 10, 20

*Reed v. A.W. Lawrence & Co.*,
   95 F.3d 1170 (2d Cir. 1996)..............................................................................27

*Reiter v. Metropolitan Transportation Authority of New York*,
   2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007)...............................................15, 18

*Robinson v. City of New York*,
   2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009)........................................9, 20, 21, 27

*Rozell v. Ross-Holst*,
   576 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................................10

*Sea Spray Holdings Ltd. v. Pali Fin. Group, Inc.*,
   277 F. Supp.2d 323 (S.D.N.Y. 2003).................................................................14

*Separ v. Nassau County Dep't of Social Services*,
   327 F. Supp. 2d 187 (E.D.N.Y. 2004) ...........................................................20, 23

*Simmonds v. New York City Dep't of Corrections*,
   2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008)...............................................6, 7, 18

*Simmons v. New York City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009)...............................................................4, 5, 11, 12, 18

*Spalluto v. Trump Int'l Hotel & Tower*,
   2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008) ....................................................9, 14, 20, 29

*Staples, Inc. v. W.J.R. Assoc.*,
   2007 WL 2572175 (E.D.N.Y. Sept. 4, 2007) ......................................................29

*Ware v. ABB Air Preheater, Inc.*,
   1995 WL 574464 (W.D.N.Y. Sept. 28, 1995) .....................................................17

*Weingarten v. Optima Communications Systems, Inc.*,
   544 F. Supp. 2d 193 (S.D.N.Y. 2008)..................................................................6

*Wickham Contracting Co. v. Local Union No. 3*,
   955 F.2d 831 (2d Cir. 1992)..............................................................................30

Defendant Starwood Hotels and Resorts Worldwide, Inc. ("*Starwood*") submits this memorandum of law in opposition to Plaintiff's motion for attorneys' fees.

## PRELIMINARY STATEMENT

Having lost before the jury on all claims – save for a single instance of retaliation involving covert observation by a hidden camera – Plaintiff seeks the astonishing sum of $2.2 million in attorneys fees in this single-plaintiff lawsuit. That fee calculation is based on billing rates that are nearly (or in some instances more than) double the prevailing market rates for attorneys of similar experience, as determined by the fee awards in similar cases. There was, moreover, duplicative work by Plaintiff's law firm and wasted effort on contentious litigation strategies that did not prevail.

Furthermore, the "degree of success obtained" is "the most critical factor" in Court's determination of a *reasonable* fee. *See, e.g., Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). Yet, well over 90% of discovery and trial time were devoted to Plaintiff's most serious claims of hostile work environment and disability discrimination – claims on which he did not prevail. Any fee award should reflect Plaintiff's overall lack of success on the most serious claims consuming the bulk of the testimony at trial.

As is more fully explained below, the fee would not be higher than $1.1 million – even with full success – if adjusted for proper hourly rates as follows:

| Attorney/Paralegal | Hourly Rate Requested | Proper Hourly Rate |
|---|---|---|
| K. Thompson | 750 | 425 |
| A. Goodstadt | 625 | 300 |
| A. Graff | 450 | 200 |
| Paralegals | 180 | 75 |

When all proper adjustments are made, the resulting reasonable fee should not exceed $177,000, as summarized below:

| | |
|---|---|
| Plaintiff's Fee Request.................................................................... | $2,186,195.00 |
| Following Adjustment of Hourly Rates ........................................ | $1,101,370.00 |
| Following 20% Reduction for Excessive or Duplicative Time  .................. | $...881,095.00 |
| Following 80% of Reduction for Lack of Success......................... | $  176,219.00 |

To the extent Plaintiff seeks a greater fee award, it should be denied.

## BACKGROUND

Plaintiff Moises Mendez brought this action under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New York State Human Rights Law, the New York City Human Rights Law and 42 U.S.C. § 1981.  Virtually all of Plaintiff's Complaint is devoted, primarily, to alleged widespread harassment and a rampant hostile work environment at the Westin New York hotel and, secondarily, to the Westin's alleged failure to make a reasonable accommodation for his disabilities.  As to retaliation, the Complaint alleges such things as following him to the bathroom, withdrawing agreed upon accommodations, or soliciting false statements from co-workers (*see* Complt. ¶¶49-51), all of which were lost or never raised at trial.

Retaliation by hidden-camera surveillance – the only claim that did succeed – is not mentioned in the Complaint, even though it was known to both Plaintiff and his counsel and was still present to mind, as the camera was discovered just weeks before the Complaint was filed. Prior to the final pre-trial conference, Plaintiff added more instances of retaliation, including that Westin's had ordered croissants from outside the hotel.  All were frivolous, and all were abandoned during the course of the trial.

Even at trial, the claim of the covert surveillance by means of a hidden camera was barely mentioned.  Plaintiff's counsel considered the hidden camera matter so unimportant that he refers to it in only four lines of his opening statement (*see* Tr. 42:1-8), which went on for fifteen pages of transcript.  None of the co-worker witnesses called by Plaintiff testified concerning the hidden

camera and of the four management witnesses called by Plaintiff, only a small portion of Nancy Kiska's testimony contained admissible evidence relating to it. Plaintiff's testimony regarding the camera lasted no more than a few transcript pages over the course of his three days of testimony. He spent more time testifying about his surgical wound and his fanciful story about being forced by Chef Ribbens to come to work and reveal his scar (or his bandage) to co-workers, more time devoted to one time in 2004 when he was allegedly told by Chef Ribbens and "Chef Joanne" not to speak Spanish in the kitchen, and more time – much more time – devoted to being called "mangina" by Chef Rotolo. Virtually all of the Plaintiff trial testimony was devoted to his claims of a hostile work environment and the failure to accommodate his disability with respect to dietary needs and work schedule (including the failure to promote him on two occasions to be a pastry chef).

Further, Mendez's testimony as to his alleged emotional distress caused by the hidden camera was limited to four lines of transcript (*see* Tr. 557:1-4), and none of the expert witnesses at trial testified as to any emotional distress that Mendez experienced on account of the hidden camera.

Given all of this, is impossible for Plaintiff to claim that his case was successful. He did not prevail on his most important claims (hostile work environment and disability discrimination), or on the overwhelming majority of other claims addressed at trial. The hidden camera retaliation claim almost failed to make it to the jury because, as the Court observed, it was "thin." (*See* Tr. 1797:21-22; 1800:12-13; 2398:9-13, 20.) That Plaintiff prevailed only on a claim that has basically an afterthought is a very, very low degree of success.

**ARGUMENT**

**POINT I**

**THE ATTORNEYS' FEES SOUGHT ARE
FAR MORE THAN THE MINIMUM NECESSARY
TO HAVE LITIGATED THIS CASE EFFECTIVELY.**

As the Supreme Court has recently reiterated in *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __ , 2010 WL 1558980 (2010), a reasonable fee for prevailing parties in civil rights cases is "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case," which is to say "one that is *adequate to attract* competent counsel, but that does not produce *windfalls to attorneys*." *Id.* at *6 (internal citations omitted) (emphasis added). This is so because the aim of fee-shifting is to effect the enforcement of the anti-discrimination statutes, "not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Id.*[1]

In the Second Circuit, calculation of a reasonable attorneys' fees begins with "the product of hours worked and an hourly rate," which is now called "the presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 522 F.3d 182, 183, 190 (2d Cir. 2008) ("*Arbor Hill*"). Furthermore, the Second Circuit has:

> directed district courts, in calculating the presumptively reasonable fee, "to bear in mind *all* of the cases-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."

*Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*). At bottom, "[t]he presumptively reasonable fee boils down to 'what a reasonable paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Id.* at 174. This means "'that district courts should award fees *just*

---

[1] While *Perdue* was decided under 42 U.S.C. §1988, the legal standards under the fee-shifting provisions of federal employment discrimination statutes are the same. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983).

*high enough* "to attract competent counsel.'" *Id.* at 176 (quoting *Arbor Hill*) (emphasis by the court). Furthermore, it is the district court's duty "to ensure that the attorney does not recoup fees that the market would not otherwise bear," which means "*disciplining the market*, stepping into the shoes of the reasonable, paying client, who wishes *to pay the least amount* necessary to litigate the case effectively." *Arbor Hill, supra*, 527 F.3d at 184 (emphasis added).

**A.    The Proposed Rates Are Far More Than the Market Requires To Attract Competent Counsel.**

Plaintiff here contends that a rate of $750 an hour should be used to establish the presumptively reasonable fee for his lead trial counsel, Kenneth P. Thompson, and correspondingly unreasonable rates for other attorneys and paralegals. Rates that high have never been allowed in this District. They should not be allowed here.

**1.    The Partner Rate Should Not Exceed $425 An Hour.**

The most salient fact here is that Mr. Thompson personally has never been awarded more than $450 an hour in any employment discrimination case in the federal courts. In *Becerril v. East Bronx NAACP Child Development Center*, 2009 WL 2611950 (S.D.N.Y. Aug. 18, 2009), an inquest was held on the issues of damages and attorneys' fees, after the plaintiff had defaulted.. Despite Mr. Thompson's application for a rate of $750 an hour, only $450 was allowed.

Similarly, in *Brady v. Wal-Mart Stores, Inc.,* 455 F. Supp. 2d 157, 215 (E.D.N.Y. 2006), the Thompson, Wigdor, & Gilly firm ("*TWG*") was allowed rates of no more than $350 an hour. The court made that determination based, in part, on affidavits from other employment law attorneys as to their rates and also on the court's review of awards in similar cases, concluding that "[f]or attorneys with comparable experience to [TWG's named partner, Scott] Gilly, courts in the Southern District have awarded fee rates ranging from $250 to $300." *Id.* at 206.

A rate of $400 an hour is at "*the top end* of the range of *recent awards* for similar work in the Eastern and Southern Districts." *Luca v. County of Nassau*, 2008 WL 2435569, at *10 (E.D.N.Y. June 16, 2008) (emphasis added). In *Weingarten v. Optima Communications Systems, Inc.*, 544 F. Supp. 2d 193 (S.D.N.Y. 2008), a Title VII sexual harassment case, the district court approved an hourly rate of $350 for a partner with 20 years of experience in employment and labor law, and an hourly rate of $300 for a partner in the same firm with 19 years of experience. In *Simmonds v. New York City Dep't of Corrections*, 2008 WL 4303474 at *1, 5 (S.D.N.Y. Sept. 16, 2008), a rate of $425 an hour was allowed for two attorneys, of whom (i) one was the Director of the ACLU Women's Rights Project and a 1990 graduate of Harvard Law School, (ii) one was a partner from the law firm of Steptoe & Johnson LLP ("*Steptoe*") and a 1986 graduate of Yale Law School, and (iii) another attorney was awarded $325 per hour even though she was the Deputy Director of the ACLU Women's Rights Project and a 1998 graduate of Yale Law School. Numerous other cases have allowed rates in this same range. [2]

---

[2] *See also Kauffman v. Maxim Healthcare Services, Inc.*, 2008 WL 4223616, at *5-6, 10 (E.D.N.Y. Sept. 9, 2008) (utilizing Southern District rates, $400 an hour allowed for senior partner who had 40 years' experience in labor, employment law and litigation, had authored books on job discrimination and served as a commentator in the field of labor law; $300 an hour to the other partner, a graduate of Cornell Law School, who had 12 years of experience in employment and labor litigation); *Garcia v. Yonkers Sch. Dist.*, 499 F. Supp. 2d 421, 426 (S.D.N.Y. 2007) (rate of $350 per hour for experienced civil rights litigator); *Heng Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118, at *4 (S.D.N.Y. May 8, 2007) ($400 an hour allowed for civil-rights attorney with 15 years of experience and who served as associate director of the Urban Justice Center and adjunct professor at New York Law School); *Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*, 2005 WL 736146 at *12-13 (S.D.N.Y. Mar. 31, 2005) ($375 an hour rate for attorneys with 38 and 25 years experience); *New York State Nat'l Org. for Women v. Pataki*, 2003 WL 2006608 at *2 (S.D.N.Y. Apr. 30, 2003) (rates of $400 and $430 at the "high end" of the reasonable range for civil rights attorneys with over 30 years of experience each); *Kuper v. Empire Blue Cross and Blue Shield*, 2003 WL 23350111, at *9 (S.D.N.Y. Dec. 18, 2003) ($425 an hour allowed for pre-eminent labor lawyer who had authored 2 books on job-discrimination litigation and had over 35 years' experience, primarily in employment-discrimination law). *Moon v. Gab Kwon*, 2002 WL 31512816, at *2 (S.D.N.Y. Nov. 8, 2002) (rate of $350 allowed for civil rights attorney with 30 years of experience).

A very recent decision by Judge Cedarbaum in *Port Authority Police Asian Jade Society v. Port Authority of New York and New Jersey*, ___ F. Supp.2d __, 2010 WL 1507784 (S.D.N.Y. Apr. 15, 2010) ("*Port Authority*"), awarded attorneys' fees at a rate of $400 an hour to partners from the prestigious law firms of Cravath, Swaine and Moore LLP ("*Cravath*") and Paul, Weiss, Rifkind, Whaton, and Garrison, LLP ("*Paul Weiss*") in a multi-plaintiff discrimination case.

Given these awards in comparable cases, Mr. Thompson's fee should not exceed $425 an hour. While his experience and competence are substantial, they do not approach the extraordinary levels of experience and ability of those who were allowed a rate of $425 an hour or above. In contrast to attorneys for which such rates were awarded, Mr. Thompson has no academic recognition, no leadership position in a civil-rights organization, only 16 years experience as an attorney and, so far as appears from his affidavit, only 7 years of exclusively employment law experience. Indeed, if lawyers from Cravath and Paul Weiss (in *Port Authority*) and from Steptoe (in the *Simmonds* case) were prepared to litigate discrimination cases for $400 or $425 an hour, anything more would exceed what is "just high enough" to attract competent counsel. *Simmons, supra*, 575 F.3d at 176.

The application for fees at the rate of $625 an hour for Andrew S. Goodstadt is similarly excessive and should not exceed $300 an hour. *See, e.g., Kaufman*, note 2 *supra*. [3]

Plaintiff's insinuation that fees awarded in prior cases should be adjusted just for the passage of time, ignores that reasonable paying clients who want to spend the minimum necessary – which is the standard mandated by the Second Circuit – do not always allow their lawyers to pass along ever-increasing rates. As a significant point of comparison, an hourly rate

---

[3] Just four years ago, when an associate at TWG, Mr. Goodstadt was allowed a rate of $225 an hour. *See Brady,* 455 F. Supp. 2d at 216. Though he is now a partner, it is still a fact that he has only 11 years of experience as an attorney.

of $425 represents an annual increase of 5% a year from the $350 an hour rate that was allowed

to Mr. Thompson in 2006 in *Brady*. It would be a joyous day for lawyers, indeed, if private

sector clients were amenable to 5% annual increases in billing rates. This Court, however, can

take judicial notice of the fact that clients *today* are asking their outside counsel to freeze billing

rates or reduce them. Accordingly, allowing Mr. Thompson anything more than $425 an hour

would not fulfill this Court's obligation to impose market discipline in determining the

appropriate fee to be awarded. *See Arbor Hill*, 522 F.3d at 184.[4]

## 2. **The Associate Rate Should Not Exceed $200 Per Hour.**

The rate of $450 an hour for Ariel Y. Graff, is excessive because Mr. Graff has been

admitted to the New York bar only since 2007. In *Becerril, supra*, associates with two to four

years of experience at TWG were awarded rates of $250 an hour in 2009. But, in *Port Authority,*

*supra*, decided just one month ago, the court allowed rates of $200 an hour for associates who,

like Mr. Graff, graduated law school in 2007. The prevailing rates in this District for very

experienced associates is sometimes as high as $250 an hour, but for those with Mr. Graff's few

years of experience, the allowed rate is $200 or less.[5]

---

[4] While *Farbatko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005), cautions against merely "[r]ecycling rates awarded in prior cases," it by no means implies that rates must always increase with every passing year.

[5] *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 369-70 (S.D.N.Y.2005) ($250 an hour for an attorney with 20 years' experience); *Morris v. Eversley*, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004) ($200 an hour for associates with 1 to 3 years of experience at large New York City law firm); *Betancourt v. Giuliani*, 325 F. Supp. 2d 330, 333 (S.D.N.Y. 2004) ($200 an hour for associates at large New York City law firm); *Moses v. New York City Transit Auth., supra*, 2003 WL 22939122 at *3 ($175 an hour rate for an associate with four years' experience); *Vernon v. Port Auth. of N.Y. & N.J.*, 220 F. Supp. 2d 223, 230 (S.D.N.Y. 2002) (noting that rates for associates in the Southern District of New York range between $125 to $150 per hour); *Knoeffler v. Town of Mamakating*, 126 F. Supp. 2d 305, 312 (S.D.N.Y. 2000) (awarding civil rights lawyer with seven years of experience $200 per hour).

### 3. TWG's Paralegals' Rate Should Not Exceed $75 An Hour.

Plaintiff's fee application seeks compensation for three different paralegals (or legal assistants) who allegedly worked over 1000 hours on this lawsuit. The hourly rate should not exceed $100 an hour. *See Port Authority, supra, id.* at *3 ($100 an hour for paralegals). Rates of $75 or $100 an hour are standard in this District.[6]

Furthermore, Plaintiff has not submitted any information concerning the paralegal's background and experience, and that is an independent ground to reduce their proposed rates. *See Spalluto v. Trump Int'l Hotel & Tower,* 2008 WL 4525372, *13 -14 (S.D.N.Y. Oct. 2, 2008); *Tlacoapa,* 386 F. Supp. 2d at 370 (reducing requested rate of $75). For both of these reasons, not more than $75 an hour should be allowed.

### 4. The Cases Plaintiff Relies On Are All Inapposite.

The cases cited by Plaintiff's as comparable are decidedly not. For example, *Robinson v. City of New York,* 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009), was a nine-plaintiff case, where counsel achieved a "hard-fought" victory *after five years of litigation,* an extensive discovery period, the taking and defending of *dozens of depositions,* as well as assiduous review of police-officer memo books, overtime slips, disciplinary logs, performance evaluations. Even then, $500 was the highest rate allowed, and only $450 an hour was allowed for Norman Siegal, a famed civil-rights lawyer with nearly 30 years of experience.

Similarly, in *Rozell v. Ross-Holst,* 576 F. Supp. 2d 527 (S.D.N.Y. 2008), a rate of $600 an hour was allowed based on one attorney's having 29 years' experience litigating employment

---

[6] *See Wise v. Kelly,* 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008) (allowing a rate of $100 per hour); *Kinneary v. City of New York,* 536 F. Supp. 2d 326, 336 (S.D.N.Y.2008) (finding $75 an hour to be reasonable); *Sylvester v. City of New York,* 03 Civ. 8760, 2006 WL 3230152 at *9 (S.D.N.Y. Nov. 8, 2006) (rate of $100 an hour reasonable for paralegal at small, Manhattan firm); *McKay v. Barnhart,* 327 F. Supp. 2d 263, 270 (S.D.N.Y. 2004) (prevailing rate for paralegals in the Southern District is $75).

cases, and four years' experience at the Women's Rights Project of the ACLU. *See also Adorno v. Port Authority of New York and New Jersey*, __ F. Supp. 2d __, 2010 WL 582045, *5-6 (S.D.N.Y. Feb. 19, 2010) (rates of $550 and $500 in multi-plaintiff discrimination case to attorneys with 36 and 40 years' experience, respectively). Generally, Plaintiff relies on fee awards given to attorneys with vastly more experience than Mr. Thompson, just as his firm had done in *Brady, see* 455 F. Supp. 2d at 206 ("In most of the cases Brady cites, the attorneys had significantly more experience than Wigdor, Gilly or Thompson").

Sometimes, as in *LV v. New York City Department of Education*, __ F. Supp. 2d__, 2010 WL 1244287, *4-5 (S.D.N.Y. Mar. 31, 2010), a high hourly rate (there $600) is based not only on counsel's extensive experience (combined 49 years of experience for two partners), but also on the fact that the attorneys were members of large law firms that are able to supply the "superior resources," "larger staff," and "experience with class action," that were needed for the "complex class action" that was litigated, *see id* at * 4-5. This is so because overhead costs – like staffing – are subsumed in the hourly rate. *Id.*; *Robinson, supra*, at *4 (size of firm a factor "'primarily due to varying overhead costs'"). In contrast, this single-plaintiff lawsuit did not require large firm resources and, therefore, does not warrant "big firm" rates.[7]

---

[7] The other cases cited by Plaintiff are complex securities and other litigations, which are not at all comparable. *See In re AOL Time Warner Shareholder Derivative Litigation*, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) (complex securities and shareholder derivative litigation); *In re Marsha ERISA Litigation*, 265 F.R.D. 128 (S.D.N.Y. 2010) (complicated and complex ERISA class action); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219 (E.D.N.Y. 2009) (complex class action insurance litigation); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) (complex commercial class action litigation); , 84 F. Supp. 2d 417 (S.D.N.Y. 1999) (complex class action litigation regarding constitutional rights).

**B.    No Adjustment Can Be Made For Reputation,
Market Demand, Novelty or Payment Delay.**

To the extent opposing counsel seeks to justify a higher hourly rate by dint of his purported preeminence in the field, he is wrong on the facts and the law. As previously noted, even attorneys with double Mr. Thompson's experience in employment law cases and who are recognized authorities in the field, are rarely allowed more than $450 an hour, even in the most recent cases.

More fundamentally, Plaintiff's contention ignores the "touchstone" principle "'that district courts should award fees *just high enough* "to attract competent counsel."'" *Simmons, supra,* 575 F.3d at 176 (emphasis by the court). Litigants "cannot overcome the presumption" in favor of the prevailing market rates for competent attorneys "by relying on the prestige or 'brand name' of her selected counsel." *Id.* Doing so would run counter to the fee-award framework adopted by the Second Circuit, which is intended to:

> promote[] cost-consciousness, increase[] the probability that attorneys will receive *no more than* the relevant market *would normally permit*, and encourage[] litigants *to litigate with their own pocketbooks in mind*, instead of their opponents.

*Id.* at 176 (emphasis added). Accordingly, while Plaintiff "cannot be faulted for wanting to retain counsel with the best possible reputation, it is not the [defendant's] responsibility to compensate for such counsel . . . ." *Id.* at 177.[8]

---

[8] While *Simmons* addressed specifically only the "forum rule," the underlying principles would apply to all aspects of a fee award, as district courts are "directed . . . , in calculating the . . . presumptively reasonable fee, 'to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.'" *Id.* at 174 (citing *Arbor Hill,* 522 F.3d at 117) (emphasis in the original).

That Mr. Thompson customarily charges his clients $750 an hour is also not relevant.[9] The measure is not "what a reasonable paying client would have paid for TWG's services" (Pltf. Mem. at 2), but rather what the "reasonable, paying client" would pay on the assumption that he or she "wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill* at 184. The correct hourly rate is the one "adequate to attract competent counsel" to handle an employment discrimination case, *Perdue*, ___ U.S. at ___, 2010 WL 1558980 at *6, not what a famed and fabled lawyer can exact from the market.[10]

While determining the presumptive billing rate is a case-specific inquiry "into the prevailing rates for counsel of similar experience and skill . . . , [t]his may, *of course*, include judicial notice of rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County of New York*, 433 F.3d at 209 (emphasis added). Where it is asserted that the current market rate differs from what the cases have awarded, it is the fee applicant who has "the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." *Id.* at 209, *citing Blum v. Stenson*, 465 U.S. 886, 896 n.11. Here, the fee applicant

---

[9] Of course, there is no evidence in the record as to what Mr. Thompson *actually obtains* from his other clients, only what is stated in certain retainer agreements. Furthermore, the materials (as submitted to Defendant) omit all provisions of the retainer agreements which, so far as appears, may include a provision that TWG would accept, if successful, the fee actually awarded by the court and would not seek more from the client. Thus, there is no evidence of what Mr. Thompson actually charges, only what he purports to charge.

[10] To the extent that hourly rates in *Rozell, supra*, or other cases were based on what the plaintiff's counsel actually charged their clients and, hence, "what the market will bear," *id.* at 544, or on the reputation of plaintiff's counsel as "one of the outstanding firms representing plaintiffs in employment cases," *id.* at 545, the decision is inconsistent with *Arbor Hill* and effectively overruled by *Simmons. See Simmons, supra*, 575 F.3d at 174-76.

submits only his own affidavit.  Given that lack of *satisfactory* evidence of what prevails in the market, the rates awarded in the cases control.

Plaintiff's request for fee enhancement due to novelty or complexity, is not justified because these factors are subsumed in either the hourly rate or the number of litigation hours allowed.  *See Perdue, supra*, 2010 WL 1558980 at *7; *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992); *Anderson v. Rochester-Genesee Regional Transp. Auth.*, 388 F. Supp. 2d 159, 169-70 (W.D.N.Y. 2005).  In any event, since Plaintiff's counsel has litigated several cases of hostile work environment and retaliation (*see* Thompson Dec. ¶ 20), he is not entitled to an adjustment for the allegedly novel or complex issues presented.  *See Access 4 All, Inc. v. Hi 57 Hotel, LLC*, 2006 WL 196969, at *3 (S.D.N.Y. Jan. 26, 2006).  The only arguably novel issue in this case concerned the arbitrability of Plaintiff's claims, and compensation for the time spent in motion practice related to that issue adequately accounts for its novelty.[11]

Lastly, that Plaintiff's counsel accepted this case on a "contingency basis, without any guarantee of recovery" (Pltf. Mem. at 7), is also irrelevant because fee enhancement for the contingency of non-payment is not permitted.  *See Dague*, 505 U.S. at 567; *Anderson*, 388 F. Supp. 2d at 170.  And, use of current, rather than historical rates, fully compensates for the delay in payment.  *See Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709, 2009 WL 2778431, *3 (2d Cir. 2009).

---

[11] Equally irrelevant of the vituperative assertion as to "aggressive litigation lodged against him" of Defendant's counsel (Pltf. Mem. at 7), since, even if true, that factor, too, would be reflected in the number of billable hours recorded.  Moreover, a period of two years from filing to verdict, as is the case here, is not the kind of "unanticipated delay" as would warrant a departure from the presumptively reasonable rate.  *See Perdue*, ___ U.S. at ___, 2010 WL 1558980, at *8.

## POINT II

### A REDUCTION FROM THE PRESUMPTIVE FEE IS WARRANTED FOR EXCESSIVE HOURS, DUPLICATIVE EFFORTS AND VAGUE BILLING PRACTICES.

The presumptively reasonable fee may be reduced for excessive or duplicative hours or for vague billing practices that interfere with the Court's ability to determine if the hours expended were appropriate. *See, e.g., Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998).

**A.    Vague Billing Entries Alone
Warrant a Significant Reduction.**

Where the documentation of billable hours is deficient, the court may reduce the fee award for that alone, *see Hensley,* 461 U.S. at 433, since vague entries make it impossible to ascertain the reasonableness, or even the exact amount, of hours spent on any one task. *Spalluto,* 2008 WL 4525372, at *8. Similar block billing, which is the "practice of aggregating multiple tasks into one billing entry," warrants a downward adjustment, since that, too, makes it difficult to assess the reasonableness of the fees being charged, *see Molefi v. Oppenheimer Trust,* 2007 WL 538547, at *7 (E.D.N.Y. 2007).

Courts regularly apply a percentage reduction to fee awards where billing records are vague due to block billing or otherwise. *See, e.g., Kirsch,* 148 F.3d at 172-73 (upholding 20% reduction in billed time for vagueness and other deficiencies where many time entries merely read "letter to court" "staff conference," and "work on motion"); *Sea Spray Holdings Ltd. v. Pali Fin. Group, Inc.,* 277 F. Supp.2d 323, 326 (S.D.N.Y. 2003) (15% reduction).[12]

---

[12] *See also Aiello v. Town of Brookhaven,* 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005) (15% reduction for substantial block billing); *Gonzalez v. Bratten,* 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (12% reduction); *Local 32B-32J, SEIU v. Port Authority,* 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (20% reduction "due to vague descriptions"); *Wilder v. Bernstein,* 975 F. Supp. 276, 283-284 (S.D.N.Y. 1997); *Meriwether v. Coughlin,* 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (15% reduction because certain time entries were "too vague to adequately assess reasonableness"); *Sabatini v. Corning-Painted Post Area Sch. Dist.,* 190 F. Supp. 2d 509, 522

The billing records of Plaintiff's counsel exhibit all of these deficiencies. Many of those entries cannot be properly identified because the billing is vague and numerous hours billed reflect many different tasks being under the same entry. Most, if not all, of the attorney entries occur in the form of block billing, but this defect is particularly egregious for the entries of Mr. Graff, which are both block-billed and vague. As explained more fully below, TWG is seeking compensation for excessive hours or duplicative work, or for time that is non-compensable for one reason or another. Because of block-billed entries, however, it is impossible to determine how much time was spent on these excludable matters. Accordingly, an across-the-board reduction of 35% is warranted for Mr. Graff's time. *See Levy v. Powell*, 2005 WL 1719972 (E.D.N.Y. July 22, 2005) (35% reduction due to vagueness, excessiveness and redundancy of one attorney's billing records).

**B.    The Bills Should Be Reduced for
Excessive Staffing and Duplication of Work.**

Courts should not compensate counsel for hours that are "excessive, redundant or otherwise unnecessary." *See City of Riverside v. Rivera*, 477 U.S. 561, 569-70 n.4 (1986). The court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Kirsch*, 148 F.3d at 173.

In this case, numerous billing records reflect that Mr. Graff attended mediations, conferences or other meetings with Mr. Thompson, where the attendance of two attorneys was not necessary.[13] Further, Mr. Thompson attended the final pre-trial conference with two lawyers,

_____

(W.D.N.Y. 2001) (descriptions such as "hearing preparation," "telephone conference with client," and "review records" too vague).

[13] For example, Mr. Thompson spent approximately 30 hours to prepare for and attend a pre-trial mediation in March 2008 and a post-discovery settlement conference in April 2009. It appears that Mr. Graff spent about 33 hours in connection with those same two meetings (not including the hours Mr. Graff spent preparing a mediation statement). In contrast, Starwood was

Mr. Graff and Mr. Goodstadt, but neither argued any substantive issues. In contrast, the Defendant only had two attorneys present and both attorneys argued issues before the Court on that day. The time of two lawyers, in addition to Mr. Thompson, was not necessary.

Mr. Goodstadt did not actively participate in discovery in this action and has virtually no time entries prior to September 2009, when he apparently began assisting in pretrial matters. Much of his time appears to be "getting up-to-speed," which Defendant should not have to pay for. *See Ware v. ABB Air Preheater, Inc.*, 1995 WL 574464, at *8 (W.D.N.Y. Sept. 28, 1995). Furthermore, while Mr. Goodstadt attended the October 16 pretrial conference, he was later replaced by Scott Gilly, ostensibly because Mr. Goodstadt was preparing for another trial. (*See* Dkt #95) But, then, neither Mr. Gilly nor Mr. Goodstadt was present on any day of the trial. Accordingly, substantially all of Mr. Goodstadt's time was duplicative and wasteful.

Mr. Thompson himself has recorded excessive hours. While it was proper for him to spend time preparing for oral argument before the Second Circuit on June 26, 2009, he spent 8 hours for preparation and oral argument on that date and more than 67 hours in preparation during the prior 2-week period. That is excessive.

While a detailed review of each of Plaintiff's counsel's time records is not being asked, a cursory examination reveals significant time that was excessive or duplicative, and a percentage reduction of the requested fee amount should be made to account for that. *See Simmonds, supra; Kirsch, supra*).

**C.    Plaintiff's Counsel Should Not Be Compensated
For Activity Not Necessary to Effective Litigation.**

---

represented at the mediation by only its regular labor lawyer and the Westin's Director or Human Resources and, at the settlement conference, by  its chief litigation counsel, Mr. Starr, and in-house counsel, Jamie Balanoff, but not by Christine Wilson who was then an associate at Mr. Starr's firm and played the same role in discovery that Mr. Graff had played by TWG.

Courts have recognized that attorneys should not be compensated for pursuing fruitless strategies that had little chance of success. *See Reiter v. Metropolitan Transportation Authority of New York*, 2007 WL 2775144, at *10-12 (S.D.N.Y. Sept. 25, 2007) (hours disallowed for motion that plaintiff could not have reasonably believed would be successful). For similar reasons, attorneys should not recover fees for experts who did not testify at trial and whose work was unnecessary as to the success of the case – or for their time in preparing such experts. *See Port Authority, supra,* 2010 WL 1507784, at * 4; *Bonner v. Guccione*, 1997 WL 441910, at *11 (S.D.N.Y. Aug. 6, 1997), *vacated in part on other grounds*, 178 F.3d 581 (2d Cir. 1999).

Here, Plaintiff retained Alberto M. Goldwaser, M.D., a forensic psychiatrist, as his expert. Both parties engaged in protracted litigation regarding the scope and content of any trial testimony by Dr. Goldwaser. Defendant's motion to exclude the testimony of Dr. Goldwaser as being argumentative and intruding on the province of the jury was substantially granted by the Court's pretrial order restricting Dr. Goldwaser's intended testimony. (*See* Transcript of *Final Pre-Trial Conference* ("*Pre-Trial Conf.*"), Oct. 16, 2009, at 26:19-21.) The Court itself noted Mr. Thompson said he had inadvertently left Dr. Goldwaser off his oral witness list, that "I certainly hope you are going to call him, because I had to read all that stuff" referring to the parties' dispute over the expert report of Dr. Goldwaser during the motions in limine. (*See Final Pre-Trial Conf.* at 26:22-23.) Plaintiff's counsel assured to the Court that he would (*id.* at 26:19-21); but then he never did. Therefore, the $27,189 paid to Dr. Goldwaser and any attorney time or other billable time spent regarding Dr. Goldwaser, including time spent opposing Defendant's motion *in limine* to exclude or limit his testimony, should be excluded.

Lastly, while Plaintiff is entitled to effective advocacy, his counsel cannot be compensated "scorched earth tactics," *see Arbor Hill*, 522 F. 3d at 184, or for making motions he should have known could not prevail, *see Reiter supra*, at *11. There was much of that.

Plaintiff opposed Defendant's Rule 35 mental examination, even while seeking millions of dollars for emotional distress. Of course, he lost. (Dkt. #35.) Plaintiff then moved in limine to exclude Dr. Levin's testimony on frivolous grounds. (Dkt. #66.) Of course, he lost. (Pre-Trial Conf. at 2-3.) Plaintiff also tried to exclude reference to the MMPI psychological test on grounds that were obviously irrelevant to admissibility. Of course, he lost (*id.* at 3) – and, then, he made no reference to it at trial. After Hazel Hazzard was subpoenaed for depositions by both parties, Plaintiff opposed giving each side having equal time to question her. Plaintiff opposed Defendant's motion to compel just that. Of course, he lost. (Dkt. #42.)

Plaintiff also unnecessarily complicated the interlocutory appeal. He not only opposed Defendant's motion to stay the trial – not discovery, just the trial – but also cross-moved to dismiss even though jurisdiction is expressly provided for, *see* Federal Arbitration Act, §16(a), 9 U.S.C. §16(a). (USCA Doc. 45 [copy attached as Appendix A]) On both, he lost. No paying client would authorize procedural motions with less likelihood of success than the merits.

Plaintiff also made the trial much longer that it had to be. He delayed calling the Plaintiff, which is what is usual, (Tr. 276:15-19.) He also called three witnesses to testify as to one tangential matter (whether Westin employees in the Service Express department were told not to speak Spanish), but he did not call the only witness with personal knowledge as to whether complaints about this had been made to "corporate" or to the Westin's Human Resources department (*see, e.g.,* Tr. 133:24-134:12) – which was the only thing that would tie the episode to senior management's allegedly anti-Hispanic attitudes.

18

Plaintiff's counsel also prolonged the trial in four different ways: by cumulative questions; by eliciting unnecessary "not for the truth" testimony as to what Mendez had told others about events in the kitchen; by trying to argue his case to the jury under the guise witness examination – for which he was admonished repeatedly (*see, e.g.,* Tr. 960:130-14; 1219: 4-5; 1233:9-13; 1325:7-8) – and by attempting repeatedly to introduce extraneous evidence already ruled inadmissible (like statements allegedly made by Rotolo to Plaintiff's daughter, *see* Tr. 992:22-25) or which was clearly inadmissible (like a jacket for which there was no chain of custody, *see* Tr. 2332:8-10, 13-14).  For these reasons, an additional reduction of the fee is warranted.

### POINT III

### GIVEN THAT PLAINTIFF WAS
### UNSUCCESSFUL ON VIRTUALLY ALL OF HIS
### CLAIMS, A SUBSTANTIAL REDUCTION IS REQUIRED.

The "most critical factor" to determining what constitutes a reasonable attorneys' fees "is the degree of success obtained." *Barfield,* 537 F.3d at 152, *citing Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566 (1992); *Kassim v. City of Schenectady,* 415 F.3d 246, 254 (2d Cir. 2005).  The presumptively reasonable fee may be – and frequently is – adjusted downward based upon the plaintiff's limited degree of success. *See Hensley,* 461 U.S. at 436.

While the Court can make that reduction by identifying and subtracting those hours spent litigating unsuccessful claims, *see Green v. Torres,* 361 F.3d 96, 98 (2d Cir.2004), it may, alternatively, "simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436-37.  In the Second Circuit, courts frequently use across-the-board reductions, sometimes by as much as 90%. *See Betancourt v. Giuliani,* 325 F. Supp. 2d 330, 331-32 (S.D.N.Y.2004) (reduction of 90% for limited success); *see also Port Authority, supra* (reducing fee by 4/11ths, or 36%, where only 7 of 11 plaintiffs prevailed); *Knoll v. Equinox Fitness Clubs,* 2006 WL

2998754, at *3 (S.D.N.Y. Oct. 20, 2006) (90% reduction where successful claim was "eclipsed" by unsuccessful claims, which "were of paramount importance"); *Hine v. Mineta,* 253 F. Supp. 2d 464, 467 (E.D.N.Y. 2003) (reduction of 60% where plaintiff failed to succeed on 2 of 3 causes of action); *Separ v. Nassau County Dep't of Social Services,* 327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004) (reduction of 40%).

Since, as here, Plaintiff has achieved only partial success and the one claim on which he prevailed is "separable" from those found to be without merit, "the district court should decline to award that portion of the requested fees which relate to the unsuccessful claim[s]." *See Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1259 (2d Cir. 1987). The full fee may sometimes be awarded where the "successful and the successful claims [are] interrelated and require[] *essentially the same proof,*" *Robinson,* 2009 WL 3109846, at *8 (emphasis added), or are "inextricably intertwined" in the sense that "they 'involve a common core of facts or [are] based on related legal theories,'" *Spalluto,* 2008 WL 4525372, at *15, or where "evidence relevant to [the] claims [rejected by the jury] *was necessary* to plaintiffs' establishing a successful . . . claim," *Robinson, supra,* at *9 (emphasis added). That, though, is not this case.

Moreover, as the Second Circuit has recently reaffirmed in *Barfield v. New York City Health & Hospitals Corp.,* 537 F.3d 132 (2d Cir. 2008), the "key factors in determining the degree of success achieved" are "[b]oth 'the quantity and quality of relief obtained' *as compared to what the plaintiff sought to achieve,* as evidenced in her complaint." *Id.* at 152 (emphasis added); *see Carroll v. Blinken,* 105 F.3d 79, 81 (2d Cir. 1997). Therefore, in any case that "has achieved only partial or limited success," the district court must "focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 437. Where, as here, "recovery of private damages is the purpose of . . .

civil rights litigation, a district court, in fixing fees, *is obligated* to give *primary consideration* to the amount of damages awarded *as compared to the amount sought*." *Kassim*, 415 F.3d at 254 ,(quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (emphasis added).

Accordingly, where the plaintiff fails to achieve the "primary aims" of the litigation and the damages obtained are small in relation to the "anticipated relief," there is "only a small degree of success," and a fee reduction of 50% is well within the district court's discretion. *Barfield*, 537 F.3d at 152-53. Indeed, even in cases "of a unitary type, based on a common nucleus of facts, where the plaintiff won a substantial judgment," the lodestar fee is properly reduced "by reason of the plaintiff's limited degree of success." *Kassim,*415 F.3d at 255; *see also Hensley*, 461 U.S. at 436 (lodestar fee "may be excessive . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."). In this Circuit, a district judge's authority to reduce the fee awarded to a prevailing plaintiff "is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal victory." *Kassim*, 415 F.3d. at 256. Accordingly, reductions of 15% to 25% for partial success are not uncommon, even where the successful and unsuccessful cases are found to be "intertwined." *See, e.g., id.* at 255 (citing cases); *Robinson, supra*, at *10 (25% reduction).[14]

While Plaintiff emphasizes that the jury awarded $1 million in compensatory and $2 million in punitive damages, he ignores that pursuant to Starwood's pending Rule 59 motion, and based on the facts and arguments therein presented, that award may be substantially remitted to well under $100,000. That small recovery is wholly disproportionate to the 3-week trial and mammoth discovery that Plaintiff's counsel undertook. *See Kassim*, 415 F.3d at 252 (reduction

---

[14] *See also Spalluto, supra*, at *17 (15% reduction); *Cioffi v. New York Cmty. Bank*, 465 F. Supp. 2d 202, 221 (E.D.N.Y. 2006) (15% reduction); *Coffey v. Dobbs Int'l Servs.*, 5 F. Supp. 2d 79, 86 (N.D.N.Y. 1998) (20% reduction).

in fee warranted where small award reflects "a low degree of success in securing the objectives," as distinct from the low "monetary value" of violated right). [15]

Plaintiff also ignores that, in closing argument, his counsel requested that the jury award him $38 million in punitive damages and $8 million for compensatory damages for all of his claims. The $3 million actually awarded – grossly excessive as it is – is also only 6.5% successful, compared to the $46 million the Plaintiff asked the jury to award. That alone requires a significant reduction. *See Kassim*, 415 F.3d at 254 (court "obligated" to give "primary consideration" to damage award "as compared to the amount sought"); *Robinson, supra*, at *10 (reduction warranted where jury awarded $235,000 in compensatory damages and "several millions" had been sought).

A similarly miniscule success rate is revealed by comparing the claims on which Plaintiff prevailed to the claims presented to the jury by the Court's special verdict form:

### Discrimination (other than Hostile Work Environment)

1. Failure to promote Plaintiff to Pastry Chef (George Tetteh)..... *Jury Verdict for Starwood*
2. Failure to promote Plaintiff to Pastry Chef (Tanja Rojas)...... *Jury Verdict for Starwood*
3. Failing to give Plaintiff overtime assignments................... *Jury Verdict for Starwood*

### Hostile Work Environment Discrimination

4. Hostile work environment by supervisors........................ *Jury Verdict for Starwood*
5. Hostile work environment by co-workers........................ *Jury Verdict for Starwood*

### Retaliation

6. Retaliation by installation of the hidden camera................. Plaintiff verdict
7. Retaliation by following Plaintiff to the bathroom.............. *Jury Verdict for Starwood*
8  Retaliation by soliciting false co-worker statements ............ *Jury Verdict for Starwood*

### Reasonable Accommodations

9. Failure to provide Plaintiff with a shift change.................. *Jury Verdict for Starwood*
10. Failure to accommodate Plaintiff's dietary needs................ *Jury Verdict for Starwood*
11. Failure to promote Plaintiff to pastry chef....................... *Jury Verdict for Starwood*

---

[15] If Starwood prevails on its pending Rule 50 motion for judgment as a matter of law, Plaintiff's fee application becomes moot as Plaintiff would have prevailed on nothing at all.

Applying Judge Cedarbaum's methodology in *Port Authority*, as well as that utilized in *Hine* and *Separ*, since Plaintiff lost on 10 of the 11 specific claims presented to the jury, a reduction of 10/11ths – or 90% reduction – would not be extreme. Indeed, this simple numeric computation actually understates Plaintiff's lack of success because, as the Court itself observed, "the retaliation case is very thin . . . and this is really a hostile work environment case" (Tr. 1797:21-22; 1800:12-13; 2398:9-13, 20). There is no doubt that in *this* case, claims for hostile-environment harassment and, secondarily, for failure to accommodate his dietary and scheduling needs were the ones "of paramount importance" throughout the entire litigation, and they fully "eclipsed" the one small claim on which Plaintiff actually did prevail. *See Knoll, supra,* at *3.

Particularly instructive here is in *Bonner v. Guccione*, 2000 WL 12152 (S.D.N.Y. Jan. 6, 2000), where the plaintiff's Equal Pay Act ("*EPA*") claim was her "only . . . success," *id.* at *2, having originally asserted, *inter alia*, claims of hostile-environment and *quid-pro-quo* harassment and intentional discrimination. Initially, the court imposed a 50% fee reduction when the plaintiff had obtained a favorable jury verdict on both the EPA and hostile-environment claims, largely because the unsuccessful intentional discrimination claim was "intertwined" with the two successful ones. *Id.* at *1. But when after appeal, only the EPA claim remained, the court awarded only $190,000 in fees, *id.* at *5, which represents an 85% reduction from the adjusted lodestar amount. It did so because the EPA claim was not impossible to separate from the intentional discrimination claim, *id.* at *3, and that while there was some "overlap in the proof" between the EPA, intentional discrimination, and hostile-environment claims, "[t]he proof related to the EPA claim was relatively straightforward and compact compared to the proof offered on the discrimination claim." *Id.* at *4. That is precisely this case.

Plaintiff, here, cannot plausibly say that all of his claims were "inextricably" intertwined. Though there was some "overlap of proof," the proof was *not* "essentially the same" for all of his claims, and very little of the trial evidence was actually "necessary to [Plaintiff's] establishing" that the hidden camera constituted retaliatory surveillance.

Thus, evidence that Chef Ribbens told Plaintiff (in 2004) not to speak Spanish, made him come to work in 2006 and show his scar to co-workers to make sure he was really ill, required a stool sample in 2006, refused to put him on the day shift, promoted Tetteh and Rojas to pastry chefs in 2006 and 2007, respectively, and stood by while co-workers called Mendez names, like "Ecuadorian burrito," at certain unspecified times prior to his leaving the Westin in April 2007 – none of that was *necessary* for establishing retaliatory surveillance in March of 2008. It was also not necessary to have evidence that Tello called co-workers "monkeys" and was (in May 2007) not sufficiently disciplined; that Service Express associates were once told not to speak Spanish; that Kleinman hit Mendez in the face with a salad bowl three months *after* the hidden camera was removed, or that someone in Human Resources had altered documents in connection with the Kleinman investigation. It was not even necessary to have evidence that Rotolo pointed his fingers like a gun (or that Lavides inadequately investigated); that he called Mendez "mangina," or that he made him put away the flour because, according to the closing argument of Plaintiff's *own counsel*, Kiska's retaliatory act was precipitated by his reporting *to her* damage to his locker in October 2007, oven-writing in December 2007 and being falsely accused of calling Allen "sweet lips" in February 2008. (Tr. 2539 - 2540.)

Dr. Chun's testimony as to the gruesome nature of Mendez's colonectomy or his illness's being aggravated by night-shift work, co-worker intimidation or unmet dietary needs was not necessary because, by the time the camera was installed, Mendez was healed and back to work

24

for over a year; had been working the day shift for nearly 10 months; was no longer being bothered by Morales, who had long since quit working at the Westin, and had been offered a reasonable accommodation to his dietary needs that he was reviewing with his attorney. Also unnecessary was Dr. Ortiz's testimony as to Plaintiff's emotional distress from working the night shift, not having his dietary needs met or the alleged verbal taunts and physical threats from co-workers because, again, none of that distress related to the hidden camera, which Dr. Ortiz never mentioned at all.[16]

This trial was never really about retaliation and certainly not about the hidden camera, which was not even mentioned in the Complaint. Plaintiff's counsel made sure to question virtually every witness about the (alleged) hostile work environment – the name-calling, threats, and verbal abuse. He questioned many non-management witnesses about whether Plaintiff had told them about his troubles at work regarding harassment – but not one (save Blanco) about the hidden camera or about Plaintiff's emotional distress from learning of its installation. Unquestionably, the claims of "paramount importance to" Plaintiff were the hostile work environment and the disability accommodations, including the failure to promote Plaintiff to the pastry chef position (on the theory that this carried with it a day-shift schedule), the latter being emphasized by Plaintiff's counsel with great drama in his opening and closing arguments (*See* Tr. 33:1 to 46:16; 2498:8 to 2553:7.) Those claims absolutely "eclipsed" the one claim on which he actually prevailed.

Moreover, here, as in *Bonner*, proof of the retaliatory surveillance claim was "straight-forward and compact," compared to the proof offered for workplace harassment and disability

---

[16] All of Dr. Ortiz's testimony related to claims that did not succeed. *(See, e.g.,* Tr. 821:18-22 [distress caused by "being called names" and having "notes written and left on locker"]; *id.* at 822:24 to 824:1 [humiliation and embarrassment from references to the "mangina," the presence of gay pornography, and Westin's failure to follow Mendez's dietary restrictions].)

discrimination. If the only retaliatory surveillance had been at issue, this trial would have taken two days, not 14.

In this regard, *Betancourt v. Guiliani, supra,* is telling. There, attorneys' fees were reduced 90% because the $15,000 settlement that plaintiff obtained for an unlawful strip search did not render successful the litigation as a whole, where its primary aim was to overturn the ordinance allowing for the arrest of homeless persons. 325 F. Supp. 2d at 334-36. Significantly, the Court noted that plaintiff's lawyers must have spent a minimal amount of time on the strip-search claim, due to its simplicity, as compared to the much more complex claims that did not succeed. *Id.* at 335. Here, too, Plaintiff's successful claim of retaliation should have required only minimal time, considering its simplicity as compared to all the other claims on which he lost. *See also Hine*, 253 F. Supp.2d at 467 (60% fee reduction where "a significant part of the trial was devoted to testimony on two [unsuccessful] causes of action and issues related to damages" of backpay and emotional distress, neither of which was awarded).

The cases concluding that retaliation and harassment claims are "interrelated," *see, e.g., Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 222 (S.D.N.Y. 2004) (stating without explanation that claims were "inextricably linked"), are not applicable here. In *Robinson, supra,* the court found that retaliation claim "necessarily intersect[ed]" with an unsuccessful race discrimination claim because the retaliation took the form of the denial of voluntary overtime and the protected activity was the plaintiffs' complaint about the same thing – namely, denial of overtime. *Robinson*, at *9. Furthermore, in *Robinson,* the defendants themselves "squarely reconnected" at trial the successful and unsuccessful claims by contending that plaintiffs did not have a "good faith belief that they are being discriminated against," which

made evidence on the unsuccessful claim of discriminatory denial of overtime "necessary to plaintiffs' establishing a successful retaliation claim." *Id.*

Similarly, in *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir. 1996), evidence as to the discriminatory conduct (*viz.*, sexual harassment) was necessary for the retaliation claim because the jury was required to decide that it was reasonable under the circumstances for the plaintiff to believe that the one offensive comment she actually complained about constituted harassment. *Id.* at 1178. Therefore, even though the harassment claim had been withdrawn before trial, the evidence showing sexual harassment to have occurred was exactly the same as the evidence plaintiff needed to prove that she reasonably believed that it had.

Here, in contrast, the retaliatory act (a hidden camera) is not the same as the alleged discriminatory or harassing behavior, and the evidence needed to prove that particular retaliation claim not essentially the same as needed to prove the underlying harassment. Rather (as explained above), almost all of the trial evidence was *not* needed to show that Plaintiff reasonably believed the complained of conduct, *e.g.*, the offending graffiti, to have been ethnically motivated – perhaps some, but far, far from all.

Also instructive is *Dominic, supra.* There the facts underlying the plaintiff's unsuccessful claim of age discrimination with respect to, *e.g.*, demotion and poor performance evaluations were "substantially intertwined" with his successful retaliation claim because the company itself used the plaintiff's prior poor performance to rebut the successful retaliatory discharge claims. 822 F.2d at 1260. Here, in contrast, the Westin's defense to retaliation was that the hidden camera was installed because it was *accepting* the truth of Mendez's allegations of discriminatory harassment and attempting to catch the culprit. Even if the jury believed that Kiska was trying to "pay back" Mendez for his more recent harassment complaints, that would

not "intertwine" the older complaints because those were *not* what, according to Plaintiff's own, counsel motivated Kiska to install the camera. Nor could they be since, lacking any evidence of causation save temporal proximity, complaints made more than three or six months prior to the retaliatory act could not be casually linked to it.[17]

For these reasons, a reduction of at least 80% of Plaintiff's presumptive fee amount (after adjustment for excessive and duplicative time) is required because he succeeded only on one small claim that was legally and factually "separable" from the balance of the lawsuit. Even if that claim were, to some extent, "intertwined" with some others, it was not "inextricably" so, and the poor "quantity and quality" of relief obtained –compared to what Plaintiff sought – requires, under the *Barfield* standard, a reduction of somewhere between 50 and 80 percent.

## POINT IV

## COSTS WERE EXCESSIVE AND SHOULD BE REDUCED.

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). However, expenses which are part of the attorney's ordinary overhead or are excessive should not be reimbursed. *Id.*

**1. Depositions:** TWG videotaped every deposition it took. Plaintiff's counsel did not use these deposition videotapes at trial; only the transcripts were needed. Plaintiff attempted improperly to use large portions of the videotapes as part of his substantive evidence, but this

---

[17] The case of *Insinga v. Cooperative Centrale*, 478 F. Supp. 2d 508 (S.D.N.Y. 2007), is not relevant here. The successful retaliatory discharge claim and the unsuccessful discriminatory discharge claim "inextricably intertwined" because the $2.2 million back-pay awarded for retaliatory discharge was "the same compensatory damages that would have awarded had plaintiff prevailed on his discrimination claim." *Id.* at 511-12. Here, in contrast, what the Court would have permitted for compensatory damages if harassment had been found is far greater than the amount the Court may ultimately allow for the hidden camera.

was roundly rejected by the Court (Pre-Trial Conf. at 12:5-7, 18-25), as an experienced trial lawyer should have expected.

**2. Photocopying:** Charges for photocopying should be reduced to 10 cents a page, not the 20 cents charged. *See Staples, Inc. v. W.J.R. Assoc.*, 2007 WL 2572175, at *10 (E.D.N.Y. Sept. 4, 2007); *Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 306 (S.D.N.Y. 1998) (charge reduced to 5 cents per page).

**3. Undocumented & Disallowed Expenses:** Plaintiff has failed to provide invoices for experts or for other costs, and should not be reimbursed for any expense not supported by an invoice, or bill. *See Spalluto*, *supra* at *17. And, as previously, noted, none of Dr. Goldwaser's fees of over $27,000 should be reimbursed as he never testified. See page 18, *supra*.

## POINT V

### MENDEZ IS NOT ENTITLED TO PREJUDGMENT INTEREST ON HIS COMPENSATORY DAMAGES.

With respect to Plaintiff's state and city-law claims, prejudgment interest for mental pain and suffering is not available. *See, e.g., Meacham v. Knolls Atomic Power Lab, Inc.*, 185 F. Supp. 2d 193, 238 (N.D.N.Y. 2002). While prejudgment interest on mental anguish damages for federal claims is sometimes granted, federal courts have generally declined to do so on the grounds that, it would not be necessary to make the plaintiff whole. *See Kuper v. Empire Blue Cross and Blue Shield*, 2003 WL 23350111, at *7 (S.D.N.Y. Dec. 18, 2003); *Gilbert v. Hotline Delivery*, 2001 WL 799576, at *4 (S.D.N.Y. July 10, 2001).[18] Since the Court's Jury Instruction (at 33) made clear that there is a lower threshold for retaliation under city, rather than federal law, it is impossible to conclude from the verdict the prejudgment interest is even an option.

---

[18] *See also Gonzalez*, 147 F. Supp. 2d at 214; *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 371 (S.D.N.Y. 2001); *Zerilli v. New York City Transit Auth.*, 973 F. Supp. 311, 317 (E.D.N.Y. 1997), *aff'd in part, vacated in part on other grds*, 162 F.3d 1149 (2d Cir. 1998); *McIntosh*, 873 F. Supp. at 881-82.

Even if available, interest depends on several factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3,* 955 F.2d 831, 833-34 (2d Cir. 1992) (citing *Loeffler v. Frank,* 486 U.S. 549, 557-58 (1988)). Since, here, Plaintiff's alleged mental anguish stems from a discrete event that occurred just two years before the jury verdict, and there is scant trial testimony regarding Plaintiff's alleged distress, any award of damages is more than adequate compensation for his "garden-variety" emotional distress, making prejudgment interest wholly unwarranted. It would, instead be just an unnecessary windfall to Plaintiff. *See E.E.O.C. v. Everdry Marketing and Management, Inc.* 556 F. Supp. 2d 213, 224 (W.D.N.Y. 2008).

## CONCLUSION

For all the foregoing reasons, Plaintiff's attorneys' fee application should be denied, and not more than $150,000 should be granted.

Dated: New York, New York
      May 14, 2010

HOLLAND & KNIGHT LLP

By: s/Michael Starr
    Michael Starr
    Loren L. Forrest, Jr.
    31 West 52nd Street
    New York, New York  10019
    Tel.: 212-513-3200
    Fax: 212-385-9010
    *Attorneys for Defendant*

# 9466894_v4

# APPENDIX A

SDNY/NYNY
08-cv-4967
McMahon

S.D.N.Y. - N.Y.C.
08-cv-4967
McMahon, J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 0 7 2009

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl
Street, in the City of New York, on the 6th day of January, two thousand nine,

Present:

Hon. Ralph K. Winter,
Hon. Robert A. Katzmann,
Hon. Reena Raggi,
        *Circuit Judges.*

UNITED STATES COURT OF APPEALS
FILED
JAN - 6 2009
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

Moises Mendez,

        *Plaintiff-Appellee,*

        v.                                         08-4264-cv

Starwood Hotels & Resorts Worldwide, Inc.,

        *Defendant-Appellant.*

Appellant, through counsel, moves for a stay, pending appeal, of the district court proceedings.
Appellee moves to dismiss the appeal. Upon due consideration, it is hereby ORDERED that the
motion for a stay is GRANTED. *See McCue v. City of New York (In re World Trade Ctr. Disaster
Site Litigation)*, 503 F.3d 167, 170 (2d Cir. 2007). It is further ORDERED that the motion to
dismiss the appeal is DENIED. *See* 9 U.S.C. § 16(a)(1)(C).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: _____

SAO-AB

CERTIFIED:

JAN - 6 2009

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk

by _____
        DEPUTY CLERK